UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

---

In re:

PRIME CAPITAL VENTURES, LLC,

         Debtor.

Case No. 24-11029-REL
Chapter 11

---

**DEBTOR'S APPLICATION FOR AN ORDER, PURSUANT TO 11 U.S.C. § 542(e) AND FED. R. BANKR. P. 2004, DIRECTING BARCLAY DAMON LLP TO TURN OVER CERTAIN DOCUMENTS TO THE DEBTOR, AND AUTHORIZING DEBTOR TO EXAMINE AND SEEK DOCUMENTS AND INFORMATION FROM BARCLAY DAMON LLP BY SUBPOENA**

**TO THE HONORABLE ROBERT E. LITTLEFIELD, JR.,
UNITED STATES BANKRUPTCY JUDGE:**

  Prime Capital Ventures, LLC, the above-captioned debtor (the "Debtor"), by and through its counsel, Klestadt Winters Jureller Southard & Stevens, LLP, hereby submits this application (the "Application") seeking the entry of an order, pursuant to 11 U.S.C. § 542(e) and Fed. R. Bankr. P. 2004, authorizing the Debtor to examine Barclay Damon LLP ("Barclay Damon"), and requiring Barclay Damon to turn over certain documents to the Debtor, by entry of an order in substantially the same form as that attached hereto as Exhibit A (the "Proposed Order").  In support of the Application, the Debtor represents as follows:

**PRELIMINARY STATEMENT**

  The Debtor was created by its principal, Kris Roglieri ("Roglieri") in December 2021 as "a fund specifically designed to provide capital for large development, commercial development and commercial real estate transactions from $50 million to more than $1 billion."[1] The Debtor advertised that it would offer non-recourse lines of credit with rates at 4 to 6% with interest-only

---

[1] See Petitioning Creditors' Motion for a Trustee, Case No. 23-11302, Dkt. No. 4, ¶¶22-23 (Dec. 19, 2023) (quoting May 2, 2022 marketing in DealMaker Magazine).

payments but would require borrowers to provide 20% cash upfront based on the total project cost (the "Borrower Prepayments").  The Borrower Prepayments would be held by the Debtor "'as prepaid interest throughout the term of the loan.'"[2]  The Debtor obtained millions of dollars in Borrower Prepayments from multiple companies throughout the country which in most cases, upon information and belief, were used by the Debtor and Roglieri before the loans were closed and funded.[3]

On May 28, 2024, a criminal complaint was filed by the United States of America (the "Government") against Roglieri commencing Case No. 24-cr-00392 (MAD) (N.D.N.Y.) (the "Criminal Case"), wherein Roglieri is charged with five counts of wire fraud in violation of 18 U.S.C. § 1343, and for forfeiture of assets pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).[4]  In the Criminal Case, the Government alleges, among other things, that Roglieri and others used the Debtor to operate a fraud and money laundering scheme.[5]  Roglieri was arrested on May 31, 2024[6] and has been incarcerated since his arrest.[7]

The Debtor is now under the custody and control of Christian H. Dribusch, in his capacity as the chapter 7 trustee (the "Roglieri Trustee") of Roglieri's bankruptcy estate, the owner of all membership interests in the Debtor.  By and through current management, the Debtor intends to conduct an extensive investigation of the Debtor's financial affairs.  Barclay Damon previously served as counsel to the Debtor and has documents, information, communications with the Debtor's former management, and other things critical to the Debtor's investigation.  The Debtor has discussed the production of these things by Barclay Damon and Barclay Damon has been

---

[2] *Id.*, ¶26.
[3] *Id.*, ¶37.
[4] Criminal Case, Dkt. No. 1 and Indictment at Dkt. No. 35 (Sept. 19, 2024).
[5] Criminal Case, Dkt. No. 1, ¶4.
[6] *Id.* at Dkt. No. 12.
[7] *Id.* at Dkt. No. 32 (Aug. 5, 2024).

responsive and helpful, but specifically requested the issuance of a lawful court order and/or subpoena prior to production.

