UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>PRIME CAPITAL VENTURES, LLC,<br><br>                      Debtor. | Chapter 7<br><br>Case No. 23-11302 (REL) |
| In re:<br><br>PRIME CAPITAL VENTURES, LLC,<br><br>                      Debtor. | Chapter 11<br><br>Case No. 24-11029 (REL) |

**HOGAN LOVELLS' RESPONSE TO THE OBJECTION OF KRIS ROGLIERI TO DEBTOR'S NOTICE OF ABANDONMENT OF PROPERTY**

Hogan Lovells US LLP ("Hogan Lovells"), as a creditor of the Debtor Prime Capital Ventures, LLC ("Prime Capital"), by and through its undersigned counsel, respectfully submits this response to the objection of Kris Daniel Roglieri ("Roglieri") to Prime Capital's proposed abandonment (the "Proposed Abandonment"), pursuant to 11 U.S.C. § 554(a), of its motion to compel the petitioning creditors in the involuntary proceeding commenced on December 19, 2023 (the "Petitioning Creditors") to post a bond, pursuant to 11 U.S.C. § 303(e), and its interest in any form of relief under 11 U.S.C. § 303(i) ("Section 303(i)").[1]

---

[1] This response also addresses the response filed by Prime Capital's current counsel, who was engaged by Christian Dribusch in his capacity as trustee in Mr. Roglieri's personal bankruptcy (the "Trustee"). (*See* Case 23-11302, Dkt. #173; Case 24-11029, Dkt. #43 (the "Trustee's Response").)

1

For the reasons set forth below, Hogan Lovells respectfully requests that the Court partially deny the Proposed Abandonment, as contrary to the interests of the estate, to the extent that Prime Capital seeks to abandon any application for attorneys' fees and costs.

## **PRELIMINARY STATEMENT**

The Proposed Abandonment seeks not only to abandon the Debtor's claims but also seeks to concomitantly abandon the Debtor's fiduciary obligations to the creditors of this estate and advocate for an unworkable *ad hoc* approach to the application of bedrock principles of sound jurisprudence. The Trustee and Paul Levine, as the receiver in Prime Capital's federal receivership (the "Receiver"), have previously objected to—and sought to withdraw—Prime Capital's motion for a bond and any effort to seek fees and costs for the improperly filed involuntary proceeding. The Petitioning Creditors vigorously supported those objections and attempts to withdraw. In deliberate rejection of these efforts, the Court refused the Trustee's and Receiver's requests and correctly noted that the recovery of fees and costs would benefit the estate and all creditors.

The Court should similarly deny the Proposed Abandonment now. The Debtor's pleading advocates a seeming "no harm, no foul" approach application of law that betrays the basic legal principle that procedure matters and that the deliberate violation of procedure has consequences. In this instance, the petitioning creditors' improper filing caused the necessary expenditure of time and resources by both counsel and the Court, which incurred real expenses and claims against the estate for which the estate should recover its due recompense.

Just as the Court refused to allow the abandonment of the Debtor's claims previously, the Court should again deny the Proposed Abandonment to the extent that Prime Capital seeks to abandon the claim for fees and costs under Section 303(i). As discussed below, there is a presumption in favor of such fees and costs when the court has dismissed an involuntary proceeding. The Trustee's Response disregards the case law of fees and costs. Moreover, the

2

Trustee has not established that the potential fees and costs lack value. On the contrary, an award of fees and costs would bring funds into the estate for the benefit of all creditors. In the absence of the same, the claim of Hogan Lovells would only serve to diminish the estate with no countervailing source from which the Debtor could fund the satisfaction of the claim, thereby diminishing the recovery for all creditors.

## BACKGROUND

### I.    Lack of Proper Basis for Dismissed Involuntary Proceeding

On December 26, 2023, one week after the filing of the petition in the involuntary proceeding (the "Involuntary Petition"), then-counsel for Prime Capital informed the Court and the Petitioning Creditors that "Prime Capital has a strong likelihood of obtaining dismissal of the case because two of the three Petitioning Creditors have claims that are in litigation and therefore subject to *bona fide* dispute." (Case No. 23-11302, Dkt. #16, 1-2.) Counsel identified those two federal lawsuits and noted that they "assert claims well in excess of the return of the plaintiff's ICA deposits and are disputed by Prime Capital." (*Id.*, 2.)

