UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>KRIS DANIEL ROGLIERI,<br><br>Debtor. | Case No. 24-10157-REL<br>Chapter 7 |
| In re:<br><br>PRIME CAPITAL VENTURES, LLC,<br><br>Debtor. | Case No. 24-11029-REL<br>Chapter 11 |

**JOINT MOTION OF PRIME CAPITAL VENTURES, LLC AND CHRISTIAN H. DRIBUSCH, AS CHAPTER 7 TRUSTEE FOR THE ESTATE OF KRIS DANIEL ROGLIERI, FOR AN ORDER PURSUANT TO FED. R. BANKR. P. 9019 APPROVING A CERTAIN STIPULATION OF SETTLEMENT BETWEEN THE DEBTORS' ESTATES AND THE UNITED STATES OF AMERICA REGARDING THE GOVERNMENT'S CIVIL FORFEITURE CLAIMS**

**TO THE HONORABLE ROBERT E. LITTLEFIELD, JR.,
UNITED STATES BANKRUPTCY JUDGE:**

Prime Capital Ventures, LLC ("Prime") and Christian H. Dribusch, in his capacity as chapter 7 trustee (the "Roglieri Trustee," and together with Prime, the "Movants") of the bankruptcy estate of Kris Daniel Roglieri ("Roglieri," and together with Prime, the "Debtors"), by and through their respective counsel, Klestadt Winters Jureller Southard & Stevens, LLP and The Dribusch Law Firm, hereby submit this motion (the "Motion") seeking the entry of an order, pursuant to Fed. R. Bankr. P. 9019, approving a certain stipulation between the Movants and the United States of America (the "Government," and together with the Movants, the "Parties"), resolving the Government's civil forfeiture claims and providing for the Debtors' estates' receipt of certain seized property, a copy of which is annexed hereto as Exhibit A (the "Stipulation"). In support of the Motion, the Movants represent as follows:

**PRELIMINARY STATEMENT**

Prime was created by Roglieri in December 2021 as "a fund specifically designed to provide capital for large development, commercial development and commercial real estate transactions from $50 million to more than $1 billion."[1] Prime advertised that it would offer non-recourse lines of credit with rates at 4 to 6% with interest-only payments but would require borrowers to provide 20% cash upfront based on the total project cost (the "Borrower Prepayments"). The Borrower Prepayments would be held by Prime "'as prepaid interest throughout the term of the loan.'"[2] Prime obtained millions of dollars in Borrower Prepayments from multiple companies throughout the country which in most cases, upon information and belief, were used by Prime and Roglieri before the loans were closed and funded.[3]

On May 28, 2024, a criminal complaint was filed by the Government against Roglieri commencing Case No. 24-cr-00392 (MAD) (N.D.N.Y.) (the "Criminal Case"), wherein Roglieri is charged with five counts of wire fraud in violation of 18 U.S.C. § 1343, and for forfeiture of assets pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).[4] In the Criminal Case, the Government alleges, among other things, that Roglieri and others used Prime to operate a fraud and money laundering scheme.[5] Roglieri was arrested on May 31, 2024[6] and has been incarcerated since his arrest.[7]

In connection with the Criminal Case, the Government seized vehicles, watches, cash, and other assets from Roglieri and has asserted that such assets are the *res* of Roglieri's criminal

---

[1] *See Petitioning Creditors' Motion for a Trustee*, Case No. 23-11302, Dkt. No. 4, ¶¶22-23 (Dec. 19, 2023) (quoting May 2, 2022 marketing in DealMaker Magazine).
[2] *Id.*, ¶26.
[3] *Id.*, ¶37.
[4] Criminal Case, Dkt. No. 1 and Indictment at Dkt. No. 35 (Sept. 19, 2024).
[5] Criminal Case, Dkt. No. 1, ¶4.
[6] *Id.* at Dkt. No. 12.
[7] *Id.* at Dkt. No. 32 (Aug. 5, 2024).

activity and subject to forfeiture. In addition, on November 5, 2024, the Government commenced another action naming several items of personal property and asserting that such property is also subject to civil forfeiture. *See* Case No. 24-cv-1345 (MAD/DJS) (N.D.N.Y.) (the "<u>Civil Forfeiture Case</u>").

After significant discussions between the Parties, the Parties have resolved and settled the Government's civil forfeiture claims (together with the criminal forfeiture claims, the "<u>Forfeiture Claims</u>"). Pursuant to the Stipulation, the Government will turn over four (4) vehicles to Prime for Prime to liquidate and distribute the proceeds to the estates and creditors and victims of Roglieri's alleged criminal conduct, and the Movants waive any right to contest the Government's Forfeiture Claims in the Civil Forfeiture Case.

