UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

---

In re:

    PRIME CAPITAL VENTURES, LLC,

                         *Alleged Debtor.*

Case No. 23-11302
Chapter 11

---

In re:

    PRIME CAPITAL VENTURES, LLC,

                            *Debtor.*

Case No. 24-11029
Chapter 11

---

APPEARANCES:

Christian H. Dribusch, Esq.
The Dribusch Law Firm
*Personal Representative of the Sole Member of Prime Capital Ventures, LLC*
187 Wolf Road, Suite 300-20
Albany, New York 12205

Fred Stevens, Esq.
Lauren Kiss, Esq.
Klestadt Winters Jureller Southard & Stevens, LLP
*Attorneys for Debtor, Prime Capital Ventures, LLC*
200 West 41st Street, 17th Floor
New York, New York 10036

Kris Daniel Roglieri
*Former Member of Prime Capital Ventures, LLC, Pro se*
11 Hill Top Lane
Poughkeepsie, New York 12603

Douglas T. Tabachnik, Esq.
Law Offices of Douglas T. Tabachnik, P.C.
*Attorney for Hogan Lovells US LLP*
63 West Main Street, Suite C
Freehold, New Jersey 07728

Pieter Van Tol, Esq.
Hogan Lovells US LLP
390 Madison Avenue
New York, New York 10017

Matthew M. Zapala, Esq.
Nolan Heller Kauffman LLP
*Attorney for Compass-Charlotte 1031, LLC, 526 Murfreesboro, LLC and Newlight*
*Technologies, Inc.*
80 North Pearl Street, 11th Floor
Albany, New York 12207

William L. Esser, Esq.
Parker Poe Adams & Bernstein LLP
*Attorney for Compass-Charlotte 1031, LLC*
620 South Tryon Street, Suite 800
Charlotte, North Carolina 28202

Lisa M. Penpraze, Esq.
Office of the United States Trustee
*Assistant United States Trustee*
11A Clinton Avenue, Room 620
Albany, New York 12207


Robert E. Littlefield, Jr., United States Bankruptcy Judge

## MEMORANDUM DECISION AND ORDER

Currently before the Court is Kris Daniel Roglieri's ("Roglieri") objection to Prime Capital

Ventures, LLC's ("Prime") attempt to: (1) abandon certain causes of action pursuant to 11 U.S.C.

§ 554 and (2) withdraw its motion for a bond under 11 U.S.C. § 303. The Court has jurisdiction

via 28 U.S.C. §§ 157(a), (b)(1), (b)(2)(A) and 1334(b).[1]

---

[1] Unless otherwise indicated, all chapter and section references are to the United States Bankruptcy Code, 11 U.S.C. §§ 101–1532 (2025) ("Bankruptcy Code").

## FACTS

The facts and circumstances that give rise to the present situation are complex and span multiple bankruptcy cases.[2]

On December 19, 2023, Compass-Charlotte 1031, LLC, 526 Murfreesboro, LLC and Newlight Technologies, Inc. (together, the "Petitioning Creditors") filed an involuntary Chapter 7 petition against Prime. (*Involuntary Prime*, Case No. 23-11302, ECF No. 1). On January 8, 2024, Prime filed a Motion for a Bond pursuant to 11 U.S.C. § 303(e) (the "Bond Motion"). (*Involuntary Prime*, Case No. 23-11302, ECF No. 69–70). Per the Bond Motion, Prime requested that the Petitioning Creditors be required to post a $37 million bond to cover attorney's fees, expenses, compensatory damages and punitive damages that would subsequently be sought under 11 U.S.C. § 303(i). (*Involuntary Prime*, Case No. 23-11302, ECF No. 69–70).

On January 8, 2024, Prime filed a motion to dismiss the bankruptcy case. (*Involuntary Prime*, Case No. 23-11302, ECF Nos. 72–73). Later that day, the Petitioning Creditors filed their own motion to dismiss the case on shortened notice. (*Involuntary Prime*, Case No. 23-11302, ECF No. 74). On January 9, 2024, the Court granted the Petitioning Creditor's motion to dismiss. (*Involuntary Prime*, Case No. 23-11302, ECF No. 87). In the dismissal order, the Court specifically retained jurisdiction over "all unresolved matters, including but not limited to: 1. An application by the [] Debtor pursuant to Bankruptcy Code § 303(i) for costs, attorneys' fees and damages, including punitive damages; 2. The [] Debtor's application for a bond (Doc. 70) . . . ." (*Involuntary Prime*, Case No. 23-11302, ECF No. 87).

---

[2] Citations to the docket of the Prime involuntary bankruptcy (Case No. 23-11302) will be referenced as "(*Involuntary Prime*, Case No. 23-11302, ECF No. #);" citations to the docket of Prime's first voluntary bankruptcy (Case No. 24-10531) will be referenced as "(*Receiver Prime*, Case No. 24-10531, ECF No. #);" citations to the docket of Prime's second voluntary bankruptcy (Case No. 24-11029) will be referenced as "(*DIP Prime*, Case No. 24-11029, ECF No. #);" citations to the docket of Roglieri's personal bankruptcy case will be referenced as "(*Roglieri*, Case No. 24-10157, ECF No. #)."

On February 15, 2024, Roglieri, the sole member of Prime and its CEO, filed a personal Subchapter V bankruptcy petition. (*Roglieri*, Case No. 24-10157, ECF No. 1). On May 15, 2024, Roglieri's case was converted to Chapter 7 and Christian H. Dribusch, Esq.[3] ("Dribusch") was appointed the Chapter 7 Trustee. (*Roglieri*, Case No. 24-10157, ECF Nos. 159–60).

