**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

In re:

PRIME CAPITAL VENTURES, LLC,                    Case No. 24-11029-REL
                                                 Chapter 11

                                 Debtor.

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) PURSUANT TO
11 U.S.C. § 1125 APPROVING ADEQUACY OF SECOND AMENDED DISCLOSURE
STATEMENT FOR FIRST AMENDED PLAN OF LIQUIDATION PURSUANT TO
CHAPTER 11 OF THE BANKRUPTCY CODE AND (II) PURSUANT TO 11 U.S.C.
§ 1129 AND FED. R. BANKR. P. 3020 CONFIRMING FIRST AMENDED PLAN OF
LIQUIDATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

Prime Capital Ventures, LLC, the above-captioned debtor (the "Debtor"), in the above-

referenced chapter 11 case (the "Chapter 11 Case"), having filed (i) the *First Amended Plan of

Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* (together with any subsequent

modifications, the "Plan")[1] [Docket No 91], a copy of which is annexed hereto as **Exhibit A**, (ii) the *Second Amended Disclosure Statement for First Amended Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code*, dated January 9, 2025 (together with any subsequent modifications, the "Disclosure Statement") [Docket No. 118], (iii) the *Certificate of Service*, sworn to on January 9, 2025 (the "Solicitation Affidavit") [Docket No. 121] and *Certificate of Service*, sworn to on January 15, 2025 (the "Supplemental Solicitation Affidavit" and together with the Solicitation Affidavit, the "Solicitation Affidavits") [Docket No. 129], (iv) the *Supplement to the First Amended Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* (the "Plan Supplement") [Docket No. 147], (v) the ~~Certification~~Declaration *of Fred Stevens Regarding ~~Solicitation of Votes~~ Voting and Tabulation of Ballots Cast on the Debtor's First Amended Plan of Liquidation ~~Pursuant to Chapter 11 of the Bankruptcy Code~~*, dated February ~~__~~,19, 2025 (the "Voting Declaration") [Docket No. ~~__~~].152], (vi) the *Declaration of Christian H. Dribusch in Support of Entry of an Order (I) Approving Adequacy of Second Amended Disclosure Statement for First Amended Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code and (II) Confirming First Amended Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy* Code, dated February ~~__~~,20, 2025 (the "Dribusch Declaration") [Docket No. ~~__~~].155], (vii) the *Declaration of Brian Ryniker in Support of Confirmation of the Debtor's First Amended Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code,* dated February 19, 2025 (the "Ryniker Declaration") [Docket No. 156], and (~~vii~~viii) the *Memorandum of Law in Support of Entry of an Order (I) Approving Adequacy of Second Amended Disclosure Statement for First Amended Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code and (II) Confirming First Amended Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* (the

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Plan.

"Memorandum of Law") [Docket No. ▭];157]; and the Court having entered the *Order (I) Scheduling A Combined Hearing on (A) Adequacy of the Disclosure Statement and (B) Confirmation of the Plan, (II) Approving Form and Manner of Notice of Combined Hearing, (III) Establishing Procedures for Objecting to (A) Disclosure Statement and/or (B) Plan, and (IV) Approving Solicitation Procedures* (the "Scheduling Order") [Docket No. 114]; and a hearing pursuant to section 1128 of Title 11, United States Code (the "Bankruptcy Code") to consider (i) approval of the Disclosure Statement and (ii) confirmation of the Plan having been held before the Bankruptcy Court on ~~February 26~~March 4, 2025 (the "Combined Hearing"), after due notice to holders of Claims and Equity Interests against the Debtor, and to other parties in interest, in accordance with the Scheduling Order, the Bankruptcy Code, and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and the Bankruptcy Court having considered the Plan, the Disclosure Statement, the Voting Declaration, the Dribusch Declaration, the Memorandum of Law, and other papers in support of the Plan; and the appearances of all interested parties having been noted on the record of the Confirmation Hearing; and the Bankruptcy Court having considered all of the evidence adduced and arguments of counsel at the Combined Hearing, and all of the proceedings had before this Court; and upon the record of the Combined Hearing, the Bankruptcy Court having found and determined that (i) the Disclosure Statement contains "adequate information" with respect to the Debtor, the Plan, and the transactions contemplated therein, and (ii) the Plan is in the best interests of the Debtor, its Estate, and holders of Claims and Equity Interests, and that it should be confirmed as reflected by this Court's rulings made herein and at the Combined Hearing; and after due deliberation and sufficient cause appearing therefor, the Court hereby FINDS, DETERMINES, AND CONCLUDES that:

# FINDINGS AND CONCLUSIONS

The findings and conclusions set forth herein constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052, made applicable to this proceeding pursuant to Fed. R. Bankr. P. 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

A.     Exclusive Jurisdiction; Venue; Core Proceeding
       (28 U.S.C. §§ 157(b)(2), 1334(a))

This Court has jurisdiction over this Chapter 11 Case pursuant to sections 157 and 1334 of title 28 of the United States Code. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L). Venue of this Chapter 11 Case is properly in this district pursuant to sections 1408 and 1409 of title 28 of the United States Code. The Debtor is properly a debtor under section 109 of the Bankruptcy Code and is a proper proponent of the Plan under section 1121(a) of the Bankruptcy Code.

B.     Commencement of Case

On September 16, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of New York (the "Bankruptcy Court" or "Court").

C.     Burden of Proof

The Debtor has the burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of evidence.

D.     Judicial Notice

The Court takes judicial notice of the docket of the Chapter 11 Case maintained by the Clerk of the Court, including, without limitation, all pleadings and other documents filed and order

entered therein.  The Court also takes judicial notice of all evidence proffered or adduced and all arguments made at the hearings held before the Court during the pendency of this Chapter 11 Case.

        E.      <u>Adequacy of Disclosure Statement</u>

The Disclosure Statement complies with the requirements of the Bankruptcy Code, and the Bankruptcy Rules, and contains adequate information as such term is defined in section 1125 of the Bankruptcy Code.

