UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

_____

In re:

      PRIME CAPITAL VENTURES, LLC,

                              *Debtor*.

_____

Case No. 24-11029
Chapter 11

APPEARANCES:

Christian H. Dribusch, Esq.
The Dribusch Law Firm
*Personal Representative of the Sole Member of Debtor*
187 Wolf Road, Suite 300-20
Albany, New York 12205

Fred Stevens, Esq.
Lauren Kiss, Esq.
Klestadt Winters Jureller Southard & Stevens, LLP
*Attorneys for Debtor*
200 West 41st Street, 17th Floor
New York, New York 10036

M. Patrick Everman, Esq.
Bradley Arant Boult Cummings LLP
*Attorney for B and R Acquisition Partners, LLC
and JHM Lending Ventures, LLC*
188 E Capitol Street, Suite 1000
Jackson, Mississippi 39201

William L. Esser, Esq.
Parker Poe Adams & Bernstein LLP
*Attorney for Compass-Charlotte 1031, LLC*
620 South Tryon Street, Suite 800
Charlotte, North Carolina 28202

Joseph P. Lombardo, Esq.
Chapman and Cutler LLP
*Attorney for ER Tennessee LLC*
320 South Canal Street
Chicago, Illinois 60606

Douglas T. Tabachnik, Esq.
Law Offices of Douglas T. Tabachnik, P.C.
*Attorney for Hogan Lovells US LLP*
63 West Main Street, Suite C
Freehold, New Jersey 07728

Jon Travis Powers, Esq.
White and Williams LLP
*Attorney for Piper Capital Funding LLC*
7 Times Square, Suite 2900
New York, New York 10036

Lisa M. Penpraze, Esq.
Office of the United States Trustee
*Assistant United States Trustee*
11A Clinton Avenue, Room 620
Albany, New York 12207

Robert E. Littlefield, Jr., United States Bankruptcy Judge

## MEMORANDUM DECISION AND ORDER

Currently before the Court for approval and confirmation are the second amended

disclosure statement and first amended plan of liquidation, respectively, of Prime Capital Ventures,

LLC ("Prime"). The Court has jurisdiction via 28 U.S.C. §§ 157(a), (b)(1), (b)(2)(A) and 1334(b).[1]

Venue is proper pursuant to 28 U.S.C. § 1409(a).

## FACTS[2]

On December 6, 2024, Prime filed its Chapter 11 plan of liquidation as well as the related

disclosure statement. (ECF Nos. 77–78). A hearing on the disclosure statement was scheduled for

---

[1] Unless otherwise indicated, all chapter and section references are to the United States Bankruptcy Code, 11 U.S.C. §§ 101–1532 (2025) ("Bankruptcy Code").

[2] The Court notes that this is the third bankruptcy case involving Prime. The first was filed as an involuntary Chapter 7 on December 19, 2023, while Prime was still operated by its principal, Kris Daniel Roglieri ("Roglieri"). *See Prime Capital Ventures, LLC*, Case No. 23-11302 (Bankr. N.D.N.Y.). The second was filed on May 14, 2024, under Chapter 11 by Paul A. Levine, Esq. (the "Receiver") in his role as federal receiver of Prime. *See Prime Capital Ventures, LLC*, Case No. 24-10531 (Bankr. N.D.N.Y.). This third case was filed on September 16, 2024, by Christian H. Dribusch, Esq. ("Dribusch") in his capacity as the personal representative of Prime's sole member.

January 29, 2025. (ECF No. 79). On December 23, 2024, Prime filed the first amended plan (the "Plan") and the first amended disclosure statement. (ECF Nos. 91–92). In addition, Prime filed a motion seeking to: (1) schedule a combined hearing on the plan and disclosure statement, (2) approve the form and manner of notice, (3) establish procedures for objecting to the plan and disclosure statement and (4) approve solicitation procedures. (ECF No. 94). On January 8, 2025, the Court entered an order granting the motion and scheduling a combined hearing on the Plan and disclosure statement for February 26, 2025 (the "Combined Hearing").[3] (ECF No. 114). On January 9, 2025, Prime filed the second amended disclosure statement (hereinafter, the "Disclosure Statement"). (ECF No. 118). On February 7, 2025, Prime filed a supplement to the Plan containing a proposed Plan Administrator Agreement. (ECF No. 147).

