**KLESTADT WINTERS JURELLER**
  **SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, NY 10036-7203
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Fred Stevens
Lauren Kiss
Kevin Collins

*Counsel to Prime Capital Ventures, LLC,*
  *Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
In re:                                          :
                                                :      Chapter 11
PRIME CAPITAL VENTURES, LLC                     :
                                                :      Case No. 24-11029-REL
                        Debtor.                 :
------------------------------------------------------------x
```

**DEBTOR'S APPLICATION FOR AN ORDER, PURSUANT TO FED. R. BANKR. P. 2004, AUTHORIZING THE DEBTOR TO EXAMINE AND SEEK DOCUMENTS AND INFORMATION FROM FINANCIAL INSTITUTIONS WITH ACCOUNTS OWNED OR CONTROLLED BY THE DEBTOR, ITS INSIDERS, OR ITS AFFILIATES, OR IN WHICH ANY OF THE FOREGOING <u>ARE BELIEVED TO HAVE SOME DIRECT OR INDIRECT INTEREST</u>**

**TO THE HONORABLE ROBERT E. LITTLEFIELD, JR.**
**UNITED STATES BANKRUPTCY JUDGE:**

      Prime Capital Ventures, LLC, the above-captioned debtor (the "<u>Debtor</u>"), by and through its counsel, Klestadt Winters Jureller Southard & Stevens, LLP, hereby submits this omnibus application (the "<u>Application</u>") seeking the entry of an order, pursuant to Fed. R. Bankr. P. 2004, authorizing the Debtor to issue subpoenas demanding the production of documents, whether in paper or electronic format, from any financial institutions with accounts owned or controlled by the Debtor, its insiders, or its affiliates, or in which any of the foregoing are believed to have some direct or indirect interest (each a "<u>Financial Institution</u>" or "<u>Examinee</u>", collectively, the "<u>Financial</u>

Institutions" or "Examinees") in substantially the same form as that annexed hereto as Exhibit A (the "Proposed Subpoena"), by entry of an order in substantially the same form as that attached hereto as Exhibit B (the "Proposed Order"). In support of the Application, the Debtor respectfully represents as follows:

## PRELIMINARY STATEMENT

The Debtor was created by its Principal, Kris Roglieri ("Roglieri"), in December 2021 as "a fund specifically designed to provide capital for large development, commercial development and commercial real estate transactions from $50 million to more than $1 billion."[1] The Debtor advertised that it would offer non-recourse lines of credit with rates at 4 to 6% with interest-only payments but would require borrowers to provide 20% cash upfront based on the total project cost (the "Borrower Prepayments"). The Borrower Prepayments would be held by the Debtor "'as prepaid interest throughout the term of the loan.'"[2] The Debtor obtained millions of dollars in Borrower Prepayments from multiple companies throughout the country which in most cases, upon information and belief, were used by the Debtor and Roglieri before the loans were closed and funded.[3]

On May 28, 2024, a criminal complaint was filed by the United States of America (the "Government") against Roglieri commencing Case No. 24-cr-00392 (MAD) (N.D.N.Y.) (the "Criminal Case"), wherein Roglieri is charged with five counts of wire fraud in violation of 18 U.S.C. § 1343, and for forfeiture of assets pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).[4] In the Criminal Case, the Government alleges, among other things, that Roglieri and

---

[1] *See* Petitioning Creditors' Motion for a Trustee, Case No. 23-11302, Dkt. No. 4, ¶¶ 22-23 (Dec. 19, 2023) (quoting May 2, 2022, marketing in DealMaker Magazine).
[2] *Id.*, ¶26.
[3] *Id.*, ¶37.
[4] Criminal Case, Dkt. No. 1 and Indictment at Dkt. No. 35 (Sept. 19, 2024).

2

others used the Debtor to operate a fraud and money laundering scheme.[5] Roglieri was arrested on May 31, 2024[6] and has been incarcerated since his arrest.[7]

The Debtor is now under the custody and control of Christian H. Dribusch ("Dribusch"), in his capacity as the chapter 7 trustee (the "Roglieri Trustee") of Roglieri's bankruptcy estate, the owner of all membership interests in the Debtor. By and through current management, the Debtor is in the process of conducting an extensive investigation of the Debtor's financial affairs. Upon information and belief, the Financial Institutions have documents, information, communications with the Debtor's former management, information regarding any financial accounts held by the Debtor and its affiliated individual entities, and other things critical to the Debtor's investigation including any documents related to any suspicious activity or other reports or investigations conducted by the relevant Financial Institution in connection with the Debtor's fraudulent activity.

