**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re:* <br><br> PRIME CAPITAL VENTURES, LLC, <br><br> Debtor <br><br>――――――――――――――――― <br><br> ER TENNESSEE LLC, <br><br> Plaintiff, <br><br> v. <br><br> PRIME CAPITAL VENTURES, LLC <br><br> Defendant. | Chapter 11 <br><br> Case No. 24-11029-1-rel <br><br><br> Adv. Pro. No. _____ |

**COMPLAINT**

ER Tennessee LLC ("*ER Tennessee*" or "*Plaintiff*"), by its undersigned counsel, and for its Complaint against Debtor Prime Capital Ventures LLC ("*Prime*"), respectfully states as follows:

**PARTIES**

1. ER Tennessee LLC is a Delaware limited liability company with its principal place of business located at 381 Park Avenue, Suite 1101, New York, New York 10016.

2. Debtor Prime is a New York limited liability company, and its principal place of business was located at 66 South Pearl Street, Albany, New York 12207. Upon information and belief, the sole member of Prime is Kris Roglieri who, upon information and belief, is a resident of New York and is currently incarcerated.

**JURISDICTION AND VENUE**

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334.

4.  As a request for determination whether an interest constitutes property of Prime's bankruptcy estate, this is a "core" proceeding pursuant to 28 U.S.C. §§ 157(b)(2). This Court has the authority to enter a final order in this adversary proceeding, and ER Tennessee consents to the entry of a final order and judgment by this Court

5.  Venue is proper in this district pursuant to 28 U.S.C. §1409(a). This adversary case is related to a bankruptcy case under Chapter 11 that is pending in this district as Case No. 24-11029-1-rel.

**FACTUAL ALLEGATIONS**

6.  ER Tennessee is a special purpose vehicle created by Richmond Hill Capital Partners, LP and Essex Equity Joint Investment Vehicle, LLC (together, "*Richmond Hill*") to advance bridge financing to third parties.

7.  Richmond Hill was introduced to Kimmy Humphrey of Prime in May 2023. Prime pitched a financial transaction whereby Prime would act as the ultimate lender under a line of credit to a borrower.

8.  The borrower would first advance a portion of the loan proceeds to Prime, and then Prime would provide the line of credit to the borrower.

9.  Over the next three months, Richmond Hill, the ultimate borrower 1322 Developments, LLC ("*1322*"), and Prime engaged in dozens of discussions and heavily negotiated a potential bridge loan.

10. As part of these discussions and in anticipation of the bridge loan, ER Tennessee was formed in August 2023 to advance the bridge loan.

11. Accordingly, ER Tennessee and Prime entered into an Intercreditor Agreement dated August 25, 2023 (the "*Intercreditor Agreement*") in furtherance of a Business Expansion Line of Credit Agreement ("*LOCA*") by and between Prime and 1322 in the total amount of

$46,350,000. A copy of the LOCA is attached hereto as Exhibit A, and a copy of the Intercreditor Agreement is attached hereto as Exhibit B.

12. The stated purpose of the financing agreement between 1322 and Prime was the development of property in Tennessee. *See* LOCA, Recital B, and Exhibit C thereto.

13. One of the terms of the LOCA was that 1322 was to make an advance of $15,000,000 to Prime. *See* LOCA, Recital D and §3.6.

14. As discussed above and reflected in the Intercreditor Agreement, 1322 had requested that ER Tennessee provide to 1322 bridge financing in the amount of $15,000,000 to cover that payment. *See* Intercreditor Agreement.

15. Among other documents, 1322 executed a Note in favor of ER Tennessee to cover repayment of that bridge financing, a copy of which is attached hereto as Exhibit C.

16. Pursuant to the express terms of the Intercreditor Agreement, that $15,000,000 was to be deposited in "locked pledged account" No. ****0017 at Royal Bank of Canada ("*RBC*") titled "Prime Capital Ventures LLC Pledged FBO Royal BK of Canada" (the "*RBC Interest Credit Account*" or "*RBC ICA*"). *See* Intercreditor Agreement, Recitals B and D; RBC Check Instructions, attached hereto as Exhibit D; and RBC ICA Statements (defined below) attached hereto as Group Exhibit E, pp. 8, 14.

17. Also pursuant to the Intercreditor Agreement, the RBC ICA was to be segregated from all other accounts and the funds deposited therein were "only to be used for the purpose of securing the capital for the LOC, the Debtor's payment of interest due and payable over the term of the LOCA, or to refund the Bridge in accordance with this Agreement." *See* Intercreditor Agreement, Recitals B and D.

18. ER Tennessee funded its bridge loan obligations by two checks, in accordance with the instructions from Prime, in the amounts of $9,262,416 and $4,987,416 (which amount is

$15,000,000 less a $750,000 termination fee due ER Tennessee pursuant to Section 3.1 of the Intercreditor Agreement, plus prior wire fees) (the "*ER Tennessee Funds*").  *See* Amendment No. 2 to Intercreditor Agreement, attached hereto as Exhibit F.

