**KLESTADT WINTERS JURELLER
  SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, NY 10036-7203
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Fred Stevens
Lauren Kiss
Kevin Collins

*Counsel to Prime Capital Ventures, LLC, Debtor and
  Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
In re:                                                      :
                                                            :    Chapter 11
PRIME CAPITAL VENTURES, LLC,                                :
                                                            :    Case No. 24-11029-REL
                        Debtor.                             :
------------------------------------------------------------x

**DEBTOR'S APPLICATION FOR AN ORDER, PURSUANT TO FED. R.
BANKR. P. 2004, AUTHORIZING THE DEBTOR TO EXAMINE AND SEEK
DOCUMENTS AND INFORMATION FROM PARTIES IN CONNECTION
WITH THE DEBTOR'S TRANSFERS TO BRAVO ENTERPRISES MID-
SOUTH LLC, AND MATTHEW THACKER-RHODES**

**TO THE HONORABLE ROBERT E. LITTLEFIELD, JR.,
UNITED STATES BANKRUPTCY JUDGE:**

Prime Capital Ventures, LLC, the above-captioned debtor (the "Debtor"), by and through its counsel, Klestadt Winters Jureller Southard & Stevens, LLP, hereby submits this application (the "Application") seeking the entry of an order, pursuant to Fed. R. Bankr. P. 2004, authorizing the Debtor to issue subpoenas (A) in substantially the same form as that annexed hereto as Exhibit A (the "Proposed Subpoena") demanding the production of all documents, related to the Debtor, the Debtor's affiliates, and/or property of the Debtor, and the Debtor's transfer of, among others, $5 million to Matthew Thacker-Rhodes ("Thacker-Rhodes") on or around October 12, 2023 (each

an "Examinee," and collectively, the "Examinees"), by entry of an order in substantially the same form as that attached hereto as Exhibit B (the "Proposed Order"). In support of the Application, the Debtor respectfully represents as follows:

## PRELIMINARY STATEMENT

The Debtor was created by its Principal, Kris Roglieri, in December 2021 as "a fund specifically designed to provide capital for large development, commercial development and commercial real estate transactions from $50 million to more than $1 billion."[1] The Debtor advertised that it would offer non-recourse lines of credit with rates at 4 to 6% with interest-only payments but would require borrowers to provide 20% cash upfront based on the total project cost (the "Borrower Prepayments"). The Borrower Prepayments would be held by the Debtor "'as prepaid interest throughout the term of the loan.'"[2] The Debtor obtained millions of dollars in Borrower Prepayments from multiple companies throughout the country which in most cases, upon information and belief, were used by the Debtor and Roglieri before the loans were closed and funded.[3]

On May 28, 2024, a criminal complaint was filed by the United States of America (the "Government") against Roglieri commencing Case No. 24-cr-00392 (MAD) (N.D.N.Y.) (the "Criminal Case"), wherein Roglieri is charged with five counts of wire fraud in violation of 18 U.S.C. § 1343, and for forfeiture of assets pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).[4] In the Criminal Case, the Government alleges, among other things, that Roglieri and others used the Debtor to operate a fraud and money laundering scheme.[5] Roglieri was arrested

---

[1] *See* Petitioning Creditors' Motion for a Trustee, Case No. 23-11302, Dkt. No. 4, ¶¶ 22-23 (Dec. 19, 2023) (quoting May 2, 2022, marketing in DealMaker Magazine).
[2] Id., ¶26.
[3] Id., ¶37.
[4] Criminal Case, Dkt. No. 1 and Indictment at Dkt. No. 35 (Sept. 19, 2024).
[5] Criminal Case, Dkt. No. 1, ¶4.

2

on May 31, 2024[6] and has been incarcerated since his arrest.[7]

The Debtor is now under the custody and control of Christian H. Dribusch ("Dribusch"), in his capacity as the chapter 7 trustee (the "Roglieri Trustee") of Roglieri's bankruptcy estate, the owner of all membership interests in the Debtor. By and through current management, the Debtor is conducting an extensive investigation of the Debtor's financial affairs.

