**KLESTADT WINTERS JURELLER**
  **SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, NY 10036-7203
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Fred Stevens
Lauren Kiss
Kevin Collins

*Counsel to Prime Capital Ventures, LLC, Debtor and*
  *Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
In re:                                            :
                                                  :          Chapter 11
PRIME CAPITAL VENTURES, LLC         :
                                                  :          Case No. 24-11029-REL
                            Debtor.            :
-------------------------------------------------------------x

**DEBTOR'S APPLICATION FOR AN ORDER, PURSUANT TO FED. R.
BANKR. P. 2004, AUTHORIZING THE DEBTOR TO EXAMINE AND
SEEK DOCUMENTS AND INFORMATION FROM PARTIES IN
CONNECTION WITH THE DEBTOR'S $20 MILLION TRANSFER TO
BERONE CAPITAL FUND LP AND THE SERIES OF TRANSFERS AND
OTHER EVENTS THAT CAME AFTER, INCLUDING ANY FINANCIAL
INSTITUTIONS WHERE THE RECIPIENTS OF THE DEBTOR'S FUNDS
HOLD ACCOUNTS AND TRANSACT BUSINESS**

**TO THE HONORABLE ROBERT E. LITTLEFIELD, JR.,
UNITED STATES BANKRUPTCY JUDGE:**

Prime Capital Ventures, LLC, the above-captioned debtor (the "Debtor"), by and through

its counsel, Klestadt Winters Jureller Southard & Stevens, LLP, hereby submits this application

(the "Application") seeking the entry of an order, pursuant to Fed. R. Bankr. P. 2004, authorizing

the Debtor to issue subpoenas (A) in substantially the same form as that annexed hereto as Exhibit

A (the "Proposed Party Subpoena") demanding the production of all documents, related to the

Debtor, the Debtor's affiliates, and/or property of the Debtor, the Debtor's transfer of $20 million

to Berone Capital Fund LP (together with all affiliated entities including Berone Capital Partners LLC, Berone Capital LLC, Berone Capital Equity Fund I, LP, and 405 Motorsports LLC f/k/a Berone Capital Equity Partners LLC, "Berone") on or around October 24, 2022, Berone's subsequent transfer of $11.9 million of those funds to Martin Karo ("Karo"), and the underlying transactions and relationships between the Debtor, Berone, Karo, and Reign Financial International, Inc. ("Reign") and other related parties described herein (each a "Party Examinee," and collectively, the "Party Examinees"), and (B) in substantially the same form as that annexed hereto as Exhibit B (the "Proposed Bank Subpoena"), to any financial institution that did business with any of the Party Examinees, or that received any portion of the original $20 million transfer, related to the tracing and ultimate disposition of the Debtor's funds, as well as any and all documents, records, reports, and other information related to such financial institutions' implementation, enforcement, and compliance with their Know Your Customer (KYC) and Anti-Money Laundering (AML) programs, and compliance with the Bank Secrecy Act and US Patriot Act with respect to Berone, Reign, or Karo, including, but not limited to, suspicious activity reports, large transaction reports, investigation case summaries, and alerts of potentially unusual, irregular, improper, and/or suspicious account activity (each a "Bank Examinee," and collectively, the "Bank Examinees," and together with the Party Examinees, the "Examinees"), by entry of an order in substantially the same form as that attached hereto as Exhibit C (the "Proposed Order"). In support of the Application, the Debtor respectfully represents as follows:

## PRELIMINARY STATEMENT

The Debtor was created by its Principal, Kris Roglieri, in December 2021 as "a fund specifically designed to provide capital for large development, commercial development and

commercial real estate transactions from $50 million to more than $1 billion."[1]  The Debtor advertised that it would offer non-recourse lines of credit with rates at 4 to 6% with interest-only payments but would require borrowers to provide 20% cash upfront based on the total project cost (the "Borrower Prepayments").  The Borrower Prepayments would be held by the Debtor "'as prepaid interest throughout the term of the loan.'"[2]  The Debtor obtained millions of dollars in Borrower Prepayments from multiple companies throughout the country which in most cases, upon information and belief, were used by the Debtor and Roglieri before the loans were closed and funded.[3]

On May 28, 2024, a criminal complaint was filed by the United States of America (the "Government") against Roglieri commencing Case No. 24-cr-00392 (MAD) (N.D.N.Y.) (the "Criminal Case"), wherein Roglieri is charged with five counts of wire fraud in violation of 18 U.S.C. § 1343, and for forfeiture of assets pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).[4]  In the Criminal Case, the Government alleges, among other things, that Roglieri and others used the Debtor to operate a fraud and money laundering scheme.[5]  Roglieri was arrested on May 31, 2024[6] and has been incarcerated since his arrest.[7]

The Debtor is now under the custody and control of Christian H. Dribusch ("Dribusch"), in his capacity as the chapter 7 trustee (the "Roglieri Trustee") of Roglieri's bankruptcy estate, the owner of all membership interests in the Debtor. By and through current management, the Debtor is conducting an extensive investigation of the Debtor's financial affairs.

