So Ordered.

Signed this 6 day of May, 2025.



_____

Robert E. Littlefield, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:

PRIME CAPITAL VENTURES, LLC,

*Debtor.*

Case No. 24-11029
Chapter 11

**ORDER TO SHOW CAUSE**

This bankruptcy case was filed on September 16, 2024, by Christian H. Dribusch, Esq. ("Dribusch") acting in his capacity as the personal representative of Prime Capital Venture, LLC's ("Prime") sole member. (ECF No. 1). Dribusch is also the Chapter 7 trustee in the bankruptcy case of Kris Daniel Roglieri ("Roglieri"), whose estate is now Prime's sole member. *See In re Kris Daniel Roglieri*, Case No. 24-10157 (Bankr. N.D.N.Y.).

On April 2, 2025, Dribusch, as Chapter 7 trustee in the Roglieri bankruptcy, filed a motion for the turnover and sale of a Richard Mille Tourbillion watch (the "Watch") valued at over two million dollars (the "Watch Motion"). *In re Roglieri*, ECF No. 398. There was no opposition to the Watch Motion. On April 23, 2025, the Court held a hearing at which it denied the Watch Motion. *In re Roglieri*, ECF Nos. 455–56. The Watch Motion and the hearing on same highlighted

-1-

several areas of concern that have caused the Court to question Dribusch's ability to effectively manage the Prime bankruptcy estate while serving as Chapter 7 trustee in Roglieri's bankruptcy.

Since this case was filed in September 2024, Prime, under the management of Dribusch, has claimed the watch is property of Prime's estate in the bankruptcy schedules, disclosure statement, amended disclosure statement, second amended disclosure statement and Chapter 11 plan. (ECF Nos. 1, 78, 91–92, 118).

The Watch Motion was the first instance in which Dribusch argued the Watch belongs to Roglieri's estate. *In re Roglieri*, at ECF No. 398. The only basis provided by Dribusch in the Watch Motion is that "[Roglieri] listed the Watch as an asset in [his] petition." *Id.* At the hearing, Dribusch's position changed once again as he claimed it was unknown whether the Watch belonged to Prime or Roglieri. *See, generally, In re Roglieri*, ECF No. 455. Dribusch contended that Roglieri may have a claim to the Watch since "it was listed on Mr. Roglieri's bankruptcy petition because it was insured by Mr. Roglieri . . . ." *In re Roglieri*, ECF No. 455 at 4:05. No evidence of insurance has been provided to the Court, and the Watch Motion makes no reference to insurance or the notion of clouded title.

Despite the issue of ownership, Dribusch sought to have the Watch sold in the Roglieri bankruptcy even though available evidence[1] strongly suggests it belongs to Prime.[2] Dribusch stated: "I didn't want to deal with the ownership issue . . . I was not planning on dealing with the ownership issue." *In re Roglieri*, ECF No. 455 at 17:28. At the hearing, the Court also pointed out

---

[1] Prime's ownership of the watch is evidenced by a receipt showing the Watch was purchased by Prime. *Compass-Charlotte 1031, LLC et al. v. Prime Capital Ventures, LLC et al.*, Case No. 24-cv-55 (N.D.N.Y.) at ECF No. 61. Paul A. Levine, Esq. ("Levine"), the federal receiver for Prime, also provided evidence that the funds for the Watch purchase came from one of Prime's bank accounts. (ECF No. 21-1 at 47). Levine and Dribusch had also prepared a stipulation that would direct the turnover of the Watch to Prime. *In re Roglieri*, ECF No. 455 at 1:08.

[2] In fact, Dribusch indicated on the record that it was "highly probable, quite frankly, that [the Watch] belongs to Prime Capital Ventures." *In re Roglieri*, ECF No. 455 at 6:07.

the apparent conflict of interest between the estates of Prime and Roglieri, which Dribusch indicated he was aware of. *In re Roglieri*, ECF No. 455 at 17:20.

Dribusch then indicated that he was "seeking a way to monetize the [Watch], secure the money, hold it aside in a separate account pending a final determination as to the ownership of the Watch . . . ." *Id.* at 6:14. None of this was referenced in the Watch Motion, which merely indicates that the sale "will result in funds being made available for distribution for the benefit of creditors." *In re Roglieri*, ECF No. 398 at 6.

