UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:

PRIME CAPITAL VENTURES, LLC,

Debtor.

Case No. 24-11029-REL

**OBJECTION OF PROPOSED EXAMINEES REIGN FINANCIAL INTERNATIONAL, INC., GIORGIO JOHNSON, GARY MILLS, JUAN CARLOS MARQUEZ, AND MARTIN KARO, ESQ. IN OPPOSITION TO DEBTOR'S APPLICATION PURSUANT TO FED. R. BANKR. P. 2004 AUTHORIZING DISCOVERY REGARDING DEBTOR'S $20 MILLION TRANSFER TO BERONE CAPITAL FUND LP**

TO:   HON. ROBERT E. LITTLEFIELD, JR.
      UNITED STATES BANKRUPTCY JUDGE:

Proposed Examinees Reign Financial International, Inc. ("Reign"), Giorgio Johnson ("Johnson"), Gary Mills ("Mills"), Juan Carlos Marquez ("Marquez"), and Martin Karo, Esq. ("Karo", collectively with Marquez, Mills, Johnson, and Reign, "Proposed Examinees") by and through their counsel, Toporowski Law, PLLC, submit the instant objections and opposition to Debtor Prime Capital Ventures LLC's ("Prime Capital" or "Prime" or "Debtor") application for an Order seeking sweeping discovery against Proposed Examinees, who are already engaged in an adversarial litigation with Debtor wherein discovery has been stayed by court order. *See Prime Capital Ventures, LLC v. Reign Financial International, Inc, et al.*, 1:23-CV-00207 (FJS/DJS) ("Adversarial Proceeding").

1

**I.     DISCOVERY MUST BE PURSUED, UNDER THE FEDERAL RULES OF CIVIL PROCEDURE, IN THE PENDING ADVERSARIAL PROCEEDING.**

On March 10, 2023, Debtor filed its "First Amended Complaint" against the same Proposed Examinees that it seeks discovery from here in the Federal District Court for the Northern District of New York (*Prime Capital Ventures LLC v. Reign Financial International LLC, et al.,* Case 1:23-cv-00207-FJS-DJS) (the "Adversarial Proceeding"). In the Adversarial Proceeding, Debtor has asserted the same allegations it asserts here. Namely, that the Proposed Examinees "swindled" Debtor and engaged in fraudulent activity. Debtor has also sought in the Adversarial Proceeding what it seeks from this Court: premature and wide-ranging discovery not only from the corporate defendant Reign, but also personal information from the individual defendants. The court in the Adversarial Proceeding denied Debtor's request for premature discovery and, respectfully, this Court should do the same.

Under the Pending Proceeding Rule, "once an adversary proceeding or contested matter is commenced, discovery should be pursued under the Federal Rules of Civil Procedure and not by Rule 2004." *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002); *In re Bennett Funding Group, Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996) ("The well recognized rule is that once an adversary proceeding or contested matter has been commenced, discovery is made pursuant to the Fed. R. Bankr. P. 7026 *et seq.*, rather than by a Fed. R. Bankr. P. 2004 examination."). The principle applies to pending state court litigation, *see Snyder v. Society Bank*, 181 B.R. 40, 42 (S.D. Tex. 1994) *aff'd sub nom. In re Snyder*, 52 F.3d 1067 (5th Cir. 1995), as well as foreign litigation in which discovery is available. *See In re Petition of Board of Dirs. of Hopewell Int'l Ins. Ltd.*, 258 B.R. 580, 586 (Bankr. S.D.N.Y. 2001).

The Pending Proceeding rule is based on the different safeguards that attend Rule 2004 and civil litigation discovery. The latter provides greater protection to adverse parties, including notice of the time and place of the examination and the right to attend, object to questions and cross-examine witnesses. *See In re Dinubilo*, 177 B.R. 932, 939-40 & n. 12 (E.D. Cal. 1993) (contrasting the differences

