| | |
|---|---|
| **GERON LEGAL ADVISORS LLC**<br>Yann Geron, Esq.<br>370 Lexington Avenue, Suite 1208<br>New York, New York 10017<br>(646) 560-3224<br>ygeron@geronlegaladvisors.com<br><br>*Attorneys for Yann Geron, Chapter 11 Trustee* | **Hearing Date: August 27, 2025**<br>**Hearing Time: 10:30 a.m. (EST)**<br><br>**Objection Deadline: August 20, 2025, at 5:00 p.m.**<br><br>**Proposed Auction Date: September 20, 2025, commencing at 10:00 a.m. (EST)** |

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

In re:

PRIME CAPITAL VENTURES, LLC,

Debtor.

Case No. 24-11029-REL
Chapter 11

## APPLICATION FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 363 AND FED. R. BANKR. P. 2002 AND 6004 (I) AUTHORIZING AND APPROVING (A) PUBLIC AUCTION SALE OF THE DEBTOR'S VEHICLES FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES TO THE SUCCESSFUL BIDDERS AT THE AUCTION SALE, AND (B) THE FORM, MANNER AND EXTENT OF NOTICE OF THE PUBLIC AUCTION SALE; AND (II) GRANTING RELATED RELIEF

TO THE HONORABLE ROBERT E. LITTLEFIELD, JR.,
UNITED STATES BANKRUPTCY JUDGE:

Yann Geron (the "Trustee"), the chapter 11 trustee of the estate of Prime Capital Ventures LLC (the "Debtor"), the above-captioned debtor, by his attorneys, Geron Legal Advisors LLC, as and for his application (the "Application"), for an order, in substantially the same form annexed as Exhibit A (the "Sale Order"), pursuant to 11 U.S.C. §§ 105(a) and 363 and Fed. R. Bankr. P. 2002 and 6004 (i) authorizing and approving (a) the public auction sale of the Vehicles (as defined below) free and clear of all liens, claims, and encumbrances (collectively, the "Liens") to the successful bidders at the auction sale (the "Auction Sale"), and (b) the form, manner and extent of notice of the Auction Sales; and (ii) granting related relief, and respectfully states as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this case and Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this district and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are sections 105(a) and 363 of the Bankruptcy Code, Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1 and Rules 6004-1 and 6004-2 of the Local Bankruptcy Rules for the Northern District of New York (the "Local Rules").

**INTRODUCTION**

3. On September 16, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of New York (the "Court") [DE 1].

4. Information regarding the Debtor is set forth in the *Local Bankruptcy Rule 2015 Affirmation* [Docket No. 6].

5. On January 29, 2025, the Court approved a stipulation [DE 136] between the Debtor, the chapter 7 trustee of the bankruptcy estate of Kris Daniel Roglieri (the "Roglieri Trustee"), and the United States of America pursuant to which the following automobiles were deemed property of the Debtor's bankruptcy estate:

| Year | Make | Model | VIN |
|------|------|-------|-----|
| 2020 | Lamborghini | Aventador | ZHWUM6ZD9LLA09436 |
| 2009 | Mercedes Benz | SL65 | WDBSK79F79F158279 |
| 2014 | Mercedes Benz | SLS | DRJ7HA7EA010865 |
| 2015 | Ferrari | 458 | ZFF75VFA3F0209725 |

(collectively, the "Vehicles").

6. On June 5, 2025, the Court entered an order directing the United States Trustee to appoint a trustee pursuant to section 1104 of the Bankruptcy Code [DE 282], and Yann Geron was appointed as Trustee [DE 283].

7. On June 10, 2025, the Court entered an order approving the appointment of Yann Geron as Trustee [DE 287].

8. Simultaneously with the filing of this Application, the Trustee has filed a motion seeking to retain Saratoga Automobile Museum a/k/a Saratoga Motorcar Auction ("SAM") as his auctioneer to market and sell the Vehicles.

