**GERON LEGAL ADVISORS LLC**  
Yann Geron, Esq.  
370 Lexington Avenue, Suite 1208  
New York, New York 10017  
(646) 560-3224  
ygeron@geronlegaladvisors.com

Hearing Date: August 27, 2025  
Hearing Time: 11:30 a.m. (EST)

Objection Deadline: August 20, 2025, at 5:00 p.m.

*Attorneys for Yann Geron, Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT**  
**NORTHERN DISTRICT OF NEW YORK**

---

In re:

PRIME CAPITAL VENTURES, LLC,

                        Debtor.

Case No. 24-11029-REL  
Chapter 11

---

**TRUSTEE'S APPLICATION TO RETAIN SARATOGA AUTOMOBILE MUSEUM AS AUCTIONEER TO MARKET AND SELL ESTATE VEHICLES**

TO THE HONORABLE ROBERT E. LITTLEFIELD, JR.,  
UNITED STATES BANKRUPTCY JUDGE:

      Yann Geron (the "Trustee"), the chapter 11 trustee of the estate of Prime Capital Ventures LLC (the "Debtor"), the above-captioned debtor, hereby submits his application (the "Application") for entry of an order, substantially in the form annexed as Exhibit A, pursuant to 11 U.S.C. §§ 327(a) and 328 and Rule 2014 of the Federal Rules of Bankruptcy Procedure, authorizing the Trustee's retention and employment of Saratoga Automobile Museum a/k/a Saratoga Motorcar Auction ("SAM") as auctioneer to market and sell the Vehicles (defined below) upon the terms and subject to the conditions set forth in the proposed Consignment Contract and related rider annexed as Exhibit B (collectively, the "Consignment Contract"). In support of this Application, the Trustee submits the declaration of Megan A. Hennessey, dated August 6, 2025 (the "Hennessey Declaration"), annexed as Exhibit C and incorporated herein by reference, and respectfully represents as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this case and Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this district and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are sections 327(a) and 328 of Title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rule 2014, and Rule 2014-1 of the Local Bankruptcy Rules for the Northern District of New York (the "Local Bankruptcy Rules").

**INTRODUCTION**

3. On September 16, 2024 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of New York (the "Court") [DE 1].

4. Information regarding the Debtor is set forth in the *Local Bankruptcy Rule 2015 Affirmation* [Docket No. 6].

5. On January 29, 2025, the Court approved a stipulation [Docket No. 136] by and between the Debtor, the Chapter 7 trustee of the bankruptcy estate of Kris Daniel Roglieri, and the United States of America pursuant to which the following automobiles were deemed property of the Debtor's bankruptcy estate:

| Year | Make | Model | VIN |
|------|------|-------|-----|
| 2020 | Lamborghini | Aventador | ZHWUM6ZD9LLA09436 |
| 2009 | Mercedes Benz | SL65 | WDBSK79F79F158279 |
| 2014 | Mercedes Benz | SLS | DRJ7HA7EA010865 |
| 2015 | Ferrari | 458 | ZFF75VFA3F0209725 |

(collectively, the "Vehicles").

6. On June 5, 2025, the Court entered an order directing the United States Trustee to appoint a trustee pursuant to section 1104 of the Bankruptcy Code [Docket No. 282] and the U.S. Trustee appointed Yann Geron as the Trustee [Docket No. 283].

7. On June 10, 2025, the Court entered an order approving the appointment of Yann Geron as Trustee [Docket No. 287].

8. The Trustee seeks to retain SAM to sell the Vehicles.

## **RELIEF REQUESTED**

9. By this Application, the Trustee seeks to retain SAM as his auctioneer pursuant to Sections 327(a) and 328 of the Bankruptcy Code and Bankruptcy Rule 2014.

10. Section 327(a) of the Bankruptcy Code provides:

    a. Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent any interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).

11. Rule 2014 of the Bankruptcy Rules provides, in relevant part:

    b. Application for an Order of Employment. An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professionals pursuant to § 327, § 1103, or § 1114 of the Code shall be made only on application of the trustee or committee. The application shall be filed and, unless the case is a chapter 9 municipality case, a copy of the application shall be transmitted by the applicant to the United States trustee. The application shall state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee. The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any

3

person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(b).