For these reasons and as more fully set forth below, the Debtor respectfully requests entry of the Proposed Order and this Court's authority to seek the production of documents and things from Barclay Damon, to serve a subpoena duces tecum in substantially the same form as that annexed hereto as Exhibit B, and requiring Barclay Damon to turn over certain documents to the Debtor.

## JURISDICTION

1. This Court has jurisdiction over the bankruptcy case and this Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), and Rule 81.1 of the Local Rules for the United States District Court for the Northern District of New York referring matters arising under Title 11 of the United States Code (the "Bankruptcy Code") to the Bankruptcy Court (Jan. 1, 2024).

2. Venue of this case is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief sought herein is section 542(e) of the Bankruptcy Code and Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")

## CASE BACKGROUND

### A. The Debtor's Bankruptcy Cases and Receivership

4. By December 2023, the Debtor was besieged by litigation largely from borrowers who did not get their loans funded and wanted the return of their Borrower Prepayments. *See, e.g., Tuss Financial LLC v. Prime Capital, et al.*, Index No. 2023/510389 (N.Y.Sup. Ct. Kings Cty.

3

Apr. 5, 2023) (seeking and apparently obtaining the return of $13.4 million); *B&R Acquisition Partners v. Prime Capital* (JAMS Arb., Aug. 2023) (seeking the return of $4 million); *Sturm v. Prime Capital*, Case No. 23-cv-1033 (N.D.N.Y. Aug. 22, 2023) (seeking the return of $2 million); *Camshaft CRE 1, LLC v. Prime Capital*, Case No. 2023-023173 (Fla. Circ. Ct., Miami-Dade Cty., Sept. 15, 2023) (seeking the return of $13.4 million); *The Lion Group DFW, LLC v. Prime Capital*, Case No. 23-DCV-34617 (Tex. Dist. Ct., 146th Dist., Sept. 21, 2023) (demand unknown); *Onward Partners, LLC, v. Prime Capital, et al.*, Case No. 23-cv-833 (D. Utah Nov. 13, 2023) (seeking the return of $20 million).

5.  On December 19, 2023, Compass-Charlotte 1031, LLC, 526 Murfreesboro, LLC, and Newlight Technologies, Inc. (collectively, the "Petitioning Creditors") filed an involuntary petition against the Debtor for relief under chapter 7 of the Bankruptcy Code commencing Case No. 23-11302 ("Case 1"). The Petitioning Creditors commenced Case 1 for the obvious purpose of ensuring that the Debtor's assets and liabilities could be liquidated in a single, public forum, and that no single creditor could win the proverbial "race to the courthouse".

6.  On December 22, 2023, upon order of the Court, the United States Trustee appointed Christian H. Dribusch ("Dribusch") as the interim chapter 7 trustee of the Debtor's estate.

7.  Rather than submit to the orderly winddown or restructuring of the Debtor's business in Case 1, Roglieri pushed the Debtor in an entirely different direction. Roglieri caused the Debtor to retain the venerable international law firm of Hogan Lovells US LLP ("Hogan Lovells") and instructed the Debtor to move for the dismissal of the involuntary petition on the basis that at least two of the Petitioning Creditors' claims were subject to a bona fide dispute because litigation concerning their claims was pending. *See Debtor's Motion for Judgment*

4

*Dismissing the Petition*, Case 1 Dkt. No. 72, p.1 (Jan. 8, 2024).

8. On January 8, 2024, the Petitioning Creditors filed their own motion to dismiss Case 1 [Case 1 Dkt. No. 74], which motion was granted by the Court on January 9, 2024 [Case 1 Dkt. No. 87]. Thereafter, Dribusch was discharged from his duties as chapter 7 trustee.