In an obvious (and unsuccessful) effort to cover their tracks and hide the existence of a dispute, two of the Petitioning Creditors—Compass-Charlotte 1031, LLC ("Compass"), 526 Murfreesboro, LLC ("526 Murfreesboro")—dismissed the two federal lawsuits on December 26 and 27, 2023. (*See* Case No. 23-11302, Dkt. #72, 6-7.) Compass and 526 Murfreesboro did so, however, without prejudice to their right to refile those actions. (*See id.*)

After Hogan Lovells took over the representation of Prime Capital, it informed the Court and Petitioning Creditors during the week of January 1, 2024, that Prime Capital intended to move to dismiss the Involuntary Petition as improperly filed. (*See* Case No. 23-11302, Dkt. #38, 1-2.) Prime Capital filed the motion to dismiss the Involuntary Petition at 8:45 am on January 8, 2024.

3

(*See* Case No. 23-11302, Dkt. #72.)  In the motion to dismiss, Prime Capital noted (among other things) that Compass and 526 Murfreesboro were not qualified to file the Involuntary Petition.

The Trustee has conceded that Prime Capital's motion to dismiss was "legitimate" and caused the Petitioning Creditors to move to dismiss the Involuntary Petition at 9:08 am on January 8, 2024 (*i.e.*, less than a half hour after Prime Capital filed the motion to dismiss).  (Trustee's Response, ¶ 33.)  While the Trustee also describes the grounds for dismissal of the Involuntary Petition as a mere "technicality" (*id.*), it is notable that he does <u>not</u> dispute that two of the Petitioning Creditors lacked the qualifications to file the Involuntary Petition.

## II.     Prime Capital's Motion for a Bond Under Section 303(e)

On the same morning that Prime Capital moved to dismiss the Involuntary Petition and before the Petitioning Creditors waved the white flag by moving to dismiss their own proceeding, Prime Capital asked the Court to order the Petitioning Creditors to post a bond, pursuant to 11 U.S.C. § 303(e), on the grounds that Prime Capital intended to seek damages, attorneys' fees and costs under Section 303(i).  (*See* Case No. 23-11302, Dkt. #69.)  In that motion (the "<u>Bond Application</u>"), Prime Capital provided substantial evidence—including damning admissions by 526 Murfreesboro and Compass—that the filing of the Involuntary Petition had all the indicia of bad faith and was filed to embarrass, harass and intimidate Prime Capital (all in an effort to reach a settlement that favored the Petitioning Creditors).  (*See id.*, p.18.)  The Trustee has asserted, without any basis, that the Petitioning Creditors filed the Involuntary Petition "for the obvious and noble purpose of ensuring that the Debtor's assets and liabilities could be liquidated in a single, public forum and that no single creditor could win the proverbial 'race to the courthouse.'" (Trustee's Response, ¶ 10.)  That is clearly not the case, based on the unrebutted evidence that

4

Prime Capital provided to the Court in early January 2024, which immediately caused the Petitioning Creditors to drop the involuntary proceeding.[2]

### III.  Subsequent Proceedings Relating to the Bond Application

The briefing by Prime Capital and the Petitioning Creditors on the Bond Application was completed in early March 2024.

By letter dated March 21, 2024 (the "March 21 Letter"), the Receiver claimed that he had the power over the Bond Application, and he purported to withdraw it as not in the "best interests" of Prime Capital.  (*See* Case No. 23-11302, Dkt. #153.)  On behalf of Prime Capital and at the direction of Mr. Roglieri, Hogan Lovells filed an opposition to the March 21 letter on March 26, 2024 (the "March 26 Letter").  (*See* Case No. 23-11302, Dkt. #154.)  In the March 26 Letter, Prime Capital argued that the Receiver lacked the power to direct Prime Capital's legal claims, a position that the Court later endorsed.  Following hearings on March 27, 2024, and June 12, 2024, regarding the Bond Application, the Court refused to grant the relief requested in the March 21 Letter.

By letter dated July 9, 2024, the Trustee joined in the Receiver's request in the March 21 Letter to withdraw the Bond Application.  (*See* Case No. 23-11302, Dkt. #162.)  Following a hearing on July 10, 2024 (the "July 10 Hearing"), the Court again refused to grant the relief requested in the March 21 Letter.  At the July 10 Hearing, the Court also noted that the granting of attorneys' fees and costs would result in a benefit to the estate.

---

[2] It is patent a conflict of interest and breach of his fiduciary duty for the Trustee to "carry the water" for the Petitioning Creditors by seeking to justify the improperly filed Involuntary Petition.  Indeed, the Court has admonished the Trustee and the Receiver on several occasions that they should not be advocating the position of the Petitioning Creditors to the detriment of other creditors.