For all the reasons set forth below, the Movants respectfully submit that the settlement embodied in the Stipulation is in the best interests of both Debtors' estates and respectfully request that it be approved by the Court by "So Ordering" the Stipulation.

## **JURISDICTION**

1.  This Court has jurisdiction over the bankruptcy cases and this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), and Rule 81.1 of the Local Rules for the United States District Court for the Northern District of New York referring matters arising under Title 11 of the United States Code (the "<u>Bankruptcy Code</u>") to the Bankruptcy Court (Jan. 1, 2024).

2.  Venue of these cases is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.  The statutory predicate for the relief sought herein is Fed. R. Bankr. P. 9019.

3

## CASE BACKGROUND

### A. *Prime's Bankruptcy Cases and Receivership*

4. By December 2023, Prime was besieged by litigation largely from borrowers who did not get their loans funded and wanted the return of their Borrower Prepayments. *See, e.g., Tuss Financial LLC v. Prime Capital, et al.*, Index No. 2023/510389 (N.Y.Sup. Ct. Kings Cty. Apr. 5, 2023) (seeking and apparently obtaining the return of $13.4 million); *B&R Acquisition Partners v. Prime Capital* (JAMS Arb., Aug. 2023) (seeking the return of $4 million); *Sturm v. Prime Capital*, Case No. 23-cv-1033 (N.D.N.Y. Aug. 22, 2023) (seeking the return of $2 million); *Camshaft CRE 1, LLC v. Prime Capital*, Case No. 2023-023173 (Fla. Circ. Ct., Miami-Dade Cty., Sept. 15, 2023) (seeking the return of $13.4 million); *The Lion Group DFW, LLC v. Prime Capital*, Case No. 23-DCV-34617 (Tex. Dist. Ct., 146th Dist., Sept. 21, 2023) (demand unknown); *Onward Partners, LLC, v. Prime Capital, et al.*, Case No. 23-cv-833 (D. Utah Nov. 13, 2023) (seeking the return of $20 million).

5. On December 19, 2023, Compass-Charlotte 1031, LLC, 526 Murfreesboro, LLC, and Newlight Technologies, Inc. (collectively, the "Petitioning Creditors") filed an involuntary petition against Prime for relief under chapter 7 of the Bankruptcy Code commencing Case No. 23-11302 ("Case 1"). The Petitioning Creditors commenced Case 1 for the obvious purpose of ensuring that Prime's assets and liabilities could be liquidated in a single, public forum, and that no single creditor could win the proverbial "race to the courthouse".

6. On December 22, 2023, upon order of the Court, the United States Trustee appointed Christian H. Dribusch ("Dribusch") as the interim chapter 7 trustee of Prime's estate.

7. On January 8, 2024, the Petitioning Creditors filed a motion to dismiss Case 1 [Case 1 Dkt. No. 74], which motion was granted by the Court on January 9, 2024 [Case 1 Dkt. No. 87].

4

Thereafter, Dribusch was discharged from his duties as chapter 7 trustee.

8. Three (3) days after dismissal of Case 1, on January 12, 2024, Petitioning Creditor Compass-Charlotte 1031, LLC commenced an action in the United States District Court for the Northern District of New York (the "District Court") under Case No. 24-cv-00055 (MAD) (CFH) (N.D.N.Y. Jan. 12, 1014) (the "Receivership Case"), seeking, among other things, the appointment of a federal equity receiver to take possession and control of Prime's assets and affairs. That same day, the District Court entered an order appointing Paul Levine as the temporary receiver (the "Receiver"). Receivership Case Dkt. No. 8.

9. On January 24, 2024, the District Court entered a memorandum decision and order making the Receiver's appointment permanent and defining his powers with respect to Prime and its property and denying Prime's motion to dismiss the case. *Id*. at Dkt. No. 56.

10. On February 15, 2024, Roglieri filed a voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code commencing Case No. 24-10157 (REL) (the "Roglieri Case").

11. On May 14, 2024, Prime, by and through the Receiver, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court commencing Case No. 24-10531 ("Case 2").

12. On May 15, 2024, the Court entered an order converting Roglieri's case to one under chapter 7 of the Bankruptcy Code. Roglieri Case at Dkt. No. 159. Thereafter, the United States Trustee appointed Dribusch as the interim chapter 7 trustee. *Id.* at Dkt. No. 160. Dribusch has since qualified and is currently serving as permanent trustee, defined above as the "Roglieri Trustee".