On September 16, 2024, Dribusch filed a voluntary Chapter 11 petition on behalf of Prime.[4] (*DIP Prime*[5], Case No. 24-11029, ECF No. 1). At a hearing held on September 25, 2024, Dribusch indicated that he intended to withdraw the Bond Motion and abandon any claims against the Petitioning Creditors. (*Involuntary Prime*, Case No. 23-11302, ECF No. 165). On October 2, 2024, the Court entered a conditional order permitting Prime to withdraw the Bond Motion and abandon claims against the Petitioning Creditors in connection with their filing of *Involuntary Prime* (the "Conditional Order"). (*Involuntary Prime*, Case No. 23-11302, ECF No. 167; *DIP Prime*, Case No. 24-11029, ECF No. 31). The Conditional Order allowed for objections to the abandonment and withdrawal to be submitted no later than October 16, 2024. *Id.*

On October 16, 2024, Roglieri filed a timely objection to the Conditional Order. (*Involuntary Prime*, Case No. 23-11302, ECF No. 169; *DIP Prime*, Case No. 24-11029, ECF No. 39). The Court set a hearing on the Conditional Order and permitted other parties to submit responses to the objection. (*Involuntary Prime*, Case No. 23-11302, ECF No. 170; *DIP Prime*, Case No. 24-11029, ECF No. 40). Responses were received from Prime and Hogan Lovells US

---

[3] Dribusch had previously been appointed as the interim trustee in *Involuntary Prime*. (*Involuntary Prime*, Case No. 23-11302, ECF No. 15).

[4] In its bankruptcy petition, Prime asserts that Dribusch has assumed the role of personal representative of Prime's sole member in accordance with relevant Delaware law. (*See DIP Prime*, Case No. 24-11029, ECF No. 1). Actions taken by Prime thereafter are under the direction of Dribusch.

[5] Between *Involuntary Prime* and *DIP Prime*, *Receiver Prime* was filed by Paul A. Levine, Esq., who was appointed receiver of Prime by the District Court in *Compass-Charlotte 1031, LLC v. Prime Capital Ventures, LLC et al*. *See* Case No. 24-cv-55. *Receiver Prime* was dismissed on July 23, 2024, with the dismissal order currently on appeal before the District Court. (*Receiver Prime*, Case No. 24-10531, ECF No. 85); *see* Case No. 24-cv-939 (N.D.N.Y.).

LLP ("Hogan Lovells"). (*Involuntary Prime*, Case No. 23-11302, ECF No. 173; *DIP Prime*, Case No. 24-11029, ECF Nos. 43, 50). The Court provided Prime additional time to file a sur-reply to Hogan Lovells' response, which was timely submitted on November 20, 2024. (*Involuntary Prime*, Case No. 23-11302, ECF Nos. 176, 178; *DIP Prime*, Case No. 24-11029, ECF Nos. 53, 62). On November 27, 2024, the Court held a hearing on the pleadings and placed the matter on reserve. (*Involuntary Prime*, Case No. 23-11302, ECF No. 180; *DIP Prime*, Case No. 24-11029, ECF No. 69).

## ARGUMENTS

Roglieri argues that Prime should not be permitted to withdraw the Bond Motion or abandon its claims against the Petitioning Creditors. He avers that the Petitioning Creditors failed to meet the "strict guidelines" for filing an involuntary bankruptcy and therefore the Bond Motion and claims under § 303(i) are justified. (*Involuntary Prime*, Case No. 23-11302, ECF No. 169; *DIP Prime*, Case No. 24-11029, ECF No. 39). Roglieri further maintains that it is Prime's duty as a debtor "to preserve the assets of the estate" which means that it should pursue the bond and § 303(i) action. (*Involuntary Prime*, Case No. 23-11302, ECF No. 169; *DIP Prime*, Case No. 24-11029, ECF No. 39).

In response, Prime contends the claims against the Petitioning Creditors "are not worthy of pursuit and should be abandoned." (*Involuntary Prime*, Case No. 23-11302, ECF No. 173 at 10; *DIP Prime*, Case No. 24-11029, ECF No. 43 at 10). Prime argues any costs and fees should be recovered "from [Hogan Lovells]" and that there is no evidence of bad faith to support a claim for damages. (*Involuntary Prime*, Case No. 23-11302, ECF No. 173 at 12; *DIP Prime*, Case No. 24-11029, ECF No. 43 at 12). Furthermore, Prime argues that Roglieri "has no standing" to object to

the Conditional Order or "take any part in [Prime's] proceeding." (*Involuntary Prime*, Case No. 23-11302, ECF No. 173 at 14–15; *DIP Prime*, Case No. 24-11029, ECF No. 43 at 14–15).

Hogan Lovells raises a similar argument to that of Roglieri, suggesting it is improper for Prime to abandon the claims and that Prime "has failed to carry [its] burden of showing that the potential fees and costs under Section 303(i) will not bring any value to the estate . . . ." (*DIP Prime*, Case No. 24-11029, ECF No. 50 at 7).

Prime argues that Hogan Lovells' pleading "is clearly an objection to the Proposed Abandonment filed 21 days after the deadline" and should not be treated as an objection. (*Involuntary Prime*, Case No. 23-11302, ECF No. 178 at 3; *DIP Prime*, Case No. 24-11029, ECF No. 62 at 3). Regarding the issues raised by Hogan Lovells, Prime maintains that an action under § 303(i) is unlikely to be successful due to the lack of a bona fide dispute and "is going to utilize the very limited resources of the Debtor's estate." (*Involuntary Prime*, Case No. 23-11302, ECF No. 178 at 9; *DIP Prime*, Case No. 24-11029, ECF No. 62 at 9).

## DISCUSSION

### I.    Hogan Lovells

The Court will briefly address Prime's contention that the response of Hogan Lovells is a time-barred objection. Pursuant to the Conditional Order, "an objection to the relief granted by this Order . . . [must be] filed with this Court by no later than October 16, 2024 . . . ." (*Involuntary Prime*, Case No. 23-11302, ECF No. 167; *DIP Prime*, Case No. 24-11029, ECF No. 31) (emphasis omitted). However, the response was filed pursuant to the Court's text order dated October 16, 2024, permitting "[a]ny parties interested in responding to [Roglieri's] objection" to "submit said

response by no later than November 6, 2024." (*Involuntary Prime*, Case No. 23-11302, ECF No. 170; *DIP Prime*, Case No. 24-11029, ECF No. 40).