        F.      <u>Solicitation and Notice</u>

Pursuant to the Scheduling Order, as evidenced by the Solicitation Affidavits, beginning on January 9, 2025, the Debtor commenced its solicitation (the "<u>Solicitation</u>") of votes on the Plan by mailing to the members of Class 2 a package containing the (a) Disclosure Statement, (b) Plan, (c) Scheduling Order, (d) *Notice of (I) Combined Hearing to Consider Approval of the Debtor's Disclosure Statement and to Confirm Debtor's Plan of Liquidation and (B) Date by Which to Submit Objections* (the "<u>Notice of Combined Hearing</u>") [Docket No. 120], (e) a ballot, a copy of which was attached to the Solicitation Affidavit as Exhibit F and Supplemental Solicitation Affidavit as Exhibit B, (f) assignment of claim form, a copy of which was attached to the Solicitation Affidavits as Exhibit C, and (g) a pre-addressed return envelopes (collectively, the "<u>Solicitation Package</u>") by the means authorized and approved by the Scheduling Order. Transmittal and service of the Solicitation Package to holders of Claims in Class 2 was adequate and sufficient, and no other or further notice is or shall be required.

In addition, as required by the Scheduling Order, as evidenced by the Solicitation Affidavit, on January 9, 2025, Kris Roglieri was mailed a package (collectively, the "<u>Roglieri Solicitation Package</u>") containing the (a) Disclosure Statement, (b) Plan, (c) Scheduling Order, (d) Notice of Combined Hearing, and (e) notice of non-voting status (the "<u>Notice of Non-Voting Status</u>"), a copy of which was attached to the Solicitation Affidavit as Exhibit B.  Transmittal and service of

the Roglieri Solicitation Package to Kris Roglieri was adequate and sufficient, and no other or further notice is or shall be required.

In addition, as required by the Scheduling Order, as evidenced by the Solicitation Affidavit, on January 9, 2025 holders of Unclassified Claims and Class 1 Claims and Class 3 Equity Interests were mailed a package containing (a) the Combined Hearing Notice and (b) the Notice of Non-Voting Status.  Transmittal and service of the Notice of Non-Voting Status to holders of Unclassified Claims and holders of Claims in Class 1 and Equity Interests in Class 3 was adequate and sufficient, and no other or further notice is or shall be required.

G.    Plan Supplement

The filing of the Plan Supplement and notice of documents contained therein were good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Scheduling Order, and no other or further notice is or shall be required.

H.    Voting

As evidenced by the Voting Declaration, Class 2 has voted to accept the Plan.

I.    Secured Claims Conclusively Presumed to Have Accepted the Plan

Class 1 Secured Claims are not Impaired and are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

J.    Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1))

The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

K.    Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1))

In addition to the Administrative Expense Claims, the Professional Fee Claims, Receiver Professional Fee Claims, and Priority Tax Claims (collectively, the "Unclassified Claims"), which need not be designated pursuant to section 1123(a)(1) of the Bankruptcy Code, the Plan designates

three (3) classes of Claims and Equity Interests. The Claims and Equity Interests placed in each Class are substantially similar to other Claims or Equity Interests in each such Class. Valid reasons exist for separately classifying the various Classes of Claims and Equity Interests created under the Plan, and such Classes do not unfairly discriminate between holders of Claims or Equity Interests. The Plan therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

L.     Specification of Unimpaired Classes (11 U.S.C. § 1123(a)(2))

Article 3 of the Plan specifies that Class 1 is not Impaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

M.     Specification of Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))

Article 3 of the Plan designates that Classes 2 and 3 are Impaired under the Plan and Article 4 of the Plan specifies the treatment of Classes 2 and 3, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

N.     No Discrimination (11 U.S.C. § 1123(a)(4))

The Plan provides for the same treatment for each Claim or Equity Interest in each respective Class unless the holder of a particular Claim or Equity Interest has agreed to a less favorable treatment of such Claim or Equity Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

O.     Implementation of Plan (11 U.S.C. § 1123(a)(5))

Article 5 of the Plan provides adequate and proper means for the Plan's implementation, thereby satisfying section 1123(a)(5) of the Bankruptcy Code. The Debtor is authorized to implement the Plan in accordance with its terms.

P.     Charter of Debtor (11 U.S.C. § 1123(a)(6))

No equity securities are being issued pursuant to the Plan, and therefore, section 1123(a)(6) of the Bankruptcy Code is not applicable.

Q.      <u>Selection of Trustees, Member and Manager (11 U.S.C. § 1123(a)(7))</u>

Section 5.2 of the Plan provides for the appointment of a Plan Administrator, and the Plan identifies Christian H. Dribusch of The Dribusch Law Firm, as the Plan Administrator.  In addition, section 5.4 of the Plan provides for the appointment of an Oversight Committee and the Plan Supplement identifies the following members of the Oversight Committee:  (i) Compass-Charlotte 1031, LLC, (ii) ER Tennessee LLC, and (iii) Piper Capital Funding LLC.  The Court is satisfied that these appointments are consistent with the interests of creditors and with public policy and therefore, section 1123(a)(7) of the Bankruptcy Code is satisfied.

R.      <u>Payment to Creditors from Personal Services
Not Available (11 U.S.C. § 1123(a)(8))</u>

The Debtor is not an individual, and therefore, section 1123(a)(8) of the Bankruptcy Code is not applicable.

S.      <u>Additional Plan Provisions (11 U.S.C. § 1123(b))</u>

The Plan's discretionary provisions are appropriate and are not inconsistent with the Bankruptcy Code.

T.      <u>Sale of Individual Property (11 U.S.C. § 1123(c))</u>

The Debtor is not an individual, and therefore, section 1123(c) of the Bankruptcy Code is not applicable.

U.      <u>Cure of Defaults (11 U.S.C. § 1123(d))</u>

To the extent that any defaults are cured, the cure amounts will be determined by any underlying agreement and applicable non-bankruptcy law.

V.      <u>Plan Compliance with Bankruptcy Rule 3016(a)</u>

The Plan is dated and identifies the entity submitting the Plan as the Debtor, thereby satisfying Bankruptcy Rule 3016(a).