On February 19, 2025, Hogan Lovells US, LLP ("Hogan Lovells") filed a limited objection to the Disclosure Statement. (ECF No. 150). That same day, B and R Acquisition Partners, LLC and JHM Lending Ventures, LLC (collectively, the "B&R Parties") filed an objection to the Plan. (ECF No. 153). On February 20, 2025, Prime indicated that the B&R Parties' objection to the Plan had been resolved with additional language added to the proposed confirmation order. (ECF No. 155). On February 26, 2025, Prime indicated that Hogan Lovells' limited objection to the Disclosure Statement had also been resolved by adding consensual language to the proposed confirmation order. (ECF No. 158).

On February 19, 2025, Prime submitted its certification of the ballots. (ECF No. 152). The certification indicated that five ballots were received prior to the voting deadline representing claims of $103,768,468.84; all five ballots are in favor of confirmation.[4] *Id.* Prime also received

---

[3] On February 24, 2025, the Court adjourned the Combined Hearing to March 4, 2025.

[4] The five creditors who timely voted in favor of confirmation are: Camshaft CRE 1 LLC, Compass-Charlotte 1031, LLC, ER Tennessee LLC, Motos America Inc. and Onward Holding, LLC. (ECF No. 152, Ex. A).

one ballot after the voting deadline in favor of confirmation.[5] *Id.* On February 20, 2025, Prime submitted declarations by Dribusch and Brian Ryniker, CPA and a memorandum of law in support of confirmation of the Plan. (ECF Nos. 155–57). On February 26, 2025, Prime filed a letter with the Court regarding revisions to the proposed confirmation order. (ECF No. 158).

On March 4, 2025, the Court held the Combined Hearing and subsequently placed the matters on reserve. (ECF No. 162).

## ARGUMENTS

Prime argues that approval of the Disclosure Statement and confirmation of the Plan is appropriate in this case. Prime contends that notice of the Disclosure Statement and Plan was proper, the remaining objections were consensually resolved and the Bankruptcy Code requirements are satisfied.

The United States Trustee ("UST"), Compass-Charlotte 1031, LLC ("Compass-Charlotte"), ER Tennessee LLC ("ER Tennessee") and Piper Capital Funding, LLC ("Piper Capital") all indicated their support for the Disclosure Statement and Plan. While they did not explicitly indicate support for the Plan and Disclosure Statement, Hogan Lovells and the B&R Parties affirmed on the record that their objections had been resolved.

## DISCUSSION

### I.    Chapter 11 Plan

Pursuant to the Bankruptcy Code, the Court shall only confirm a Chapter 11 plan if it satisfies the sixteen enumerated requirements of § 1129(a). *See* 11 U.S.C. § 1129(a). "The

---

[5] The creditor who voted in favor of confirmation, albeit untimely, is Piper Capital Funding, LLC. (ECF No. 152, Ex. B).

proponent of the confirmation of a plan must prove by a preponderance of the evidence that it satisfies the relevant requirements of 11 U.S.C. § 1129(a) . . . ." *In re Breitburn Energy Partners LP*, 582 B.R. 321, 349 (Bankr. S.D.N.Y. 2018) (citing *In re Quigley Co.*, 437 B.R. 102, 125 (Bankr. S.D.N.Y. 2010)).