For these reasons and as more fully forth below, the Debtor respectfully requests entry of the Proposed Order, authorizing the Debtor to serve subpoenas in substantially the same form as the Proposed Subpoena (once issued, each a "Subpoena," collectively, the "Subpoenas") upon each of the Financial Institutions.

**JURISDICTION**

1. This Court has jurisdiction over the bankruptcy case and this Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), and Rule 81.1 of the Local Rules for the United States District Court for the Northern District of

---

[5] Criminal Case, Dkt. No. 1, ¶4.
[6] Id. at Dkt. No. 12.
[7] Id. at Dkt. No. 71 (Jan. 30, 2025) (Memorandum-Decision and Order of the U.S. District Court finding that, among other things "the Government has met its burden of proving by clear and convincing evidence that [Mr. Roglieri] poses a danger to the community" and "that there are no conditions or set of conditions that would ensure the safety of the community if he was released.")

New York referring matters arising under Title 11 of the United States Code (the "Bankruptcy Code") to the Bankruptcy Court (Jan. 1, 2024).

2.  Venue of this case is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.  The statutory predicates for the relief sought herein is section 542(e) of the Bankruptcy Code and Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## CASE BACKGROUND

### A. The Debtor's Bankruptcy Cases and Receivership

4.  By December 2023, the Debtor was besieged by litigation largely from borrowers who did not get their loans funded and wanted the return of their Borrower Prepayments. *See*, *e.g.*, *Tuss Financial LLC v. Prime Capital, et al.*, Index No. 2023/510389 (N.Y.Sup. Ct. Kings Cty. Apr. 5, 2023) (seeking and apparently obtaining the return of $13.4 million); *B&R Acquisition Partners v. Prime Capital* (JAMS Arb., Aug. 2023) (seeking the return of $4 million); *Sturm v. Prime Capital*, Case No. 23-cv-1033 (N.D.N.Y. Aug. 22, 2023) (seeking the return of $2 million); *Camshaft CRE 1, LLC v. Prime Capital*, Case No. 2023-023173 (Fla. Circ. Ct., Miami-Dade Cty., Sept. 15, 2023) (seeking the return of $13.4 million); *The Lion Group DFW, LLC v. Prime Capital*, Case No. 23-DCV-34617 (Tex. Dist. Ct., 146th Dist., Sept. 21, 2023) (demand unknown); *Onward Partners, LLC, v. Prime Capital, et al.*, Case No. 23-cv-833 (D. Utah Nov. 13, 2023) (seeking the return of $20 million).

5.  On December 19, 2023, Compass-Charlotte 1031, LLC, 526 Murfreesboro, LLC, and Newlight Technologies, Inc. (collectively, the "Petitioning Creditors") filed an involuntary petition against the Debtor for relief under chapter 7 of the Bankruptcy Code commencing Case

No. 23-11302 ("Case 1"). The Petitioning Creditors commenced Case 1 for the obvious purpose of ensuring that the Debtor's assets and liabilities could be liquidated in a single, public forum, and that no single creditor could win the proverbial "race to the courthouse".

6. On January 8, 2024, the Petitioning Creditors filed their own motion to dismiss Case 1 [Case 1 Dkt. No. 74], which motion was granted by the Court on January 9, 2024 [Case 1 Dkt. No. 87]. Thereafter, Dribusch was discharged from his duties as chapter 7 trustee.

7. Three (3) days after dismissal of Case 1, on January 12, 2024, Petitioning Creditor Compass-Charlotte 1031, LLC commenced an action in the United States District Court for the Northern District of New York (the "District Court") under Case No. 24-cv-00055 (MAD) (CFH) (N.D.N.Y. Jan. 12, 1014) (the "Receivership Case"), seeking, among other things, the appointment of a federal equity receiver to take possession and control of the Debtor's assets and affairs. That same day, the District Court entered an order appointing Paul Levine as the temporary receiver (the "Receiver"). Receivership Case Dkt. No. 8.

8. On February 15, 2024, Roglieri filed a voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code commencing Case No. 24-10157 (REL) (the "Roglieri Case").

9. On May 14, 2024, the Debtor, by and through the Receiver, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court commencing Case No. 24-10531 ("Case 2").