19. The Intercreditor Agreement explicitly provided that Prime "shall not transfer, assign, withdraw, or otherwise disburse to the LOC Lender [Prime], the Debtor [1322], or any other person, any funds from the ICA unless and until all ER Principal Obligations are fully satisfied in accordance with the Note and this Agreement." *See* Intercreditor Agreement, §4.2.

20. The "ER Principal Obligations" are defined in the Intercreditor Agreement as the amount of the $15,000,000 bridge loan from ER Tennessee. *See id.*, §1.14.

21. ER Tennessee was to be paid according to a draw schedule in the Intercreditor Agreement, such that when 1322 made a draw request under the LOCA, Prime would then make payments to ER Tennessee sufficient to pay ER Tennessee under the terms of the Note (described below) executed by ER Tennessee and 1322.  The ER Principal Obligations were to be satisfied at the first draw of the LOCA.  *See* Intercreditor Agreement, §3.1; Schedule A.

22. Further to the Intercreditor Agreement, if the ER Principal Obligations were not repaid within 90 business days of the date of the Intercreditor Agreement – or January 8, 2024 – (the "*Bridge Termination Date*") then ER Tennessee could demand full repayment of the ER Principal Obligations.  *See* Intercreditor Agreement, §3.2.

23. The anti-transfer provision of the Intercreditor Agreement was heavily negotiated between ER Tennessee and Prime and was a material term to the transaction and ER Tennessee's willingness to provide the ER Principal Obligations pursuant to the Intercreditor Agreement.

24. Without this anti-transfer contractual promise, ER Tennessee would not have entered into the Intercreditor Agreement and would not have provided the $15,000,000 bridge loan.

25. ER Tennessee has obtained copies of RBC ICA bank statements (the "*RBC ICA Statements*") (as noted above, attached as Group Exhibit E).

26. The RBC ICA Statements show that on September 26, 2023 – only five days after the ER Tennessee checks were deposited into the RBC ICA on September 13, 2023 – $7,000,000 of the ER Tennessee Funds were transferred to a Prime account at Farmers State Bank ("*Farmers*") (the "*Farmers Account*") with an indication that the transfer was for a "Return of Funds." *See* RBC ICA Statements, pp. 5 and 6; and Request for Domestic Wired Funds, attached hereto as G ("*Wire Request*").

27. The Wire Request transferring the $7,000,000 out of RBC ICA was executed by Roglieri on behalf of Prime. *See* Wire Request; RBC ICA Statements, p. 1.

28. This transfer of the ER Tennessee Funds out of the RBC ICA constituted a clear and obvious breach of the Intercreditor Agreement.

29. ER Tennessee has obtained copies of Farmers bank statements (the "*Farmers Statements*") (attached hereto as Group Exhibit G).

30. The Farmers Statements show that the $7,000,000 in ER Tennessee Funds transferred from the RBC ICA was deposited into the Farmers Account on September 26, 2023, and was then immediately paid out of the Farmers account by Prime to a number of parties unrelated to the 1322 transaction: Lion Group; Redeem 18 S Main LLC; Barclay Dimon LLP; Paragon, Lofts Phases 2&3 LLC; Sheppard Mullin Richter & Hampton LLC; Brightsmith Tulsa LLP; The Wallick Family Trust 2022 Trust; Scott S Wallick & Mary Lee Wallick; Christopher B Lowe; CBL Investments LLC; Redeem Temple Courtyard LLC; Ketan Masters; Les Lester; South Land Title LLC; Caruso Home Builders LLC; 3D Lundy Ltd; Seyburn Law PLLC; and Fieldpoint Equity Infrastructure Fund LP. *See* Farmers Statements, pp. 3-8.

31. Upon information and belief, each of these transfers was directed by Prime and constituted further breaches of the Intercreditor Agreement as Prime had explicitly promised not to transfer any of the ER Tennessee Funds to any parties other than ER Tennessee or 1322.

32. The RBC ICA Statements also reflect that during the month of October 2023, Prime entered into Line of Credit and Security Agreement with RBC under which RBC advanced $6,000,000 from the RBC ICA under a Credit Access Line, but the $6,000,000 was not paid to ER Tennessee or deposited into the RBC ICA. *See* RBC ICA Statements, pp. 8-13; Line and Credit and Security Agreement, attached hereto as Exhibit H.

33. This $6,000,000 advance of ER Tennessee Funds to a person or entity other than ER Tennessee or 1322 also constituted a breach of the Intercreditor Agreement.

34. On January 9, 2024, counsel for ER Tennessee sent a default letter to Prime, wherein ER Tennessee demanded repayment of the ER Principal Obligations. *See* Exhibit I, attached hereto.

35. Further, by letter to RBC dated January 9, 2024, ER Tennessee, through counsel, asserted ownership of the ER Tennessee Funds in the RBC Account and demanded that RBC not transfer any of the funds out of the RBC Account.