On or around October 12, 2023, the Debtor transferred $5 million to Thacker-Rhodes. The Debtor has located draft documents in the production by Barclay Damon LLP that suggest that it may have been part of a lending transaction by the Debtor to Thacker-Rhodes or an entity called Bravo Enterprises Mid-South, LLC ("Bravo"). However, the Debtor has not located any executed deal documents related to this transaction and needs to understand the purpose of the transfer and the Debtor's rights to its return. For these reasons, the Debtor respectfully requests entry of the Proposed Order, authorizing the Debtor to serve subpoenas *duces tecum*, in substantially the same form as the Proposed Subpoena, upon each of the Examinees, which include the following:

| EXAMINEE(S) | RELATIONSHIP |
|---|---|
| Matthew Thacker-Rhodes | Recipient of the Debtor's $5 million. |
| Bravo Enterprises Mid-South, LLC | Potential intended transferee and deal party and recipient of a prior $250k transfer from the Debtor. |

## JURISDICTION

1.      This Court has jurisdiction over the bankruptcy case and this Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), and Rule 81.1 of the Local Rules for the United States District Court for the Northern District of New York referring matters arising under Title 11 of the United States Code (the "Bankruptcy Code") to the Bankruptcy Court (Jan. 1, 2024).

---

[6] Id. at Dkt. No. 12.
[7] Id. at Dkt. No. 32 (Aug. 5, 2024).

3

2. Venue of this case is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief sought herein is Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")

## CASE BACKGROUND

### A. The Debtor's Bankruptcy Cases and Receivership

4. By December 2023, the Debtor was besieged by litigation largely from borrowers who did not get their loans funded and wanted the return of their Borrower Prepayments. *See*, *e.g.*, *Tuss Financial LLC v. Prime Capital, et al.*, Index No. 2023/510389 (N.Y.Sup. Ct. Kings Cty. Apr. 5, 2023) (seeking and apparently obtaining the return of $13.4 million); *B&R Acquisition Partners v. Prime Capital* (JAMS Arb., Aug. 2023) (seeking the return of $4 million); *Sturm v. Prime Capital*, Case No. 23-cv-1033 (N.D.N.Y. Aug. 22, 2023) (seeking the return of $2 million); *Camshaft CRE 1, LLC v. Prime Capital*, Case No. 2023-023173 (Fla. Circ. Ct., Miami-Dade Cty., Sept. 15, 2023) (seeking the return of $13.4 million); *The Lion Group DFW, LLC v. Prime Capital*, Case No. 23-DCV-34617 (Tex. Dist. Ct., 146th Dist., Sept. 21, 2023) (demand unknown); *Onward Partners, LLC, v. Prime Capital, et al.*, Case No. 23-cv-833 (D. Utah Nov. 13, 2023) (seeking the return of $20 million).

5. On December 19, 2023, Compass-Charlotte 1031 ("Compass"), LLC, 526 Murfreesboro, LLC, and Newlight Technologies, Inc. (collectively, the "Petitioning Creditors") filed an involuntary petition against the Debtor for relief under chapter 7 of the Bankruptcy Code commencing Case No. 23-11302 ("Case 1"). The Petitioning Creditors commenced Case 1 for the obvious purpose of ensuring that the Debtor's assets and liabilities could be liquidated in a single, public forum, and that no single creditor could win the proverbial "race to the courthouse."

6. On January 8, 2024, the Petitioning Creditors filed their own motion to dismiss

4

Case 1 [Case 1 Dkt. No. 74], which motion was granted by the Court on January 9, 2024 [Case 1 Dkt. No. 87].

7. Three (3) days after dismissal of Case 1, on January 12, 2024, Petitioning Creditor Compass-Charlotte 1031, LLC commenced an action in the United States District Court for the Northern District of New York (the "District Court") under Case No. 24-cv-00055 (MAD) (CFH) (N.D.N.Y. Jan. 12, 1014) (the "Receivership Case"), seeking, among other things, the appointment of a federal equity receiver to take possession and control of the Debtor's assets and affairs. That same day, the District Court entered an order appointing Paul Levine as the temporary receiver (the "Receiver"). Receivership Case Dkt. No. 8.