---

[1] *See* Petitioning Creditors' Motion for a Trustee, Case No. 23-11302, Dkt. No. 4, ¶¶ 22-23 (Dec. 19, 2023) (quoting May 2, 2022, marketing in DealMaker Magazine).
[2] *Id.*, ¶26.
[3] *Id.*, ¶37.
[4] Criminal Case, Dkt. No. 1 and Indictment at Dkt. No. 35 (Sept. 19, 2024).
[5] Criminal Case, Dkt. No. 1, ¶4.
[6] *Id.* at Dkt. No. 12.
[7] *Id.* at Dkt. No. 32 (Aug. 5, 2024).

On or around October 24, 2022, the Debtor transferred $20 million to Berone. On October 16, 2023, Berone returned $1.865 million to the Debtor. The remaining $18.135 million of the Debtor's money remains outstanding and unaccounted for. The relationships between the Debtor, Roglieri, Berone, Reign, and the other related parties are complicated and shrouded in mystery as set forth in detail below. Basic questions like why the Debtor transferred the money, and where the money went, have yet to be answered. The answers have been intentionally obscured by certain Party Examinees for years while several competing and sometimes overlapping legal proceedings play out. The Debtor needs answers now and the relief sought in this Application is designed to lead to the discovery of those answers for the benefit of the Debtor and its creditors and victims of the Debtor's and Roglieri's fraud.

For these reasons and as more fully set forth below, the Debtor respectfully requests entry of the Proposed Order, authorizing the Debtor to serve subpoenas *duces tecum*, in substantially the same form as the Party Examinee Subpoena, upon each of the Party Examinees, which include the following:

| PARTY EXAMINEE(S) | RELATIONSHIP |
|---|---|
| Berone Capital Fund LP | Original recipient of the Debtor's $20 million. |
| Berone Capital Partners LLC | Entities related to Berone Capital Fund LP. |
| Berone Capital LLC | |
| Berone Capital Equity Fund I, LP | |
| 405 Motorsports LLC, f/k/a Berone Capital Equity Partners LLC | |
| Jeremiah Beguesse | Principal of Berone. Signatory on transfer requests to Karo's escrow account. |
| Fabian Stone | COO of Berone. |
| Reign Financial International, Inc. | Entity involved in transactions with the Debtor and believed recipient and/or beneficiary of $11.9 million of the $20 million transferred to Berone. |
| QuatReign Capital Sourcing LLC | Purported lender in that certain draft escrow agreement with Prime dated January 10, 2023. |
| Giorgio Johnson | Executive Director of QuantReign Capital Sourcing, LLC |

| PARTY EXAMINEE(S) | RELATIONSHIP |
|---|---|
| Dr. Adam Klein | President of Reign according to the escrow agreement naming Etra as the escrow agent. |
| Gary Mills | Alleged by the Debtor to be a participant in inducing the Debtor's $20 million transfer to Berone. |
| Martin Karo | Attorney and party to a draft escrow agreement. Received $11.9 million of Debtor's funds from Berone into IOLTA account. |
| Juan Carlos Marquez | Co-escrow agent to Karo under a draft escrow agreement. Counsel to Reign in escrow agreement with Etra. Documents name him as Treasurer of QuantReign. |
| Aaron Etra | Escrow agent pursuant to executed agreement with Reign and the Debtor. Pursuant to that agreement, Juan Carlos Marquez served as Reign's counsel. |

Further, the Debtor also seeks by the Proposed Order authority to issue subpoenas in substantially the same form as the Proposed Bank Subpoena upon each of the Bank Examinees, which include the following:

| BANK EXAMINEE(S) | RELATIONSHIP |
|---|---|
| BNP Paribas | Holder of Reign related account where Reign allegedly held funds that were to be returned to the Debtor. |
| FDIC as Receiver for Signature Bank | Bank where Berone held business accounts and transferred portions of the Debtor's funds. |
| Flagstar Bank | Successor to Signature Bank and holder of certain documents and information relevant to Berone's accounts there. |
| Interactive Brokers | Bank where Berone held business accounts. |
| JPMorgan Chase Bank | Bank where Karo has IOLTA account that received $6 million of Prime's funds from Berone. |
| Royal Bank of Canada | Bank where Berone held business accounts that took in the Debtor's deposit. |
| TD Bank | Bank where Berone held business accounts. |
| Wells Fargo | Bank where Karo has IOLTA account that received $5.9 million of Prime's funds from Berone. |

## JURISDICTION

1.     This Court has jurisdiction over the bankruptcy case and this Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), and Rule 81.1 of the Local Rules for the United States District Court for the Northern District of

New York referring matters arising under Title 11 of the United States Code (the "Bankruptcy Code") to the Bankruptcy Court (Jan. 1, 2024).