Perhaps more concerning is the fact that "before [Dribusch] ever even filed [this case] this is an issue that's been discussed with the U.S. Trustee's Office and has been an issue that's been out there . . . ." *In re Roglieri*, ECF No. 455 at 25:51. Despite this issue having been known since at least September 2024, no efforts were made to determine ownership.[3] Instead, Dribusch has claimed the Watch in both Prime and Roglieri's bankruptcies with no reference to the potential interests of the other.

Pursuant to 11 U.S.C. § 1104, the Court, after notice and a hearing, shall appoint a trustee "for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management" or "if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate . . . ." 11 U.S.C. § 1104(a)(1)–(2).

> The analysis of § 1104(a)(1) is not limited to the enumerated conditions found in that provision. The factors set forth by Congress in a "for cause" appointment under § 1104(a)(1) are not exhaustive. Courts have found that conflicts of interest on the part of a debtor's management justify the appointment of a trustee under § 1104(a)(1). It has also been held that a conflict of interest alone is sufficient justification under § 1104(a)(1) for the appointment of [a] trustee.

---

[3] It is disconcerting that the United States Trustee, who has also known about these ownership issues for months, did not raise this matter previously when Prime claimed the Watch as its own and proposed to liquidate it as part of its Chapter 11 plan or when Dribusch attempted to sell the Watch in the Roglieri case.

*In re Funge Sys.*, Case No. 01-12219-RGM, 2002 Bankr. LEXIS 1937, at *16–17 (Bankr. E.D. Va. Oct. 17, 2002) (internal citations omitted); *see also In re Altman*, 230 B.R. 6, 16 (Bankr. D. Conn. 1999) (finding that a conflict of interest is relevant to a consideration of § 1104(a)(1)). "[T]he standard for appointment under Section 1104(a)(2) is a flexible one that suggests a balancing of costs and benefits in determining whether the appointment of a trustee is appropriate." *Taub v. Taub (In re Taub)*, 427 B.R. 208, 227 (Bankr. E.D.N.Y. 2010) (citing *In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990)). Here, the appointment of a trustee could be justified under both § 1104(a)(1) and § 1104(a)(2).

The Court now has pleadings from Dribusch claiming that the Watch belongs to Prime as well as Roglieri. These, on their face, demonstrate a clear conflict. The statements made by Dribusch at the hearing merely obfuscate the question of ownership even further. No evidence of insurance was provided and, even if it had been, no legal basis was given for why that would overcome the ownership interest of Prime.

According to Prime's second amended disclosure statement, filed by Dribusch, the Watch makes up approximately twenty-five percent of Prime's known assets. (*See* ECF No. 118 at 63) (estimating that Prime has approximately $8,460,026[4] in assets). Had the Watch Motion been granted as proposed, the funds available for Prime's creditors would have been severely diminished.[5] Yet Prime, under the control of Dribusch, did not submit any opposition or response

---

[4] This calculation also presupposes Prime maintains control and ownership of the real property in Virginia Beach, Virginia, which is currently subject to a civil forfeiture action. *See United States of America v. One 2003 Ferrari Enzo AB Version E et al.*, Case No. 24-cv-1345 (N.D.N.Y.), at ECF No. 20. If Prime loses control of the real property, the Watch would make up an even greater share of Prime's total assets available for distribution.

[5] As addressed at the hearing, there is also a concern that Dribusch would be entitled to a commission pursuant to 11 U.S.C. § 326 by selling the Watch in the Roglieri bankruptcy, even if the proceeds are subsequently turned over to Prime. *See* 11 U.S.C. § 326(a) (permitting the trustee to receive a commission based upon "all moneys disbursed or turned over . . . .").

to the Watch Motion.[6] This is a strong indication that Dribusch currently faces a conflict of interest as a result of his positions in both the Prime and Roglieri bankruptcies.

Now, after due deliberation, it is hereby

**ORDERED**, that Prime, by and through Christian H. Dribusch, Esq., is directed to appear before the Court on **May 21, 2025**, at **1:00 p.m.** and show cause as to why a trustee should not be appointed pursuant to 11 U.S.C. § 1104. Parties may appear either telephonically via call-in number: 518-217-2288, Conference ID: 939500229#, or in person at the U.S. Bankruptcy Court, James T. Foley Courthouse, Room 306, Albany, New York; and it is further

**ORDERED**, that any responsive pleadings shall be submitted to the Court by no later than **May 19, 2025**, at **4:00 p.m.**

# # #

---

[6] There is also a question whether Prime could ever recover proceeds from the sale had the Watch Motion been granted. The language used in the Watch Motion indicates the Watch belongs to Roglieri, which would in theory supersede any claim made by Prime thereafter.