between Rule 2004 examinations and discovery under the Federal Rules). The Pending Proceeding Rule reflects a concern that a party to litigation could circumvent his adversary's rights by using Rule 2004 rather than civil discovery to obtain documents or information relevant to the lawsuit. *Enron Corp.*, 281 B.R. at 841; *accord In re Wash. Mut., Inc.*, 408 B.R. 45, 51 (Bankr. D. Del. 2009) ("The primary concern of courts is the use of Rule 2004 examinations to circumvent the safeguards and protections of the Federal Rules of Civil Procedure."); *In re Int'l Fibercom, Inc.*, 283 B.R. 290, 292 (Bankr. D. Ariz. 2002) ("The reason for the ["pending proceeding"] rule is to avoid Rule 2004 usurping the narrower rules for discovery in a pending adversary proceeding."); *Bennett Funding Group*, 203 B.R. at 29-30 (Rule 2004 discovery not appropriate where it would "unavoidably and unintentionally create a back door" to discovery in another proceeding).

Here, Debtor's application is an attempt to circumvent federal court orders already in place staying discovery until the resolution of motions filed by both Debtor and the Proposed Examinees. Debtor's application is precisely why the Pending Proceeding rule exists, and must be followed accordingly. The alternative result would render that rule, the Federal Rules of Civil Procedure, and District Court Orders superfluous. It would unfairly and significantly prejudice the Proposed Examinees as well. The court in the Adversarial Proceeding denied Debtor's request for discovery:

> Plaintiff has filed a Letter Request to conduct limited discovery in this matter. Dkt. No. 55. Counsel for Defendants has objected to the request noting: (1) the requirements of Federal Rule of Civil Procedure 26 (f) have not been satisfied; (2) there is a pending Motion by Defendants to compel arbitration and to dismiss; and (3) in a related case, Judge DAgostino prohibited similar discovery until there was a resolution of an appeal pending in the Second Circuit. Dkt No. 57. After consideration of the arguments presented by counsel, the Court declines to open limited discovery at this time. After a decision on the Motion to Compel Arbitration is rendered, and if appropriate, a discovery conference will be held with the Court and discovery deadlines will be set. SO ORDERED.. Signed by Magistrate Judge Daniel J. Stewart on 5/21/2024. (Stewart, Daniel) (Entered: 05/21/2024)

Notably, and despite the foregoing Order, Debtor sought to cajole the court into revising its position on discovery in Debtor's favor despite no change in circumstances in the

3

Adversarial Proceeding. Debtor was ordered to file a Status Report regarding the bankruptcy proceeding in the Adversarial Proceeding. In its Status Report(s), Debtor's position was that discovery should proceed. *See* Adversarial Proceeding, Dkts. 61 & 63. The court, however, did not lift the stay and Debtor and the Proposed Examinees' respective motions (to amend the complaint for a third time; and to dismiss and compel arbitration) remain pending. Respectfully, engaging in discovery here will severely prejudice the Proposed Examinees who spent significant financial resources on the pending motions, which if resolved in their favor will require dismissal to an arbitration forum. If premature discovery occurs now here the likelihood of inconsistent results and court orders is manifest, which is why the Pending Proceeding rule exists and why this application must be denied.

Further, though Debtor's position in the Adversarial Proceeding changed in that a § 362 stay did not apply, in part because the Proposed Examinees had not asserted any claims against Debtor, the Proposed Examinees have not had the opportunity to assert counterclaims in their answer because their motion to dismiss and compel arbitration remains pending. Their opportunity remains in the Adversarial Proceeding.

For the foregoing reasons, it is respectfully submitted that Debtor's application must be denied because Debtor and the Proposed Examinees are already engaged in an adversarial proceeding wherein Debtor's nearly identical application(s) have been denied by the Court and discovery has been stayed.

## II.    DEBTOR'S SUBPOENAS ARE NOT SANCTIONED BY RULE 2004 BECAUSE THEY DO NOT RELATE TO AN ASSET OF THE DEBTOR.

Even assuming for the sake of argument that the Pending Proceeding rule does not bar discovery here (it does), discovery must still be denied because they do not relate to an asset of the debtor. Under Fed. R. Bankr. P. 2004 (b), "The examination of an entity under this Rule 2004, or of

4

a debtor under § 343, may relate only to: (A) the debtor's acts, conduct, or property; (B) the debtor's liabilities and financial condition; (C) any matter that may affect the administration of the debtor's estate; or (D) the debtor's right to a discharge." *Id.* Debtor focuses the Court upon a transfer of $11.9 million that Berone sent, in two transfers, to escrow agent Karo. The only plausible Rule 2004 factor would be (A), i.e., if those funds were property of the Debtor.