**REQUESTED RELIEF**

a. Information Regarding Auction Sale

9. The Auction Sale will be conducted pursuant to the standard auction procedures typically used by reputable auction houses, and specifically by SAM. In addition, the Vehicles shall be sold "as is", "where is", without any representations of any kind or nature whatsoever, including as to merchantability or fitness for a particular purpose, and without warranty or agreement as to the condition of the Vehicles.

10. SAM intends to conduct a live Auction Sale of the Vehicles on September 20, 2025, commencing at 10:00 a.m. (EST), at the Saratoga Casino Hotel located at 342 Jefferson St, Saratoga Springs, New York.

11. SAM's standard Terms of Sale are detailed in its Bidding Contract, a copy of which is annexed as Exhibit B (the "Terms of Sale").

12. In accordance with Local Rule 6005-1(c), within thirty days of the Auction Sale, SAM shall file a report with the Court detailing:

(1) The time, date and place of the Auction Sale;

(2) The gross amount realized by the Auction Sale;

(3) An itemized statement of commissions sought and disbursements made by SAM,

(4) The names of all purchasers at the Auction Sale;

(5) The sign-in sheet, indicating the number of people attending the Auction Sale;

(6) The disposition of any items for which there were no bid;

(7) The terms and conditions of sale read to the audience immediately prior to the commencement of the Auction Sale;

(8) A statement of the manner and extent of advertising of the Auction Sale and the availability of the items for inspection prior to the Auction Sale; and

(9) The amount of sales tax collected.

The report shall be served on the United States Trustee and any other interested party who specifically requests a copy.

  b.  <u>The Auction Sales of the Vehicles Should be Approved</u>

    13.  Section 363(b) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." *11 U.S.C. § 363(b)(1)*. Although section 363 does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets, the United States Court of Appeals for the Second Circuit, in applying this provision, has required that it be based upon the sound business judgment of the trustee. <u>See</u> *Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 466 (2d Cir. 2007); *Official Comm. of Unsecured Creditors of LTV Aerospace & Defense Co. v. LTV Corp. (In re Chateaugay Corp.)*, 973 F.2d 141, 145 (2d Cir. 1993); *Parker v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, 430 B.R. 65, 83 (S.D.N.Y. 2010) ("The overriding consideration for approval of a Section 363 sale is whether a 'good business reason' has been articulated.")

4

(citations omitted).

14.    In addition to requiring sound business reasons to approve a sale pursuant to section 363(b) of the Bankruptcy Code, many courts have required a showing that the price to be obtained for assets be fair and reasonable; that the sale to the proposed buyer was negotiated in good faith; and that it does not unfairly benefit insiders, the buyer, or a certain creditor or class of creditors. See, e.g., *In re Channel One Communications, Inc.*, 117 B.R. 494-97 (Bankr. E.D. Mo. 1990);117 B.R. at 494-97; *In re Indus. Valley Refrig. & Air Cond. Supplies, Inc.*, 77 B.R. 15 (Bankr. E.D. Pa. 1987).

15.    In *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983), one of the seminal and most widely followed cases dealing with asset sales, the Second Circuit held that the factors to be considered in determining whether a sound business reason exists include the following:

> the proportionate value of the asset to the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-à-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions and, *most importantly perhaps, whether the asset is increasing or decreasing in value*.

*Id.* at 1071 (emphasis supplied); see also *In re the Delaware & Hudson Ry. Co.*, 124 B.R. 169 (D. Del. 1991); *In re Eng'g Prod. Co.*, 121 B.R. 246 (Bankr. E.D. Wis. 1990); *In re Thomson McKinnon Sec., Inc.*, 120 B.R. 301 (Bankr. S.D.N.Y. 1990); *Channel One*, 117 B.R. 493; *In re Brethren Care*, 98 B.R. 927 (Bankr. N.D. Ind. 1989).

16.    Further, section 105(a) of the Bankruptcy Code grants the Bankruptcy Court the authority to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." *11 U.S.C. § 105(a)*. This provision is "the basis for a broad exercise of power [by the Bankruptcy Court] in the administration of a bankruptcy case." *2 Collier On Bankruptcy* ¶ 105.01 (Alan N. Resnick and Henry J. Sommer. eds., 16th ed.).