12. Local Bankruptcy Rule 6005-1 provides, in relevant part

(a) **Compensation of Auctioneers**. An auctioneer appointed by the Court shall be allowed compensation and reimbursement of expenses as follows, unless the Court orders otherwise:
   (1) **Maximum Commissions**. The allowable commissions, whether in the form of a "buyer's premium," "buyer's surcharge," or "auctioneer's commission," or by any other nomenclature, shall be determined and set by the Court in the Order approving employment of the auctioneer upon proper application demonstrating that the proposed commission is reasonable and customary for the kind of proposed auction of the type and amount of property to be sold. In no event, however, shall the total of all allowable commissions exceed 15% of gross proceeds of sale….
   (2) **Expenses**. The auctioneer shall be reimbursed for the reasonable and necessary expenses directly related to the sale, including bond or blanket bond premium costs attributable to said sale, but excluding worker's compensation, social security, unemployment insurance or other payroll taxes... An auctioneer shall be reimbursed for a blanket bond at the rate of $100 per case or 10% of the gross proceeds from an auction, whichever is less, less any amounts previously reimbursed for said bond, unless the Court orders otherwise.
(b) **Bond**. An auctioneer employed with Court approval shall not act until a surety bond in favor of the United States of America is provided in each estate, at the auctioneer's expense. The bond shall be approved by the Court and shall be in an amount sufficient to cover the aggregate appraised value of all property to be sold, or in such sum as may be fixed by the Court, conditioned upon:
   (1) The faithful and prompt accounting for all monies and property which may come into the possession of the auctioneer;
   (2) Compliance with all rules, orders, and decrees of the Court; and
   (3) The faithful performance of duties in all respects in all cases in which the auctioneer may act.

Local Bankruptcy Rule 6005-1.

## SAM'S SERVICES AND QUALIFICATIONS

13. The Trustee respectfully submits that it is necessary for him to retain an auctioneer pursuant to § 327(a) of the Bankruptcy Code to provide the following services, as further detailed in the proposed Consignment Contract:

   a. inspect and value the Vehicles;

4

      b.      market and promote the Vehicles to potential bidders;

      c.      conduct the auction; and

      d.      consummate the sale of the Vehicles to the successful buyers and remit proceeds of sale, less any commissions and reimbursable expenses, to the Trustee for the benefit of the Debtor's estate.

14.    SAM, founded in 2017, holds an annual automobile auction which caters to an ever-growing audience of passionate collectors and enthusiasts and attracts potential buyers from around the globe. SAM's annual auto auction has grown in popularity and success since its inception, with record-breaking sales and a high sell-through rate. The 2024 auction saw a record-breaking sale of a 2006 Ford GT for $647,350, as well as a significant number of vehicles selling for over $100,000. SAM is located at 110 Avenue of the Pines, Saratoga Springs, New York.

15.    SAM's next auto auction will take place on September 19 and September 20, 2025, at the Saratoga Casino Hotel located at 342 Jefferson St, Saratoga Springs, New York. The auction of the Vehicles will take place on September 20, 2025, commencing at 10 a.m. (EST). The auction will be in person, and bidders will have the ability to submit bids online prior to the auction date and can also submit live bids online during the auction.

16.    SAM's services are necessary to assist the Trustee in executing his duties and responsibilities in order to realize the highest and best value for the Vehicles. SAM is willing to act on the Trustee's behalf as his auctioneer for this purpose. The Trustee's retention of SAM is subject to the conditions set forth in the proposed Consignment Contract annexed as <u>Exhibit B</u>. SAM was selected by the Trustee based upon its significant experience in showcasing and selling classic and collector cars in an efficient and cost-effective manner.

17.    SAM has informed the Trustee that it does not hold or represent any interest adverse to the estate and is a "disinterested person" as that term is defined in section 101(14) of the

5

Bankruptcy Code.

18.    To the best of the Trustee's knowledge, SAM does not have any connection with the Debtor, its creditors, the United States Trustee or any other party in interest, or their respective attorneys, except as may be set forth in the Hennessey Declaration.

## SAM'S COMPENSATION

19.    As further described in the Consignment Contract and the Hennessey Declaration, SAM's compensation will be in the form of a buyer's premium in the amount of 10%.[1]  While SAM traditionally also charges a 10% seller's commission, SAM has expressly agreed to waive this commission which would otherwise be payable by the Debtor's estate. Additionally, SAM will be entitled to reimbursement of actual and necessary expenses. Costs and the buyer's premium will be automatically deducted from the auction sale proceeds and will be detailed in SAM's auction sale report to be filed with the Court as required.

20.    The Trustee seek approval of this compensation structure pursuant to sections 327(a) and 328(a) of the Bankruptcy Code. Section 328(a) provides, in relevant part, that a trustee "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

21.    As recognized by numerous courts, Congress intended Section 328(a) to enable a debtor to retain professionals pursuant to specific fee arrangements to be determined at the time of the court's approval of the retention, subject to review if the terms are found to be improvident

---

[1] SAM utilizes Proxibid's platform for online bidding. In the event the successful bidder is an online bidder, the buyer's premium is increased to 13% (10% to SAM and 3% to Proxibid). The Trustee has also confirmed that all funds paid by any successful online bidder get paid directly to SAM, and that no funds are paid directly to Proxibid.

in light of "developments not capable of being anticipated at the time of the fixing of such terms and conditions." See *Donaldson, Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 123 F.3d 861, 862–63 (5th Cir. 1997); *Henry A. Leonard & Co. v. United States Trustee (In re River Foal, Inc.)*, 161 B.R. 568, 569 (Bankr. S.D.N.Y. 1993).