9. Three (3) days after dismissal of Case 1, on January 12, 2024, Petitioning Creditor Compass-Charlotte 1031, LLC commenced an action in the United States District Court for the Northern District of New York (the "District Court") under Case No. 24-cv-00055 (MAD) (CFH) (N.D.N.Y. Jan. 12, 1014) (the "Receivership Case"), seeking, among other things, the appointment of a federal equity receiver to take possession and control of the Debtor's assets and affairs. That same day, the District Court entered an order appointing Paul Levine as the temporary receiver (the "Receiver"). Receivership Case Dkt. No. 8.

10. Again, Roglieri directed Hogan Lovells to file an emergency motion to, among other things, dismiss the Receivership Case. *Id.* at Dkt. No. 12-14. On January 24, 2024, the District Court entered a memorandum decision and order making the Receiver's appointment permanent and defining his powers with respect to the Debtor and its property and denying the Debtor's motion to dismiss the case. *Id*. at Dkt. No. 56.

11. On February 15, 2024, Roglieri filed a voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code commencing Case No. 24-10157 (REL) (the "Roglieri Case").

12. On May 14, 2024, the Debtor, by and through the Receiver, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court commencing Case No. 24-10531 ("Case 2").

13. On May 15, 2024, the Court entered an order converting Roglieri's case to one

5

under chapter 7 of the Bankruptcy Code. Roglieri Case at Dkt. No. 159. Thereafter, the United States Trustee appointed Dribusch as the interim chapter 7 trustee. *Id.* at Dkt. No. 160. Dribusch has since qualified and is currently serving as permanent trustee, defined above as the "Roglieri Trustee".

14. On June 25, 2024, B and R Acquisitions Partners, LLC and JHM Lending Ventures, LLC filed a motion to dismiss Case 2 on the basis that the Receiver was not authorized to file the petition on behalf of the Debtor because they asserted that he lacked the authority pursuant to the terms of the orders of the District Court. Case 2 at Dkt. No. 57.

15. On July 23, 2024, the Court entered a memorandum decision and order dismissing Case 2 finding essentially that the Receiver did not have the authority to file Case 2 on behalf of the Debtor and that the Roglieri Trustee did not have the ability to waive the defect and ratify the filing *ex post facto*. *Id.* at Dkt. No. 85. The Debtor took an appeal of that decision and order, which appeal is pending before the District Court at Case No. 24-civ-000939.

16. On September 16, 2024, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court commencing this bankruptcy case. In this case, the Debtor is under the control of the Roglieri Trustee as the party in possession and control of all equity interests in the Debtor, who is acting as the manager of the Debtor.

### B. The Debtor's Need to Investigate the Debtor's Financial Affairs and Obtain Documents from Barclay Damon

17. Roglieri is currently incarcerated pending trial and has been combative with the Roglieri Trustee and Debtor from his detention facility. *See, e.g.*, *Roglieri Request for Payment of $100,000 seized by the Roglieri Trustee to Roglieri's criminal counsel*, Roglieri Case Dkt. No. 269 (Oct. 7, 2024); *Roglieri's Objection to Debtor's Proposed Abandonment of Property*, Dkt. No. 39 (Oct. 15, 2024).

6

18. Moreover, in text messages discovered by the Government, Roglieri has admitted to an undisclosed person to committing criminal acts and trying to conceal that fact as follows:

| Date | Time | From | Message |
|---|---|---|---|
| 1/4/2024 | 11:20:42 am | Unknown | Can't you just keep working on those companies?<br><br>I know it might be hard at first, but look what you build this up to beat from nothing |
| 1/4/2024 | 11:20:56 am | Roglieri | Yea I can but not when I'm in f—king prison |
| 1/4/2024 | 11:21:09 am | Unknown | Why do you think that's gonna happen?<br><br>Why can't it just be a bankruptcy? |
| 1/4/2024 | 11:21:47 am | Roglieri | Because I unused others money to fund deals<br><br>I already told you this |
| 1/4/2024 | 11:22:02 am | Unknown | And that's illegal? |
| 1/4/2024 | 11:22:15 am | Roglieri | Yes |
| 1/4/2024 | 11:22:36 am | Unknown | How bad . I mean, what's the worst you do a couple years who cares<br><br>You have your family<br><br>This whole family will support you through this<br><br>It's a civil case it's not a criminal case |
| 1/4/2024 | 11:27:42 am | Roglieri | **It will turn criminal as soon as they get into bank statements** |