5

**ARGUMENT**

**I.      This Case Satisfies the Standard for an Award of Fees and Costs**

"There is a presumption that costs and attorneys' fees will be awarded to a putative debtor where an involuntary petition is dismissed. The petitioner bears the burden of proof on justifying a denial of costs and fees." *In re TPG Troy, LLC*, 492 B.R. 150, 162 (Bankr. S.D.N.Y. 2013) (citing *In re Mountain Dairies*, 372 B.R. 623, 637 (Bankr. S.D.N.Y. 2007)); *see also In re Skyworks Ventures, Inc.*, 431 B.R. 573, 576 (Bankr. D.N.J. 2010) (awarding attorneys' fees and costs is the "majority rule"); *In re Silverman*, 230 B.R. 46, 50 (Bankr. D.N.J. 1998) (fees and costs are "typically ... awarded upon dismissal" of an involuntary petition); *In re Landmark Distrib., Inc.*, 189 B.R. 290, 307 (Bankr. D.N.J. 1995) ("petitioners should generally anticipate that an award of costs and fees will be granted upon the dismissal of an involuntary petition"); *In re K.P. Enter.*, 135 B.R. 174, 177 (Bankr. D. Me.1992) (fairness dictates that attorney's fees and costs generally should be awarded upon an involuntary case's dismissal).

The majority rule in favor of an award of fees and costs is based on the policy concern of discouraging unsupported petitions. "Involuntary bankruptcy is an extreme remedy with dire consequences upon [an alleged debtor]." *In re Brooklyn Res. Recovery, Inc.*, 216 B.R. 470, 486 (Bankr. E.D.N.Y. 1997). As a result, "courts expect petitioning creditors to 'carefully examine the risks undertaken in the filing of an involuntary petition.'" *In re Express Car & Truck Rental, Inc.*, 440 B.R. 422, 432-33 (Bankr. E.D. Pa. 2010) (citation omitted).

Thus, it is likely that the Court will award Prime Capital its costs and reasonable attorneys' fees. *See, e.g.*, *In re TPG Troy, LLC*, 2013 WL 3789344, at *4 (Bankr. S.D.N.Y. July 18, 2013) (awarding costs and fees and noting that "[a]ll parties to the involuntary petitions have been embroiled in countless lawsuits over the same claims in forums spanning from New York to Luxembourg"); *Landmark*, 189 B.R. at 308 (awarding costs and fees and stating that "the actions

of the petitioning creditors in filing the petition were unreasonable and manifested a callous disregard of the adverse impact of the filing on Landmark"); *see also Anmuth*, 600 B.R. at 188-89 (awarding costs and attorneys' fees where the petition had no merit).

**II.    The Trustee Has Not Shown That the Potential Award of Fees and Costs Lacks Value**

The Trustee has failed to carry his burden of showing that the potential fees and costs under Section 303(i) will not bring any value to the estate, especially in light in the majority rule in favor of such fees and costs. Indeed, the Trustee ignores the above case law and merely states, without any evidence, that the claims for fees and costs "are of little value." (Trustee's Response, ¶ 35.) Instead, the Trustee refers to the possible recovery of such fees and costs from the recipients, which is a different issue altogether (and has not been sought). Moreover, to the extent that the Trustee is referring to fees and costs paid to Hogan Lovells, his assertion cannot be squared with his admission that Prime Capital's motion to dismiss was legitimate and caused the dismissal of the improperly commenced involuntary proceeding.

**III.    Hogan Lovells Has Standing to Object to the Proposed Abandonment**

Hogan Lovells has filed a proof of claim for the fees owed to it by Prime Capital (claim no. 7). As a result, Hogan Lovells is a creditor and has standing under 11 U.S.C. § 1109(b). In addition, the Court previously allowed Hogan Lovells to be heard on issues relating to the Bond Application even after it was discharged as counsel for Prime Capital.

## CONCLUSION

For the foregoing reasons, Hogan Lovells requests that the Court deny the Proposed Abandonment to the extent that Prime Capital seeks to abandon the recovery of attorneys' fees and costs under Section 303(i).

Dated: November 6, 2024 	Respectfully submitted,

*/s/ Douglas T. Tabachnik*

Douglas T. Tabachnik, Esq. (admitted in this district)
Law Offices of Douglas T. Tabachnik, P.C.
63 West Main St., Suite C
Freehold, N.J. 07728
(732) 780-2760
dtabachnik@dttlaw.com

*Attorneys for Hogan Lovells*