13. On June 25, 2024, B and R Acquisition Partners, LLC ("B&R") and JHM Lending

5

Ventures, LLC ("JHM" and together with B&R, the "B&R Parties") filed a motion to dismiss Case 2 on the basis that the Receiver was not authorized to file the petition on behalf of Prime because they asserted that he lacked the authority pursuant to the terms of the orders of the District Court. Case 2 at Dkt. No. 57.

14.    On July 23, 2024, the Bankruptcy Court entered a memorandum decision and order dismissing Case 2 finding essentially that the Receiver did not have the authority to file Case 2 on behalf of Prime and that the Roglieri Trustee did not have the ability to waive the defect and ratify the filing *ex post facto* (the "Dismissal Order"). *Id.* at Dkt. No. 85. Prime took an appeal of the Dismissal Order, which appeal is pending before the District Court at Case No. 24-cv-000939.

15.    On September 16, 2024, Prime filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court commencing this bankruptcy case. In this case, Prime is under the control of the Roglieri Trustee as the party in possession and control of all equity interests in Prime, who is acting as the manager of Prime.

### B. The Forfeiture Claims

16.    In connection with the Criminal Case, the Government seized several assets titled in Roglieri's or Prime's name, or otherwise sourced to Roglieri's alleged criminal conduct, and is seeking a forfeiture of such property pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) [Criminal Case, Docket Nos. 1 and 35].

17.    Among other property, the Government seized the following vehicles titled in Roglieri's name:

| Car No. | Year | Make | Model | VIN |
|---|---|---|---|---|
| Car 1 | 2020 | Lamborghini | Aventador | VIN #: ZHWUM6ZD9LLA09436 |
| Car 2 | 2009 | Mercedes Benz | SL65 | VIN #: WDBSK79F79F158279 |
| Car 3 | 2014 | Mercedes Benz | SLS | VIN #: WDDRJ7HA7EA010865 |

6

| Car No. | Year | Make | Model | VIN |
|---|---|---|---|---|
| Car 4 | 2015 | Ferrari | 458 | VIN #: ZFF75VFA3F0209725 |

(collectively, the "Subject Vehicles").

18. On November 5, 2024, the Government commenced the Civil Forfeiture Case for forfeiture *in rem* against certain identified property (the "Forfeiture Property")[8] pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (C), and 984(a)(1)(A), as the proceeds of offenses in violation of 18 U.S.C. §§ 1343 and 1349, and as property involved in offenses in violation of 18 U.S.C. §§ 1956 and 1957.

19. The Parties have discussed at length the strength of the Government's Forfeiture Claims, the claims to such property by the respective Debtors' estates, and the mutual desire for the majority of the proceeds of the seized property to go to the Debtors' creditors who were victims of Roglieri's alleged criminal conduct. Following significant good faith discussions, the Parties reached the agreement set forth in the Stipulation.

## THE STIPULATION

20. The salient terms of the Stipulation are as follows[9]:

- Bankruptcy Court Approval Required. The Stipulation is subject in all respects to the

---

[8] The Forfeiture Property named in the Civil Forfeiture Case includes: (i) one 2003 Ferrari Enzo AB Version E (VIN #ZFFCZ56B000132659); (ii) one 2014 Ferrari LaFerrari (VIN #ZFF76ZHB000203166); (iii) one 2022 Mercedes Benz (VIN #W1NYC8AJXNX445045; (iv) one 1982 Mercedes Benz 500SL (VIN #WDB10704612001675); (v) one 1989 Mercedez Benz 560 SEL (VIN #WDB1260391A497466; (vi) one 2007 Mercedes Benz SLR McLaren (VIN #WDDAJ76F27M001391); (vii) one 1987 Mercedes Benz 560 (VIN #WDB1260451A315331); (viii) one 2004 Porsche Carrera (VIN #WP0ZZZ98Z4L000069); (ix) one 2022 Ferrari 812 Competizione (VIN #ZFF03TLA5N0277054); (x) one 2020 Mercedes Benz GT63C4S (VIN #WDD7X8KB3LA012445); (xi) one 2006 Maserati MC 12 Corse (VIN #ZAMDF44B000029626); (xii) one 2023 Mercedes Benz (VIN #W1K6X7KB5PA204980); (xiii) one Ferrari Engine Table; (xiv) $223,365 seized from a Thread Bank account (**7554) held in the name of ABBJ, LLC; (xv) $467,810 seized from a Thread Bank account (**1832) held in the name of Capital Investments US, LLC; (xvi) refund in the amount of $72,825.83 seized from Ai Design; (xvii) one Richard Mille RM011 watch (#2722); (xvii) one Richard Mille RM 65-01 watch; (xviii) one Rolex watch (#Y74R6549); (xix) one Rolex watch (#7P65S042); (xx) one Rolex watch (#0WU66577); (xxi) one Rolex watch (#65R11547); and (xxii) one Rolex watch (#8S927086).