Hogan Lovells' papers were timely filed as a supportive response to Roglieri's objection. Hogan Lovells' response indicates that it is not only responding to Roglieri's objection, but to Prime's papers, as well. (*DIP Prime*, Case No. 24-11029, ECF No. 50 at note 1). However, this does not make it a timely objection to the Conditional Order.[6] Therefore, Roglieri's pleading is the sole objection to the relief sought by Prime.

## II.    *Pro se* Pleadings

The Court finds it prudent to address Roglieri's *pro se* status at the outset of its analysis in light of his objection to the proposed abandonment.

> Pro se debtors lack familiarity with the formalities of pleading requirements. *Daise v. Goord*, 109 F. App'x 452, 453 (2d Cir. 2004). As such, pleadings filed by pro se litigants are held to less stringent standards than those drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007). Courts should "apply a more flexible standard," to pro se filings "to raise the strongest arguments that they suggest." *Daise*, 109 F. App'x at 453; *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013).

*In re Letennier*, 660 B.R. 431, 435 (Bankr. N.D.N.Y. 2024). Not only is Roglieri appearing *pro se* in this matter, but he is doing so while incarcerated.[7] As such, the Court will apply a more relaxed standard to its review of his pleadings. Having established the Court's approach to the arguments raised by Roglieri, it now turns to the matters at hand.

---

[6] It is unclear why Hogan Lovells did not file an objection to the Conditional Order within the allotted time frame given its stance on the abandonment.

[7] Previous efforts made by Roglieri to retain counsel have largely been impaired by the fact that his assets are part of his bankruptcy estate. (*Roglieri*, Case No. 24-10157, ECF No. 269; *see also Roglieri*, Case No. 24-10157, ECF No. 189).

### III.    Standing

Prime argues that Roglieri does not have standing to object or take part in the proceeding.[8] "Generally, to have standing in bankruptcy court, a party must possess: (i) prudential standing; (ii) constitutional standing; and (iii) standing under section 1109 of the Bankruptcy Code." *In re SVB Fin. Grp.*, 662 B.R. 53, 62 (Bankr. S.D.N.Y. 2024) (citing *In re Motors Liquidation Co.*, 580 B.R. 319, 340 (Bankr. S.D.N.Y. 2018)).

> [S]ection 1109(b) does not abrogate constitutional standing requirements — a party in interest must still demonstrate that it meets the general requirements of the standing doctrine, including whether it has alleged a personal stake in the outcome of the proceedings and whether it is asserting its own legal rights and remedies.

*Church Mut. Ins. Co. v. Am. Home Assur. Co. (In re Heating Oil Partners, LP)*, 422 Fed. Appx. 15, 17 (2d Cir. 2011) (citing *Etuk v. Slattery*, 936 F.2d 1433, 1440 (2d Cir. 1991)). Therefore, the Court must determine whether Roglieri possesses the three forms of standing.

In its reply to Roglieri's objection, Prime enumerates the three standing requirements that Roglieri must satisfy. (*Involuntary Prime*, Case No. 23-11302, ECF No. 173 at 13–15; *DIP Prime*, Case No. 24-11029, ECF No. 43 at 13–15). However, the subsequent analysis provided by Prime focuses primarily on his equity interests in Prime. Prime makes no attempt to connect its equity arguments to the standing requirements via case law or statute, instead merely providing conclusory statements. Further, Prime's reply does not provide *any* analysis for its stance that Roglieri lacks constitutional standing and standing under § 1109. (*See Involuntary Prime*, Case

---

[8] Counsel for Petitioning Creditors argued at the November 27 hearing that Roglieri, in stating that he has no stake in the proceeding, effectively admitted he lacked standing. (*Involuntary Prime*, Case No. 23-11302, ECF No. 180 at 6:41, 37:41; *DIP Prime*, Case No. 24-11029, ECF No. 69 at 6:41, 37:41). However, Roglieri was asked later in the hearing whether he understood what "standing" is, to which he replied he did not. (*Involuntary Prime*, Case No. 23-11302, ECF No. 180 at 37:24; *DIP Prime*, Case No. 24-11029, ECF No. 69 at 37:24). The Court is not inclined to treat the utterance of a *pro se* party as dispositive when they also admit they do not understand the underlying legal concepts. *See Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) ("Implicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training.")

No. 23-11302, ECF No. 173; *DIP Prime*, Case No. 24-11029, ECF No. 43). Since the issue of standing has been raised, the Court will conduct its own evaluation of same.

### A.  11 U.S.C. § 1109 Standing

The Bankruptcy Code states that "[a] party in interest, including the debtor, the trustee, a creditors' committee, and equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b). The purpose of the section is to provide "anyone holding a direct financial stake in the outcome of the case . . . an opportunity (either directly or through an appropriate representative) to participate in the adjudication of any issue that may ultimately shape the disposition of his or her interest." 7 COLLIER ON BANKRUPTCY ¶ 1109.01 (16th ed. 2023); *see also Truck Ins. Exch.*, 602 U.S. at 277–78 (quoting same). "[Section] 1109(b) provides an illustrative but not exhaustive list of parties in interest." *Truck Ins. Exch. V. Kaiser Gypsum Co.*, 602 U.S. 268, 277 (2024). Thus, the Court must determine whether he falls within the confines of "party in interest."