W.     The Debtor's Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2))

The Debtor has complied with the applicable provisions of the Bankruptcy Code, thereby

satisfying section 1129(a)(2) of the Bankruptcy Code.  Specifically:

      a)     The Debtor is a proper debtor under section 109 of the Bankruptcy Code;

      b)     The Court has jurisdiction over the Debtor's Chapter 11 Case;

      c)     Venue of this Chapter 11 Case is proper in this district pursuant to 28 U.S.C. § 1408;

      d)     The Debtor is a proper proponent of the Plan pursuant to section 1121(a) of the Bankruptcy Code; and

      e)     The Debtor has complied with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules in all respects, and with the Scheduling Order, with respect to transmitting the Plan and the Disclosure Statement and related documents soliciting votes on the Plan.

Z.     Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))

The Debtor has proposed the Plan (including all other documents necessary to effectuate

the Plan) in good faith, to wit, to maximize the value of the Debtor's estate, and not by any means

forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.

AA.     Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))

The Plan provides that any payment made or to be made by the Debtor's estate for services

or for costs and expenses in or in connection with the Chapter 11 Case, or in connection with the

Plan and incident to the Chapter 11 Case, has been approved by, or is subject to the approval of,

the Bankruptcy Court, as reasonable.  Accordingly, section 1129(a)(4) of the Bankruptcy Code is

satisfied.

BB.     Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))

The Plan contemplates and discloses (a) that Christian H. Dribusch of The Dribusch Law

Firm will be appointed Plan Administrator, (b) the formation of the Oversight Committee,

comprised of three (3) members.  The Court is satisfied that said appointments are consistent with

the interests of creditors and are consistent with public policy and therefore sections 1129(a)(5)(A)(i) and 1129(a)(5)(A)(ii) of the Bankruptcy Code are satisfied.

CC.   <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>

Section 1129(a)(6) of the Bankruptcy Code is not applicable because no governmental regulatory commission has jurisdiction over the Debtor's rates or any change thereof.

DD.   <u>Best Interests of Creditors (11 U.S.C. § 1129(a)(7))</u>

The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The Dribusch Declaration, which the Court finds to be persuasive and credible and has not been controverted by any other evidence, establishes that each holder of an impaired Claim or Equity Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code on such date.  The docket of the Chapter 11 Case does not reflect an election by any class pursuant to Section 1111(b)(2) of the Bankruptcy Code.

EE.   <u>Acceptance of Certain Classes (11 U.S.C. § 1129(a)(8))</u>

Class 1 (Secured Claims) is not Impaired and is conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Class 2 (General Unsecured Claims) has voted to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code as described in the Voting Declaration and herein.

FF.   Treatment of Administrative and
<u>Priority Tax Claims (11 U.S.C. § 1129(a)(9))</u>

The treatment of Administrative Expense Claims, Professional Fee Claims and Receiver Professional Fee Claims pursuant to section 2.1(a) and (c), respectively, of the Plan, complies with section 1129(a)(9)(A) of the Bankruptcy Code because the Plan provides for all Allowed

Administrative Expense Claims (i.e., claims arising under sections 507(a)(2) and 507(a)(3) of the Bankruptcy Code) to be paid in full in Cash (a) as soon as practicable following the later of the Effective Date or the date upon which the Court enters a Final Order allowing any such Administrative Expense Claim, or (b) upon such other terms as may exist in accordance with the ordinary course of the Debtor's liquidation, or (c) as may be agreed upon between the holder of any such Administrative Expense Claim and the Plan Administrator. Further, the Plan provides that the Plan Administrator shall pay all Professional Fee Claims and Receiver Professional Fee Claims in the amount Allowed by the Bankruptcy Court as soon as practicable after entry of a Final Order awarding such compensation and reimbursement of expenses pursuant to proper application in accordance with Section 5.10 of the Plan.

The treatment of Priority Tax Claims under section 2.1(b) of the Plan complies with section 1129(a)(9)(C) of the Bankruptcy Code because the Plan provides for all Allowed Priority Tax Claims (i.e., claims arising under sections 507(a)(8) of the Bankruptcy Code), (a) to be paid an amount in Cash equal to the Allowed amount of such Priority Tax Claim, or (b) receive such other treatment as to which the Plan Administrator and the holder of such Allowed Priority Tax Claim shall have agreed upon in writing.

GG.    Acceptance by an Impaired Class (11 U.S.C. § 1129(a)(10))

Class 2, which does not count any votes cast by an insider, voted for the Plan. Therefore, at least one Class of Claims against the Debtor that is impaired under the Plan has accepted the Plan. Therefore section 1129(a)(10) of the Bankruptcy Code is satisfied.

HH.    Feasibility (11 U.S.C. § 1129(a)(11))

The feasibility requirement of section 1129(a)(11) of the Bankruptcy Code is not applicable, because the Plan provides for the liquidation of the Debtor's estate for the benefit of creditors that hold Claims against the Debtor.

To the extent applicable, based upon the liquidation analysis attached to the Disclosure Statement, which the Court finds reliable and credible, the Court is satisfied that the Debtor will be able to make, or cause to be made, the distributions required under the Plan.  Therefore, section 1129(a)(11) of the Bankruptcy Code is satisfied.

II.     Payment of Fees (11 U.S.C. § 1129(a)(12))

The Plan provides that all fees payable pursuant to section 1930 of Title 28 of the United States Code shall be paid by the Plan Administrator.  The Plan also provides for the payment, when due, of all United States Trustee quarterly fees under 28 U.S.C. § 1930(a)(6) until the Chapter 11 Case is closed, thus satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

JJ.     Retiree Benefits (11 U.S.C. § 1129(a)(13))

The Debtor has no obligation to provide any retiree benefits, and accordingly, section 1129(a)(13) of the Bankruptcy Code is not applicable to the Plan.

KK.     Domestic Support Obligations (11 U.S.C. § 1129 (a)(14))

The Debtor is not required to pay any domestic support obligations; therefore, section 1129(a)(14) of the Bankruptcy Code is not applicable to the Plan.

LL.     Payment of Disposable Income (11 U.S.C. § 1129(a)(15))

No unsecured creditor with an Allowed Claim has objected to confirmation of the Plan, and, as a result, section 1129(a)(15) of the Bankruptcy Code is not applicable to the Plan.