The objections of Hogan Lovells and the B&R Parties were resolved prior to the confirmation hearing. (*See* ECF Nos. 150, 153, 155, 158). Nevertheless, the Court has an independent duty to review the Disclosure Statement and Plan. *See In re Valley Park Group, Inc.*, 96 B.R. 16, 21–22 (Bankr. N.D.N.Y. 1989) ("[T]he Court has an independent duty to insure that the plan-proponent has complied with Code § 1129 . . . ."); *In re Young Broad, Inc.*, 430 B.R. 99, 139 (Bankr. S.D.N.Y. 2010) ("[The Court] has an independent duty to ensure that the requirements of 11 U.S.C. § 1129 are satisfied, even if no objections to confirmation have been made."). The Court has "an obligation to make a careful study of the plan and make informed judgment as to whether the plan is in the best interest of the creditors." *In re Trail's End Lodge, Inc.*, 54 B.R. 898, 902 (Bankr. D. Vt. 1985) (citing *United Properties Incorporated v. Emporium Department Stores*, 379 F.2d 55 (8th Cir. 1967)); *see also In re Bolton*, 188 B.R. 913, 915 (Bankr. D. Vt. 1995).

The Court does not take issue with Prime's findings that § 1129(a)(1)–(3),(6),(8)–(16) are satisfied. As such, the Court will focus its analysis on the remaining confirmation requirements.

### A.  11 U.S.C. § 1129(a)(4)

Under the Code, confirmation of a plan requires that:

> Any payment made or to be made by the proponent [or] by the debtor . . . for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable.

11 U.S.C. § 1129(a)(4).

Section 5.4(b) of the Plan provides for the reimbursement of costs and expenses for the Oversight Committee. According to that section, reasonable expenses incurred by committee members[6] may be paid by the Plan Administrator without Court approval. (ECF No. 91 at 24). This seems to directly contradict § 1129(a)(4). While counsel for Prime indicated on the record at the confirmation hearing that Oversight Committee expenses are likely to be nominal, the Court is not reassured. (ECF No. 162 at 24:35). The core tenets of the plan are centered around the Plan Administrator and Oversight Committee working hand-in-hand to navigate millions of dollars in claims as well as manage a complex web of potential lawsuits. It would seem far less likely than not that the expenses incurred would be so small as to warrant removing the Court's ability to review them.[7]

Tied to the Plan is the proposed Plan Administrator Agreement which provides a more in-depth breakdown of the Plan Administrator's function. (*See* ECF No. 158-3). Section 3.2 of the Plan Administrator Agreement states that "the Court's approval of . . . fees and expenses incurred by the Plan Administrator's professionals is only necessary if the Oversight Committee . . . objects to the fees and expenses incurred by the Plan Administrator's professionals." (ECF No. 158-3 at 8). In addition, the Plan calls for the reasonable costs of attorneys retained by the Oversight Committee to prosecute any objections[8] "will be paid by the Plan Administrator in the same manner as the Plan Administrator's professionals." (ECF No. 91 at 24).

---

[6] Given that the members of the Oversight Committee are corporate entities, it is unclear who the "members" will actually be: corporate officers, legal counsel or someone else. This in turn raises questions as to said individual's compensation, as expenditures attributed to a corporate officer would likely be significantly less than those of a retained professional.

[7] This also suggests that the impact of Oversight Committee-related expenses on the liquidation analysis may be greater than initially calculated.

[8] It is unclear whether professionals retained by members of the Oversight Committee in the ordinary course of their work would be compensated in the same manner as the professionals retained to prosecute objections. Due to the lack

Taken together, the Plan and related documents remove the Court's ability to review and approve expenses incurred by members of the Oversight Committee, professionals of the Oversight Committee and professionals of the Plan Administrator. This is a cause for concern as it implicates significant conflicts of interest. The members of the Oversight Committee are to be paid by the very person they are charged with overseeing. Both the Oversight Committee and Plan Administrator may also be incentivized to approve each other's professional fees. This Court is no stranger to the risks of ballooning professional costs. While the Court does not believe this was Prime's intent, the system proposed creates a risk of escalating fees outside of Court purview that would necessarily harm other creditors and the estate.