10. On May 15, 2024, the Court entered an order converting Roglieri's case to one under chapter 7 of the Bankruptcy Code. Roglieri Case at Dkt. No. 159. Thereafter, the United States Trustee appointed Dribusch as the interim chapter 7 trustee. *Id.* at Dkt. No. 160. Dribusch has since qualified and is currently serving as permanent trustee, defined above as the "Roglieri

5

Trustee."

11. On June 25, 2024, B and R Acquisitions Partners, LLC and JHM Lending Ventures, LLC filed a motion to dismiss Case 2, claiming that the Receiver was not authorized to file the petition on behalf of the Debtor because he lacked the authority to do so pursuant to the terms of the orders of the District Court. Case 2 at Dkt. No. 57.

12. On July 23, 2024, the Court entered a memorandum decision and order dismissing Case 2 finding essentially that the Receiver did not have the authority to file Case 2 on behalf of the Debtor and that the Roglieri Trustee did not have the ability to waive the defect and ratify the filing *ex post facto*. *Id.* at Dkt. No. 85. The Debtor appealed that decision and order, which appeal is pending before the District Court at Case No. 24-civ-000939.

13. On September 16, 2024, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court commencing this bankruptcy case. In this case, the Debtor is under the control of the Roglieri Trustee as the party in possession and control of all equity interests in the Debtor, who is acting as the manager of the Debtor.

### B. The Debtor's Need to Investigate the Debtor's Financial Affairs and Obtain Documents from the Examinees

14. Roglieri is currently incarcerated pending trial and has been combative with the Roglieri Trustee and Debtor from his detention facility. *See, e.g.*, *Roglieri Request for Payment of $100,000 seized by the Roglieri Trustee to Roglieri's criminal counsel*, Roglieri Case Dkt. No. 269 (Oct. 7, 2024); *Roglieri's Objection to Debtor's Proposed Abandonment of Property*, Dkt. No. 39 (Oct. 15, 2024).

15. Moreover, in text messages discovered by the Government, Roglieri has admitted to an undisclosed person to committing criminal acts and trying to conceal that fact as follows:

6

| Date | Time | From | Message |
|---|---|---|---|
| 1/4/2024 | 11:20:42 am | Unknown | Can't you just keep working on those companies?<br><br>I know it might be hard at first, but look what you build this up to beat from nothing |
| 1/4/2024 | 11:20:56 am | Roglieri | Yea I can but not when I'm in f—king prison |
| 1/4/2024 | 11:21:09 am | Unknown | Why do you think that's gonna happen?<br><br>Why can't it just be a bankruptcy? |
| 1/4/2024 | 11:21:47 am | Roglieri | Because I unused others money to fund deals<br><br>I already told you this |
| 1/4/2024 | 11:22:02 am | Unknown | And that's illegal? |
| 1/4/2024 | 11:22:15 am | Roglieri | Yes |
| 1/4/2024 | 11:22:36 am | Unknown | How bad . I mean, what's the worst you do a couple years who cares<br><br>You have your family<br><br>This whole family will support you through this<br><br>It's a civil case it's not a criminal case |
| 1/4/2024 | 11:27:42 am | Roglieri | **It will turn criminal as soon as they get into bank statements** |

Criminal Case, Dkt. No. 6-1 (June 3, 2024) (emphasis added) (typographical and grammatical errors in originals).

16.     In a recent decision on Roglieri's motions for release pending trial in the Criminal Case, the District Court found, among other things, that "the Government has met its burden of proving by clear and convincing evidence that [Roglieri] poses a danger to the community" and "that there are no conditions or set of conditions that would ensure the safety of the community if he was released." Criminal Case, Dkt. No. 71, p.41 (Jan. 30, 2025).

17.     The facts of this case necessitate an investigation by the Debtor of the Debtor's financial affairs while under Roglieri's stewardship.  As such, the Debtor seeks the issuance of a Subpoena upon each of the Examinees to compel them to provide any and all documents related

7

to any financial accounts owned or controlled by the Debtor, its affiliates, or its insiders, or that any of the foregoing have an interest in.