36. Upon information and belief, on or about January 24, 2024, RBC demanded repayment of the outstanding RBC LOC from Prime in the amount of $6,094,700.18 and on or about January 31, 2024, RBC deducted $6,094,700.18 from the RBC Account funds in repayment of the RBC LOC.

37. After those two transfers, upon information and belief, $1,248,369.84 of the ER Tennessee Funds remained in the RBC ICA.

38. At no time were any funds, other than the ER Tennessee Funds, deposited into the RBC Account.

39. On January 24, 2024, Paul Levine was appointed permanent receiver for Prime (the "*Receiver*") in *Compass-Charlotte 1031, LLC v. Prime Capital Ventures, LLC, et al.*, case no. 24-cv-55, in U.S. District Court for the Northern District of New York

40. Upon information and belief, on or about February 6, 2024, and notwithstanding ER Tennessee's demand otherwise, RBC remitted the balance of the ER Tennessee Funds in the RBC ICA in the amount of $1,248,369.84 (the "*Remaining ER Tennessee Funds*") to the Receiver, but without the approval or agreement of ER Tennessee.

41. The Receiver subsequently transferred the Remaining ER Tennessee Funds to Prime – again, without the consent of ER Tennessee – following commencement of the instant bankruptcy case.

42. Prime is now holding the Remaining ER Tennessee Funds.

43. ER Tennessee has demanded the return of the Remaining ER Tennessee Funds, but, as of the date of this filing, those funds remain with Prime.

## COUNT I – DECLARATORY JUDGMENT OF AN EXPRESS TRUST

44. The Remaining ER Tennessee Funds are not the property of the Prime bankruptcy estate. Rather, the Prime estate is holding those funds in an express trust for the benefit of ER Tennessee.

45. The Intercreditor Agreement specifically stated that the ER Tennessee Funds were paid into the RBC ICA with the express intention that they be held for the benefit of only ER Tennessee or 1322.

46. There was an express duty for Prime to segregate the ER Tennessee Funds and keep them segregated. While Prime breached the Intercreditor Agreement by sending out the $7,000,000 and paying over to RBC the $6,094,700.18 discussed above, the Remaining ER Tennessee Funds have at all times remained segregated and easily traceable.

47. The Remaining ER Tennessee Funds, in other words, have been held in trust by Prime and, as such, have never constituted property of the Prime estate.

48. As a creditor in the instant bankruptcy case, whose rights, status, or other legal relations are affected by the inclusion of its property in the Prime bankruptcy estate, ER Tennessee is entitled to a determination whether the Remaining ER Tennessee Funds are property of the Prime bankruptcy estate pursuant to 11 U.S.C. §541, 28 U.S.C. §2201 and Federal Rule of Bankruptcy Procedure 7001 ("*Rule 7001*"), and to obtain a declaration of rights, status or legal relations under 11 U.S.C. §541, 28 U.S.C. §2201, and Rule 7001.

49. Pursuant to 11 U.S.C. §541, 28 U.S.C. §2201, and Rule 7001, ER Tennessee is entitled to a declaration of its rights as a beneficiary of the Remaining ER Tennessee Funds associated with the actual and justiciable controversy as to those funds.

50. Pursuant to 11 U.S.C. §541, 28 U.S.C. §2201, Rule 7001, and New York law, ER Tennessee is entitled to a declaratory judgment declaring that: (a) the Remaining ER Tennessee Funds are not property of Prime's bankruptcy estate, but rather are being held in trust for the benefit of ER Tennessee; (b) Prime holds, at best, mere legal title to the Remaining ER Tennessee Funds and not an equitable interest; (c) any claimed exemption in the Remaining ER Tennessee Funds is invalid because the Remaining ER Tennessee Funds are not property of the Prime bankruptcy estate; and (d) an express trust be imposed and the Remaining ER Tennessee Funds be turned over to ER Tennessee.

WHEREFORE, ER Tennessee respectfully requests the following relief:

(a) A declaratory judgment in favor of ER Tennessee and against Prime that: (i) the Remaining ER Tennessee Funds are not property of Prime's bankruptcy estate, but rather are being held in trust for the benefit of ER Tennessee; (ii) that Prime holds, at best, mere legal title to the Remaining ER Tennessee Funds and not an equitable interest in them; (iii) any claimed exemption in the ER Tennessee Funds is invalid because the Remaining ER Tennessee Funds are not property of their estate; and and (iv) an express trust be imposed and the Remaining ER Tennessee Funds be turned over to ER Tennessee

(b)     As permitted by law, an award of ER Tennessee's reasonable expenses, including costs and attorneys' fees, in prosecuting this matter; and

(c)     any other and further relief that this Court deems just and proper.

Dated: Chicago, Illinois  
April 17, 2025

Respectfully submitted,

By: /s/ Joseph P. Lombardo  
Joseph P. Lombardo (NY Bar No. 5447743)  
CHAPMAN AND CUTLER LLP  
320 South Canal Street  
Chicago, Illinois 60606  
(312) 845-3000  
lombardo@chapman.com

*Counsel to ER Tennessee LLC*