8. On February 15, 2024, Roglieri filed a voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code commencing Case No. 24-10157 (REL) (the "Roglieri Case").

9. On May 14, 2024, the Debtor, by and through the Receiver, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court commencing Case No. 24-10531 ("Case 2").

10. On May 15, 2024, the Court entered an order converting Roglieri's case to one under chapter 7 of the Bankruptcy Code. Roglieri Case at Dkt. No. 159. Thereafter, the United States Trustee appointed Dribusch as the interim chapter 7 trustee. *Id.* at Dkt. No. 160. Dribusch has since qualified and is currently serving as permanent trustee, defined above as the "Roglieri Trustee."

11. On June 25, 2024, B and R Acquisitions Partners, LLC and JHM Lending Ventures, LLC filed a motion to dismiss Case 2, claiming that the Receiver was not authorized to file the petition on behalf of the Debtor because he lacked the authority to do so pursuant to the terms of

5

the orders of the District Court. Case 2 at Dkt. No. 57.

12. On July 23, 2024, the Court entered a memorandum decision and order dismissing Case 2 finding essentially that the Receiver did not have the authority to file Case 2 on behalf of the Debtor and that the Roglieri Trustee did not have the ability to waive the defect and ratify the filing *ex post facto*. *Id.* at Dkt. No. 85. The Debtor appealed that decision and order, which appeal is pending before the District Court at Case No. 24-civ-000939.

13. On September 16, 2024, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court commencing this bankruptcy case. In this case, the Debtor is under the control of the Roglieri Trustee as the party in possession and control of all equity interests in the Debtor, who is acting as the manager of the Debtor.

### B. *The Debtor's Need to Investigate the Debtor's Financial Affairs*

14. Roglieri is currently incarcerated pending trial and has been combative with the Roglieri Trustee and Debtor from his detention facility. *See, e.g.*, *Roglieri Request for Payment of $100,000 seized by the Roglieri Trustee to Roglieri's criminal counsel*, Roglieri Case Dkt. No. 269 (Oct. 7, 2024); *Roglieri's Objection to Debtor's Proposed Abandonment of Property*, Dkt. No. 39 (Oct. 15, 2024).

15. Moreover, in text messages discovered by the Government, Roglieri has admitted to an undisclosed person to committing criminal acts and trying to conceal that fact as follows:

| Date | Time | From | Message |
|---|---|---|---|
| 1/4/2024 | 11:20:42 am | Unknown | Can't you just keep working on those companies?<br><br>I know it might be hard at first, but look what you build this up to beat from nothing |
| 1/4/2024 | 11:20:56 am | Roglieri | Yea I can but not when I'm in f—king prison |

6

| Date | Time | From | Message |
|---|---|---|---|
| 1/4/2024 | 11:21:09 am | Unknown | Why do you think that's gonna happen?<br><br>Why can't it just be a bankruptcy? |
| 1/4/2024 | 11:21:47 am | Roglieri | Because I unused others money to fund deals<br><br>I already told you this |
| 1/4/2024 | 11:22:02 am | Unknown | And that's illegal? |
| 1/4/2024 | 11:22:15 am | Roglieri | Yes |
| 1/4/2024 | 11:22:36 am | Unknown | How bad . I mean, what's the worst you do a couple years who cares<br><br>You have your family<br><br>This whole family will support you through this<br><br>It's a civil case it's not a criminal case |
| 1/4/2024 | 11:27:42 am | Roglieri | **It will turn criminal as soon as they get into bank statements** |

Criminal Case, Dkt. No. 6-1 (June 3, 2024) (emphasis added) (typographical and grammatical errors in originals).

16. In a recent decision on Roglieri's motions for release pending trial in the Criminal Case, the District Court found, among other things, that "the Government has met its burden of proving by clear and convincing evidence that [Roglieri] poses a danger to the community" and "that there are no conditions or set of conditions that would ensure the safety of the community if he was released." Criminal Case, Dkt. No. 71, p.41 (Jan. 30, 2025).

17. The facts of this case necessitate an investigation by the Debtor of the Debtor's financial affairs while under Roglieri's stewardship and further indicate that Roglieri will be unhelpful and unreliable in connection with that investigation.