2.      Venue of this case is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicate for the relief sought herein is Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## CASE BACKGROUND

### A.  The Debtor's Bankruptcy Cases and Receivership

4.      By December 2023, the Debtor was besieged by litigation largely from borrowers who did not get their loans funded and wanted the return of their Borrower Prepayments.  *See*, *e.g.*, *Tuss Financial LLC v. Prime Capital, et al.*, Index No. 2023/510389 (N.Y. Sup. Ct. Kings Cnty. Apr. 5, 2023) (seeking and apparently obtaining the return of $13.4 million); *B&R Acquisition Partners v. Prime Capital* (JAMS Arb., Aug. 2023) (seeking the return of $4 million); *Sturm v. Prime Capital*, Case No. 23-cv-1033 (N.D.N.Y. Aug. 22, 2023) (seeking the return of $2 million); *Camshaft CRE 1, LLC v. Prime Capital*, Case No. 2023-023173 (Fla. Circ. Ct., Miami-Dade Cnty., Sept. 15, 2023) (seeking the return of $13.4 million); *The Lion Group DFW, LLC v. Prime Capital*, Case No. 23-DCV-34617 (Tex. Dist. Ct., 146th Dist., Sept. 21, 2023) (demand unknown); *Onward Partners, LLC, v. Prime Capital, et al*., Case No. 23-cv-833 (D. Utah Nov. 13, 2023) (seeking the return of $20 million).

5.      On December 19, 2023, Compass-Charlotte 1031 ("Compass"), LLC, 526 Murfreesboro, LLC, and Newlight Technologies, Inc. (collectively, the "Petitioning Creditors") filed an involuntary petition against the Debtor for relief under chapter 7 of the Bankruptcy Code commencing Case No. 23-11302 ("Case 1").  The Petitioning Creditors commenced Case 1 for the obvious purpose of ensuring that the Debtor's assets and liabilities could be liquidated in a single,

public forum, and that no single creditor could win the proverbial "race to the courthouse."

6.      On January 8, 2024, the Petitioning Creditors filed their own motion to dismiss Case 1 [Case 1 Dkt. No. 74], which motion was granted by the Court on January 9, 2024 [Case 1 Dkt. No. 87].

7.      Three (3) days after dismissal of Case 1, on January 12, 2024, Petitioning Creditor Compass-Charlotte 1031, LLC commenced an action in the United States District Court for the Northern District of New York (the "District Court") under Case No. 24-cv-00055 (MAD) (CFH) (N.D.N.Y. Jan. 12, 1014) (the "Receivership Case"), seeking, among other things, the appointment of a federal equity receiver to take possession and control of the Debtor's assets and affairs.  That same day, the District Court entered an order appointing Paul Levine as the temporary receiver (the "Receiver").  Receivership Case Dkt. No. 8.

8.      On February 15, 2024, Roglieri filed a voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code commencing Case No. 24-10157 (REL) (the "Roglieri Case").

9.      On May 14, 2024, the Debtor, by and through the Receiver, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court commencing Case No. 24-10531 ("Case 2").

10.     On May 15, 2024, the Court entered an order converting Roglieri's case to one under chapter 7 of the Bankruptcy Code.  Roglieri Case at Dkt. No. 159.  Thereafter, the United States Trustee appointed Dribusch as the interim chapter 7 trustee.  *Id.* at Dkt. No. 160.  Dribusch has since qualified and is currently serving as permanent trustee, defined above as the "Roglieri Trustee."

11.     On June 25, 2024, B and R Acquisitions Partners, LLC and JHM Lending Ventures,

LLC filed a motion to dismiss Case 2, claiming that the Receiver was not authorized to file the petition on behalf of the Debtor because he lacked the authority to do so pursuant to the terms of the orders of the District Court.  Case 2 at Dkt. No. 57.

12.     On July 23, 2024, the Court entered a memorandum decision and order dismissing Case 2 finding essentially that the Receiver did not have the authority to file Case 2 on behalf of the Debtor and that the Roglieri Trustee did not have the ability to waive the defect and ratify the filing *ex post facto*. *Id.* at Dkt. No. 85.  The Debtor appealed that decision and order, which appeal is pending before the District Court at Case No. 24-civ-000939.

13.     On September 16, 2024, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court commencing this bankruptcy case.  In this case, the Debtor is under the control of the Roglieri Trustee as the party in possession and control of all equity interests in the Debtor, who is acting as the manager of the Debtor.