### A) Debtor's Libels of the Proposed Examinees Are Not Support for a Rule 2004 Examination.

Seeking discovery against the Proposed Examinees, Debtor claims that because of its asserted desire to exercise "an abundance of caution" (Debtor's Application, at ¶ 51), it wished to provide the Proposed Examinees with an opportunity to object and be heard. Were caution the actual reason, one would think Debtor's would pick some means of service other than what it did, i.e., use ordinary mail (not even registered or certified).

The stated reason is as unlikely as the means of service. Debtor's submission includes incorrect and irrelevant details regarding the Proposed Examinees in order to make a public record and prejudice this Court towards the Proposed Examinees. To convince the Court that they are bad guys,[1] and since they are bad guys, they can be investigated under a Rule 2004 "fishing expedition" despite an already ongoing adversarial proceeding between the parties where discovery has been stayed. *See In re Bennett Funding Group, Inc.*, 203 B.R. 24, 26 (Bankr. N.D.N.Y. 1996). So rather than simply state that the targets may have information reasonably calculated to lead to the discovery of admissible evidence, Debtor engages in unnecessary character assassination.

---

[1] Indeed, the insinuation and animus practically drips from Debtor's App. *See* p. 13, ¶ 29. Debtor's Counsel darkly intones "[the Proposed Examinees] have not had to explain what happened or where the Debtor's money went. They need to provide answers now[,]" implying both that there is some guilty secret they are hiding and that they have acted nefariously because a judge in another court has not yet ruled on fully-briefed motions submitted by the Proposed Examinees *and* Debtor.

5

As initial proof of that, the Court should note Debtor's Counsel's language: "Reign took and absconded with approximately $12 Million". Debtor's App. at p. 12, ¶ 26). Debtor's Counsel was ostensibly referencing Prime Capital's Adversarial Proceeding claim, but the epithet "absconded" is entirely gratuitous, and indeed in conflict with Debtor's Counsel's entire basis for the discovery sought. Debtor's Counsel claims not to understand the transfer from Berone to Reign – the reasons for it, the destination of the funds, nothing. Indeed, Debtor claims that to find those things out is precisely why it seeks discovery. Which would mean that Debtor has no idea whether the funds were "absconded" with, or passed via an entirely legitimate transaction, or even whether Debtor's funds left Berone at all (further discussion, *infra*). But to use the word "absconded" was neither accidental nor neutral. To "abscond" with something is to steal it. Debtor's Counsel flatly and without evidence accuses Reign and its officers and agents, of committing a crime. Were Debtor's Counsel to say the same in any setting other than a legal pleading, that would be both libelous and actionable.

That Debtor's objective is not merely to seek discovery, but to smear the Proposed Examinees to prejudice this Court against them, is further demonstrated by Debtor's Application at p. 12 Footnote 9. That footnote asserts "[l]ittle is known about Reign" – which is not the same as saying "Debtor's Counsel knows little about Reign" – and goes on to include an anonymous five-year-old Facebook banner alleging it was set up to collect and report unstated and unidentified "scam[s] and fraudulent activities" of Reign and its principal. This inclusion would not be admissible in any court of law; sheds no light whatsoever on why funds went from Berone to Reign; and therefore, the only reason to include this anonymous libel is inappropriate character assassination.

Further demonstrating that Debtor's intent is to prejudice the Court against the Proposed Examinees, Debtor states that Proposed Examinee Karo was sued by Peter Emmet for fraud in the Northern District of New York in 2016. *See* Debtor's App. p. 28, Footnote 10. This accusation is false; no such suit ever existed in that jurisdiction, nor was the Proposed Examinee sued by anyone in

6

2016. In reality (and in full candor to the Court), a far from particularized non-viable fraud claim was asserted against Proposed Examinee Karo *and eighteen other defendants* in 2014 – eleven years ago – in New Jersey, and then due to lack of jurisdiction and improper venue was transferred to Michigan. The District Court dismissed the fraud claims twice, the second time with prejudice. *See Emmet v. Del Franco et al.*, Case No. 16-cv-11211-GAD-SDD[2] (E.D.Mich.), Order dated February 22, 2017. Again, the only reason for Debtor to mislead the Court in this manner is to prejudice it against the Proposed Examinees so it can get what was denied to it by the Federal Court on multiple occasions in pending, adversarial proceedings: premature discovery.