17. A public auction is permissible as Bankruptcy Rule 6004(f)(1) provides, in relevant part, that "[a]ll sales not in the ordinary course of business may be by private sale or by public auction." *Fed. R. Bank. P. 6004(f)(1)*. In practice, the preferred method for the disposition of estate assets of more than nominal value is to conduct a public sale because a public sale on sufficient notice will most often result in a greater number of potential bidders in the shortest amount of time. In contrast, to determine whether a private sale has yielded the highest or best offer, property generally must remain on the market for a significantly longer time than when offered at a public sale.

18. Application of the above standards demonstrates that approval of the Sale Order is warranted. The Trustee is exercising sound business judgment by conducting the Auction Sale after significant notice and marketing. In addition to providing relevant parties in interest and known potential bidders with the notice of hearing on the Application (the "Notice"), SAM intends to generate additional interest in the Auction Sale through enhanced marketing efforts, including: (i) running full page ads in the following publications: Dupont Registry, Sports Car Market, Hemmings Motor New, Old Cars, Post Star, Saratoga Living Magazine, Saratoga Report, and (ii) mailing flyers to SAM's list of over 1,000 potential bidders and custom car collectors, and (iii) email blasts to SAM's contact list of over 25,000 potential bidders and custom car collectors. SAM has also promoted the Auction Sale at the following offsite events: (i) Amelia Island Concours, Florida event which occurred on March 5-8, 2025, (ii) Premier Auction Group, Florida event which occurred on March 14-15, 2025, (iii) Mecum Auctions Harrisburg, Pennsylvania event scheduled to take place on July 23-26, 2025, and (iv) Regional Car Shows which occurred/are scheduled to occur from May 2025 through September 2025.

19. Further, because the sale of the Vehicles is subject to competing bids at the Auction Sale itself, the ability of the Trustee to receive the highest and best value for the Vehicles is increased. The fairness and reasonableness of the consideration to be received by the Debtor's estate will be demonstrated by a "market check" through the Auction Sale, which is the best means for establishing that a fair and reasonable price is being paid.

20. Many courts require that "fair and accurate notice" be given of the proposed sale under section 363(b) of the Bankruptcy Code. See, e.g., *In re Delaware & Hudson Ry.*, 124 B.R. 169, 176 (D. Del. 1991); *Channel One*, 117 B.R. at 496 (Bankr. E.D. Mo. 1990); *Naron & Wagner, Chartered*, 88 B.R. 85, 88 (Bankr. D.Md. 1988). Fair and accurate notice should inform all interested parties of the liquidation of the debtor's business; disclose accurately the terms of the sale; explain the effect of the sale upon the debtor's business; and explain why the sale is in the best interests of the debtor's estate. See *Delaware & Hudson*, 124 B.R. at 180; see also, *Naron & Wagner*, 88 B.R. at 88.

21. Pursuant to Bankruptcy Rules 2002(c) and 6004, the Trustee is required to give 21 days' notice of any proposed sale of property not in the ordinary course of business. Bankruptcy Rule 2002(c) further provides that such notice must include the time and place of any auction, and the time fixed for objections to the sale. The Notice sets forth all the information a potential bidder or other party in interest should require about the Auction Sale to be conducted by SAM, including the date and location of the Auction Sale and details on how to obtain further information regarding the sale of the Vehicles.

22. Furthermore, the proposed Notice complies with Bankruptcy Rule 2002 and constitutes good and adequate notice of the Auction Sale because the Trustee will provide notice of this Application and accompanying exhibits to (i) the United States Trustee, (ii) entities who

have requested notice pursuant to Bankruptcy Rule 2002, (ii) all known creditors and parties in interest, and (iv) all entities known or reasonably believed to have expressed an interest in the Vehicles. Such notice satisfies the requirements of Bankruptcy Rules 2002(c) and 6004. Accordingly, the Trustee submits that good and sufficient notice will be given and that no additional notice of the Auction Sale is required

23. As a result of these efforts and notice, the Trustee, in consultation with SAM and his other professionals, has determined that the proposed Auction Sale will ensure that the Auction will garner the highest and best sale price for the Vehicles.