22. The Trustee submits that the compensation structure is reasonable under Section 328(a) of the Bankruptcy Code in light of (a) the nature and scope of services to be provided by SAM, (b) industry practice with respect to the fee structure proposed by SAM, and (c) SAM's substantial experience in selling classic and collector cars, such as the Vehicles. The 10% buyer's premium is well below the commission cap under Local Bankruptcy Rule 6005-1(a)(1). Additionally, at the request of the Trustee, the Debtor's estate is not being charged the traditional 10% seller's commission which would otherwise be charged by SAM.

23. After payment of its commissions and reimbursable expenses from the auction sale proceeds of the Vehicles, SAM will transfer the net proceeds to the Trustee. Details of SAM's commissions and expenses will be provided in the report of sale to be filed with the Court pursuant to Local Bankruptcy Rule 6005-1(c).

24. SAM has indicated its willingness to serve as the Trustee's auctioneer herein and to receive its compensation subject to the approval of this Court and in compliance with section 330 of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules, the United States Trustee's Guidelines for Fees and Disbursements issued by the Office of the United States Trustee, and such other procedures as may be fixed by order of this Court, for professional services rendered and expenses incurred by SAM.

25. Pursuant to Local Bankruptcy Rule 6005-1(e), SAM intends to submit an application to the Court for approval of its commissions and reimbursable expenses on notice to,

among others, the United States Trustee and creditors.

26. Subject to this Court's approval, at the Trustee's expense, SAM will secure an auctioneer's bond (the "<u>Bond</u>") in the amount of $2 million issued by a surety company approved by the Department of Treasury. A copy of the Bond has been secured, subject to payment, and will be filed electronically on the case docket prior to the Auction. The Bond will be issued in favor of the United States of America and will be delivered to the Office of the United States Trustee. The Trustee contacted several bonding companies and was able to secure the Bond with the company offering the most competitive annual premium of $20,000.

27. As detailed above, Local Bankruptcy Rule 6005-1(a)(2) allows auctioneers to be reimbursed for bond premium costs attributable to sale, subject to certain limitations, unless the Court orders otherwise.

28. While bond premiums are generally borne by estate auctioneers, the Trustee submits that cause exists in this instance for the bond premium to be paid by the Debtor's estate due to the unique circumstances surrounding the proposed auction sale of the Vehicles. First, the Trustee was amenable to this arrangement because SAM does not serve as a regular bankruptcy estate auctioneer and thus does not have a general auctioneer's bond on file. This is a unique case which requires SAM's specific retention and the placement of an auction specific bond which should be authorized to be paid from the estate itself. Forcing SAM to absorb this cost in the face of its already reduced commission would risk SAM's desire to serve as the auctioneer in this case. Second, the contemplated auction sale is an annual, one-of-a-kind auction, designated solely to the sale of classic and custom cars. This annual event is well attended by the specific buyer pool that is likely to generate increased value for the Vehicles, which ultimately benefits the Debtor's estate and its creditors. SAM brings these special circumstances to the estate. Finally,

the bond premium represents a small fraction of the anticipated net sale proceeds which are anticipated to exceed $1.5 million, and thus, this cost is a reasonable and proportional expense.

29. Based on the foregoing, the Trustee submits that the compensation and expenses requested by SAM, including payment of the bond premium by the Debtor's estate, are fair and reasonable and should be approved.

## **NOTICE**

30. The Notice has been given to all known creditors and parties in interest, all parties requesting notice, and the United States Trustee. Additionally, complete copies of this Application and exhibits have been served upon all parties requesting notice and the United States Trustee. The Trustee respectfully submits that such notice complies with Bankruptcy Rule 2002 and is otherwise reasonable and appropriate, and that no other or further notice of the relief requested herein is warranted or required.

## **NO PRIOR RELIEF**

31. No previous application for the relief sought herein has been made to this or any other court.

(continued on the next page)

WHEREFORE, the Trustee respectfully requests that this Court enter an order, in substantially the same form as that annexed as Exhibit A, granting him the authority to retain SAM as his auctioneer in this case and granting such other and further relief as may be just and proper.

Dated: New York, New York  
      August 6, 2025

**GERON LEGAL ADVISORS LLC**  
*Attorneys for Yann Geron, Chapter 11 Trustee*

By: */s/ Yann Geron*  
Yann Geron, Esq.  
370 Lexington Avenue, Suite 1208  
New York, New York 10017  
(646) 560-3224  
ygeron@geronlegaladvisors.com

10