Criminal Case, Dkt. No. 6-1 (June 3, 2024) (emphasis added) (typographical and grammatical errors in originals).

19. The facts of this case necessitate an investigation by the Debtor of the Debtor's financial affairs while under Roglieri's stewardship, and further indicate that Roglieri will be unhelpful and unreliable in connection with that investigation. Accordingly, the Debtor must look

7

to third parties, including the Debtor's former legal counsel, for important information in connection with its investigation.

20.     Barclay Damon represented the Debtor for an extensive period of time and, upon information and belief, was actively involved in certain transactions of interest to the Debtor during 2023. Accordingly, the Debtor must obtain and review all the relevant documents, communications, and information regarding the Debtor, its management, and its financial affairs in the custody and control over Barclay Damon.

## RELIEF REQUESTED

21.     Bankruptcy Rule 2004(a) provides that "[o]n the motion of any party in interest, the court may order the examination of any entity." It is well established that the investigation envisioned by this rule is broad-based, relating to any and all matters affecting the administration of the debtor's estate, as well as the conduct, liabilities or property of the debtor.

22.     Discovery under Rule 2004 is broader than that available under the Federal Rules of Civil Procedure. *In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991). "As a general proposition, [Bankruptcy] Rule 2004 examinations are appropriate for revealing the nature and extent of the bankruptcy estate and for 'discovering assets, examining transactions, and determining whether wrongdoing has occurred.'" *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) (citations omitted). As such, courts have acknowledged that "[Bankruptcy] Rule 2004 examinations are broad and unfettered and in the nature of fishing expeditions." *Id. see also*, *In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991); *In re Silverman*, 36 B.R. 254, 258 (Bankr. S.D.N.Y. 1984).

23.     The investigation of the Debtor is precisely what is authorized by Bankruptcy Rule 2004 and the examination of Barclay Damon is required because it has documents and information

related to the Debtor's financial affairs, as well as privileged communications between it and the Debtor that are not available from any other source.

### A. Documents and Information that the Debtor Requires

24. The Debtor requires any documents or information related to the Debtor's governance, management, assets, and financial affairs. Since Barclay Damon is believed to have been retained by the Debtor to perform general legal services, this would conceivably cover all of the documents in Barclay Damon's possession, custody or control that fall under the following categories:

(i) Any retention agreements between Barclay Damon and the Debtor or any of the Debtor's owners, affiliates, principals, or subsidiaries;

(ii) All communications between Barclay Damon and the Debtor;

(iii) All communications between Barclay Damon and Roglieri to the extent there were communications with Roglieri in a capacity other than as principal of the Debtor;

(iv) All internal and external communications related to the Debtor or Roglieri;

(v) All documents that disclose, list or pertain in any way to assets owned by the Debtor or Roglieri, or transferred by the Debtor or Roglieri at any time;

(vi) All attorney work product created in connection with Barclay Damon's representation of the Debtor; and

(vii) All documents and communications created, stored, received, transmitted, or generated in connection with Barclay Damon's representation of the Debtor.

(collectively defined above and more expansively here as the "<u>Debtor Documents</u>").

25. The Debtor does not necessarily anticipate requiring an oral examination of a representative of Barclay Damon, but requests the right to obtain one following a full and unfettered production of documents and a properly constructed privilege log if applicable.