[9] The following is a summary of the terms of the Stipulation and is included as a matter of convenience. However, parties should not rely exclusively on the summary and are encouraged to review the terms of the Stipulation in their entirety.

approval of the Bankruptcy Court evidenced by the entry of this Stipulation "So Ordered" by the Bankruptcy Court in each of Roglieri's and Prime's bankruptcy cases (an "Approval Order"). The Roglieri Trustee and Prime will seek the entry of the Approval Order in each of their respective cases by filing a joint motion in each case within ten (10) business days of all Parties executing this Stipulation.

- Turnover and Disposition of the Subject Vehicles. Following entry of the Approval Order, the Government shall turn over the Subject Vehicles to Prime which shall be deemed property of Prime's bankruptcy estate, subject to the terms of the Stipulation. Upon turnover of the Subject Vehicles to Prime, the Government shall be deemed to have waived, released, and forfeited any right or claim to the Subject Vehicles. The Government's turnover of the Subject Vehicles shall occur within sixty (60) days of entry of the Approval Order unless otherwise agreed to by Prime and the Roglieri Trustee, or as may be directed by the Bankruptcy Court. Upon entry of the Approval Order, Prime and the Roglieri Trustee agree to promptly coordinate with the United States Marshals Service ("USMS") for the retrieval of the Subject Vehicles, and to assume any and all costs involved in the transfer of the Subject Vehicles to the bankruptcy estate.

- Payment to the USMS. Prior to obtaining the Subject Vehicles, Prime shall pay the USMS as directed for all the actual expenses associated with obtaining, maintaining, and storing the Subject Vehicles in an amount not greater than $25,000.00, unless otherwise permitted by separate Order of this Court.

- Distribution of Proceeds of the Subject Vehicles. From the net proceeds of the Subject Vehicles after payment of all sales agent commissions, reimbursement of all actual out of pocket expenses associated with Prime's obtaining, storing, and maintaining the Subject Vehicles, and payment and satisfaction of any valid and lawful liens against the Subject Vehicles including mechanics' liens, Prime shall: (i) pay $25,000 to the Roglieri Trustee to be retained as property of the Roglieri bankruptcy estate to be distributed to creditors in the order of priorities set forth in the Bankruptcy Code as authorized by the Bankruptcy Court; (ii) retain $25,000 to be property of Prime's bankruptcy estate to be distributed in the order of priorities set forth in the Bankruptcy Code in accordance with its Chapter 11 plan of liquidation (the "Plan"), or as otherwise authorized by the Bankruptcy Court; and (iii) deposit the remainder into a segregated account to be preserved for the benefit of victims of the Debtor's alleged fraud (the "Victim Fund").

- Distribution of the Victim Fund. It is acknowledged that the Government's willingness to turnover the Subject Vehicles to Prime is conditioned upon reasonable assurances that the Victim Fund will only be distributed to those parties who the Government asserts are victims of the Debtors' alleged fraudulent conduct underlying the criminal and civil forfeiture proceedings. Without such assurance, the Government will retain the Subject Vehicles for civil or criminal forfeiture proceedings. Upon liquidation of all general, unsecured claims against Prime's bankruptcy estate, Prime's representative as may be designated by the Plan or otherwise appointed by the Court (the "Prime

8

Administrator") shall submit the list of creditors and claim amounts to the US Attorney for review (each a "Prime GUC," collectively, the "Prime GUCs"). The US Attorney shall have thirty (30) days to review the list of Prime GUCs and to inform the Prime Administrator whether it has any objection to any Prime GUC receiving a *pro rata* share of the Victim Fund. If the US Attorney raises a timely objection to any Prime GUC participating in the Victim Fund, Prime's representative shall distribute the Victim Fund to those Prime GUCs that the US Attorney had no objection to. Prime shall incorporate the proposal of the establishment of the Victim Fund and this treatment into any Plan proposed.

- Waiver of Defenses in Forfeiture Case. The Roglieri Trustee on behalf of Roglieri's bankruptcy estate, and Prime on behalf of itself and its bankruptcy estate, hereby waive any right, title, or interest in or to the Forfeiture Property, and any right to file an answer or assert defenses to the Government's claims in the Forfeiture Case, except to the extent that the Government, either voluntarily or involuntarily, withdraws, is unsuccessful in prosecuting, or fails to obtain a judgment in its favor, with respect to any of the named Forfeiture Property rendering such property excluded from forfeiture ("Excluded Forfeiture Property"), in which case the Roglieri Trustee and Prime shall retain any and all rights with respect to such Excluded Forfeiture Property.