"Whether a party qualifies as a 'party in interest' is determined on a case-by-case basis, taking into consideration whether that party has a 'sufficient stake' in the outcome of that proceeding, which can include having a pecuniary interest directly affected by the bankruptcy proceeding." *In re Heating Oil Partners, LP*, 422 Fed. Appx. at 17 (quoting *In re Stone Barn Manhattan, LLC*, 405 B.R. 68, 74 (Bankr. S.D.N.Y. 2009)). Here, Roglieri has a sufficient stake in the outcome of the abandonment proceeding due to his pecuniary interest which will be directly affected by the outcome.

Prime's cause of action under § 303 is an asset of the Prime's estate.[9] Hogan Lovells has filed proofs of claim in *Roglieri* and *DIP Prime*. In each proof of claim, Hogan Lovells identifies Roglieri and Prime as signatories to its retainer agreement. (*Roglieri*, Proof of Claim No. 25-1; *DIP Prime*, Case No. 24-11029, Proof of Claim No. 7-1). Because of this, Roglieri is a codebtor[10] on at least part of Hogan Lovells' claim[11] against Prime and may be liable to Hogan Lovells for same. *See* 11 U.S.C. § 524(e) ("[D]ischarge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt."). Nor does Roglieri have any hope of his obligation being discharged in his personal bankruptcy, as he was denied a discharge pursuant to § 727(a)(2)–(7) in an adversary proceeding brought by Dribusch.[12] (*See* Adv. P. No. 24-90015, ECF No. 18).

Roglieri's stake in the outcome of the proceeding is further substantiated by him being listed in Prime's schedules as a codebtor on the debt of Onward Holdings Ltd. ("Onward") (*DIP Prime*, Case No. 24-11029, ECF No. 1 at 45). Any increase in the amount of Hogan Lovells' claim to be paid by the bankruptcy estate would necessarily decrease the amount of Onward's claim to be paid, thus increasing Roglieri's liability to the latter.

Moreover, it has been made clear over the course of the various related proceedings that many creditors of Prime believe that Roglieri is also liable to them by virtue of alleged fraud. This

---

[9] Prime failed to list the cause of action in its Schedule A. (*See DIP Prime*, Case No. 24-11029, ECF No. 1).

[10] Prime's Schedule H in *DIP Prime* does not identify Roglieri as a codebtor on the claim of Hogan Lovells. (*DIP Prime*, Case No. 24-11029, ECF No. 1 at 45). However, Dribusch identified Roglieri as a codebtor on the Hogan Lovells debt with Prime and other related entities in his adversary proceeding against Roglieri. (Adv. P. No. 24-90015, ECF No. 1 at ¶ 43). Roglieri was also listed as a codebtor for the claim of Hogan Lovells in Schedule H of *Receiver Prime*. (*Receiver Prime*, Case No. 24-10531, ECF No. 31 at 24).

[11] At the hearing held on November 27, 2024, Pieter Van Tol, Esq. indicated on the record that Roglieri is not a personal guarantor of Hogan Lovells' claim against Prime. (*Involuntary Prime*, Case No. 23-11302, ECF No. 180 at 47:05; *DIP Prime*, Case No. 24-11029, ECF No. 69 at 47:05).

[12] The United States Trustee is also seeking a default judgment denying Roglieri's discharge pursuant to 11 U.S.C. § 727. *See* Adv. P. No. 24-90017.

is supported by the number of Prime creditors who have also filed proofs of claim in Roglieri's

personal bankruptcy. (*See Roglieri*, Proof of Claim Nos. 6-1, 8-1, 10-1, 13-1, 14-1, 15-1, 17-1, 19-

1, 20-1, 22-1, 24-1, 26-1, 27-1). The Court is not reaching a conclusion regarding whether Roglieri

committed fraud and would therefore be liable for the debts of Prime. However, it is apparent that

many Prime creditors may seek relief from Roglieri. This makes his stake in Prime's bankruptcy

even more clear since any disbursement to the aggrieved creditors may reduce a future liability of

Roglieri in his individual capacity. For these reasons, the Court finds that Roglieri is a "party in

interest" under § 1109(b).

### B.  Prudential Standing

"[A] party seeking to appear in federal court must demonstrate prudential standing. The

doctrine, self-imposed by federal courts, bars litigants 'from asserting the constitutional and

statutory rights of others in an effort to obtain relief for injury to themselves.'" *In re Motors

Liquidation Co.*, 580 B.R. at 340 (quoting *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 643 (2d

Cir. 1988)) (internal citation omitted). "The prudential concerns limiting third-party standing are

particularly relevant in the bankruptcy context . . . . In this context, the courts have been

understandably skeptical of the litigant's motives and have often denied standing as to any claim

that asserts only third-party rights." *Kane v. Johns-Manville Corp.*, 843 F.2d at 644.

"The prudential considerations include 'the general prohibition on a litigant's raising

another person's legal rights, the rule barring adjudication of generalized grievances more

appropriately addressed in the representative branches, and the requirement that a plaintiff's

complaint fall within the zone of interests protected by the law invoked."[13] *Official Comm. Of*

---

[13] Prime cites to these three requirements in its reply to Roglieri's objection. (*Involuntary Prime*, Case No. 23-11302, ECF No. 173 at 14; *DIP Prime*, Case No. 24-11029, ECF No. 43 at 14) (quoting *In re Old Carco LLC*, 500 B.R. 683, 690 (Bankr. S.D.N.Y. 2013). However, Prime provides no in-depth analysis of these three requirements. The Court nevertheless addresses each.

*Unsecured Creditors of the Debtors v. Austin Fin. Serv. (In re KDI Holdings, Inc.)*, 277 B.R. 493, 503 (Bankr. S.D.N.Y. 1999) (quoting *Allen v. Wright*, 468 U.S. 737, 750 (1982)).

First, Roglieri is asserting his own statutory rights. As discussed *supra*, Roglieri is a party in interest with a right to be heard pursuant to § 1109(b). *See supra* Section II(A). "A party in interest . . . may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b). The Conditional Order did not limit who could file an objection. (*Involuntary Prime*, Case No. 23-11302, ECF No. 167; *DIP Prime*, Case No. 24-11029, ECF No. 31). Therefore, Roglieri personally had the legal right to raise the objection.