MM.     Transfer of Property by Nonprofit Entities (11 U.S.C. § 1129(a)(16))

The Debtor is not a nonprofit entity; therefore, section 1129(a)(16) of the Bankruptcy Code is not applicable to the Plan.

NN.     Confirmation of One Plan

The Plan is the only plan filed in this Chapter 11 Case.  Accordingly, section 1129(c) of the Bankruptcy Code is not applicable.

OO.     Principal Purpose of the Plan (11 U.S.C. § 1129(d))

The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933 (15 U.S.C. § 77(e)).  Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

PP.     Good Faith Solicitation (11 U.S.C. § 1125(e))

As the Debtor and its professionals have solicited acceptance of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules, they are entitled to the protections afforded under section 1125(e) of the Bankruptcy Code.

QQ.     Rejection of Contracts and Leases

The Plan's treatment regarding the rejection of executory contracts and unexpired leases in Article 6 of the Plan is in compliance with the requirements of sections 365(b) and 1123(b)(2) of the Bankruptcy Code and is a reasonable exercise of sound business judgment, and in each case is in the best interests of the Debtor and the Estate.

RR.     Injunctions and Exculpations

Each of the injunction provisions set forth in section 8.1 of the Plan and the exculpations set forth in section 8.2 of the Plan: (i) is within the jurisdiction of the Court under 28 U.S.C. § 1334, (ii) is an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code, (iii) confers a material benefit on, and is in the best interests of, the Debtor, its Estate and its Creditors, (iv) is important to the overall objectives of the Plan and (v) is consistent with sections 105, 1123, 1129 and other applicable provisions of the Bankruptcy Code.

SS.     Satisfaction of Confirmation Requirements

The Plan satisfies all applicable requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

TT.    Retention of Jurisdiction

The Bankruptcy Court may properly retain jurisdiction over the matters set forth in section 11.1 of the Plan and section 1142 of the Bankruptcy Code.

UU.    The Debtor was a Ponzi Scheme

"Ponzi schemes have no exact definition, since they manifest a kaleidoscopic variety of configurations." Honorable Dorothy T. Eisenberg, Nicholas W. Quesenberry, *Ponzi Schemes in Bankruptcy*, 30 Touro Law Review p. 502. "Thus, 'courts look for a general pattern, rather than specific requirements.'" *Id.*, citing *Manhattan Inv. Fund, Ltd. V. Gredd (In re Manhattan Inv. Fund, Ltd.)*, 397 B.R. 1, 12 (S.D.N.Y. 2007) (stating there is no precise Ponzi scheme definition).

Some courts use a four-factor test in determining whether a Ponzi scheme exists and consider whether: "1) deposits were made by investors; 2) the Debtor conducted little or no legitimate business operations as represented to investors; 3) the purported business operation of the Debtor produced little or no profits or earnings; and 4) the source of payments to investors was from cash infused by new investors." *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 531 B.R. 439, 471 (Bankr. S.D.N.Y. 2015). Other courts identify "badges of fraud," "including the absence of legitimate business connected to the investment program, the unrealistic promises of low risk and high returns, commingling investor money, the use of agents and brokers paid high commissions to perpetuate the scheme, misuse of investor funds, the 'payment' of excessively large fees to the perpetrator and the use of false financial statements." *Gowan v. Amaranth Advisors LLC (In re Dreier LLP)*, No. 08-15051, 2014 WL 47774, at *9 (Bankr. S.D.N.Y. Jan. 3, 2014); *see Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff)*, 528 F. Supp. 3d 219, 237-41 (S.D.N.Y. 2021), *aff'd sub nom., Picard v. Jaba Assocs. LP, 49 f.4TH 170 2D Cir. 2022).

In the end, and most significantly, "the label 'Ponzi scheme' has been applied to *any sort of inherently fraudulent arrangement under which the debtor-transferor must utilize after-acquired investment funds to pay off previous investors in order to forestall disclosure of the fraud*." *Bayou Superfund, LLC v. WAM Long/Short Fund II, L.P. (In re Bayou Group, LLC)*, 362 B.R. 624, 633 (Bankr. S.D.N.Y. 2007) (emphasis added). The Debtor had all the classic hallmarks of a Ponzi scheme.

The Debtor's Ponzi scheme is also consistent with what the U.S. Securities and Exchange Commission has dubbed a fraudulent advance fee scheme. In such a scheme, the perpetrator gets the victim to pay an upfront fee based on the promise that the fee will enable large sums of money to flow to the victim. After the victim sends the fee, the perpetrator keeps the fee and never delivers the promised loan, windfall, etc. *See Updated Investor Alert: Be on the Lookout for Advance Fee Fraud*, SEC.gov.[2] This is what the Debtor was doing here.

While prospective borrowers were not investing in the Debtor in the traditional sense, their ICA Deposit was very much an investment for all intents and purposes. The ICA Deposits were made for the express purpose of obtaining much needed and impossibly low-priced capital amounting to at least five times the amount of the ICA Deposit. That capital was needed by the prospective borrowers for their projects and businesses. The Debtor obtained the ICA Deposits not only on the promise of providing low-priced capital, but on the representation that the ICA Deposit would be held and used to pay down the prospective borrower's interest during the life of the contemplated loan.[3] The Debtor never retained the ICA Deposits in "trust" as represented but

---

[2] https://www.sec.gov/resources-for-investors/investor-alerts-bulletins/ia_lookforaff (last visited Nov. 15, 2024).
[3] The principal of Indigo Pharmaceutical explained his expectations of precisely how the ICA Deposit works in the YouTube promotional video reference above as follows:

So with Prime, they are committed just as much as we are because we put the money in, that is true, **but the money goes into a trust,** and you wait for the documentation of a trust meaning you have

rather used them for: (i) in the rare five instances, funding actual loans; (ii) returning other prospective borrowers' ICA Deposits when the Debtor could not fund the promised loans in order to keep the fraud from being discovered; and (iii) buying a beach house, expensive cars, luxury wristwatches, private jet travel, and other extravagances for Roglieri.  Most importantly, the only source of capital for any of the Debtor's activities was obtaining more ICA Deposits from new prospective borrowers, which were not supposed to be used for anything other than servicing the prospective borrower's loan obligations.