For the reasons stated, the Plan does not comply with § 1129(a)(4) and cannot be confirmed.

### B. 11 U.S.C. § 1129(a)(5)

Pursuant to § 1129(a)(5), a plan proponent must identify those individuals who will effectuate the plan and their appointment must be "consistent with the interests of creditors and equity security holders and with public policy." 11 U.S.C. § 1129(a)(5). The Plan calls for Dribusch to be appointed as Plan Administrator and for Compass-Charlotte, ER Tennessee and Piper Capital to be appointed as the members of the Oversight Committee.[9] (ECF No. 147). The Court does not take issue with the selection of ER Tennessee and Piper Capital. However, the selection of Compass-Charlotte raises some concerns.

---

of clarity, the Court will assume that those professional expenses would also be paid pursuant to Section 5.4 of the plan.

[9] The Court raises its own concerns regarding the need for an Oversight Committee hereafter. *See, infra,* at footnote 15.

As a result of the dismissal of the involuntary bankruptcy against Prime, the Court reserved jurisdiction over the issue of whether Prime is entitled "pursuant to Bankruptcy Code § 303(i) [to] costs, attorneys' fees and damages, including punitive damages" from Compass-Charlotte and the other petitioning creditors. *In re Prime Capital Ventures, LLC*, Case No. 23-11302 at ECF No. 87. Prime previously sought to abandon these causes of action, though the motion was denied. (ECF Nos. 31, 122). Therefore, Prime has an outstanding cause of action against Compass-Charlotte.

This seemingly creates a conflict of interest. Under the Plan, the Oversight Committee works with the Plan Administrator "to determine whether to bring, settle, release, or compromise . . . Causes of Action . . . without the need for Court approval." (ECF No. 91 at 22). It is not unreasonable to assume that Compass-Charlotte will hold a rather staunch position on matters involving the § 303(i) claim against it. While Prime assured the Court at the confirmation hearing that Compass-Charlotte would not be a party to those discussions, its position on the Oversight Committee and general influence in this case could detrimentally impact the decision-making of the Plan Administrator and other committee members. (ECF No. 162 at 27:05; 27:30).

The matter of the § 303(i) claim is thrown into further jeopardy by Compass-Charlotte's position on the Oversight Committee due to the injunctions proposed under the Plan. There is an argument to be made that the Article 8 injunction provided to members of the Oversight Committee, as currently worded, could impede any effort to pursue the § 303(i) claim against Compass-Charlotte. (*See* ECF No. 91 at 29). Prime, in response to the objection by Hogan Lovells, did amend its proposed confirmation order to address issues concerning the § 303(i) claim. (ECF No. 158-1 at 27). However, the added language is not sufficient to assuage the Court's concerns.

It was also noted on the record that Compass-Charlotte intends to file a substantial contribution claim. (ECF No. 162 at 27:50); *see* 11 U.S.C. 503(b). This, too, creates some

-8-

discomfort as the administrative expense claim and § 303(i) claim are essentially at odds: one suggests that Compass-Charlotte has benefitted Prime while the other suggests that it has harmed Prime. Additionally, the Plan Administrator is to consult with the Oversight Committee[10] about claim objections, and the matter of addressing administrative claims will certainly have an effect on unsecured creditors. (ECF No. 91 at 23).

Prime correctly pointed out at the confirmation hearing that any committee comprised of creditors is bound to have some form of conflict. (ECF No. 162 at 26:55). While this may be true, such general conflicts are rarely of the scope seen here. Prime also indicated on the record that it had declined to offer a position on the Oversight Committee to another "based on some [] adversarial issues that we think that that party is going to have." (ECF No. 162 at 25:56). While the Court does not know which creditor was rejected, it is hard to believe that the conflict was more significant than that involving Compass-Charlotte.

For the reasons stated, the Plan does not comply with § 1129(a)(5) and cannot be confirmed.