**RELIEF REQUESTED**

18.     The Debtor seeks entry of the Proposed Order, substantially in the same form annexed hereto as <u>Exhibit B</u>, authorizing it to issue Subpoenas efficiently and economically to the Examinees which are believed to have information relating to the Debtor's financial affairs, property, and/or other assets.  The relevant Financial Institutions identified by the Debtor thus far are: (i) Interactive Brokers; (ii) Wells Fargo; (iii) KeyBank; (iv) M&T Bank; (v) Royal Bank of Canada; (vi) Shore United Bank; (vii) Citibank; (viii) Quad City; (ix) Farmers State Bank; (x) Thread Bank; (xi) ABNB Federal Credit Union.

19.     Further, in the interests of limiting the administrative costs to the Debtor's estate and for purposes of judicial economy, the Debtor requests that the Court authorize it to issue Subpoenas to any other Financial Institution, when and if the Debtor obtains a good faith basis to believe that such Financial Institution has knowledge or information concerning the financial affairs of the Debtor, or any affiliate or insider of the Debtor, without the need for additional orders of this Court.

### A. Bankruptcy Rule 2004 Permits Broad Discovery

20.     Bankruptcy Rule 2004(a) provides that "[o]n the motion of any party in interest, the court may order the examination of any entity."  It is well established that the investigation envisioned by this rule is broad-based, relating to any and all matters affecting the administration of the debtor's estate, as well as the conduct, liabilities or property of the debtor.

21.     Discovery under Rule 2004 is broader than that available under the Federal Rules of Civil Procedure. *In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991). "As a general proposition, [Bankruptcy] Rule 2004 examinations are appropriate

for revealing the nature and extent of the bankruptcy estate and for 'discovering assets, examining transactions, and determining whether wrongdoing has occurred.'" *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) (citations omitted). As such, courts have acknowledged that "[Bankruptcy] Rule 2004 examinations are broad and unfettered and in the nature of fishing expeditions." *Id. see also*, *In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991); *In re Silverman*, 36 B.R. 254, 258 (Bankr. S.D.N.Y. 1984).

22. The investigation of the Debtor is precisely what is authorized by Bankruptcy Rule 2004 and the examination of each of the Examinees is required because they have documents and information related to the Debtor's financial affairs that are not available from any other source.

23. Bankruptcy Rule 2004 permits the Debtor to issue subpoenas on any parties which the Debtor believes may have information relevant to its property and in furtherance of its investigation.

### B. *Documents and Information that the Debtor Requires*

24. The Debtor requires any documents or information related to any financial account of the Debtor, or any of its affiliates or insiders, including, but not limited to, any applications, accounting opening documents, signature cards, change of signatory cards, account title status change documents, financial power of attorney documents, periodic statements, front and back of all cancelled checks, deposit tickets, checks in deposit, withdrawal tickets cashier's checks, courtesy checks, wire transfers, online or internet transfers, or account closure documents.

25. Further, the Debtor requires any documents or information concerning each Financial Institution's efforts to comply with the various laws and regulations of the United States, its territories, and relevant regulatory bodies, related to "know your customer rules" and anti-money laundering compliance, including, but not limited to, the Federal Financial Institutions Examination Council *Bank Secrecy Act/Anti-Money Laundering Examination Manual*, and the

9

Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA PATRIOT) Act of 2001, Pub. L. No. 107-56, 115 Stat. 272 (2001). Such documents are critical to evaluating any claims that may belong to the Debtor or its creditor victims against any Financial Institutions.

26. The Debtor does not necessarily anticipate requiring oral examinations from the representatives of the Financial Institutions but requests the right to obtain such examinations following a full and unfettered production of documents.

## PROPOSED PROCEDURE

27. The Debtor proposes that the production of documents or electronic be made at either (i) the offices of the Debtor's counsel, Klestadt Winters Jureller Southard & Stevens, LLP, 200 West 41st Street, 17th Floor, New York, New York, 10036-7203, or such other location as may be within the 100-mile geographic limitation of Fed. R. Civ. P. 45(c); or (ii) any other location as agreed to by the Debtor and the Examinees.

28. The Debtor proposes to serve the subpoena *duces tecum* at least fourteen (14) days prior to the due date for the production or inspection of any documents or electronic files.