7

18. The Debtor's investigation is significantly challenged by the lack of available books and records, which Roglieri failed to preserve.

### C. The Debtor's $5 Million Transfer to Thacker-Rhodes

19. According to public records, Bravo was formed as a limited liability company in the state of Mississippi as of May 27, 2022. Thacker-Rhodes is listed as its principal and Legalzoom.com, Inc. as its organizer.

20. In and amongst the documents turned over by Barclay Damon LLP, the Debtor's former counsel, the Debtor located a draft Acquisition Line of Credit Agreement, dated October 14, 2022, between the Debtor as lender and Bravo as borrower. Thacker-Rhodes was named in the draft agreement as the contact party and principal of Bravo. The draft agreement contemplated a $5 million Borrower Prepayment from Bravo to the Debtor, and a $26,250,000 loan from the Debtor to Bravo. There is no record of the Debtor receiving any Borrower Prepayment from Bravo or Thacker-Rhodes.

21. On January 3, 2023, the Debtor transferred $250,000 to Bravo from the Debtor's Citibank Account No. ***6945.

22. In an email exchange on January 29, 2023, between Kimmy Humphrey, a principal of the Debtor, and counsel, Ms. Humphrey indicated that "Kris already advanced him [Thacker-Rhodes] $250k to buy an extension."

23. Then, on October 12, 2023, the Debtor transferred $5 million to Thacker-Rhodes form the Debtor's KeyBank Account No. ***2233.

24. Nothing else is understood about the relationship between the Debtor, Bravo, and Thacker-Rhodes at this time. The Debtor now needs to understand the purpose of the transfers and whether it has a claim for the return of the transfers.

**RELIEF REQUESTED**

25. Bankruptcy Rule 2004(a) provides that "[o]n the motion of any party in interest, the court may order the examination of any entity." It is well established that the investigation envisioned by this rule is broad-based, relating to any and all matters affecting the administration of the debtor's estate, as well as the conduct, liabilities or property of the debtor.

26. Discovery under Rule 2004 is broader than that available under the Federal Rules of Civil Procedure. *In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991). "As a general proposition, [Bankruptcy] Rule 2004 examinations are appropriate for revealing the nature and extent of the bankruptcy estate and for 'discovering assets, examining transactions, and determining whether wrongdoing has occurred.'" *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) (citations omitted). As such, courts have acknowledged that "[Bankruptcy] Rule 2004 examinations are broad and unfettered and in the nature of fishing expeditions." *Id.*; *see also*, *In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991); *In re Silverman*, 36 B.R. 254, 258 (Bankr. S.D.N.Y. 1984).

27. The investigation of the Debtor is precisely what is authorized by Bankruptcy Rule 2004 and the examination of each of the Examinees is required because they are believed to have knowledge and information related to the above-referenced transfers totaling $5.25 million by the Debtor.

28. Bankruptcy Rule 2004 permits the Debtor to issue subpoenas on any parties which the Debtor believes may have information relevant to its property and in furtherance of its investigation.

29. The Debtor requires any documents or information related to the Debtor's relationship with any of the Examinees, including communications with the Debtor, and

communications amongst Examinees regarding the Debtor or Roglieri. Significantly, the Debtor needs any and all documents or information from the Examinees that will answer vital questions regarding their relationship to the Debtor and where the Debtor's $5.25 million were made and who may be liable for its return.

30.     As such, the examination of each of the Examinees is necessary to aid the Debtor in its investigation of its financial affairs, and the existence of claims that it can pursue for the benefit of its creditors.

31.     The Debtor does not necessarily anticipate requiring oral examinations of the Examinees but requests the right to obtain such examinations following a full and unfettered production of documents.

32.     The Debtor respectfully submits that the proposed examination of each of the Examinees is reasonable, necessary, and authorized by Bankruptcy Rule 2004 in furtherance of its necessary investigation.

## PROPOSED PROCEDURE

33.     The Debtor proposes that the production of documents or electronic data be made at either (i) the offices of the Debtor's counsel, Klestadt Winters Jureller Southard & Stevens, LLP, 200 West 41st Street, 17th Floor, New York, New York, 10036-7203, or such other location as may be within the 100-mile geographic limitation of Fed. R. Civ. P. 45(c); or (ii) any other location as agreed to by the Debtor and the Examinees.