### B.  The Debtor's Need to Investigate the Debtor's Financial Affairs

14.     Roglieri is currently incarcerated pending trial and has been combative with the Roglieri Trustee and Debtor from his detention facility.  *See, e.g., Roglieri Request for Payment of $100,000 seized by the Roglieri Trustee to Roglieri's criminal counsel*, Roglieri Case Dkt. No. 269 (Oct. 7, 2024); *Roglieri's Objection to Debtor's Proposed Abandonment of Property*, Dkt. No. 39 (Oct. 15, 2024).

15.     Moreover, in text messages discovered by the Government, Roglieri has admitted to an undisclosed person to committing criminal acts and trying to conceal that fact as follows:

| Date | Time | From | Message |
|------|------|------|---------|
| 1/4/2024 | 11:20:42 am | Unknown | Can't you just keep working on those companies?<br><br>I know it might be hard at first, but look what you build this up to beat from nothing |

| Date | Time | From | Message |
|------|------|------|---------|
| 1/4/2024 | 11:20:56 am | Roglieri | Yea I can but not when I'm in f—king prison |
| 1/4/2024 | 11:21:09 am | Unknown | Why do you think that's gonna happen?<br><br>Why can't it just be a bankruptcy? |
| 1/4/2024 | 11:21:47 am | Roglieri | Because I unused others money to fund deals<br><br>I already told you this |
| 1/4/2024 | 11:22:02 am | Unknown | And that's illegal? |
| 1/4/2024 | 11:22:15 am | Roglieri | Yes |
| 1/4/2024 | 11:22:36 am | Unknown | How bad . I mean, what's the worst you do a couple years who cares<br><br>You have your family<br><br>This whole family will support you through this<br><br>It's a civil case it's not a criminal case |
| 1/4/2024 | 11:27:42 am | Roglieri | **It will turn criminal as soon as they get into bank statements** |

Criminal Case, Dkt. No. 6-1 (June 3, 2024) (emphasis added) (typographical and grammatical errors in originals).

16.     In a recent decision on Roglieri's motions for release pending trial in the Criminal Case, the District Court found, among other things, that "the Government has met its burden of proving by clear and convincing evidence that [Roglieri] poses a danger to the community" and "that there are no conditions or set of conditions that would ensure the safety of the community if he was released." Criminal Case, Dkt. No. 71 at 41 (Jan. 30, 2025).

17.     The facts of this case necessitate an investigation by the Debtor of the Debtor's financial affairs while under Roglieri's stewardship and further indicate that Roglieri will be

unhelpful and unreliable in connection with that investigation.

18.    The Debtor's investigation is significantly challenged by the lack of available books and records, which Roglieri failed to preserve.

### C.    The Debtor's $20 Million Transfer to Berone

19.    On October 24, 2022, the Debtor transferred $20 million from its Citibank Account No. **6945 to Berone's RBC Account No. ***0011, as set forth on the Debtor's account statement:

```
10/24/22  32229700029  SAME DAY DR TRANSFER                                    20,000,000.00
          650000000571  GID:D0322970701801 FED20221024B1Q8021C008137 USER
                        REF:D29720577013 REF:D29720577013 CR BK ID:026013576
                        CR BK:SIGNATURE BANK BENEF:1504503581 BERONE CAPITAL
                        FUND LP INSTRUCT DATE:10/24/22 ADVICE TYPE:NONE
```

20.    Three days later on October 27, 2022, Berone transferred $3.4 million to its own Signature Bank Account No. ***3727, and $6 million to Karo's IOLTA account at Wells Fargo:

```
$3,400,000.00 PAR NUMBER: 221027027748
FED REF: 002643
DATE/TIME COMPLETED: 10/27/2022 12:44:59 PM
RECEIVING BANK 026013576SIGNATURE BK NY*
BENEFICIARY         BERONE CAPITAL FUND LP
ORIGINATOR: D9566001110 BERONE CAPITAL FUND LP 3595 CANTON RD / STE 312-223 M
ARIETTA GA 30066
IMAD: 20221027I1Q73AGC002643
SOURCE: RTW CONTROL NUMBER: RBC9W00190WIRES7
INITIATED BY: RBC9W00190 ON 10/27/2022 01:44:56 PM
```

```
$6,000,000.00 PAR NUMBER: 221027027850
FED REF: 002672
DATE/TIME COMPLETED: 10/27/2022 12:46:32 PM
RECEIVING BANK 121000248WELLS SF*
BENEFICIARY         M KARO ESQ IOLTA
ORIGINATOR: D9566001110 BERONE CAPITAL FUND LP 3595 CANTON RD / STE 312-223 M
ARIETTA GA 30066
IMAD: 20221027L3LF151C002672
SOURCE: RTW CONTROL NUMBER: RBC9W00191WIRES7
INITIATED BY: RBC9W00191 ON 10/27/2022 01:46:29 PM
```