### B) The Transfer at Issue Did Not Involve Debtor's Funds.

Debtor perhaps engages in character assassination to: (1) elide over a highly significant fact; and (2) ignore a critical distinction. The funds Debtor claims to be following were a $20 million transfer from the Debtor, Prime Capital, to Berone Capital. *See* Debtor's Application at p. 10 ¶ 19. Debtor claims that $11.9 million was taken out of the Prime Capital account by Reign for an unrelated transaction, for which Proposed Examinee Karo was the escrow agent. *See* Debtor's Application at ¶ 19 ("the Debtor transferred $20 million from its Citibank Account [] to Berone's RBC Account"), ¶20 ("Berone transferred … $6 million to Karo's IOLTA account"), ¶21 ("Approximately two weeks later, Berone transferred another $5.9 million to Karo's IOLTA account, making it $11.9 million transferred to Karo"), and ¶2 5 ("[O]n October 16, 2023, Berone returned $1.865 million to the Debtor…. *[T]he remaining $6.235 million* that Berone received and did not send to Karo's IOLTA account remains outstanding and unaccounted for") (emphasis added).[3] Debtor's Counsel would have

---

[2] That Debtor had the correct case number (albeit misidentifying the court) indicates that it had access to the actual orders that dismissed the fraud allegations but did not put those before the Court on this application.

[3] *See also* Debtor's App. at 29, "[the Proposed Examinees] have not had to explain what happened or where *the Debtor's money* went." (Emphasis added.)

7

this Court believe the $11.9 million was taken out of Prime Capital's account and forwarded at Reign's direction to the escrow agent, Karo.

The highly significant fact is that *those funds are still in Prime's account at Berone Capital.*[4] Debtor has Berone's records. If there was an $11.9 million debit from Prime's account, sending that money to Reign or Karo, he could easily demonstrate that. He cannot.

What actually happened is that Proposed Examinee Reign borrowed $11.9 million – from *Berone.* <u>This is undisputed</u>; it was even admitted by Debtor. Debtor referenced Prime Capital's Amended Complaint, Dkt. No. 4 at ¶ 14 (*see* Debtor's App. at ¶ 26) for the proposition that Reign "absconded with approximately $12 Million". It is telling, and damning, that Debtor paraphrased that allegation instead of quoting it. Debtor's refusal to cite the exact words of the pleading was not accidental, because what Debtor actually said in that paragraph – a sworn pleading – is "Reign took out a line of credit against Prime's account at Berone and absconded with more than ***$12 Million in loan proceeds***" (Dkt. No. 4 at ¶14) (emphasis added). It is therefore incorrect for Debtor to tell this Court that the funds forwarded from Berone to escrow agent Karo at Reign's direction were taken out of the Debtor's account when it knows, and has admitted, and already available evidence independently proves, it was not. The point bears repeating: It is undisputed that the $11.9 million was a Berone-to-Reign loan, and *not* Reign taking funds from Debtor's account. Not as a withdrawal by Reign, and not as a loan of Debtor's funds to Reign.

Berone conclusively puts paid to Debtor's subpoena justification because Berone charged Reign (and was paid) hundreds of thousands of dollars in interest on that loan. *See* Exh. A hereto

---

[4] To be precise, of the $20 million Prime Capital transferred to Berone, Berone returned $1.865 million to Debtor (*see* Debtor's App. at p. 12 ¶ 25), leaving Berone to account for $18.135 million.

8

(Berone to Reign invoices for interest on the $11.9 Million loan).[5]  *Berone could not charge interest to Reign if the funds had been withdrawn from the Prime Capital account.*

That the $ 11.9 million was a loan from Berone to Reign, and not a withdrawal from Prime Capital's account, is a critical distinction that renders Debtor's instant application utterly superfluous. Berone's loan to Reign is not an asset of Debtor, so discovery to follow it is not sanctioned under Rule 2004.