c. <u>The Vehicles Should be Sold Free and Clear of Liens, Claims, and Encumbrances</u>

24. The Trustee seeks approval of the sale of the Vehicles free and clear of all Liens. The Trustee is aware of one lien asserted against the Vehicles – specifically the 2020 Lamborghini Aventador - by Denali State Bank and Woodside Credit, LLC (collectively, the "<u>Secured Creditor</u>") in the principal amount of $392,068.57. This lien was acknowledged as a valid, perfected lien pursuant to a stipulation between the Debtor, the Roglieri Trustee, and counsel to the Secured Creditor, which was So Ordered by the Court on January 28, 2025 [DE 134]. Counsel for the Secured Creditor has provided a payoff indicating that the total amount due on account of this secured claim, as of July 28, 2025, is $444,921.58. The Trustee and his professionals have reviewed the documents underlying the Secured Creditor's claim and lien and believe that, rather than have this lien shift to the proceeds of the sale of this vehicle, cause exists to allow this claim in the amount of $444,921.58, plus accrued interest through the sale, and to pay this allowed amount as a first lien promptly following the sale of this vehicle at Auction. Such arrangement will enable the Trustee to transfer marketable title to this vehicle at Auction with the Secured Creditor's direct release of the lien.

25. The Trustee and the Secured Creditor intend to enter into a stipulation, to be So Ordered by the Court, fixing the amount of this claim and confirming payment by the Debtor's estate promptly following the sale of this vehicle at Auction. The terms of the proposed stipulation are being memorialized. A copy of the proposed stipulation will be submitted to the Court and filed in advance of the hearing on the Application. The stipulation will be annexed as Exhibit 1 to the Sale Order.

26. To obtain maximum value for the Vehicles, the successful bidders at the Auction Sale must be assured that they are purchasing the Vehicles free and clear of all Liens, with any such Liens to attach to the net sale proceeds realized through the Auction Sale. Without this relief, potential purchasers may be disinclined to bid on the Vehicles.

27. Property may be sold outside the ordinary course of business under section 363(b) of the Bankruptcy Code, free and clear of all liens, claims, and encumbrances under Bankruptcy Code section 363(f), only if:

1. applicable nonbankruptcy law permits sale of such property free and clear of such interest;
2. such entity consents;
3. such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
4. such interest is in bona fide dispute; or
5. such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

28. Accordingly, a debtor may sell property of a bankruptcy estate outside the ordinary court of business if one of the five conditions under Bankruptcy Code § 363(f) is satisfied. See *In re Grubb & Ellis Co.*, Case No. 12-10685 (MG), 2012 Bankr. LEXIS 1279, at *31 (Bankr.

S.D.N.Y. Mar. 27, 2012) (discussing Bankruptcy Code § 363(f)); *In re Borders Group, Inc.*, 453 B.R. 477, 483–84 (Bankr. S.D.N.Y. 2011) (discussing Bankruptcy Code § 363(f)).

29. Here, the Trustee intends to pay in full the only known lien against the Vehicles, as detailed above. As to any other presently unknown Liens, all interested parties and creditors will be given notice of the Auction Sale and will have the opportunity to object to the relief requested in the Application. Any party that may hold an additional Lien against any of the Vehicles, which is currently unknown to the Trustee and that does not object to the Auction Sale, will be deemed to have consented. See, e.g., *Futuresource LLC v. Reuters, Ltd.*, 312 F.3d 281, 285-86 (7th Cir. 2002) (standing for the proposition that the lack of an objection to a proposed sale of assets counts as consent); *Hargrave v. Township of Pemberton (In re Tabone, Inc.)*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (failure to object to sale free and clear of liens, claims and encumbrances satisfies section 363(f)(2)); *In re Elliot*, 94 B.R. 343, 345 (Bankr. E.D. Pa. 1988) (citing *In re Gabel*, 61 B.R. 661 (Bankr. W.D. La. 1985)); see also *In re Enron Corp.*, 2003 WL 21755006 at *2 (AJG) (Bankr. S.D.N.Y. 2003) (order deeming all parties who did not object to proposed sale to have consented under section 363(f)(2)). If a party holding a Lien on the Vehicles who received the Notice fails to object, the requirements of section 363(f)(2) of the Bankruptcy Code have been satisfied and the Trustee should be authorized to sell the Vehicles free and clear of all Liens.