### B. Turnover Pursuant to Section 542(e) of the Bankruptcy Code

26. Section 542(e) of the Bankruptcy Code provides that:

[s]ubject to any applicable privilege, after notice and a hearing, the court may order an attorney, accountant, or other person that holds recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs, to turn over or disclose such recorded information to the trustee.

11 U.S.C. § 542(e).

27. Section 542(e) requires parties like Barclay Damon to review their documents and turn over to the Debtor anything that relates to the Debtor's property or financial affairs. In Barclay Damon's case, this could conceivably encompass everything that it has related to the Debtor.

### C. Preservation of Privilege

28. Barclay Damon was retained by the Debtor and accordingly, there is no disruption to the Debtor's attorney-client privilege with Barclay Damon by Barclay Damon providing documents and privileged communications back to the Debtor, regardless of the fact that the Debtor now has different management. *See CFTC v. Weintraub*, 471 U.S. 343, 358, 105 S.Ct. 1986, 1996, 85 L.Ed.2d 372 (1985). To be clear however, the Debtor is not waiving its attorney client privilege and reserves the right to assert its privilege with respect to Barclay Damon's production of the documents sought by the Debtor to any other party.

29. The Debtor respectfully submits that the proposed examination of Barclay Damon is reasonable, necessary, and authorized by Bankruptcy Rule 2004 in furtherance of its necessary investigation.

30. The Debtor proposes that the production of documents or electronic be made at either (i) the offices of the Debtor's counsel, Klestadt Winters Jureller Southard & Stevens, LLP, 200 West 41st Street, 17th Floor, New York, New York, 10036-7203, or such other location as may be within the 100-mile geographic limitation of Fed. R. Civ. P. 45(c); or (ii) any other location as agreed to by the Debtor and Barclay Damon.

31. The Debtor proposes to serve the subpoena *duces tecum* at least fourteen (14) days prior to the due date for the production or inspection of any documents or electronic files.

## NOTICE

32. Applications for relief under Rule 2004(a) are usually granted *ex-parte*. 9 *Collier on Bankruptcy* ¶ 2004.01[2] (15th ed. 2009), *citing* 1983 Advisory Committee Note to Fed. R. Bankr. P. 2004, *reprinted in* ch. 2004, App. 2004; In re Sutera, 141 B.R. 539, 540 (Bankr. D. Conn. 1992); In re Wilcher, 56 B.R. 428, 434 (Bankr. N.D.Ill. 1985); In re Silverman, 10 C.B.C.2d 1219, 36 B.R. 254 (Bankr. S.D.N.Y. 1984). Some bankruptcy courts even adopt local rules allowing the service of subpoenas under Bankruptcy Rule 2004(a) without having to file any application at all. See e.g., D.N.J. L.B.R. 2004-1(b).

33. Here, out of an abundance of caution, the Debtor has proceeded with the Application by notice and hearing providing Barclay Damon with an opportunity to object prior to consideration by the Court. Further, Barclay Damon will have ample opportunity to seek from this Court protection from any subpoena or information sought by the subpoena issued by the Debtor that Barclay Damon believes it has a basis to challenge.

34. Based upon the foregoing, the Debtor submits that the proposed notice of the Application and hearing thereon is adequate and that no further notice should be required.

## **NO PRIOR RELIEF**

35. Except as specifically stated, no previous application for the relief sought herein has been made to this or any other court.

**WHEREFORE**, the Debtor respectfully requests that the relief requested herein be granted and the Court enter an order, substantially in the form of the Proposed Order annexed hereto as Exhibit A, and grant such other and further relief as is just and proper.

Dated: New York, New York
October 30, 2024

**KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP**

By: */s/ Fred Stevens*
Fred Stevens
Lauren C. Kiss
200 West 41st Street, 17th Floor
New York, New York 10036
Tel: (212) 972-3000
Fax: (212) 972-2245
Email: fstevens@klestadt.com
lkiss@klestadt.com

*Counsel to Debtor Prime Capital Ventures, LLC*