## RELIEF REQUESTED

21.    The Movants respectfully request that the Court enter an Approval Order by "So Ordering" and entering the Stipulation pursuant to Fed. R. Civ. P. 9019.

## BASIS FOR RELIEF REQUESTED

22.    By this Motion, the Movants seek this Court's approval of the Stipulation, and assert that the terms, conditions, and compromises contained therein are fair and reasonable under the circumstances, and that approval of the Stipulation is in the best interest of the estates and their creditors.

23.    Bankruptcy Rule 9019 provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." FED. R. BANKR. P. 9019(a). In ruling on a motion pursuant to Bankruptcy Rule 9019(a), the court must find that the proposed settlement is fair and equitable and is in the best interests of the estate. Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414 (1968); Fischer

9

v. Pereira (In re 47-49 Charles Street, Inc.), 209 B.R. 618, 620 (S.D.N.Y. 1997); In re Ionosphere Clubs, Inc., 156 B.R. 414, 426 (S.D.N.Y. 1993), aff'd 17 F.3d 600 (2d Cir. 1994); In re Fugazy, 150 B.R. 103 (Bankr. S.D.N.Y. 1993).

24.     In order to reach such a decision, the Court must be apprised "of all facts necessary for an intelligent and objective opinion" of whether the claim will be successful, the likely expense, length and the degree of complexity of the litigation, the potential difficulties of collecting on a judgment "and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." TMT Trailer Ferry, 390 U.S. at 424.

25.     To constitute a fair and equitable compromise or settlement, the Court must find that the settlement does not "fall below the lowest point in the range of reasonableness." Cosoff v. Rodman (In re W.T. Grant Co)., 699 F.2d 599, 608 (2d Cir. 1983); In re Drexel Burnham Lambert Group, Inc., 138 B.R. 723, 758-59 (Bankr. S.D.N.Y. 1992); In re Int'l Distribution Centers, Inc., 103 B.R. 420, 423 (Bankr. S.D.N.Y. 1989).

26.     The Court should also consider the fair and reasonable course of action for the debtor's estate, with the limited available assets, giving consideration to the interests of creditors and the avoidance of burdening the estate with undue waste or needless or fruitless litigation. In re Del Grosso, 106 B.R. 165, 167-168 (Bankr. N.D. Ill. 1989); see also In re Culmtech, Ltd., 118 B.R. 237, 238 (Bankr. M.D. Pa. 1990); In re Lawrence & Erausguin, Inc., 124 B.R. 37, 38 (Bankr. N.D. Ohio 1990); In re Bell & Beckwith, 93 B.R. 569, 574-75 (Bankr. N.D. Ohio 1988).

27.     The Court is not required conclusively to determine the merits of a claim subject to compromise or to find that a proposed settlement constitutes the best results obtainable to ensure that the settlement reaches the threshold of reasonableness. Instead, the Court should "canvass the issues" to determine whether the proposed settlement is fair and equitable, is in the best interests

10

of the estate and otherwise does not fall outside the range of reasonableness. In re Apex Oil Co., 92 B.R. 847, 867 (Bankr. E.D. Mo. 1988).

28. In concluding that the settlement embodied in the Stipulation is in the best interests of both Debtors' estates, the Movants considered the following important factors: (i) the significant challenges in contesting the Government's Forfeiture Claims; (ii) the ability to secure the value of the Subject Vehicles for the benefit of the Debtors' estates and victims, which represent the majority of the creditors against both estates; and (iii) the costs associated with any litigation of the Forfeiture Claims. Upon consideration of these issues and as discussed below, the Movants concluded that entry into the Stipulation is in the best interests of both Debtors' estates.

### A. The Forfeiture Claims

29. First, the settlement embodied in the Stipulation requires an understanding of the Government's Forfeiture Claims and how they work.

30. The Government has asserted claims for both criminal forfeiture in the Criminal Case and civil forfeiture in the Civil Forfeiture Case. It is commonplace for the Government to pursue claims for criminal and civil forfeiture of assets in tandem. Criminal Forfeiture Claims are *in personam*, or against the person, and require the Government to obtain a criminal conviction against Roglieri in order to be successful. The burden of proof for the criminal conviction of Roglieri is beyond a reasonable doubt. Criminal forfeiture is limited to the property interests of Roglieri, including any proceeds earned by Roglieri's alleged illegal activity. Criminal forfeiture is generally limited to the property involved in the particular counts on which the defendant is convicted. If Roglieri is convicted, as part of sentencing, the District Court may order the forfeiture of specific property listed in the indictment, a sum of money as a money judgment, or other property as substitute property. The Government must establish by a preponderance of the

11

evidence the requisite connection between the crime of conviction and the asset. After a preliminary order of forfeiture is entered, a separate, ancillary proceeding begins to determine any third-party ownership interests in the property the government seeks to forfeit. The District Court then will enter a final order of forfeiture.