Second, it is apparent that Roglieri's grievances are not generalized. Federal courts have "refrained from adjudicating 'abstract questions of wide public significance' which amount to 'generalized grievances,' pervasively shared and most appropriately addressed in the representative branches." *Valley Forge Christian College v. Americans United for Separation of Church & State*, 454 U.S. 464, 475 (1982) (quoting *Warth v. Seldin*, 422 U.S. 490, 499–500 (1975)). Roglieri's grievance, however, is not an abstract question.  Issues concerning the abandonment of estate assets are often brought to and resolved by the bankruptcy courts, hence the inclusion of § 554 in the Code. Roglieri's objection to the proposed abandonment is therefore one which this Court can properly adjudicate.

Third, "the Court has required that the plaintiff's complaint fall[s] within 'the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.'" *Valley Forge*, 454 U.S. at 475 (quoting *Association of Data Processing Service Orgs. v. Camp*, 397 U.S. 150, 153 (1970)).

> We do not require any "indication of congressional purpose to benefit the would-be plaintiff." [*Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399–400 (1987)]. And we have conspicuously included the word "arguably" in the test to indicate that the benefit of any doubt goes to the plaintiff. The test forecloses suit only when a

> plaintiff's "interests are so marginally related to or inconsistent with the purposes
> implicit in the statute that it cannot reasonably be assumed that Congress intended
> to permit the suit." [*Id.* at 399].

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 225 (2012).

The language of § 554 makes clear that its purpose is to maximize the value of the estate by permitting the trustee or debtor in possession to abandon those assets which are more akin to a liability. Here, both Roglieri and Prime's estate stand to benefit from maximizing estate property and the former's interests falls within the "zone of interests" of § 554.

Having met these three requirements, the Court finds that Roglieri has prudential standing to raise an objection to the Conditional Order.

### C. Constitutional Standing

"To qualify for standing under Article III, 'a claimant must present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged behavior; and likely to be redressed by a favorable ruling.'" *In re Old Carco LLC*, 500 B.R. 683, 690 (Bankr. S.D.N.Y. 2013) (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733 (2008)). "Generally, a 'party in interest' with respect to a particular issue will also meet the requirement for Article III standing with respect to that issue." *Savage Assocs., P.C. v. Mandl (In re Teligent, Inc.)*, 417 B.R. 197, 210 (Bankr. S.D.N.Y. 2009) (citing 7 COLLIER ON BANKRUPTCY ¶ 1109.04 (15th ed. rev. 2009)).

As previously discussed, the injury to Roglieri is the obligation to repay Hogan Lovells, Onward and potentially other creditors of Prime.  This injury is also imminent given the facts of *DIP Prime*. Based upon Prime's schedules and its disclosure statement, unsecured creditors such as Hogan Lovells will not be made whole by the distributions in this case. (*See DIP Prime*, Case

No. 24-11029, ECF No. 1 at 47) (identifying assets of approximately $6,452,230.06[14] and liabilities of approximately $244,529,327.93); (*see also DIP Prime*, Case No. 24-11029, ECF No. 92 at Ex. A) (estimating that unsecured creditors will receive between a 0.05% and 3.60% return). Prime has also ceased operations and—given the allegations of fraud—it is unlikely to resume business. Thus, Hogan Lovells and Onward will be entitled to seek compensation from Roglieri. The amount which creditors may later seek from Roglieri will certainly be affected by what they recover from Prime, which in turn will certainly be affected by Prime's decision to abandon the claims against the Petitioning Creditors.

For the reasons stated, the Court finds that Roglieri does have standing to appear and be heard in this matter and that his objection is therefore properly before the Court.

## IV.    Withdrawal of Bond Motion

Prime seeks to withdraw the Bond Motion, and Roglieri opposes said action. Pursuant to Local Bankruptcy Rule 9013-1, "[a]ny party who seeks to withdraw a motion . . . shall provide written notification to the Court and all parties who have filed and served related papers." N.D.N.Y. Bankr. R. 9013-1(k). The Local Rules do not require Court approval for the withdrawal of a motion. In any event, courts will often permit a party to withdraw a motion if doing so will not prejudice another party. *See, e.g., Harris v. Butler*, 961 F. Supp. 61, 62 (S.D.N.Y. 1997), *Adams v. Loreman*, Case No. 07-cv-00452, 2012 U.S. Dist. LEXIS 21276, at *10 (N.D.N.Y. Feb. 21, 2012).

Here, Dribusch previously filed a written request to the Court for the Bond Motion to be withdrawn. (*Involuntary Prime*, Case No. 23-11302, ECF No. 162). Written notice of the

---

[14] Prime's schedules indicate a number of potential assets with an "unknown" current value. (*DIP Prime*, Case No. 24-11029, ECF No. 1 at 14–22). Even if the values of those assets were known, Prime's liabilities would almost certainly outweigh its total assets. (*See DIP Prime*, Case No. 24-11029, ECF No. 1).

withdrawal was also provided via Prime's letter dated September 26, 2024, and the Conditional

Order. (*Involuntary Prime*, Case No. 23-11302, ECF Nos. 166–67; *DIP Prime*, Case No. 24-

11029, ECF Nos. 28, 31). In doing so, Prime complied with the requirements of Local Bankruptcy

Rule 9013-1.

Roglieri's argument that the Bond Motion should be pursued because there is purported

evidence of an improper filing is insufficient to establish prejudice. For a motion under § 303(e)

to succeed, "the putative debtor must establish a prima facie case of bad faith before petitioning

creditors may be required to post a bond." *In re Secured Equip. Trust of E. Airlines*, Case No. 91

Civ. 5049, 1992 U.S. Dist. LEXIS 15320, at *18 (S.D.N.Y. Oct. 8, 1992). No such determination

has been made by the Court at this time. Nor does withdrawal of the Bond Motion necessarily

prejudice any party as doing so does not preclude an action and recovery under 11 U.S.C. §

303(i).[15] Therefore, the Court will deem the Bond Motion withdrawn. The Court now turns to the

issue of abandonment.