It is difficult to describe the Debtor's fraudulent scheme as anything but a Ponzi scheme. Regardless, even if the Debtor had any divergence from the classic Ponzi scheme model, "[c]ase law has revealed that a clever twist on the Ponzi concept will not remove a fraudulent scheme from the definition of Ponzi." *Forman v. Salzano (In re Norvergence, Inc.)*, 405 B.R. 709, 730 (Bankr. D.N.J. 2009), citing *United States v. Sudeen*, 434 F.3d 384, 386-87 (5th Cir. 2005); *United States v. Antonakopoulos*, 399 F.3d 68, 72 (1st Cir. 2005).  What is most important is that the Debtor and its former principal knew that the pool of prospective borrowers would at some point run dry and that the scheme would consequently inevitably collapse and that those prospective borrowers with outstanding ICA Deposits would lose their money.  This is the very essence of a Ponzi scheme. *See Christian Bros. High Sch. Endowment v. Bayou No Leverage Fund, LLC (in re Bayou Group, LLC)*, 439 B.R. 284, 306 n.19 (S.D.N.Y. 2010).

Based upon the foregoing, the Court finds and concludes that the Debtor was an advance pay/Ponzi scheme since its formation.

---

already been accepted.  It's just a matter of time until you get funded.  So once you understand that, although you're waiting and that sometimes can give people agita, but you know that the loan is going to come through because the trust has accepted all your documentation in advance and you know whether it's sixty or ninety days, or banking days actually, you're going to get funded.  It's just a matter of time.

Prime Commercial Lending, *Prime Capital Ventures Presents Indigo Pharmaceutical in Las Vegas, NV* [Video], Apr. 20, 2023, *supra*, starting at 4:04 (transcription by counsel).

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED
THAT:**

1.      Objections

All objections to the Disclosure Statement or Plan that have not been withdrawn, waived
or settled by this Order are overruled on the merits.

2.      Disclosure Statement

The Disclosure Statement contains adequate information within the meaning of section
1125 of the Bankruptcy Code and is approved in all respects.

3.      Confirmation

The Plan, in the form annexed hereto as **Exhibit A**, is hereby confirmed pursuant to section
1129 of the Bankruptcy Code.

4.      Binding Effect

Upon the Effective Date, the Plan and its provisions shall be binding upon the Debtor, any
Person acquiring or receiving property or a distribution under the Plan, and any holder of a Claim
against the Debtor, including all governmental entities (including without limitation all taxing
authorities), whether or not the Claim of such holder is Impaired under the Plan, whether or not
the Claim is Allowed, and whether or not such holder or entity has accepted the Plan.

The rights, benefits and obligations of any Person named or referred to in the Plan, or
whose actions may be required to effectuate the terms of the Plan, shall be binding on, and shall
inure to the benefit of, any heir, executor, administrator, successor or assign of such Person.

The terms and provisions of the Plan and this order shall survive and remain effective after
entry of any order which may be entered closing the Chapter 11 Case, dismissing the Chapter 11
Case or converting the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code, and

the terms and provisions of the Plan shall continue to be effective in this or any superseding case under the Bankruptcy Code.

     5.    <u>Appointment of Plan Administrator</u>

On the Effective Date, the Plan Administrator shall be appointed and shall have all of the powers and duties set forth in section 5.3 of the Plan.  The Plan Administrator Agreement attached to the Plan Supplement as Exhibit A is hereby approved.

     6.    <u>Appointment of Oversight Committee</u>

On the Effective Date, the Oversight Committee shall be appointed and shall have all of the powers and duties set forth in section 5.4 of the Plan.

     7.    <u>Substantial Consummation of Plan</u>

Upon the occurrence of the Effective Date, the Plan shall have been substantially consummated within the meaning of section 1101 of the Bankruptcy Code.

     8.    <u>Dissolution of the Debtor</u>

Upon entry of an order closing the Chapter 11 Case, the Debtor shall be deemed dissolved for all purposes.

     9.    <u>Exemption from Certain Transfers Taxes</u>

To the maximum extent provided by section 1146(a) of the Bankruptcy Code, any post-Confirmation sale or transfer of any of the Assets, including, but not limited to, the Sale of the Virginia Beach Property, or any sale or transfer of, from or by the Debtor, pursuant to, in contemplation of, or in connection with the Plan or pursuant to the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or

similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, in each case to the extent permitted by applicable bankruptcy law, and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

10.    Distributions

The Plan Administrator shall make Distributions on account of Allowed Claims in accordance with Article 4 of the Plan.

11.    Disputed Claims Reserve

On or before the Effective Date, the Plan Administrator shall establish and maintain the Disputed Claims Reserve as required by and in accordance with the Plan.  The Disputed Claims Reserve shall be treated as a disputed ownership fund, within the meaning of Treasury Regulation section 1.468B-9, for all purposes associated with taxation.

12.    Rejection of Executory Contracts (11 U.S.C. § 1123(b)(2))

Any and all prepetition executory contracts (not otherwise previously rejected or the subject of a motion to reject pending on the Effective Date), are deemed rejected by the Debor as of the Effective Date.  Any party asserting damages for such rejection shall file a Proof of Claim for such damages within thirty (30) days of the Effective Date (the "Rejection Damages Bar Date").  Failure to timely file a Proof of Claim by such date constitutes a waiver of any Claim in connection with the rejection of such contract or lease.

13.    Preservation of Insurance

Nothing in the Plan shall be deemed to diminish or impair the enforceability of any Insurance Policies that may cover Claims against the Debtor or any other Person.

14.    <u>Governmental Approvals Not Required</u>

This order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in or contemplated by the Plan, the Disclosure Statement, and any documents, instruments, or agreements, and any amendments or modifications thereto.

15.    <u>Administrative Expense Claims</u>

Persons asserting an Administrative Expense Claim must file a request for payment of such Administrative Expense Claim on or before 5:00 p.m. prevailing Eastern Time on the date that is 30 days after notice of the Effective Date has been mailed (the "<u>Administrative Expense Claims Bar Date</u>").