### C.  11 U.S.C. § 1129(a)(7)

"Section 1129(a)(7), commonly known as the 'best interest of creditors' requirement, establishes that a creditor must receive no less in a reorganization than it would in liquidation." *Argo Fund Ltd. v. Bd. of Dirs. Of Telecom Arg., S.A. (In re Bd. of Dirs. Of Telecom Arg., S.A.)*, 528 F.3d 162, 173 (2d Cir. 2008) (citing *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 649 (2d Cir. 1988)); *see also* 11 U.S.C. § 1129(a)(7)(A)(ii).

> "In order to show that a payment under a plan is equal to the value that the creditor would receive if the debtor were liquidated, there must be a liquidation analysis of some type that is based on evidence and not mere assumptions or assertions."

---

[10] Prime indicated on the record that Compass-Charlotte would not be a party to these discussions. (ECF No. 162 at 28:04). Nevertheless, the Court still has concerns regarding the effect Compass-Charlotte's position on the Oversight Committee may have on the deliberations of the other members and the Plan Administrator.

However, the valuation of a hypothetical chapter 7 liquidation is, by nature, "inherently speculative" and "is often replete with assumptions and judgments." *In re Adelphia Communications Corp.*, 361 B.R. 337, 366–67 (Bankr. S.D.N.Y. 2007) (quoting *In re Smith*, 357 B.R. 60, 67–68 (Bankr. M.D.N.C. 2006); *In re Affiliated Foods, Inc.*, 249 B.R. 770, 788 (Bankr. W.D. Mo. 2000)). Upon review, the Court identified several concerns with the liquidation analysis provided.[11]

First, the liquidation analysis indicates that Prime has approximately $1,980,622.00 in cash. (ECF No. 118 at 63). Prime's monthly operating report for January 2025 now indicates that there is approximately $1,971,742.96. (ECF No. 159-1 at 3). Included in that value is $100,084.18 attributed to funds disgorged by Pashman Stein Walder Hayden, P.C. ("Pashman") to the Receiver[12] in a related District Court matter. *In re Kris Daniel Roglieri*, Case No. 24-10157 at ECF No. 108; *see Compass-Charlotte 1031, LLC v. Prime Capital Ventures, LLC et al.*, Case No. 24-cv-55 (N.D.N.Y.). However, it is unclear how Prime is currently able to claim ownership of these funds. According to documents filed by Pashman, their retainer was paid by Prime Commercial Lending, LLC ("PCL"), one of the other businesses owned by Roglieri. (ECF Nos. 70, 83 at 6). There have been extensive arguments in Prime's involuntary bankruptcy case that those funds originated from 1800 Park Avenue LLC and were improperly transferred from Prime's bank account. *See In re Prime Capital Ventures, LLC*, Case No. 23-11302. However, Prime has not yet

---

[11] Recently, Southern Trust Bank and Farmers State Bank of Alto Pass filed motions for relief from the automatic stay wherein they indicated that Prime had issued mortgages to Hudson & Hudson LLC. (*See* ECF Nos. 96, 143). Though the matters have since been resolved, Prime has not amended its schedules and/or its liquidation analysis to include potential collection, if any, of said notes receivable. Nevertheless, the Court recognizes the number of moving parts in this case and assumes that it will be addressed in the future.

[12] There are outstanding issues concerning the professional fee claims of the Receiver and Bond, Schoeneck & King, PLLC, as well as the possible turnover of funds received by both. *See* Claim Nos. 22-1, 23-1; (ECF No. 21); *see also In re Prime Capital Ventures, LLC*, Case No. 24-10531. The Receiver's accounting also indicates that Lemery Greisler LLC and BST & Co. CPAs, LLC were compensated for work performed in furtherance of the receivership, though the source of said compensation is not clear. (ECF No. 21 at 121–22). Prime indicated on the record that it was aware of these matters, and the Court anticipates they will be addressed when appropriate. (ECF No. 162 at 50:40–53:57).

sought affirmative relief to bring that money back under its own umbrella.[13] Until that time, the funds cannot be attributed to Prime's liquidation analysis.