## NOTICE

29. Applications for relief under Rule 2004(a) are usually granted *ex-parte*. 9 *Collier on Bankruptcy* ¶ 2004.01[2] (15th ed. 2009), *citing* 1983 Advisory Committee Note to Fed. R. Bankr. P. 2004, *reprinted in* ch. 2004, App. 2004; *In re Sutera*, 141 B.R. 539, 540 (Bankr. D. Conn. 1992); *In re Wilcher*, 56 B.R. 428, 434 (Bankr. N.D.Ill. 1985); *In re Silverman*, 10 C.B.C.2d 1219, 36 B.R. 254 (Bankr. S.D.N.Y. 1984). Some bankruptcy courts even adopt local rules allowing the service of subpoenas under Bankruptcy Rule 2004(a) without having to file any application at all. *See e.g.,* D.N.J. L.B.R. 2004-1(b).

30. Here, out of an abundance of caution, the Debtor has proceeded with the Application by notice and hearing providing each of the already identified Examinees, all parties who have filed a notice of appearance in this case, Roglieri by and through his criminal defense counsel, and the United States Trustee, with an opportunity to object prior to consideration by the Court. Further, the Examinees will have ample opportunity to seek from this Court protection from any subpoena or information sought by the subpoena issued by the Debtor that the Examinee believes it has a basis to challenge.

31. With respect to any Financial Institutions provided with notice and an opportunity to object to this Application, the Debtor further submits that it should be permitted to serve Subpoenas by Federal Express ("FedEx"), other nationally recognized overnight carrier, or any other means of service allowed under Bankruptcy Rule 9016 is appropriate, because personal service on all persons subpoenaed pursuant to the terms of the Proposed Order would be unduly burdensome, expensive and would delay the Debtor's efforts to obtain information essential to uncovering whether causes of action exist that may significantly augment the Debtor's estate.

32. Courts in the Second Circuit have authorized alternative service when such service was reasonably "calculated to provide timely actual notice." *Med. Diagnostic Imaging PLLC v. CareCore Nat. LLC,* Case No. 06 CIV 13156, 2008 WL 3833238, at *2 (S.D.N.Y. Aug. 15, 2008); *Cordius Trust v. Kummerfeld,* Case No. 99 CIV 3700 (DLC), 2000 WL 10268, at *2 (S.D.N.Y. Jan. 3, 2000) ("Because alternative service by means of certified mail reasonably insures actual receipt of the subpoena by the witness, the "delivery" requirement of Rule 45 will be met"); *In re Shur,* 184 B.R. 640, 644 (Bankr. E.D.N.Y. 1995) (holding that Rule 45 of the Federal Rules of Civil Procedure (and by extension Bankruptcy Rule 9016) does not require personal service and that other service is permissible provided service was reasonably calculated to give actual notice).

Here, delivery by FedEx, other nationally recognized overnight carrier, or other means agreed to by the subpoenaed parties, is reasonably calculated to ensure actual receipt by the persons subject to any Subpoena.

33. Further, as to the parties upon which subpoenas will be served and which did not receive notice of this Application, any concerns regarding notice or due process are addressed by the fact that any entity served with a subpoena will have the opportunity to contest the scope or issuance of that subpoena, by providing the Debtor and the Debtor's counsel with a written statement setting forth such objection and the basis thereto. Additionally, if any objection cannot be consensually resolved between the Debtor and the subpoenaed party, such dispute may be raised with and heard by this Court upon such proper and additional notice as this Court may direct.

34. Based upon the foregoing, the Debtor submits that the proposed notice of the Application and hearing thereon as to the specifically named Examinees is adequate and that no further notice should be required. Further, based upon the foregoing, the Debtor submits that ample cause exists for the Court to grant it blanket authority to issue Rule 2004 subpoenas upon any other Financial Institution the Debtor believes has information pertinent in the investigation.

## NO PRIOR RELIEF

35. Except as specifically stated, no previous application for the relief sought herein has been made to this or any other court.

**WHEREFORE**, the Debtor respectfully requests that the relief requested herein be granted and the Court enter an order, substantially in the form of the Proposed Order annexed hereto as Exhibit B, and grant such other and further relief as is just and proper.

Dated:   New York, New York
        April 2, 2025

                                 **KLESTADT WINTERS JURELLER
                                  SOUTHARD & STEVENS, LLP**

                    By:   */s/ Fred Stevens*
                          Fred Stevens
                          Lauren C. Kiss
                          Kevin Collins
                          200 West 41st Street, 17th Floor
                          New York, New York 10036
                          Tel: (212) 972-3000
                          Fax: (212) 972-2245
                          Email: fstevens@klestadt.com
                                      lkiss@klestadt.com
                                      kcollins@klestadt.com

                          *Counsel to Debtor Prime Capital Ventures, LLC*