34.     The Debtor proposes to serve the Subpoenas at least fourteen (14) days prior to the due date for the production or inspection of any documents or electronic files.

**NOTICE**

35. Applications for relief under Rule 2004(a) are usually granted *ex-parte*. 9 *Collier on Bankruptcy* ¶ 2004.01[2] (15th ed. 2009), *citing 1983 Advisory Committee Note to Fed. R. Bankr. P. 2004, reprinted in* ch. 2004, App. 2004; *In re Sutera*, 141 B.R. 539, 540 (Bankr. D. Conn. 1992); *In re Wilcher*, 56 B.R. 428, 434 (Bankr. N.D.Ill. 1985); *In re Silverman*, 10 C.B.C.2d 1219, 36 B.R. 254 (Bankr. S.D.N.Y. 1984). Some bankruptcy courts even adopt local rules allowing the service of subpoenas under Bankruptcy Rule 2004(a) without having to file any application at all. See e.g., D.N.J. L.B.R. 2004-1(b).

36. Here, out of an abundance of caution, the Debtor has proceeded with the Application by notice and hearing providing each of the specifically named Examinees with an opportunity to object prior to consideration by the Court. Further, the Examinees will have ample opportunity to seek from this Court protection from any subpoena or information sought by the subpoena issued by the Debtor that the Examinee believes it has a basis to challenge.

37. The Debtor further submits that it should be permitted to serve Subpoenas by Federal Express ("FedEx"), other nationally recognized overnight carrier, or any other means of service allowed under Bankruptcy Rule 9016 as appropriate, because personal service on all persons subpoenaed pursuant to the terms of the Proposed Order would be unduly burdensome, expensive and would delay the Debtor's efforts to obtain information essential to uncovering whether causes of action exist that may significantly augment the Debtor's estate.

38. Courts in the Second Circuit have authorized alternative service when such service was reasonably "calculated to provide timely actual notice." *Med. Diagnostic Imaging PLLC v. CareCore Nat. LLC,* Case No. 06 CIV 13156, 2008 WL 3833238, at *2 (S.D.N.Y. Aug. 15, 2008); *Cordius Trust v. Kummerfeld,* Case No. 99 CIV 3700 (DLC), 2000 WL 10268, at *2 (S.D.N.Y.

11

Jan. 3, 2000) ("Because alternative service by means of certified mail reasonably insures actual receipt of the subpoena by the witness, the "delivery" requirement of Rule 45 will be met"); *In re Shur,* 184 B.R. 640, 644 (Bankr. E.D.N.Y. 1995) (holding that Rule 45 of the Federal Rules of Civil Procedure (and by extension Bankruptcy Rule 9016) does not require personal service and that other service is permissible provided service was reasonably calculated to give actual notice). Here, delivery by FedEx, other nationally recognized overnight carrier, or other means agreed to by the subpoenaed parties, is reasonably calculated to ensure actual receipt by the persons subject to any Subpoena.

39. Based upon the foregoing, the Debtor submits that the proposed notice of the Application and hearing is adequate and that no further notice should be required.

## NO PRIOR RELIEF

40. Except as specifically stated, no previous application for the relief sought herein has been made to this or any other court.

**WHEREFORE**, the Debtor respectfully requests that the relief requested herein be granted and the Court enter an order, substantially in the form of the Proposed Order annexed hereto as Exhibit B, and grant such other and further relief as is just and proper.

Dated: New York, New York
May 6, 2025

                           **KLESTADT WINTERS JURELLER
                              SOUTHARD & STEVENS, LLP**

By: */s/ Fred Stevens*
     Fred Stevens
     Lauren C. Kiss
     Kevin Collins
     200 West 41st Street, 17th Floor
     New York, New York 10036
     Tel: (212) 972-3000
     Fax: (212) 972-2245
     Email: fstevens@klestadt.com
             lkiss@klestadt.com
             kcollins@klestadt.com

     *Counsel to Debtor Prime Capital Ventures, LLC*