21.    Approximately two weeks later, Berone transferred another $5.9 million to Karo's IOLTA account, making it $11.9 million transferred to Karo:

```
MSG SOURCE TYPE  PPUSA
Account No       3727
Amount           5,900,000.00
Bene Bank        JPMORGAN CHASE BANK, NA
Beneficiary      MARTIN KARO, ESQ. IOLTA
BNF ADDR1        205 GARBER DRIVE
BNF ADDR2        YARDLEY, PA 19067
BNF ID           0137
Branch ID        119
Country Code     US
Currency         USD
Direction        O
Fee              0.00
IMAD             20221109B6B7261F004896
MID              22110913124SH200
Msg Status       COMPLETE
Msg Subtype      00
Msg Type         10
```

22.    The Debtor does not have any insight regarding where the $11.9 million transferred to Karo ended up but intends to learn that through the discovery anticipated by the Application.

The Debtor also fails to understand the precise nature of the relationship to Karo.  The Debtor did locate a draft escrow agreement produced by Barclay Damon LLP, the Debtor's former counsel, dated as of January 10, 2023, approximately three months after the $20 million Berone transfers, pursuant to which QuatReign Capital Sourcing LLC was a lender (Giorgio Johnson signing as executive director), the Debtor was a borrower, and Karo and Juan Carlos Marquez were both escrow agents.  That agreement was not executed and is different from a signed escrow agreement submitted by the Debtor in future litigation discussed below.  There is also no indication of where the document originated, whether with Barclay Damon LLP or elsewhere.

23.    The Debtor also produced an email, dated October 6, 2022, in the Receivership Case from Roglieri to Giorgio Johnson at Reign, and Karo, among others, wherein Roglieri refused to do a deal with Karo serving as the escrow agent stating that the "only way I would feel comfortable using my funds to support this transaction is to use a real legitimate law firm for the escrow that has insurance up to 1Billion. . ."[8]

24.    The Debtor has more insight regarding the $8.1 million that remained with Berone than it does the funds transferred to Karo.  For example, just a few days after receiving the Debtor's $20 million, Berone made the following transfers to acquire luxury items:

| Date | Beneficiary | Presumed Purpose | Amount |
|------|-------------|------------------|--------|
| 10/28/2022 | MaxxVin LLC – a now closed luxury auto dealership in Davie, Florida | Luxury auto | $283,000.00 |
| 10/28/2022 | Ferrari of Central Florida Inc. (https://www.ferraricf.com/) | Luxury auto | $281,200.50 |
| 11/01/2022 | ATL Hawks, LLC – Hawks Depository (https://www.hawks.com) | NBA tickets | $58,000.00 |
| 11/01/2022 | Jet Linx Aviation (https://www.jetlinx.com/) | Private jets | $100,000.00 |
| 11/04/2022 | Phoenix American Financial Services (https://www.phxa.com/) | Private jets | $850,000.00 |

---

[8] This email was produced in discovery in the Receivership Case and submitted as evidence but was not made part of the public docket.

| | |
|---|---|
| Total Immediately Dissipated on Luxury Items: | **$1,572,200.50** |

25.     Then, on October 16, 2023, Berone returned $1.865 million to the Debtor.  The Debtor has not located any communications or other documents to explain why only these funds were returned.  Regardless, the remaining $6.235 million that Berone received and did not send to Karo's IOLTA account remains outstanding and unaccounted for.

### D.  The Debtor's Efforts to Recover from Reign, Its Principals, and Karo

26.     By February 2023, just over three months after the Debtor's $20 million transfer to Berone, Roglieri apparently determined that he had been swindled, at least by Reign, its principals, and Karo.[9]  On February 15, 2023, the Debtor sued Reign in a matter captioned *Prime Capital Ventures, LLC v. Reign Financial International, Inc.*, Case No. 23-cv-207 (N.D.N.Y. Feb. 15, 2023) (the "Reign Litigation").  On March 9, 2023, the Debtor amended its complaint to include Reign's principals, Giorgio Johnson and Gary Mills, as well as Karo, as defendants.  *See id.* at Dkt. No. 4 (the "Amended Reign Complaint").  Berone was conspicuously missing as a defendant in the Reign Litigation wherein the Debtor sought to recover the entire $20 million from Reign and the individual defendants, although it only alleged that Reign took and absconded with approximately $12 million as set forth above. *See id.* at ¶14.

---

[9] Little is known about Reign.  It maintains a website at www.reignfi.com where it states that it is a "premier Client Centric Financial Solutions Firm heavily focused on large scale financial transactions."  Also, in July 2020, an anonymous user created a Facebook page under the name "Reign Financial International – Fraud Reporting Center" with the following banner (https://www.facebook.com/profile.php?id=100067730831975):



We created this profile to collect and report all the scam and fraudulent activities set up by Mr. Giorgio Johnson through his companies REIGN FINANCIAL INTERNATIONAL, LLC and REIGN CAPITAL AND CONSULTING GROUP, LLC

27.    According to the Debtor in the Amended Reign Complaint, the Debtor deposited the $20 million with "non-party hedge fund Berone. . . , under the pretense that such funds would be used by Reign to participate in a transaction platform involving arbitrage of international commercial private placement programs" pursuant to the terms of a certain "'Trade Agreement for Prime Capital Ventures, LLC No. PCV-RFI-20M-092022'" and corresponding joint venture agreement. *Id.* at ¶¶12-13.