Prime Capital claimed in its Complaint that Reign used Prime Capital's account funds as collateral for the Berone-to-Reign loan. There does not appear to be any documentation for this, and it smacks of a *post-facto* justification from Berone to try to offload its liability. But even if true, that does not vitiate the critical distinction that makes Debtor's requested discovery unnecessary. To illustrate the point, substitute the term "Prime Capital's car" for "Prime Capital's account." Berone is in possession of Prime's car, which it asserts Reign used as collateral to borrow funds. What would be the Debtor's action in that case? Debtor's Counsel would say to Berone, "The car belongs to Prime, therefore I am taking possession of it for the bankruptcy estate. It's on you, Berone, to recover any funds you lent to Reign." To Berone's anticipated claim that the loan was secured by the vehicle, Debtor's Counsel would rightly say that is Berone's problem; the car – the entire car – must be returned to its owner's estate.

Debtor's Counsel is perfectly capable of making Prime whole, with respect to the $ 20 million it deposited at Berone, by forcing Berone to return the $18.135 Million it still retains from Prime to

---

[5] Specifically, the invoices reveal that Berone charged Reign 12% interest on the loan, accruing daily. [Berone's self-serving invoice legends identifying the $11.9 million as a "deal commission" and the $4,000 per day charges as "maintenance fees" appears to be Berone's attempt to disguise what they are doing; however, charging "maintenance fees" on a "deal commission" makes no sense whatsoever. Charging 12% interest on a $11.9 million commercial loan does; and it is patently obvious this is what Berone did. Debtor admits as much (*see* Dkt. No. 4 at ¶ 14).

9

the bankruptcy estate.[6] And it is not the job of Debtor's Counsel to make Berone whole; if Berone wishes to collect on its loan, it has means to do so.

Accordingly, Debtor's request to examine any of the Proposed Examinees, or to subpoena their bank records, fails under Fed.R.Bankr.P. 2004(b)(A) and (C). Berone's loan to Reign is not an asset of the Debtor and did not take assets from the Debtor. Therefore discovery related to that loan, or its proceeds, is not relevant to the administration of the Debtor's estate.

## **CONCLUSION**

To grant the instant Debtor's Application for an order granting sweeping, intrusive and burdensome discovery is not warranted by Federal practice or by Rule 2004(b)(A) and is a superfluous imposition. A pending adversarial proceeding exist between the parties, which alone would bar Rule 2004(b) discovery. Moreover, a Federal court has already stayed Debtor's discovery, on more than one occasion, as a result of the parties' respective submissions. Nor is the discovery sought even necessary; the outstanding $18.135 Million in Debtor's funds remains with Berone. Berone's loan to Reign, whether collateralized by the Prime Capital account or not, is not an asset of the Debtor's estate and is solely a matter for Berone, not Debtor's Counsel. Accordingly, there is no discovery against

---

[6] While it is believed that Berone has funds sufficient to satisfy the Trustee, it would not change the legal claim or the discovery merited by it were Berone bereft of funds. To illustrate, substitute "Chase Bank" for "Berone." Banks are in the very business of taking in money from depositors and lending it out to borrowers. If a person deposits funds with Chase Bank, and Chase loans the funds it took in to a third party, and the initial depositor then goes bankrupt, the depositor's bankruptcy estate does not have a claim against Chase's third party borrower. This situation holds even if Chase goes under in the meantime: The depositor's bankruptcy estate would have a claim against Chase's bankruptcy estate for the deposit. Chase's bankruptcy estate would count the third-party loan as an asset of the Chase estate; if the loan is current, Chase's bankruptcy estate might try to sell it; if in default, Chase's estate might try to collect on it. But in neither instance does a Chase *depositor*, bankrupt or not, have an individualized right to pursue Chase borrowers' funds itself; that right lies solely with Chase or the Chase bankruptcy estate.

the Proposed Examinees that would lead to admissible evidence, and the Proposed Examinees urge the Court to deny the Debtor's Application for that reason as well.

Dated:     May 27, 2025
           Albany, New York

                              **TOPOROWSKI LAW, PLLC**


                       By: _____
                           Matthew A. Toporowski, Esq.
                           *Attorneys for Proposed Examinees*
                           Bar Roll #: 520835
                           P.O. Box 7271
                           Albany, NY 12224
                           Tel.: (845) 532-3513
                           *Matt@ToporowskiLaw.com*