30. Moreover, any party who may hold a valid Lien on the Vehicles could be compelled to accept a monetary satisfaction of such interests, satisfying section 365(f)(5) of the Bankruptcy Code.

31. The proposed Sale Order further authorizes the Trustee to exercise a limited power of attorney to convey any of the Vehicles whose title is held in an entity or individual other than the Debtor. Such limited authority is required to ensure a smooth transfer of title following the

Auction and to effectuate the Court's order confirming that the Vehicles are property of the Debtor's estate.

d. <u>Successful Bidders are Entitled to Section 363(m) Protection</u>

32. Section 363(m) of the Bankruptcy Code protects good faith purchasers at sales conducted under section 363(b) by providing that:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

33. Although the Bankruptcy Code does not define good faith, the United States Court of Appeals for the Second Circuit has provided the following definition of good faith in the context of sales under section 363 of the Bankruptcy Code:

> Good faith of a purchaser is shown by the integrity of his conduct during the course of the sale proceedings; where there is a lack of such integrity, a good faith finding may not be made. A purchaser's good faith is lost by fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.... As just defined, the good-faith analysis is focused on the purchaser's conduct in the course of the bankruptcy proceedings.

*Licensing by Paolo v. Sinatra (In re Gucci)*, 126 F.3d 380, 390 (2d Cir. 1997) (quotations and citations omitted); <u>see</u> In re Motors Liquidation, 430 B.R. at 78 (relying on Gucci definition of good faith in this context).

34. The Trustee is seeking to sell the Vehicles to potential purchasers, subject to higher or better offers, at the Auction Sale. As detailed above, the Vehicles will be extensively marketed by SAM and any resulting sale will be an arm's length transaction. Consequently, the successful bidders at the Auction Sale, conducted in accordance with the Sale Terms, will be good faith purchasers of the Vehicles.

35. Therefore, the Trustee respectfully requests that the successful bidders at the Auction Sale be afforded the protections under section 363(m) of the Bankruptcy Code.

e. <u>Waiver of Stay</u>

36. Under Bankruptcy Rule 6004(h), orders authorizing the sale of property under section 363(b) of the Bankruptcy Code are "stayed until the expiration of 14 days after entry of the order" authorizing such sale. *Fed. R. Bankr. P. 6004(h)*.

37. A waiver of the stay requirement under Bankruptcy Rule 6004(h) will allow the Auction Sale scheduled for mid-September by SAM to timely proceed and for the Trustee to close on transfer of title to the Vehicles promptly.

38. Therefore, the Trustee respectfully requests that the Court waive the requirement under Bankruptcy Rule 6004(h).

**NOTICE**

39. The Notice has been given to all known creditors and parties in interest, all parties requesting notice, all known potential bidders, and the United States Trustee. Additionally, complete copies of this Application and exhibits have been served upon all parties requesting notice and the United States Trustee. The Trustee respectfully submits that such notice complies with Bankruptcy Rule 2002 and is otherwise reasonable and appropriate, and that no other or further notice of the relief requested herein is warranted or required.

**NO PRIOR RELIEF**

40. Except as otherwise detailed herein, no other application for the relief sought herein has been made to this or any other Court.

(continued on the next page)

**WHEREFORE**, the Trustee respectfully requests that this Court enter the Sale Order, substantially in the form annexed as <u>Exhibit A</u>, and granting him such other and further relief as is just.

Dated: New York, New York
    August 6, 2025

GERON LEGAL ADVISORS LLC
*Attorneys for Yann Geron, Chapter 11 Trustee*

By: *s/ Yann Geron*
Yann Geron, Esq.
370 Lexington Avenue, Suite 1208
New York, New York 10017
(646) 560-3224
ygeron@geronlegaladvisors.com