31. On the other hand, civil Forfeiture Claims are *in rem*, or against the named property that was derived from or used to commit an offense, rather than against a person who committed an offense. Unlike criminal Forfeiture Claims, there is no criminal conviction of Roglieri required, although the Government is still required to prove in court by a preponderance of evidence that the property was linked to criminal activity (as opposed to the heightened beyond a reasonable doubt standard in the Criminal Case to be successful in the criminal Forfeiture Claims). The Civil Forfeiture Case allows the District Court to gather anyone with an interest in the property in the same case and resolve all the issues with the property at one time. In the Civil Forfeiture Case, the Government is the plaintiff, the named property is considered the defendants, and any person who claims an interest in the property is a claimant (here, the Forfeiture Property). Civil forfeiture allows the Government to file cases against property that would not be reachable through criminal Forfeiture Claims, such as property of fugitives, terrorists, and other criminals located outside the United States.

32. If the Government is successful with respect to any of its Forfeiture Claims, the subject property will be deemed property of the Government and all third-party rights, including those of Prime, Roglieri, or their respective bankruptcy estates, will be fully and finally extinguished (such property defined herein as "<u>Forfeited Property</u>"). While the Government may

use the proceeds of Forfeited Property for a wide variety of purposes[10], returning forfeited funds to victims has been a key part of the Department of Justice's Asset Forfeiture Program. In connection with that, the Government employees are required to "make their best efforts to see that crime victims are notified of, and accorded, the rights described in" the Crime Victims' Rights Act,[11] which includes the "right to full and timely restitution as provided in law."[12] This process is handled by Money Laundering and Asset Recovery Section of the U.S. Department of Justice ("MLARS").

33. A person eligible for remission of Forfeited Property from MLARS may be an individual, partnership, corporation, joint business enterprise, estate, or other legal entity capable of owning property (an "Alleged Victim," and once entitlement is proven or accepted, a "Victim"). Any Alleged Victim cannot (i) have knowingly contributed to or benefited from the underlying criminal offense, (ii) have been compensated or have recourse to other reasonably available assets or compensation, or (iii) seek recovery for torts that are associated with the offense but are not the bases for forfeiture.[13] A Victim can only recover the amount of their eligible pecuniary loss which is limited to the fair market value of the property as of the date of the occurrence of the loss.[14] Thus, a Victim generally cannot recover interest on their loss or additional forms of damages and

---

[10] For example, the Government has used the proceeds of forfeited property to finance an array of services and equipment, including: (i) a drug and alcohol treatment facility; (ii) transportation to drug treatment services; (iii) Naloxone rescue kits for opioid overdose victims; (iv) a job skills program; (v) a youth program aimed at drug and crime prevention; (vi) afterschool programming; (vii) bomb-sniffing canines; (viii) 911 call center equipment; (ix) care for abused and rescued animals seized for forfeiture; (x) gun buy-back programs; (xi) personal protective equipment for first responders; (xii) community and crime-fighting organizations (xiii) community gardens and public service projects; (xiv) upgraded technology and devices for local police departments; (xv) forensic training programs for law enforcement; (xvi) housing initiative funding; (xvii) garbage and pesticide removal from public lands. https://www.fbi.gov/investigate/white-collar-crime/asset-forfeiture (last visited Dec. 17, 2024).
[11] 18 U.S.C. § 3771(c)(1).
[12] Dep't of Justice, Office for Victims of Crimes, Attorney General Guidelines for Victim and Witness Assistance Art. V.H. (2011 ed., rev. May 2012) (citing 18 U.S.C. §3771(a)(6)).
[13] 28 C.F.R. § 9.8(b), (c).
[14] 28 C.F.R. § 9.8(c).

13

remedies that may otherwise be available to them in a civil suit against the perpetrator.[15]  A successful petition by an Alleged Victim requires documentary evidence of the pecuniary loss.

34.     To seek remission, an Alleged Victim must complete a petition for remission and submit it to the U.S. Attorney.[16]  The U.S. Attorney and/or MLARS are responsible for adjudicating the petitions of Alleged Victims.  If a petition is denied, an Alleged Victim may request reconsideration from MLARS or, if applicable, the U.S. Attorney, within 10 days of receipt of the denial notification, in which case the reconsideration request will be heard by a different official in the agency, but in each case the agency is the arbiter of who qualifies as a Victim and the amount of the Victim's pecuniary loss.[17]  Funds are generally distributed to the Victims on a pro rata basis in accordance with the amount of loss suffered by each Victim.[18]  The agency however has discretion to give priority to particular victims in appropriate circumstances.