## V.    Abandonment of Claims

Section 1107 states in relevant part that "a debtor in possession shall have all the rights . .

. and perform all the functions and duties . . . of a trustee serving in a case under this chapter." 11

U.S.C. § 1107(a); *see also Committee of Asbestos-Related Litigants v. Johns-Manville Corp. (In

re Johns-Manville Corp.)*, 60 B.R. 612, 615 (Bankr. S.D.N.Y. 1986) (citing same). Under § 554,

"the trustee may abandon any property of the estate that is burdensome to the estate or that is of

inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). The party moving for

abandonment under § 554 has the burden of proof. *See In re Winstead Mem'l Hosp.*, 249 B.R. 588,

---

[15] In the original Bond Motion, Prime argued that there would be prejudice if a bond was not required as one or more of the Petitioning Creditors was exhibiting financial hardship. (*Involuntary Prime*, Case No. 23-11302, ECF Nos. 69–71, 145). No further evidence has been provided to support this contention.

595 (Bankr. D. Conn. 2000); *see also In re Ditech Holding Corp.*, Case No. 19-10412, 2023 Bankr. LEXIS 1363, at *22 (Bankr. S.D.N.Y. May 24, 2023) (holding same).

"[T]he debtor's duty to wisely manage the estate's legal claims is implicit in the debtor's role as the estate's only fiduciary." *Smart World Techs., LLC v. Juno Online Servs. (In re Smart World Techs., LLC)*, 423 F.3d 166, 175 (2d Cir. 2005). "The [debtor in possession]'s power to abandon property is discretionary and is 'bounded only by that of the court.'" *In re Republic Airways Holdings Inc.*, 547 B.R. 578, 582 (Bankr. S.D.N.Y. 2016) (quoting *In re Interpictures, Inc.*, 168 B.R. 526, 535 (Bankr. E.D.N.Y. 1994)). "The standard applicable to a bankruptcy court's review of a [debtor in possession]'s decision to abandon property of the estate is the 'business judgment rule' . . . ." *In re De Hertogh*, 412 B.R. 24, 32 (Bankr. D. Conn. 2009). "A [debtor in possession] generally satisfies the business judgment standard if he 'acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interest interests of the company.'" *In re MF Global Ltd.*, 535 B.R. 596, 605 (Bankr. S.D.N.Y. 2015) (quoting *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992)).

Specifically, Prime seeks to abandon claims that could be brought against the Petitioning Creditors pursuant to § 303(i). The statute provides:

> (i)    If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—
> 1.   against the petitioners and in favor of the debtor for—
>        A.   costs; or
>        B.   a reasonable attorney's fee; or
> 2.   against any petitioner that filed the petition in bad faith, for—
>        A.   any damages proximately caused by such filing; or
>        B.   punitive damages.

11 U.S.C. § 303(i). The parties—except for Roglieri—seem to agree that it would be imprudent to argue bad faith under § 303(i)(2). (*Involuntary Prime*, Case No. 23-11302, ECF No. 180 at 27:15; *DIP Prime*, Case No. 24-11029, ECF No. 69 at 27:15). However, Prime has not convinced the

Court that sound business judgment supports an abandonment of claims against the Petitioning

Creditors pursuant to § 303(i)(1).

## A.  Legal Standard

In its sur-reply to Hogan Lovells, Prime argues that "[b]efore the Debtor can prove any

claim to Fees and Costs, it must prove that the Petitioning Creditors' claims are subject to a *bona

fide* dispute." (*Involuntary Prime*, Case No. 23-11302, ECF No. 178 at 9; *DIP Prime*, Case No.

24-11029, ECF No. 62 at 9). This, however, is not the test for awarding fees and costs under §

303(i)(1).[16] In *In re TPG Troy, LLC*, the Second Circuit adopted a "totality of circumstances" test

wherein the court balances four factors: "(1) the merits of the involuntary petition; (2) the role of

any improper conduct on the part of the alleged debtor; (3) the reasonableness of the actions taken

by the petitioning creditors; and (4) the motivation and objectives behind the filing of the petition."

*Crest One SpA v. TPG Troy, LLC (In re TPG Troy, LLC)*, 793 F.3d 228, 235 (2d Cir. 2015)

(quoting *In re Taub*, 438 B.R. 761, 775 (Bankr. E.D.N.Y. 2010)). "When an involuntary petition

is dismissed, 'there is a presumption that costs and attorney's fees will be awarded to the alleged

debtor.'" *Id.* (quoting *In re Mountain Dairies*, 372 B.R. 623, 637 (Bankr. S.D.N.Y. 2007)). To

abandon, Prime would have to show that the four factors overcome the presumption that it is

entitled to costs and fees. *See id.*

Though Prime did not provide an analysis of the test, its position on each of the factors can

be inferred from the pleadings submitted and points raised on the record. Even construing Prime's

arguments to fit the test, however, the Court could not conclude that seeking an award under §

---

[16] At the hearing, Prime and the Petitioning Creditors argued case law suggests an award under § 303(i)(1) is rarely granted when the petitioning creditors' claims are not subject to bona fide dispute. (*Involuntary Prime*, Case No. 23-11302, ECF No. 180 at 12:30; *DIP Prime*, Case No. 24-11029, ECF No. 69 at 12:30). However, no such case law was provided to the Court or included in the parties' filings.

303(i) would be fruitless.[17] The merits of the involuntary petition remain an open question for the Court.[18] As for the second factor, the Court is well aware of the allegations that have been raised against Roglieri both in this Court and the District Court. His conduct during the pendency of *Involuntary Prime* has also been well-documented. These facts would certainly be important for an analysis of the alleged debtor's improper conduct. Nevertheless, it is the third and fourth factors that are at the center of the Court's consideration.