16.    <u>Assignment of Claims to Plan Administrator</u>

The Plan Administrator is hereby authorized to negotiate and accept assignments of claims, demands, and causes of action for the benefit of the Creditor Assignors upon determining in the Plan Administrator's discretion that such claims, demands, and causes of action assert colorable and meritorious claims, and to recognize the claims of the assignor for purposes of participating in and receiving a distribution from the Creditor Related Causes of Action Fund.

17.    <u>Injunctions</u>

As set forth in Article 8 of the Plan and this Confirmation Order and to the fullest extent authorized or provided by the Bankruptcy Code, including section 1141 thereof, upon the entry of this order, and provided that the Effective Date occurs, and at all times on and after the Effective Date, all Persons that have held, currently hold or may hold a claim or other debt or liability against

20

the Debtor or its Estate, are permanently enjoined from (a) commencing or continuing any judicial or administrative proceeding or employing any process against the Debtor, the Estate, the Roglieri Trustee, the Plan Administrator, or the Oversight Committee (and its members) with the intent or effect of interfering with the consummation and implementation of the Plan and the transfers, payments and Distributions to be made thereunder; and from the (b) (i) enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order; (ii) the creation, perfection or enforcement of any encumbrance of any kind; and/or (iii) the assertion of any right of setoff, counterclaim, exculpation, or subrogation of any kind, in each case against the Debtor, the Estate, the Roglieri Trustee, the Plan Administrator, or the Oversight Committee (and its members) to the fullest extent authorized or provided by the Bankruptcy Code, *provided*, *however*, nothing in Article 8 of the Plan shall prohibit any Person from taking actions to enforce any rights or obligations under or in connection with the terms of the Plan, or this Confirmation Order; *and provided further*, *however*, nothing in this Confirmation Order or the Plan shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including without limitation any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Debtor, nor shall anything in this order or the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against the Debtor for any liability whatsoever, including without limitation any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state or local authority.

18.    Exculpation

Pursuant to Bankruptcy Rule 3020(c)(1), the following provisions in the Plan, certain of which are also set forth below, are hereby approved and will be effective immediately on the

Effective Date without further order or action by this Court, any of the parties to such release, or

any other Entity: (a) Injunctions (Section 8.1) and (b) Exculpation (Section 8.2) without limiting

the effectiveness on the Effective Date of the Plan as a whole.

(a)     <u>Exculpation</u>. As of the Confirmation Date, the Debtor and its professionals

(including professional firms and individuals within such firms) shall be deemed to have solicited

acceptances of this Plan in good faith and in compliance with the applicable provisions of the

Bankruptcy Code.  To the fullest extent permitted by section 1125(e) of the Bankruptcy Code, the

Debtor and its professionals (including professional firms and individuals within such firms), shall

not have or incur any liability to any holder of any Claim or any other Person for any act or

omission taken or not taken in good faith in connection with, or arising out of, the Chapter 11

Case, the Disclosure Statement, the Plan, or any contract, instrument, release or other agreement

or document created or entered into in connection with the Plan, or any act taken or omitted to be

taken during the Chapter 11 Case, the solicitation of votes for and the pursuit of confirmation of

the Plan, the consummation of the Plan, including, without limitation, the steps taken to effectuate

the transactions described in Article 5 of the Plan, the administration of the Plan or the property to

be distributed under the Plan, except for acts or omissions constituting fraud, willful misconduct

or gross negligence as determined by a Final Order; and in all respects such parties shall be entitled

to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

19.     Provisions of Plan and Confirmation Order
        <u>Non-Severable and Mutually Dependent</u>

The provisions of the Plan and this order, including the findings of fact and conclusions of

law set forth herein, are non-severable and mutually dependent.

20.    <u>Automatic Stay</u>

The automatic stay provided for under section 362 of the Bankruptcy Code shall remain in

effect until the Effective Date.

21.    Notice of Entry of Confirmation Order, Occurrence of Effective Date, Rejection
<u>Damages Bar Date, and Administrative Expense Claims Bar Date</u>

Pursuant to Bankruptcy Rules 2002(f), 2002(k) and 3020(c), on or before the tenth (10th)

day following the Effective Date, the Debtor shall electronically file with the Court and serve

notice of entry of this order and occurrence of the Effective Date by causing notice of entry of this

order, occurrence of the Effective Date, Rejection Damages Bar Date, and Administrative Expense

Claims Bar Date in substantially the same form as attached hereto as **<u>Exhibit B</u>** (the "<u>Notice of

Confirmation</u>"), to be delivered to (i) all known holders of Claims (including those whose claims

are unimpaired, as well as impaired, by the Plan), (ii) all known non-Debtor counterparties to

executory contracts and unexpired leases, (iii) applicable taxing authorities, (iv) the U.S. Trustee,

and (v) the United States (in accordance with Bankruptcy Rule 2002(j)) and all known parties in

interest by first-class mail, postage prepaid.  The notice described herein is adequate and no other

or further notice is necessary.  The form of Notice of Confirmation substantially in the form

annexed hereto as **<u>Exhibit B</u>** is approved.

22.    <u>Retention of Jurisdiction</u>

Following the Effective Date, the Court shall retain jurisdiction over the Chapter 11 Case

to the maximum extent legally permissible, including, without limitation, for the following

purposes:

(a) to hear and determine any and all objections to the allowance of any Claim, or any
controversy as to the classification of Claims or any matters which may directly, indirectly or
contingently affect the obligations of the Debtor to any Creditors, holders of Claims, or other
parties in interest;

(b) to hear and determine any and all applications for compensation and reimbursement of expenses by Professionals;

(c) to hear and determine any and all pending motions for the assumption or rejection of executory contracts and unexpired leases, and to fix any Claims resulting therefrom;

(d) to adjudicate through final judgment such contested matters and adversary proceedings as may be pending or subsequently initiated in the Court including, but not limited to, the Causes of Action;

(e) to enforce and interpret the provisions of this Plan, the Confirmation Order, and the Plan Administrator Agreement;

(f) to hear and determine any matters relating to the appointment and replacement of the Plan Administrator;

(g) to issue any injunction or other relief appropriate to implement the intent of the Plan, and to enter such further orders enforcing any injunctions or other relief issued under the Plan or pursuant to the Confirmation Order;

(h) to modify the Plan pursuant to section 1127 of the Bankruptcy Code and the applicable Bankruptcy Rules;

(i) to correct any defect, cure any omission, or reconcile any inconsistency in this Plan, the Confirmation Order, or the Plan Administrator Agreement, as may be necessary to carry out the purposes and the intent of this Plan;

(j) to interpret and determine such other matters as the Confirmation Order may provide for, or as may be authorized under the Bankruptcy Code;

(k) to enter and implement such orders as may be appropriate in the event the Confirmation Order is, for any reason, stayed, reversed, revoked, modified or vacated; and

(l) to adjudicate any disputes between the members of the Oversight Committee or between the Oversight Committee and the Plan Administrator.