Second, the liquidation analysis includes a line item for real estate; more specifically, the property located at 600 Linkhorn Drive, Virginia Beach, Virginia 23451 (the "Virginia Beach Property").[14] (ECF No. 118 at 63). In the notes, Prime indicates that "[t]he values indicated in the liquidation analysis for the Virginia Beach Property relate to the potential value of the causes of action by the Bankruptcy Estate against the B&R Parties." *Id.* Yet Prime lists two different values for the causes of action: $4,023,154.00 under the plan and $3,620,839.00 under liquidation. *Id.* On the record, Prime indicated that the difference in values is due to a 10% discount used to account for the more distressed nature of sales under Chapter 7.[15] (ECF No. 162 at 35:01). While such a discount may be appropriately applied to real or personal property, it is unclear why such a discount would apply to a cause of action; a cause of action would seemingly have the same value regardless of the bankruptcy chapter. Without further explanation, it is improper to assume different values for these causes of action.[16]

---

[13] Prime would also have to address the language in this Court's previous order that "the Disgorged Funds shall remain on deposit pending further order of the United States District Court for the Northern District of New York in *Compass-Charlotte 1031, LLC v. Prime Capital Ventures, LLC et al. (24-CV-55 MAD/CFH)*." *In re Roglieri*, Case No. 24-10157 at ECF No. 108.

[14] On January 15, 2025, the United States Department of Justice filed an amended complaint in a related civil forfeiture action to include the Virginia Beach Property. *U.S. v. One 2003 Ferrari Enzo AB Version E, et al.*, Case No. 24-cv-1345 at ECF No. 20 (N.D.N.Y. Jan. 15, 2025). As discussed at the confirmation hearing, this seems to create a rather strong likelihood that the causes of action against the B&R Parties may become moot. (ECF No. 162 at 29:36–32:30; 35:55; 42:43). Thus, there is a question as to whether these values belong in the liquidation analysis.

[15] Here, the Court is not certain that a 10% discount is necessarily appropriate in this case. Given the extensive investigation and litigation that needs to be performed, Prime would seemingly have sufficient time to properly market its property even in a Chapter 7 setting.

[16] The Court need not address the validity or likelihood of success of these causes of action at this time.

Third, the liquidation analysis includes a line item labeled "Wind-down budget / Ch 7 professionals" valued at $1,000,000 for both the plan and theoretical liquidation. (ECF No. 118 at 63). A note to the liquidation states:

> Currently, the Wind-Down Budget is an estimate of fees related to the Plan Administrator (at 2% of proceeds) and related professionals to administer existing assets and investigate potential actions. It is intended that for the prosecution of any potential claims, professionals will be paid based on a contingency fee arrangement.

*Id.* The issue is that there would not be a Plan Administrator in a Chapter 7 liquidation as that role would be performed by the Chapter 7 Trustee, whose compensation is accounted for in a separate line item. *Id.* There is also a question as to how the remaining balance of the Wind-Down Budget was calculated. At the confirmation hearing, counsel for Prime indicated that the prosecution of the anticipated actions would be performed by firms working either on a contingency basis or a regular hourly fee basis. (ECF No. 162 at 44:00–47:40). However, Prime has not provided an estimated recovery from these anticipated actions nor an idea of how many of these cases will use a contingency basis. The Court is aware that Prime has not concluded its investigations and likely could not provide a more accurate estimate. However, without additional information concerning how the Wind-Down Budget value was surmised, it appears premature to include it in the analysis.

The Court does not reach a conclusion as to whether this case would be better off under Chapter 7 as opposed to Chapter 11. However, there are sufficient questions regarding the liquidation analysis that prevent the Court from concluding that the Plan complies with § 1129(a)(7).