28.    The Debtor also annexed an escrow agreement to the Amended Reign Complaint pursuant to which a New York attorney Aaron Etra was to serve as escrow agent rather than Karo. *See id.* at ¶25.  It is entirely unclear why or how Karo came to receive the funds, but according to the Debtor, Karo was proposed to be part of another transaction proposed by Reign that the Debtor refused to enter into.[10]  *See id.* at ¶¶29-33.

29.    On June 12, 2023, the defendants in the Reign Litigation filed a motion to dismiss the Debtor's complaint and to compel arbitration.  That motion is fully submitted and has been pending for nearly two years.  During that time, Reign, Karo, and other other defendants to that action have not had to explain what happened or where the Debtor's money went.  They need to provide answers now.

### E.  The Debtor's Mysterious Relationship with Berone

30.    As set forth above, the Debtor did not name Berone as a defendant in the Reign Litigation.  Further, there are signs that the Debtor was familiar with and friendly to Berone.  For example, in text messages between Roglieri and Berone's principal, Jeremiah Beguesse, on December 29, 2023, during the pendency of Case 1, Roglieri instructed Mr. Beguesse not to

---

[10] Karo's relationship to the the Debtor and other Party Examinees is not well understood. Brief due diligence with respect to Karo reveals that he is an attorney practicing in Pennsylvania, is currently Senior Counsel to Global Business Resource Associates, and that he was sued for fraud in 2016 in connection with certain business transactions.  *See Peter W. Emmet v. Del Franco, et al.*, Case No. 16-cv-11211 (GAD)(SDD) (N.D.N.Y. Apr. 4, 2016).

cooperate with the bankruptcy trustee.  Mr. Beguesse immediately agreed with "Hey Kris you got

it."  The two went on in the exchange to discuss alleged meetings each had with the FBI and SEC:



31.    Despite the seemingly cozy relationship between Roglieri and Berone, Roglieri

falsely claimed in Case 1 and the subsequent Receivership Case that "Berone Capital Fund is

holding more than $52 million for the benefit of Prime Capital."  Receivership Case, Affidavit of

Pieter Van Tol, Dkt. No. 13, ¶11 (Jan. 16, 2024).  Roglieri clearly did this in an attempt to alleviate

pressure from himself and the Debtor.  In doing so, Roglieri produced what is apparently a falsified

bank document to attempt to prove the existence of the $52 million:



*See* Case 1, Dkt. No. 74-5 (filed Jan. 8, 2024).

32.     As a result of providing that bank statement to creditors, the Petitioning Creditors

sought the dismissal of Case 1 so that they could commence the Receivership Case and seek the

appointment of a receiver for both the Debtor and Berone.  *See id.*

33.     On January 12, 2024, immediately following this Court's dismissal of Case 1,

Compass commenced the Receivership Case.  On January 24, 2024, after appointing the Receiver

as temporary receiver, the District Court entered a decision and order overruling the Debtor's

opposition and making the Receiver the permanent receiver over the assets of the Debtor and

Berone, among others.  Receivership Case, Dkt. No. 56.

34.     Berone finally appeared in the Receivership Case on February 6, 2024.  *See id.* at

Dkt. No. 96.  On March 8, 2024, Berone filed a motion to be relieved from the receivership.  *See

id.* at Dkt. No. 148.  The focus of Berone's argument was Compass's failure to demonstrate that

any of its investment in the Debtor actually reached Berone, and that the statement previously

produced by Roglieri and the Debtor showing that Berone housed $52 million of the Debtor's

funds was a lie.  Berone did not provide details of its relationship with the Debtor and Roglieri, or

explain where the still missing $6.235 million of the Debtor's funds is.

35.    On March 19, 2024, the District Court entered a lengthy decision wherein the court, among other things, declined to relieve Berone of the receivership. Receivership Case, Dkt. No. 160. Ultimately, in a subsequent decision on June 24, 2024, the District Court relieved Berone finding that the "evidence of potential fraud is not enough to warrant retaining the Receiver over the Berone Defendants." *See id.*, Dkt. No. 184 at 8.