35.     The Movants have the ability under certain circumstances to challenge the Government's Forfeiture Claims.  Assuming that the Government is otherwise successful in its criminal Forfeiture Claims (*i.e.*, Roglieri is convicted or admits to the alleged crimes) and a final forfeiture order is entered by the District Court, parties could challenge the Government's claim to forfeited property by commencement of an ancillary proceeding pursuant to 21 U.S.C. § 853(n)(2).  To be successful in such a proceeding, the third party would have to show that it has a superior right, title, or interest to Roglieri to the property, or that it is a bona fide purchaser of the property for value.  In the Civil Forfeiture Case, Prime and the Roglieri Trustee would have to file a claim with respect to specific Forfeiture Property wherein they would have to demonstrate either

---

[15] *See* 28 C.F.R. § 938(b)(1), (c).
[16] MLARS' public website provides provides a sample petition and instructions for completing and filing the petition on line.  *See Petitions*, FORFEITURE.GOV, https://www.forfeiture.gov/FilingPetition.htm (last visited December 17, 2024).
[17] 28 C.F.R. § 9.4(k).
[18] 28 C.F.R. § 9.8(f).

that Roglieri did not commit the alleged criminal acts, and/or that the Forfeiture Property is not sufficiently linked to the alleged criminal acts to be subject to civil forfeiture.

36. The Movants have assessed the Forfeiture Claims and have determined that they will each have substantial difficulty contesting them for several reasons. First and foremost, Roglieri appears to be guilty of the crimes alleged in the Criminal Case, and thus, the Movants believe that the Government has a high likelihood of success in the Criminal Case and on the criminal Forfeiture Claims.[19] Finally, in the Civil Forfeiture Case, the Government clearly and methodically laid out the link of the criminal conduct to each parcel of Forfeiture Property. Both Prime and the Roglieri Trustee have essentially adopted the Government's positions in the Criminal Case and the Civil Forfeiture Case because they are supported by significant evidence and appear to be entirely correct to any impartial observer like the Movants. Accordingly, the Movants have determined that any challenge to the Forfeiture Claims at least with respect to the Forfeiture Property would be ill-advised and an irresponsible use of each estate's limited resources.

---

[19] Roglieri has technically pled "not guilty" to the charges in the indictment. However, without discussing the evidence against him, Roglieri's own admissions in uncovered text messages with an undisclosed individual admit to the alleged crimes. *See United States of America v. Kris Roglieri*, Case No. 24-cr-392 (MAD), Dkt. No. 6-1 (June 3, 2024) (emphasis added) (typographical and grammatical errors in originals):

| Date | Time | From | Message |
|---|---|---|---|
| 1/4/2024 | 11:20:42 am | Unknown | Can't you just keep working on those companies? I know it might be hard at first, but look what you build this up to beat from nothing |
| 1/4/2024 | 11:20:56 am | Roglieri | Yea I can but not when I'm in f—king prison |
| 1/4/2024 | 11:21:09 am | Unknown | Why do you think that's gonna happen? Why can't it just be a bankruptcy? |
| 1/4/2024 | 11:21:47 am | Roglieri | Because I unused others money to fund deals I already told you this |
| 1/4/2024 | 11:22:02 am | Unknown | And that's illegal? |
| 1/4/2024 | 11:22:15 am | Roglieri | Yes |
| 1/4/2024 | 11:22:36 am | Unknown | How bad . I mean, what's the worst you do a couple years who cares You have your family This whole family will support you through this It's a civil case it's not a criminal case |
| 1/4/2024 | 11:27:42 am | Roglieri | **It will turn criminal as soon as they get into bank statements** |

37.     The Movants have determined, however, that there may be a basis to challenge the Government's ability to link Roglieri's criminal activity to the four Subject Vehicles which the Government is turning over to Prime as part of the Stipulation given the timing of their acquisition. To resolve those issues, the Subject Vehicles are being turned over to Prime subject to the terms and conditions set forth in the Stipulation.

### B. Approval of the Stipulation is in the Best Interests of the Estates

38.     The Government has required that as part of the Stipulation the Subject Vehicles be turned over to the Prime estate rather than the Roglieri estate, presumably because the Prime creditor body is deemed to be more representative of what the Government believes to be the Victim class. That said, the Stipulation captures for each of the Debtors' estates $25,000 in cash proceeds to be used for general purposes of each estate and to be distributed in the order of priorities set forth in section 507(a) of the Bankruptcy Code. The remaining net proceeds will be contributed to a Victim Fund and used to distribute to the Prime GUCs provided such creditors are deemed to be Victims by the Government.