The Petitioning Creditors sought dismissal of *Involuntary Prime* because "further pursuit of this involuntary bankruptcy does not appear to have a realistic chance of returning Petitioning Creditors' ICA deposits, and they believe their most likely chance of recovery is to dismiss this case and pursue relief in a forum where Berone can be made a party."[19] (*Involuntary Prime*, Case No. 23-11302, ECF No. 74 at 7). Since *Involuntary Prime* was dismissed, Prime has been subject to a District Court receivership and two additional bankruptcies which have caused Prime to accrue hundreds of thousands of dollars in additional expenses. According to counsel for the Petitioning Creditors, "the receivership targeted Berone[20] and we couldn't do that effectively here." (*Involuntary Prime*, Case No. 23-11302, ECF No. 180 at 39:04; *DIP Prime*, Case No. 24-11029,

---

[17] The Court acknowledges that a motion for damages pursuant to § 303(i) has not yet been made and therefore the parties have not had a chance to brief these issues. However, it is necessary for the Court to perform its own preliminary analysis to the extent needed to properly address the abandonment. That is not to say that the parties would not be able to convince the Court with persuasive pleadings if and when the § 303(i) motion is made.

[18] At the November 27 hearing, Hogan Lovells, Prime and the Petitioning Creditors argued at length about whether a bona fide dispute existed as to the claims of the Petitioning Creditors. While the parties provided general arguments, the Court would wish to see further briefing on the matter before reaching any conclusion on that particular issue.

[19] Of import is the fact that the Petitioning Creditors have consistently maintained that its petition was proper and that Prime belongs in bankruptcy, with Compass-Charlotte 1031, LLC having even filed papers in opposition to the dismissal of *Receiver Prime* and filing an appeal of the dismissal. (*See Involuntary Prime*, Case No. 23-11302, ECF No. 180 at 39:11; *DIP Prime*, Case No. 24-11029, ECF No. 69 at 39:11; *Receiver Prime*, Case No. 24-10531, ECF Nos. 76, 89).

[20] It is not yet clear to the Court why the Petitioning Creditors could not have maintained the *Involuntary Prime* bankruptcy while simultaneously seeking a receivership over Berone. That, however, may be further expanded upon at a later date and in connection with a proper motion under § 303(i).

ECF No. 69 at 39:04). This series of events was also preceded by two of the three Petitioning

Creditors having open civil litigation against Prime prior to the filing of the involuntary petition.

*See* Case Nos. 23-cv-1239 (M.D. Tenn. 2023), 23-cv-1588 (N.D.N.Y. 2023). As such, questions

remain concerning Petitioning Creditors' motives in bringing the involuntary proceeding and the

reasonableness of their actions.

Prime suggests in its papers that, rather than seeking costs and fees from the Petitioning

Creditors, it would instead seek recovery from Roglieri and Hogan Lovells. (*See Involuntary

Prime*, Case No. 23-11302, ECF No. 173 at 12; *DIP Prime*, Case No. 24-11029, ECF No. 43 at

12; *Involuntary Prime*, Case No. 23-11302, ECF No. 178 at 14; *DIP Prime*, Case No. 24-11029,

ECF No. 62 at 14). The matter of recovering fees and costs associated with *Involuntary Prime* is

not binary. Pursuing relief from Roglieri and Hogan Lovells would not preclude Prime from also

seeking recovery against the Petitioning Creditors.

For the Court to find sound business judgment in abandoning the claims, Prime would have

to provide an analysis of the "totality of circumstances" test and address how the Court's concerns

are accounted for in its determination. Since those arguments are not currently before the Court, it

cannot find that sound business judgment warrants abandonment.

### B.  Cost-Benefit Analysis

In addition, Prime provided little quantitative analysis in its papers comparing the potential

costs and benefits of an action under § 303(i).

"Involuntary bankruptcy is an extreme remedy with dire consequences upon a business

enterprise." *In re Brooklyn Resource Recovery*, 216 B.R. 470, 486 (Bankr. E.D.N.Y. 1997).

Because of this, such a proceeding "should be invoked with great care." *In re Best Home

Performance of CT, LLC*, Case No. 19-20688, 2019 Bankr. LEXIS 3682, at *37 (Bankr. D. Conn.

Dec. 2, 2019). By initiating an involuntary bankruptcy, petitioning creditors force the alleged debtor to defend itself and, in so doing, incur attorney fees and costs. Even if an alleged debtor is successful in having the case dismissed, those fees and costs remain an obligation that the alleged debtor would not have otherwise borne. And those expenses may continue to accrue as the alleged debtor seeks compensation from those creditors who initiated this sequence of events. Section 303(i)(1) stands as a deterrent against the wanton filing of involuntary petitions by imposing a risk for petitioning creditors that they may be on the hook for fees and costs, even if they filed the petition in good faith. "In other words, the operative principle was that one who swats at the hornet had best kill it." *In re Kidwell*, 158 B.R. 203, 213 (Bankr. E.D. Cal. 1993); *see also In re TPG Troy, LLC*, 793 F.3d at 235 (citing same).

Prime's analysis appears to have only considered the costs and fees of Hogan Lovells. However, the statutory language of § 303(i)(1) does not place a specific limitation on which costs and attorneys' fees can be sought. Many courts have held that the alleged debtor can seek costs and fees incurred not only leading up to the dismissal but those incurred after the dismissal. "It is well-settled that an alleged debtor can recover legal fees incurred after dismissal of an involuntary case." *Rosenberg v. DVI Receivables, XIV, LLC (In re Rosenberg)*, 471 B.R. 307, 318 (Bankr. S.D. Fla. 2012); *see also Miller v. Adell (In re John Richards Homes Bldg. Co., LLC)*, 405 B.R. 192, 200 (E.D. Mich. 2009) (holding same). "[A] debtor that brings a motion to recover fees under § 303(i) is entitled not only to the fees it incurred in opposing the involuntary petition, but also to the fees it incurred in bringing the 303(i) motion." *Healthcare Real Est. Partners, LLC v. Summit Healthcare REIT, Inc. (In re Healthcare Real Est. Partners, LLC)*, Case No. 15-11931, 2023 Bankr. LEXIS 2757, at *14 (Bankr. D. Del. Nov. 14, 2023).