23.    Filing of Pre-Confirmation Monthly Operating Reports
        and Quarterly Post-Confirmation Reports

The Debtor shall file monthly operating reports through the Effective Date. Following the

Effective Date, the Plan Administrator shall file on a quarterly basis post-confirmation reports until

the entry of the final decree, the conversion, or the dismissal of the case. In addition, the Plan

Administrator shall pay all fees due under 28 U.S.C. § 1930 until the Chapter 11 Case is closed.

24.    <u>Applicable Non-Bankruptcy Law</u>

Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code and the provisions of this order, the Plan shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

25.    <u>Discovery Pursuant to Fed. R. Bankr. P. 2004</u>

As set forth in the Plan, the Plan Administrator is permitted to issue subpoenas and conduct other examinations permitted under Bankruptcy Rule 2004 without the need for any additional or further orders of the Court.  Any such subpoenas or discovery devices are without prejudice to the recipient parties' rights to file a motion in this Court seeking relief from the subpoena or discovery device pursuant to Federal Rules 26 and/or 45.

26.    <u>Resolution of Objections</u>

Caruso Home Builders, LLC together with Sage Estates Malta, LLC (collectively, "Caruso") have filed claims (Claim Nos. 4-1 and 5-1; collectively, the "<u>Caruso Claim</u>") against the Debtor's estate in connection with the claims asserted in the case captioned *Caruso Home Builders, LLC et al., v. Prime Capital Ventures, LLC*, Index No. EF2024312, Supreme Court, State of New York, County of Saratoga (the "<u>Caruso Litigation</u>").  For the avoidance of doubt, nothing in this Order or the Plan, including but not limited to, Article 8 of the Plan,  shall be interpreted to diminish or impair Caruso's right or ability to: (a) amend the Caruso Claim; (b) commence an adversary proceeding against the Debtor in relation to the Caruso Claim and/or the claims asserted in the Caruso Litigation, including but not limited to, an adversary proceeding to determine the validity, extent and/or priority of the Debtor's mortgage and/or lien on certain real property as referenced in the Caruso Litigation; (c) dispute that it owes the Debtor or is liable to the Debtor for any Loan Receivable or Loan Receivables as referenced in the Disclosure Statement and Plan; or, (d) seek relief to from this Court to continue the Caruso Litigation, and all such rights

referenced above are strictly preserved. Similarly, the Debtor's rights with respect to the Caruso Claim, the Caruso Litigation, and any motion or adversary proceeding that may be filed by Caruso in the future are strictly preserved; however, the filing of any motion or adversary proceeding by Caruso against the Debtor shall not be considered untimely for the reason that said motion or adversary proceeding was filed after entry of this Order.

For the avoidance of doubt and notwithstanding anything stated in section 8.1(c) of the Plan, B and R Acquisition Partners, LLC and JHM Lending Ventures, LLC (collectively, the "B&R Parties"), which assert a judgment lien against the Debtor's Virginia Beach Property, shall retain all liens securing their claims and the right to proceeds from such property, as well as the right to exercise all their rights and remedies against such property as authorized by this Court's order, dated December 30, 2024 [Dkt. No. 107]. Subject to the rights of the Debtor to assert claims for the avoidance of the B&R Parties' lien against the Virgina Beach Property under any theory in law or equity, the Ponzi scheme presumption shall not apply with respect to the B&R Parties' judgment lien, which was created by the affirmative actions of the adverse B&R Parties, as opposed to a voluntary transfer by the Debtor. For the avoidance of doubt, (i) the Debtor is not waiving any rights it may have to seek the avoidance of the B&R Parties' judgment lien on the basis that it constituted an actual fraudulent transfer, subject to any defenses the B&R Parties may assert, and (ii) the Ponzi scheme presumption shall apply to all other transfers of the property of the Debtor, subject to any rights and defenses of the recipients. Unless otherwise ordered by this Court, the Debtor shall reserve the full amount of any distribution that the B&R Parties may be entitled to receive as if their entire claim were an allowed, general, unsecured Class 2 Claim, until resolution of the Forfeiture Action with respect to the Virgina Beach Property. Each of the Debtor and the B&R Parties' rights, remedies, and claims against the others are fully reserved except as

expressly stated hereinabove.  Based upon the foregoing consensual resolution, the B&R Parties'
objection to confirmation [Dkt. No. 153] is deemed resolved and withdrawn.

On January 10, 2025, the Court entered a decision denying without prejudice the Debtor's
request to abandon certain potential claims against the Petitioning Creditors under 11 U.S.C. §
303(i) based upon the record before the Court at the time (the "Abandonment Decision") [Dkt. No.
122].  The Abandonment Decision was entered after the entry of the Scheduling Order on January
8, 2025, and the Debtor's service of the Solicitation Package on all creditors and parties in interest
on January 9, 2025.  Accordingly, the Abandonment Decision was not reflected or addressed in
the Disclosure Statement or Plan.  For the avoidance of doubt, nothing in the Disclosure Statement,
Plan, or this Order shall be deemed to alter or undermine this Court's Abandonment Decision.
Any and all rights of the Debtor or Hogan Lovells US LLP ("Hogan Lovells") to seek any claims
for fees, costs, or damages from the Debtor and/or the Petitioning Creditors pursuant to applicable
law, including, without limitation, 11 U.S.C. § 303(i), are strictly reserved. Moreover, any
recitation by the Debtor of the facts and circumstances concerning the involvement of Hogan
Lovells in its role as counsel to the at-the-time putative Debtor shall not in any way, shape, or form
be dispositive of the assertions and recitations contained in the Disclosure Statement, Plan, or any
amendments thereof or in the counter statement contained in Hogan Lovell's Limited Objection to
the Second Amended Disclosure Statement. Moreover, Hogan Lovell's claims for fees incurred
on behalf of the putative Debtor shall not be impacted in any fashion by the disputed assertions
and characterizations ascribed to Hogan Lovell's aforementioned role as counsel for the putative
Debtor by the Trustee of Kris Roglieri in his role as representative of the estate of the Debtor
herein, nor shall the same be deemed dispositive of any issue related to Hogan Lovell's claims nor
any objection to same that may be raised by any party in interest.