### D.  Other Considerations

In addition to the issues concerning the requirements of § 1129 raised *supra*, the Court also has concerns with other aspects of the Plan.

-12-

### 1. Court Oversight

"A bankruptcy court retains post-confirmation jurisdiction in a chapter 11 proceeding only to the extent provided in the plan of reorganization." *Hospital & Univ. Property Damage Claimants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 7 F.3d 32, 34 (2d Cir. 1993) (citations omitted). "A Bankruptcy Court's jurisdiction continues post-confirmation to protect its confirmation decree, to prevent interference with the execution of a confirmed plan, and to otherwise aid in its operation." *In re Spiegel Inc.*, Case No. 03-11540, 2007 Bankr. LEXIS 234, at *10 (Bankr. S.D.N.Y. Jan. 23, 2007) (citing *In re Chateaugay Corp.*, 201 B.R. 48, 64 (Bankr. S.D.N.Y. 1996)).

Under the Plan, the Plan Administrator and Oversight Committee seek the ability to carry out certain acts without the need for Court approval. Said acts include: issuing Rule 2004 subpoenas; determining whether to bring, settle, release or compromise causes of action; compromising and settling claims; and abandoning assets. (ECF No. 91 at 21–23). While the Court would still be involved to resolve disputes between the Plan Administrator and Oversight Committee concerning these acts, its day-to-day oversight would be largely curtailed.

Prime cites several cases in the Southern District of New York[17] where the bankruptcy court ceded oversight to the parties. (*See* ECF No. 157 at 31–32). However, these cases are factually distinguishable from and lack the post-confirmation complexity of this case. In each of the cited cases, the plans primarily focused on liquidating estate assets, reorganizing corporate structures and settling any remaining issues; it appears there was relatively little left to do post-

---

[17] While not explicitly cited on this issue in the memorandum of law, *In re M. Burton Marshall* was referenced by Prime at the confirmation hearing as another case where the bankruptcy court relinquished significant oversight. (ECF No. 162 at 1:01:42); *see In re M. Burton Marshall*, Case No. 23-60263 (Bankr. N.D.N.Y.). While this case is more factually similar to the present matter, the record in the former does not indicate that any significant discussion of the provisions in question was held during the confirmation hearing. *See In re M. Burton Marshall*, Case No. 23-60263 at ECF No. 432. Thus, the Court does not find *In re M. Burton Marshall* to be persuasive.

confirmation in terms of investigation and litigation. *In re 305 E. 61st St. Grp. LLC*, Case No. 19-11911 at ECF No. 219 (Bankr. S.D.N.Y. Aug. 21, 2020); *In re A.B.C. Carpet Co., Inc., et al.*, Case No. 21-11591 at ECF No. 382 (Bankr. S.D.N.Y. Mar. 3, 2022); *In re Agera Energy LLC, et al.*, Case No. 19-23802 at ECF No. 777 (Bankr. S.D.N.Y. Jun. 16, 2020); *In re Barneys New York, Inc., et al.*, Case No. 19-36300 at ECF No. 789 (Bankr. S.D.N.Y. Feb. 5, 2020); *In re SunEdison. Inc., et al.*, Case No. 16-10992 at ECF No. 3735 (Bankr. S.D.N.Y. Jul. 28, 2017).

Here, post-confirmation for Prime appears to be anything but simple. Prime has poised itself to conduct a large-scale investigation of parties that may have contributed to the company's alleged deceptive practices and commence a litany of litigation to accumulate significant assets for the estate. This will be no small feat and will likely take quite some time to conclude. The Court can certainly appreciate Prime's intent to maximize efficiency post-confirmation and does not seek to be an impediment. Nevertheless, it is uncomfortable removing judicial checks and balances to the degree proposed in the Plan when the future of this case and the proceedings therein remains largely unknown.[18]

### 2. Ponzi Scheme Determination

Included in Dribusch's declaration and Prime's memorandum of law is a request that the Court find that Prime was an "advance fee/Ponzi scheme." (ECF No. 155 at 32; ECF No. 157 at 56–71).