36.    Despite relieving Berone of the receivership, the District Court made several pointed comments regarding Berone's conduct and activities, including:

- When referring to Berone's claim that Roglieri gave verbal authorization to transfer $11.9 million to Karo, the Court said that "[i]t also strains credulity that a reputable business would send millions of dollars via wire transfer according to only a verbal authorization." (p.7);[11]

- "The 'records' submitted by the Berone Defendants to the Receiver have been scarce and questionable." (p.7);

- "The Berone Defendants also advised the Court that despite being able to buy expensive luxury vehicles for their business, they work out of the basement of one of

---

[11] The wire transfer request executed by Mr. Beguesse on behalf of Berone for the initial $6 million transfer to Karo does not support Berone's account. There is no reference to any oral authorization by Roglieri on that statement but there is a handwritten explanation for the transfer stating "Joint Investment w/ Reign Capital":



the principal's parents' homes." (pp.7-8);

- "The Court agrees with Plaintiff and the Receiver that the Berone Defendants' business practices, particularly those connected to Prime Capital and Kris Roglieri, are surrounded by questions of legitimacy and legality."

- "The Berone Defendants' connection to Prime Capital and Kris Roglieri is also troubling given the text message produced which encouraged Mr. Beguesse to wait to engage with the bankruptcy trustee until Mr. Beguesse and Mr. Roglieri could speak 'off the record.'" (p.10)

37.     Berone filed multiple proofs of claim against the Debtor in this case asserting damages "in Excess of $30,000,000.00" as a result of the Debtor's false claims that resulted in the imposition of the receivership on Berone.  *See* Proofs of Claim Nos. 25-27.  The District Court had this to say about Berone's claims for damages and irreparable harm: "insofar as the Berone Defendants claim irreparable harm, no evidence other than their own declarations have been provided establishing the business, investments, assets, or clients that they are unable to attend to or will lose.  Those conclusory declarations, however, provide only marginal and something unbelievable support to their claims."  Receivership Case, Memorandum Decision, Dkt. No. 160 at 39-40 (Mar. 19, 2024).  Clearly, the Debtor needs discovery regarding Berone's claim for significant damages against its estate.

38.     What is known about the relationships between the Debtor, Roglieri, and the Party Examinees raises far more questions than it answers.  The most significant question is where is the missing $18.135 million of the Debtor's money.  The purpose of this Application is to finally get answers to these questions.

## **RELIEF REQUESTED**

39.     Bankruptcy Rule 2004(a) provides that "[o]n the motion of any party in interest, the court may order the examination of any entity."  It is well established that the investigation envisioned by this rule is broad-based, relating to any and all matters affecting the administration of the debtor's estate, as well as the conduct, liabilities or property of the debtor.

40.     Discovery under Rule 2004 is broader than that available under the Federal Rules of Civil Procedure.  *In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991).  "As a general proposition, [Bankruptcy] Rule 2004 examinations are appropriate for revealing the nature and extent of the bankruptcy estate and for 'discovering assets, examining transactions, and determining whether wrongdoing has occurred.'" *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) (citations omitted).  As such, courts have acknowledged that "[Bankruptcy] Rule 2004 examinations are broad and unfettered and in the nature of fishing expeditions." *Id.*; *see also*, *In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991); *In re Silverman*, 36 B.R. 254, 258 (Bankr. S.D.N.Y. 1984).

41.     The investigation of the Debtor is precisely what is authorized by Bankruptcy Rule 2004 and the examination of each of the Examinees is required because they are believed to have knowledge and information related to the origin of the Debtor's business and fraudulent representations made by the Debtor.

42.     Bankruptcy Rule 2004 permits the Debtor to issue subpoenas on any parties which the Debtor believes may have information relevant to its property and in furtherance of its investigation.

43.     The Debtor requires any documents or information related to the Debtor's relationship with any of the Party Examinees, including communications with the Debtor, and

communications amongst Party Examinees regarding the Debtor or Roglieri.  Significantly, the
Debtor needs any and all documents or information from the Party Examinees that will answer
vital questions regarding their relationship to the Debtor, including where the Debtor's $18.135
million went and who may be liable for its return.

44.     Further, the Debtor seeks discovery directly from the Bank Examinees where
Berone, Reign, and Karo bank.  Those documents and information will involve not just account
information needed to trace the flow of funds, but also any documents, records, reports, and other
information related to such institutions' implementation, enforcement, and compliance with its
Know Your Customer (KYC) and Anti-Money Laundering (AML) programs, and compliance with
the Bank Secrecy Act and US Patriot Act with respect to Berone, Reign, or Karo, including, but
not limited to, suspicious activity reports, large transaction reports, investigation case summaries,
and alerts of potentially unusual, irregular, improper, and/or suspicious account activity.  Such
information will assist the Debtor in determining whether it has claims against third parties in
connection with the missing $18.135 million.

45.     As such, the examination of each of the Examinees is necessary to aid the Debtor
in its investigation of its financial affairs, and the existence of claims that it can pursue for the
benefit of its creditors.