39.     The determination of who qualifies as a Victim and the amount of such Victim's pecuniary loss will be determined by the Government in the normal course pursuant to the process set forth above. If at the time Prime or the plan administrator under any confirmed plan of liquidation (the "<u>Plan Administrator</u>") seeks to make a distribution from the Victim Fund and the Government has not fully and final determined the list of Victims and the amount of their claims, then in accordance with the terms of the Stipulation, each holder of an allowed Prime GUC will be deemed to be a Victim by the Plan Administrator and the list of all allowed Prime GUCs will be transmitted to the U.S. Attorney who shall have thirty (30) days to review the list and raise any objection to the inclusion of any Prime GUC participating in the Victim Fund. Otherwise, if the

U.S. Attorney has not yet established its list of Victims and determined each Victim's pecuniary loss, and also fails to timely object to the inclusion of any allowed Prime GUCs as participants in the Victim Fund, then each holder of such allowed Prime GUC shall be permitted to share in the Victim Fund on a pro rata basis based on the amount of their allowed claim.

40.     The limitation of the right to share in the Victim Fund to Victims is fair and appropriate. If the Government retained the Subject Vehicles and is successful in its Forfeiture Claims, then only Victims would be able to share in the value of those assets. Under the Stipulation, each estate is retaining $25,000 from the proceeds that it would otherwise not get, and the Movants are ensuring that the remainder of the proceeds will go to Victims, who appear to make up the majority of each estate's creditor body.[20]

41.     Finally, the Stipulation allows the Movants to resolve the Forfeiture Claims in a simple and cohesive manner, while protecting their respective rights to obtain title to any Forfeiture Property if the Government fails in its Forfeiture Claims. The Stipulation represents a positive and productive resolution of very complicated issues between the Movants and the Government. Based upon the foregoing, the Movants respectfully submit that approval of the Stipulation is in the best interests of each estate and respectfully request that the Stipulation be approved.

---

[20] The majority of the each Debtor's creditor body is comprised of shared creditors who also appear to be Victims including, among possibly others: (i) 1800 Park Avenue LLC (alleged to be owed approximately $15 million by each estate); (ii) B and R Acquisition Partners, LLC (alleged to be owed approximately $17 million by each estate); (iii) Camshaft CRE 1 LLC (alleged to be owed approximately $16.5 million by each estate); (iv) Compass-Charlotte 1031, LLC (alleged to be owed approximately $51 million by each estate); (v) ER Tennessee LLC (alleged to be owed approximately $15 million by each estate); (vi) Onward Holding, LLC (alleged to be owed approximately $3 million by each estate); (vii) Piper Capital Funding LLC (alleged to be owed approximately $10.5 million by each estate); (viii) SP Harbor QOZB LP (alleged to be owed approximately $2.5 million by each estate); (ix) 526 Murfreesboro LLC (alleged to be owed approximately $13.5 million by each estate); and (x) Newlight Tehnologies Inc. (alleged to be owed approximately $8 million by each estate).

## NOTICE

42. Notice of this Motion will be given to the Office of the United States Trustee for the Northern District of New York, and all parties entitled to notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure, by First Class Mail. In light of the nature of the relief requested herein, the Movants submit that no other further notice is required.

## NO PRIOR RELIEF

43. Except as specifically stated, no previous application for the relief sought herein has been made to this or any other court.

**WHEREFORE**, the Movants respectfully request that the relief requested herein be granted and the approve the Stipulation by "So Ordering" it and entering it on the Court's docket, and that the Court grant such other and further relief as is just and proper.

| | |
|---|---|
| Dated:  Albany, New York<br>December 30, 2024 | Dated:  New York, New York<br>December 30, 2024 |
| **THE DRIBUSCH LAW FIRM** | **KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP** |
| By: */s/ Christian H. Dribusch*<br>Christian H. Dribusch<br>187 Wolf Road, Suite 300-020<br>Albany, New York 12205<br>Tel: (518) 227-0026<br>Email: cdribusch@chd-law.com<br><br>*Counsel to Christian H. Dribusch, as Chapter 7 Trustee of the Estate of Kris Daniel Roglieri* | By: */s/ Fred Stevens*<br>Fred Stevens<br>Lauren C. Kiss<br>200 West 41st Street, 17th Floor<br>New York, New York 10036<br>Tel: (212) 972-3000<br>Email: fstevens@klestadt.com<br>         lkiss@klestadt.com<br><br>*Counsel to Prime Capital Ventures, LLC, Debtor and Debtor in possession* |