Hogan Lovells filed a proof of claim in *DIP Prime* for $1,558,743.29.[21] (*DIP Prime*, Case No. 24-11029, Proof of Claim No. 7-1). "Of the Billed Fees, $398,692.50[22] was incurred in connection with Hogan Lovells' representation of [Prime] in [*Involuntary Prime*]. The remaining Billed Fees were incurred in connection with Hogan Lovells' successful representation of [Prime] and related defendants in the Federal Receivership Action." *Id.* at 5. Additionally, Cullen & Dykman incurred fees and costs in representing Prime at the onset of *Involuntary Prime*. According to the disclosure of compensation, Cullen & Dykman "received two retainer payments in the amounts of $25,000 and $50,000 . . . which C&D applied to charges for services rendered totaling $76,810.50." (*Involuntary Prime*, Case No. 23-11302, ECF No. 101). The Court notes that Lemery Greisler LLC and Bond, Schoeneck & King PLLC have also represented Prime at certain points in the *Involuntary Prime* case. Outstanding questions concerning authority over Prime aside, there is an argument to be made that their costs and fees in relation to *Involuntary Prime* could be sought in a § 303(i) action, as well.

Moreover, Klestadt Winters Jureller Southard & Stevens, LLP would be able to argue for the recovery of its fees in pursuing the § 303(i) claims on behalf of Prime. The fact that Prime may be able to partially or completely offset its litigation costs related to § 303(i) should also be considered in its decision to abandon said claims.

---

[21] Prime has not yet sought disallowance or reduction of Hogan Lovells' claim. While such relief may be sought in the future, there could be no conclusive determination at this time whether said motion would be granted or denied.

[22] It is not clear whether this amount reflects costs and fees accrued exclusively prior to dismissal of *Involuntary Prime* or includes those accrued after dismissal. Though this question need not be answered for the Court to determine the present matter, it will be pertinent for a future § 303(i) claim if and when brought.

In its pleadings, Prime argues that the fees incurred by Hogan Lovells are unreasonable and potentially excessive.[23] (*Involuntary Prime*, Case No. 23-11302, ECF No. 178 at 9–10; *DIP Prime*, Case No. 24-11029, ECF No. 62 at 9–10). However, a reduction in fees would not reduce the amount recoverable from the Petitioning Creditors to zero. In order to show sound business judgment, Prime must consider the prospect of recovering *some* of Hogan Lovells' fees. The dollar amount that Prime uses in its calculation need not necessarily be the total expensed by Hogan Lovells.

Prime also argues any award under § 303(i) would be dwarfed by the claims of the Petitioning Creditors and likely subject to setoff. This, however, does not mean there is no benefit to the estate from pursuing the causes of action. A monetary award of any amount would necessarily increase the assets available for distribution under the plan. Similarly, a setoff of any amount would reduce the Petitioning Creditors' claims and result in a greater recovery for other creditors under the plan. To suggest such a possibility is without value is to ask the entire creditor base to foot the proverbial bill for the Petitioning Creditors.

Because Prime has failed to establish sound business judgment for its decision to abandon any and all claims against the Petitioning Creditors under § 303(i), the Court denies Prime's request to do so.

## CONCLUSION

In reaching its decision, the Court does not find that the proposed abandonment could never be sound business judgment. Should Prime provide the Court with further evidence, the Court may

---

[23] The Court does not take a position on the reasonableness of Hogan Lovells' fees at this time as the matter is not currently ripe. However, the Court does share Prime's concerns that they may be excessive in light of the circumstances.

find such an act to be appropriate. At this time, however, the analysis currently provided to the Court is inadequate to show abandonment is in the best interests of the estate. Nor should this decision be construed to suggest a motion for § 303(i) damages will be successful. Such a determination will only be made if and when the issue is properly before the Court.[24]

Now, for the reasons stated herein, it is hereby:

**ORDERED**, that the Bond Motion (Case No. 23-11302, ECF No. 69) is deemed withdrawn; and it is further

**ORDERED**, that the Debtor's request to abandon any and all claims against the Petitioning Creditors pursuant to 11 U.S.C. § 554 and Fed. R. Bankr. P. 6007 is denied without prejudice.

Dated: January 10, 2025
Albany, New York

/s/ Robert E. Littlefield, Jr._____
Robert E. Littlefield, Jr.
United States Bankruptcy Judge

---

[24] The Court will not acquiesce to Roglieri's request to "analyze and question Mr. Dribusch's ethics in practices as a trustee of the estate/debtor." (*Involuntary Prime*, Case No. 23-11302, ECF No. 169; *DIP Prime*, Case No. 24-11029, ECF No. 39). Such analysis is not necessary for the Court to address the matters presently before it. Nevertheless, the Court wishes to emphasize the importance of a debtor-in-possession's impartial role in bankruptcy.

> [D]ebtors in possession have fiduciary duties, which include, among others, the duty of loyalty . . . The duty of loyalty "includes an obligation to refrain from self-dealing, to avoid conflicts of interest and the appearance of impropriety, to treat all parties to the case fairly, and to maximize the value of the estate."

*In re Adelphia Communs. Corp.*, 336 B.R. 610, 669–70 (Bankr. S.D.N.Y. 2006) (quoting *In re Hampton Hotel Investors, L.P.*, 270 B.R. 346, 362 (Bankr. S.D.N.Y. 2001) (internal citations omitted).