27.    <u>Validity and Enforceability</u>

Each term and provision of the Plan is valid and enforceable pursuant to its terms.

28.    <u>Further Actions; Implementation</u>

The Debtor is authorized and directed to execute, deliver, file or record such documents, contracts, instruments, releases and other agreements and take such other or further actions as may be necessary to effectuate or further evidence the terms and conditions of the Plan.

29.    <u>Conflicts between Confirmation Order and Plan</u>

In the event of a conflict between the terms of the Plan and any contract, instrument, release or other agreement or document created or entered into in connection with the Plan, the terms of the Plan shall control over any such documents.  In the event of a conflict between the terms of the Plan or any contract, instrument, release or other agreement or document entered into in connection with the Plan, on the one hand, and the terms of this Confirmation Order, on the other hand, the terms of this Confirmation Order shall control.  In the event of a conflict between the information contained in the Disclosure Statement, on the one hand, and the terms of the Plan, this Confirmation Order or any contract, instrument, release or other agreement or document entered into in connection with the Plan, on the other hand, the Plan, this Confirmation Order or any contract, instrument, release or other agreement or document entered into in connection with the Plan (as the case may be) shall control.

30.    <u>Reference to and Validity and Enforceability of Plan Provisions</u>

The failure to reference any particular provision of the Plan in this order shall not impair, prejudice, waive or otherwise affect the binding effect, enforceability or legality of such provisions, and such provisions shall have the same binding effect, enforceability or legality as every other provision of the Plan and this order.  Each term and provision of the Plan, as it may have been altered or interpreted by this Court, is valid and enforceable pursuant to its terms.

31.     <u>Closing of the Case</u>

The Chapter 11 Case shall be closed following the consummation of the Plan upon further

application and approval of the Court.

32.     <u>Record Closed</u>

The record of the Confirmation Hearing is hereby closed.

33.     <u>Final Order</u>

This order is a final order and the period in which an appeal must be filed shall commence

upon the entry hereof.

###

## **Exhibit A**

The Plan

**<u>Exhibit B</u>**

Notice of Confirmation

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

In re:

PRIME CAPITAL VENTURES, LLC,                    Case No. 24-11029-REL
                                                Chapter 11

                              Debtor.

**NOTICE OF (I) ENTRY OF AN ORDER CONFIRMING FIRST AMENDED PLAN**
**OF LIQUIDATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE;**
**(II) OCCURRENCE OF EFFECTIVE DATE; (III) ADMINISTRATIVE**
**EXPENSE CLAIM BAR DATE; AND (IV) REJECTION DAMAGES BAR DATE**

TO ALL CREDITORS, AND PARTIES IN INTEREST OF THE ABOVE DEBTOR, PLEASE TAKE NOTICE OF THE FOLLOWING:

        Confirmation of the Plan.  On _____ __, 2025 (the "Confirmation Date"), the United States Bankruptcy Court for the Northern District of New York (the "Bankruptcy Court") entered its *Findings of Fact, Conclusions of Law, and Order (I) Pursuant to 11 U.S.C. § 1125 Approving Adequacy of Second Amended Disclosure Statement for First Amended Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code and (II) Pursuant to 11 U.S.C. § 1129 and Fed. R. Bankr. P. 3020 Confirming the First Amended Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. __] (the "Confirmation Order").  Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to them in the Plan or the Confirmation Order, as applicable.  The Plan, the Disclosure Statement and the Confirmation Order may be viewed at (i) the Office of the Clerk, United States Bankruptcy Court for the Northern District of New York,  and (ii) the Bankruptcy Court's website www.nynb.uscourts.gov (a PACER account is required).  Copies are also available upon request to the undersigned counsel to the Debtor.

        Effective Date.  Pursuant to the Confirmation Order, the Debtor[4] hereby certifies and gives notice that the Plan became effective in accordance with its terms, and the Effective Date occurred on [_____], 2025 (the "Effective Date").

        Bar Date for Administrative Expense Claims. Pursuant to section 5.9 of the Plan, any person asserting an Administrative Expense Claim must file and serve an Administrative Expense Claim on or before [_____].  Persons asserting an Administrative Expense Claim that fail to file an Administrative Expense Claim on or before [_____] shall be forever barred for asserting any such right to payment as against the Debtor, its Estate, the Roglieri Trustee, the Plan Administrator, or the Oversight Committee.

---

[4] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

Bar Date for Rejection Damages.    Pursuant to section 6.2 of the Plan, except as expressly provided in the Plan, all executory contracts and unexpired leases not previously assumed are rejected as of the Effective Date.  All claims arising from the rejection of an executory contract must be filed no later than [＿＿＿＿＿＿].  Persons asserting a claim for rejection damages that fail to file a claim for rejection damages on or before [＿＿＿＿＿＿] shall be forever barred for asserting any such right to payment as against the Debtor, its Estate, the Roglieri Trustee, the Plan Administrator, or the Oversight Committee.

Dated:  New York, New York
      ＿＿＿＿＿ __, 2025

                   **KLESTADT WINTERS JURELLER
                   SOUTHARD & STEVENS, LLP**

By:   _____

        Fred Stevens
        Lauren C. Kiss
        200 West 41st Street, 17th Floor
        New York, New York 10036
        Tel: (212) 972-3000
        Fax: (212) 972-2245
        Email: fstevens@klestadt.com
               lkiss@klestadt.com

        *General Counsel to Prime Capital Ventures,
        LLC*