Like with the issue concerning Court approval, Prime notes that other courts have made a Ponzi scheme finding in their confirmation orders. (ECF No. 157 at 57). Yet those cases, like the

---

[18] With the retention of oversight by the Court, it becomes unclear what purpose the Oversight Committee would serve under a new plan. Seemingly the Court would conduct its own review and provide the venue for any creditors to voice opposition of the Plan Administrator's acts, thus negating the need for a standalone committee. While the Court is not drawing any conclusions as to the propriety of the Oversight Committee, the justification for maintaining said committee will need to be further elaborated upon in future filings.

ones raised in support of curtailing court oversight, are also distinguishable. In *In re M. Burton Marshall*, the Ponzi scheme determination was made pursuant to a properly noticed motion. *In re M. Burton Marshall*, Case No. 23-60263 at ECF No. 404 (Bankr. N.D.N.Y.). While the Ponzi scheme determination was included in the confirmation order in *In re iCap Enterprises, Inc., et al.*, every iteration of the plan noticed to parties included language that such a determination would be sought in the confirmation order. *In re iCap Enterprises, Inc., et al.*, Case No. 23-01243 at ECF Nos. 1089, 1222, 1237, 1249, 1360 (Bankr. E.D. Wa.).

In the present matter, there was no mention of seeking a Ponzi scheme determination in the Plan. (*See* ECF No. 91). Further, the Disclosure Statement only provided a brief reference to such a determination in the background section. (ECF No. 118 at 25) ("The Debtor is seeking a finding that Roglieri was conducting an advance fee/Ponzi scheme by and through the Debtor.") In doing so, the Plan and Disclosure Statement failed to provide proper notice to interested parties that such a finding would be sought in the confirmation order. It wasn't until after the voting and objection deadlines passed that the pleadings referencing the determination were filed. (*See* ECF Nos. 155, 157). As such, interested parties who were entitled to vote on the plan, and who may be adversely affected by a Ponzi scheme determination, did not receive adequate and timely notice. It would be inequitable for the Court to now make such a determination when said parties have not had a proper chance to voice any concerns they may have.

Nor does Prime indicate why such a finding must necessarily be included in the confirmation order. This case was filed on September 16, 2024, and no motion has yet been filed to make such a determination. There is also nothing preventing Prime from seeking such a determination after confirmation, either as a standalone motion or as part of a § 548 action. These avenues would provide the necessary parties with adequate notice and the ability to object or

respond to the allegations made. Thus, the Court is not convinced that a Ponzi scheme determination should be included in confirmation at this time.

Until the matters referenced throughout this decision are resolved, the Court will not confirm the Plan.

**II.    Disclosure Statement**

Because confirmation of the Plan is denied, the matter of approving the Disclosure Statement is moot.

## CONCLUSION

The Court's decision on this matter should not be deemed to preclude confirmation of a plan under Chapter 11 in this case. However, the plan presently before the Court suffers from various deficiencies that strike at the heart of the plan's architecture. Any amendments made to the plan that sufficiently address the Court's concerns would effectively create a new plan; one which Prime's creditors would need additional time to review and consider. To ensure adequate notice to all creditors, and to prevent a "ship of Theseus" dilemma, the Court will deny confirmation so that a new disclosure statement and plan may be prepared, noticed and voted upon in due course.

Now, for the reasons stated herein, it is hereby

**ORDERED**, that confirmation of the Plan is denied without prejudice; and it is further

**ORDERED**, that approval of the Disclosure Statement is rendered moot.


Dated: March 28, 2025
Albany, New York

                                        /s/ Robert E. Littlefield, Jr._____
                                        Robert E. Littlefield, Jr.
                                        United States Bankruptcy Judge

-16-