46.     The Debtor will require oral examinations of Karo and at least one representative
of Berone and Reign.  The Debtor does not anticipate requiring oral examinations of all of the
remaining Examinees but requests the right to obtain such examinations following a full and
unfettered production of documents.

47.   The Debtor respectfully submits that the proposed examination of each of the Examinees is reasonable, necessary, and authorized by Bankruptcy Rule 2004 in furtherance of its necessary investigation.

## PROPOSED PROCEDURE

48.   The Debtor proposes that the production of documents or electronic data be made at either (i) the offices of the Debtor's counsel, Klestadt Winters Jureller Southard & Stevens, LLP, 200 West 41st Street, 17th Floor, New York, New York, 10036-7203, or such other location as may be within the 100-mile geographic limitation of Fed. R. Civ. P. 45(c); or (ii) any other location as agreed to by the Debtor and the Examinees.

49.   The Debtor proposes to serve the Subpoenas at least fourteen (14) days prior to the due date for the production or inspection of any documents or electronic files.

## NOTICE

50.   Applications for relief under Rule 2004(a) are usually granted *ex-parte*.  9 *Collier on Bankruptcy* ¶ 2004.01[2] (15th ed. 2009), *citing 1983 Advisory Committee Note to Fed. R. Bankr. P. 2004*, *reprinted in* ch. 2004, App. 2004; *In re Sutera*, 141 B.R. 539, 540 (Bankr. D. Conn. 1992); *In re Wilcher*, 56 B.R. 428, 434 (Bankr. N.D.Ill. 1985); *In re Silverman*, 10 C.B.C.2d 1219, 36 B.R. 254 (Bankr. S.D.N.Y. 1984).  Some bankruptcy courts even adopt local rules allowing the service of subpoenas under Bankruptcy Rule 2004(a) without having to file any application at all.  *See e.g.*, D.N.J. L.B.R. 2004-1(b).

51.   Here, out of an abundance of caution, the Debtor has proceeded with the Application by notice and hearing providing each of the specifically named Examinees with an opportunity to object prior to consideration by the Court.  Further, the Examinees will have ample

opportunity to seek from this Court protection from any subpoena or information sought by the subpoena issued by the Debtor that the Examinee believes it has a basis to challenge.

52.    The Debtor further submits that it should be permitted to serve Subpoenas by Federal Express ("FedEx"), other nationally recognized overnight carrier, or any other means of service allowed under Bankruptcy Rule 9016 as appropriate, because personal service on all persons subpoenaed pursuant to the terms of the Proposed Order would be unduly burdensome, expensive and would delay the Debtor's efforts to obtain information essential to uncovering whether causes of action exist that may significantly augment the Debtor's estate.

53.    Courts in the Second Circuit have authorized alternative service when such service was reasonably "calculated to provide timely actual notice." *Med. Diagnostic Imaging PLLC v. CareCore Nat. LLC,* Case No. 06 CIV 13156, 2008 WL 3833238, at *2 (S.D.N.Y. Aug. 15, 2008); *Cordius Trust v. Kummerfeld,* Case No. 99 CIV 3700 (DLC), 2000 WL 10268, at *2 (S.D.N.Y. Jan. 3, 2000) ("Because alternative service by means of certified mail reasonably insures actual receipt of the subpoena by the witness, the "delivery" requirement of Rule 45 will be met"); *In re Shur,* 184 B.R. 640, 644 (Bankr. E.D.N.Y. 1995) (holding that Rule 45 of the Federal Rules of Civil Procedure (and by extension Bankruptcy Rule 9016) does not require personal service and that other service is permissible provided service was reasonably calculated to give actual notice). Here, delivery by FedEx, other nationally recognized overnight carrier, or other means agreed to by the subpoenaed parties, is reasonably calculated to ensure actual receipt by the persons subject to any Subpoena.

54.    Based upon the foregoing, the Debtor submits that the proposed notice of the Application and hearing is adequate and that no further notice should be required.

## NO PRIOR RELIEF

55.     Except as specifically stated, no previous application for the relief sought herein has been made to this or any other court.

**WHEREFORE**, the Debtor respectfully requests that the relief requested herein be granted and the Court enter an order, substantially in the form of the Proposed Order annexed hereto as <u>Exhibit C</u>, and grant such other and further relief as is just and proper.

Dated:    New York, New York
          May 6, 2025

**KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP**

By:   _/s/ Fred Stevens_
      Fred Stevens
      Lauren C. Kiss
      Kevin Collins
      200 West 41st Street, 17th Floor
      New York, New York 10036
      Tel: (212) 972-3000
      Fax: (212) 972-2245
      Email: fstevens@klestadt.com
              lkiss@klestadt.com
              kcollins@klestadt.com

      _Counsel to Debtor Prime Capital Ventures,
      LLC_