UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
In re                                                            :
                                                                 :    Chapter 11
PRIME CAPITAL VENTURES, LLC,                                     :
                                                                 :    Case No. 24-11029 (PGR)
                                              Debtor.            :
----------------------------------------------------------------x
ER TENNESSEE LLC,                                                :
                                                                 :
                                              Plaintiff,         :
                                                                 :    Adv. Pro. No. 25-90008
            -against-                                            :
                                                                 :
PRIME CAPITAL VENTURES, LLC,                                     :
                                                                 :
                                              Defendant.         :
----------------------------------------------------------------x

**MOTION OF YANN GERON, AS CHAPTER 11 TRUSTEE OF PRIME CAPITAL VENTURES, LLC, FOR AN ORDER PURSUANT TO FED. R. BANKR. P. 9019 APPROVING A CERTAIN STIPULATION OF SETTLEMENT BETWEEN THE TRUSTEE AND PLAINTIFF ER TENNESSEE LLC, PROVIDING FOR THE RESOLUTION OF ALL CLAIMS AND ISSUES IN THE ADVERSARY PROCEEDING AND PROVIDING FOR THE DISMISSAL OF THE ADVERSARY PROCEEDING WITH PREJUDICE**

**TO THE HONORABLE PATRICK G. RADEL,
UNITED STATES BANKRUPTCY JUDGE:**

Yann Geron, as Chapter 11 trustee (the "Trustee") of Prime Capital Ventures, LLC ("Prime" or the "Debtor"), by and through his special litigation counsel, Klestadt Winters Jureller Southard & Stevens, LLP, hereby submits this motion (the "Motion") seeking the entry of an order, pursuant to Fed. R. Bankr. P. 9019, approving a certain stipulation between the Trustee and ER Tennessee LLC ("ER Tennessee"), the plaintiff in the above-captioned adversary proceeding (the "Adversary Proceeding"), a copy of which is annexed hereto as Exhibit A (the "Stipulation"), providing for the settlement of all claims and controversies in the Adversary Proceeding and the

dismissal of the Adversary Proceeding with prejudice. In support of the Motion, the Trustee represents as follows:

## PRELIMINARY STATEMENT

Prime was created by Roglieri in December 2021 as "a fund specifically designed to provide capital for large development, commercial development and commercial real estate transactions from $50 million to more than $1 billion."[1] Prime advertised that it would offer non-recourse lines of credit with rates at 4 to 6% with interest-only payments but would require borrowers to provide 20% cash upfront based on the total project cost to establish an interest credit account (the "ICA Deposits"). The ICA Deposits would be held by Prime "'as prepaid interest throughout the term of the loan.'"[2] Prime obtained millions of dollars in ICA Deposits from multiple companies throughout the country which in most cases, upon information and belief, were used by Prime and Roglieri before the loans were closed and funded.[3]

On September 21, 2023, ER Tennessee funded an ICA Deposit for borrower 1322 Developments, LLC ("1322"), by transferring $14,250,000.00 ($15 million ICA Deposit less $750,000 in agreed fees) to Prime (the "ER Funds"), which went directly into Prime's account at Royal Bank of Canada ("RBC"). While most ICA Deposits were comingled with other ICA Deposits and funds obtained by Prime in accounts at Key Bank, Citibank, or elsewhere, the ER Funds were isolated in Prime's RBC account and not commingled with other funds or ICA Deposits. That said, as with other ICA Deposits, Prime converted most of the ER Funds for its own use. On September 26, 2023, Prime transferred $7 million of the ER Funds to its account at Farmers Bank and subsequently transferred those funds to third parties. In October 2023, Prime

---

[1] *See Petitioning Creditors' Motion for a Trustee*, Case No. 23-11302, Dkt. No. 4, ¶¶22-23 (Dec. 19, 2023) (quoting May 2, 2022 marketing in DealMaker Magazine).
[2] *Id.*, ¶26.
[3] *Id.*, ¶37.

2

used the ER Funds as collateral for a $6 million loan from RBC, and on January 31, 2024, RBC drew $6,094,700.18 of the ER Funds to repay the outstanding loan then in default. The remaining ER Funds in the RBC account were $1,248,369.84 (the "Remaining ER Funds"). The Remaining ER Funds are currently held by the Trustee.

ER Tennessee sought by the Adversary Proceeding a judgment from this Court finding that the Remaining ER Funds are property of ER Tennessee and directing the Trustee to promptly turn them over. ER Tennessee and the Trustee have discussed ER Tennessee's claims and the Trustee's defenses at length and in good faith and have reached an agreement to resolve these issues as set forth in the Stipulation. In sum, pursuant the Stipulation, the Parties have agreed to resolve these matters as follows:

1. The Remaining ER Funds will be divided and released to the Parties as follows: (a) $749,021.90 (60%) to ER Tennessee; and (b) $499,347.94 (40%) to Prime's bankruptcy estate.

2. Prime's bankruptcy estate will have the exclusive right to pursue the recovery of any of the ER Funds that were transferred by Prime to third parties as fraudulent transfers or otherwise.

3. ER Tennessee will assign all of its third-party claims, if any, against Prime's former attorneys, auditors, or other professionals, and any financial institutions used by Prime or its management, for aiding and abetting Prime and its management in the conduct of their fraudulent scheme.

4. ER Tennessee's claim against Prime's bankruptcy estate will be fixed and allowed as a general, unsecured claim in the amount of $15,024,307.86.

For all the reasons set forth below, the Trustee respectfully submits that the settlement embodied in the Stipulation is in the best interests of Prime's bankruptcy estate and respectfully requests that it be approved by the Court by "So Ordering" the Stipulation.

## JURISDICTION

1. This Court has jurisdiction over the bankruptcy case and this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), and Rule 81.1 of the Local Rules for the United States District Court for the Northern District of New York referring matters arising under Title 11 of the United States Code (the "Bankruptcy Code") to the Bankruptcy Court (Jan. 1, 2024).

2. Venue of this case is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicate for the relief sought herein is Fed. R. Bankr. P. 9019.

## CASE BACKGROUND

### A. Prime's Bankruptcy Cases and Receivership

4. By December 2023, Prime was besieged by litigation largely from borrowers who did not get their loans funded and wanted the return of their Borrower Prepayments. *See, e.g.*, *Tuss Financial LLC v. Prime Capital, et al.*, Index No. 2023/510389 (N.Y.Sup. Ct. Kings Cty. Apr. 5, 2023) (seeking and apparently obtaining the return of $13.4 million); *B&R Acquisition Partners v. Prime Capital* (JAMS Arb., Aug. 2023) (seeking the return of $4 million); *Sturm v. Prime Capital*, Case No. 23-cv-1033 (N.D.N.Y. Aug. 22, 2023) (seeking the return of $2 million); *Camshaft CRE 1, LLC v. Prime Capital*, Case No. 2023-023173 (Fla. Circ. Ct., Miami-Dade Cty., Sept. 15, 2023) (seeking the return of $13.4 million); *The Lion Group DFW, LLC v. Prime Capital*, Case No. 23-DCV-34617 (Tex. Dist. Ct., 146th Dist., Sept. 21, 2023) (demand unknown); *Onward*

4

*Partners, LLC, v. Prime Capital, et al.*, Case No. 23-cv-833 (D. Utah Nov. 13, 2023) (seeking the return of $20 million).

5. On December 19, 2023, Compass-Charlotte 1031, LLC, 526 Murfreesboro, LLC, and Newlight Technologies, Inc. (collectively, the "Petitioning Creditors") filed an involuntary petition against Prime for relief under chapter 7 of the Bankruptcy Code commencing Case No. 23-11302 ("Case 1"). The Petitioning Creditors commenced Case 1 for the obvious purpose of ensuring that Prime's assets and liabilities could be liquidated in a single, public forum, and that no single creditor could win the proverbial "race to the courthouse".

6. On December 22, 2023, upon order of the Court, the United States Trustee appointed Christian H. Dribusch ("Dribusch") as the interim chapter 7 trustee of Prime's estate.

7. On January 8, 2024, the Petitioning Creditors filed a motion to dismiss Case 1 [Case 1 Dkt. No. 74], which motion was granted by the Court on January 9, 2024 [Case 1 Dkt. No. 87]. Thereafter, Dribusch was discharged from his duties as chapter 7 trustee.

8. Three (3) days after dismissal of Case 1, on January 12, 2024, Petitioning Creditor Compass-Charlotte 1031, LLC commenced an action in the United States District Court for the Northern District of New York (the "District Court") under Case No. 24-cv-00055 (MAD) (CFH) (N.D.N.Y. Jan. 12, 1014) (the "Receivership Case"), seeking, among other things, the appointment of a federal equity receiver to take possession and control of Prime's assets and affairs. That same day, the District Court entered an order appointing Paul Levine as the temporary receiver (the "Receiver"). Receivership Case Dkt. No. 8.

9. On January 24, 2024, the District Court entered a memorandum decision and order making the Receiver's appointment permanent and defining his powers with respect to Prime and its property and denying Prime's motion to dismiss the case. *Id.* at Dkt. No. 56.

10. On February 15, 2024, Roglieri filed a voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code commencing Case No. 24-10157 (REL) (the "Roglieri Case").

11. On May 14, 2024, Prime, by and through the Receiver, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court commencing Case No. 24-10531 ("Case 2").

12. On May 15, 2024, the Court entered an order converting Roglieri's case to one under chapter 7 of the Bankruptcy Code. Roglieri Case at Dkt. No. 159. Thereafter, the United States Trustee appointed Dribusch as the interim chapter 7 trustee. *Id.* at Dkt. No. 160. Dribusch has since qualified and is currently serving as permanent trustee, defined above as the "Roglieri Trustee".

13. On June 25, 2024, B and R Acquisition Partners, LLC ("B&R") and JHM Lending Ventures, LLC ("JHM" and together with B&R, the "B&R Parties") filed a motion to dismiss Case 2 on the basis that the Receiver was not authorized to file the petition on behalf of Prime because they asserted that he lacked the authority pursuant to the terms of the orders of the District Court. Case 2 at Dkt. No. 57.

14. On July 23, 2024, the Bankruptcy Court entered a memorandum decision and order dismissing Case 2 finding essentially that the Receiver did not have the authority to file Case 2 on behalf of Prime and that the Roglieri Trustee did not have the ability to waive the defect and ratify the filing *ex post facto* (the "Dismissal Order"). *Id.* at Dkt. No. 85. Prime took an appeal of the Dismissal Order (District Court at Case No. 24-cv-000939). The appeal has since been resolved and the Dismissal Order affirmed.

15. On September 16, 2024, Prime filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court commencing this bankruptcy case. At that time, Prime was under the control of the Roglieri Trustee as the party in possession and control of all equity interests in Prime, who was acting as the manager of Prime.

16. On or around May 23, 2025, the Roglieri Trustee resigned and Marianne T. O'Toole was appointed as successor trustee. Ms. O'Toole subsequently consented to the appointment of a Chapter 11 trustee in Prime's bankruptcy case. On or around June 5, 2025, the United States Trustee appointed the Trustee as Chapter 11 trustee of Prime's bankruptcy case. The Trustee has continued in that role and is currently serving as Chapter 11 trustee herein.

### B. The ER Tennessee Transaction

17. On September 21, 2023, ER Tennessee funded a bridge loan to 1322 in the amount of $15 million for the purpose of funding 1322's obligation to make an ICA Deposit to Prime in connection with 1322's contemplated loan from Prime. The ER Funds in the amount of $14,250,000.00 ($15 million ICA Deposit less $750,000 in agreed fees) to Prime went directly into Prime's account at RBC.

18. On September 26, 2023, Prime transferred by wire $7 million of the ER Funds from its RBC account to an account in its name at Farmers Bank. Those ER Funds were distributed by Prime to various third parties (the "Third Parties").

19. On October 3, 2023, Prime applied for a $6 million line of credit with RBC and pledged the approximately $7.25 million in ER Funds still in its RBC account. RBC accepted the pledge and granted the line of credit (the "RBC LOC").

20. On October 11, 2023, Prime drew $5 million on the RBC LOC and on October 16 it drew the remaining $1 million.

21. Prime subsequently defaulted on the terms of the RBC LOC, and on January 24,

7

2024, RBC demanded repayment of the outstanding RBC LOC from Prime in the amount of $6,094,700.18. On January 31, 2024, RBC deducted $6,094,700.18 from the ER Funds in repayment of the RBC LOC.

22. On February 6, 2024, RBC remitted the balance of the ER Funds in the amount of $1,248,369.84 (the "Remaining ER Funds") to the Receiver. The Receiver subsequently transferred the Remaining ER Funds to Prime following commencement of the instant bankruptcy case and the Trustee is currently holding those funds pending resolution of the instant dispute with ER Tennessee.

23. On April 17, 2025, ER Tennessee commenced the Adversary Proceeding (No. 25-90008) against Prime seeking, among other things, a declaration that the Remaining ER Funds are property of ER Tennessee and directing Prime (now the Trustee) to turn the Remaining ER Funds over to ER Tennessee. The Trustee disputes ER Tennessee's claims.

24. The Parties have discussed at length the strength of ER Tennessee's claims, the Trustee's defenses, ER Tennessee's claim against the estate, ER Tennessee's potential claims against third parties, and the mutual desire to preserve the Remaining ER Funds for the Parties and not consume them with the costs of litigation. Following significant good faith discussions, the Parties reached the agreement set forth in the Stipulation.

## **THE STIPULATION**

25. The salient terms of the Stipulation are as follows[4]:

- Bankruptcy Court Approval Required. The Stipulation is subject in all respects to the approval of the Bankruptcy Court evidenced by the entry of the Stipulation "So Ordered" by the Bankruptcy Court or the entry of an Order approving the Stipulation in its entirety in Prime's bankruptcy case (an "Approval Order").

---

[4] The following is a summary of the terms of the Stipulation and is included as a matter of convenience. However, parties should not rely exclusively on the summary and are encouraged to review the terms of the Stipulation in their entirety.

8

- Conditions Precedent. The effective date of the Stipulation will be the 15th day following entry of the Approval Order provided no party has filed a notice of appeal from, or motion for reconsideration or other relief from, the Approval Order (the "Effective Date").

- Division of the Remaining ER Funds. The Remaining ER Funds shall be divided as follows:

    o $749,021.90 (60%) shall be deemed property of ER Tennessee. Within ten (10) business days following the Effective Date, the Trustee will remit this amount to ER Tennessee at the wiring or other payment instructions provided by ER Tennessee's counsel; and

    o $499,347.94 (40%) shall be deemed property of Prime's bankruptcy estate and shall be retained and used by the Trustee in the manner provided for under the Bankruptcy Code, any order of the Bankruptcy Court, or pursuant to any plan confirmed in Prime's bankruptcy case.

- Prime's Property Interest in the ER Funds and Exclusive Right to Pursue Recovery. Notwithstanding the division of the Remaining ER Funds as set forth above, Prime and its bankruptcy estate have and had a legal and equitable interest in the ER Funds at all relevant times. ER Tennessee agrees that Prime's bankruptcy estate shall have the exclusive right to seek the recovery of any ER Funds that were transferred by Prime pursuant to sections 544, 545, 547, 548, 549, 550, and/or 551 of the Bankruptcy Code, New York State Debtor & Creditor §§ 273 and/or 274, theories of express and/or constructive trust and related tracing, and/or similar laws of any other applicable state or jurisdiction.

- Assignment of Third-Party Claims. ER Tennessee does irrevocably assign, give over, transfer, and convey, to the Trustee and bankruptcy estate, any and all claims against (i) RBC, Farmers Bank, and any other financial institution where Prime was a customer, and (ii) legal, accounting, or other professional firms who advised Prime, in connection with its loss for aiding and abetting Prime's fraud, among potentially other things (collectively, "ER Third-Party Claims"), including claims, demands, causes of action, class in action, and other obligations of any type or description, whether known or unknown, liquidated or unliquidated, asserted or unasserted, whether arising in tort, contract or other basis or theory, which ER Tennessee has or may have that are related to Prime's conduct of its business, and ER Tennessee's claim against Prime's and/or Roglieri's bankruptcy estates. Such ER Third-Party Claims include, but may not be limited to: (i) any claims against Prime's former attorneys, accountants, auditors, or other professionals, in connection with aiding and abetting any breach of fiduciary duty owed by Roglieri or other principals (collectively, "Prime Management") to Prime and/or Prime's creditors, fraud, aiding and abetting fraud on the part of Prime and/or Prime Management, or otherwise; (ii) any claims against banks or any other financial institutions used by Prime and Prime Management, or that are involved in transactions with Prime, in connection with aiding and abetting any breach of fiduciary duty owed

9

by Prime Management to Prime and its creditors, fraud, aiding and abetting fraud on the part of Prime and Prime Management, unjust enrichment, aiding and abetting conversion by Prime and Prime Management, or otherwise; and (iii) any other claims against third parties related to Prime's and Prime Management's wrongdoing that if pursued by Prime or its bankruptcy estate may be subject to the defense of *in pari delicto* or the Wagoner Rule (collectively, the "Assigned Claims"). The assignment of the Assigned Claims is made without warranty or representation of any kind other than that undersigned represents that the Assigned Claims have not previously been assigned or conveyed to any other persons. This assignment entitles ER Tennessee to participate in the distribution of any recoveries on account of Assigned Claims, net of professional fees and other costs of the recovery, on account of the ER GUC Claim. The Trustee distribution of any recovery on account of the Assigned Claims, net of all costs and fees related to such recovery plus any costs of the estate associated with administering the funds, in any plan of liquidation or otherwise, shall be limited to creditors of Prime's bankruptcy estate that: (i) are similarly situated to ER Tennessee in that their claims relates solely to an unreturned ICA Deposit; and (ii) execute a substantially identical assignment of third-party claims to Prime's bankruptcy estate. In the event that the Trustee proposes, or the Bankruptcy Court approves, any use of the net proceeds of the Assigned Claims that violates these conditions, then ER Tennessee's assignment of the Assigned Claims shall be deemed null and void and the Assigned Claims shall be revested in ER Tennessee. For the avoidance of doubt, the Assigned Claims do <u>not</u> include ER Tennessee's claims against the Borrower, Roglieri's bankruptcy estate[5], or any victims' fund established by the government in connection with the criminal prosecution of Prime Management.[6]

- Allowance of the ER GUC Claim. Upon the Effective Date, ER's general unsecured claim (the "ER GUC Claim") shall be deemed an allowed claim against Prime's bankruptcy estate in the amount of $15,024,307.86 (the original amount of the ER GUC Claim less the payment provided for in the Stipulation) and shall not be subject to any objection or challenge.

- Release of Claims by the Trustee and the Debtor's Estate. Upon the Effective Date, the Trustee on behalf of himself and on behalf of Prime, and Prime's estate, shall be deemed to have waived, set aside, discharged, settled, compromised and released any and all claims (to be interpreted in the broadest manner possible), causes of action, rights and remedies he has, had or may have, against ER Tennessee, except for any rights and benefits set forth in the Stipulation.

- Release of Claims by ER Tennessee. Upon the Effective Date, ER Tennessee shall be deemed to have waived, set aside, discharged, settled, compromised and released any and all claims (to be interpreted in the broadest manner possible), causes of action,

---

[5] *See In re Kris Daniel Roglieri*, Chapter 7 Case No. 24-10157 (PGR) (Bankr. N.D.N.Y. Feb. 15, 2024).
[6] *See:* (i) *United States of America v. Kris Roglieri*, Case No. 24-cr-261 (N.D.N.Y. May 28, 2024); (ii) *United States of America v. One 2003 Ferrari Enzo AB Version E., et al.*, Case No. 24-cv-1345 (N.D.N.Y. Oct. 22, 2024); (iii) *United States of America v. Christopher Snyder*, Case No. 25-cr-195 (N.D.N.Y. May 16, 2025); and (iv) *United States of America v. Kimberly Humphrey*, Case No. 25-cr-238 (N.D.N.Y. June 10, 2025).

10

rights and remedies it has, had or may have, against the Trustee, Prime, and Prime's bankruptcy estate, except for the rights and benefits set forth in the Stipulation.

- <u>Dismissal of the ER Adversary Proceeding</u>. The Trustee is authorized and directed to cause the dismissal of the ER Adversary Proceeding after making the payment to ER Tennessee provided for in Paragraph 4(a) *supra*, by filing the stipulation of dismissal annexed to the Stipulation as Exhibit A on the docket of the ER Adversary Proceeding (the "<u>Dismissal Stipulation</u>"). The Dismissal Stipulation will be held in escrow by Trustee's counsel until the conditions for its release set forth herein are met.

## RELIEF REQUESTED

26. The Trustee respectfully request that the Court enter an Approval Order by "So Ordering" and entering the Stipulation pursuant to Fed. R. Bankr. P. 9019.

## BASIS FOR RELIEF REQUESTED

27. By this Motion, the Trustee seeks this Court's approval of the Stipulation, and asserts that the terms, conditions, and compromises contained therein are fair and reasonable under the circumstances, and that approval of the Stipulation is in the best interest of the Debtor's estate and its creditors.

28. Bankruptcy Rule 9019 provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." FED. R. BANKR. P. 9019(a). In ruling on a motion pursuant to Bankruptcy Rule 9019(a), the court must find that the proposed settlement is fair and equitable and is in the best interests of the estate. <u>Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson</u>, 390 U.S. 414 (1968); <u>Fischer v. Pereira (In re 47-49 Charles Street, Inc.)</u>, 209 B.R. 618, 620 (S.D.N.Y. 1997); <u>In re Ionosphere Clubs, Inc.</u>, 156 B.R. 414, 426 (S.D.N.Y. 1993), aff'd 17 F.3d 600 (2d Cir. 1994); <u>In re Fugazy</u>, 150 B.R. 103 (Bankr. S.D.N.Y. 1993).

29. In order to reach such a decision, the Court must be apprised "of all facts necessary for an intelligent and objective opinion" of whether the claim will be successful, the likely expense,

11

length and the degree of complexity of the litigation, the potential difficulties of collecting on a judgment "and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." TMT Trailer Ferry, 390 U.S. at 424.

30. To constitute a fair and equitable compromise or settlement, the Court must find that the settlement does not "fall below the lowest point in the range of reasonableness." Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983); In re Drexel Burnham Lambert Group, Inc., 138 B.R. 723, 758-59 (Bankr. S.D.N.Y. 1992); In re Int'l Distribution Centers, Inc., 103 B.R. 420, 423 (Bankr. S.D.N.Y. 1989).

31. The Court should also consider the fair and reasonable course of action for the debtor's estate, with the limited available assets, giving consideration to the interests of creditors and the avoidance of burdening the estate with undue waste or needless or fruitless litigation. In re Del Grosso, 106 B.R. 165, 167-168 (Bankr. N.D. Ill. 1989); see also In re Culmtech, Ltd., 118 B.R. 237, 238 (Bankr. M.D. Pa. 1990); In re Lawrence & Erausguin, Inc., 124 B.R. 37, 38 (Bankr. N.D. Ohio 1990); In re Bell & Beckwith, 93 B.R. 569, 574-75 (Bankr. N.D. Ohio 1988).

32. The Court is not required conclusively to determine the merits of a claim subject to compromise or to find that a proposed settlement constitutes the best results obtainable to ensure that the settlement reaches the threshold of reasonableness. Instead, the Court should "canvass the issues" to determine whether the proposed settlement is fair and equitable, is in the best interests of the estate and otherwise does not fall outside the range of reasonableness. In re Apex Oil Co., 92 B.R. 847, 867 (Bankr. E.D. Mo. 1988).

33. In concluding that the settlement embodied in the Stipulation is in the best interests of the Debtor's estate, the Trustee considered the following important factors: (i) the significant challenges in contesting ER Tennessee's claims; (ii) the potential value of the Assigned Claims;

and (iii) the costs associated with litigating the Adversary Proceeding. Upon consideration of these issues and as discussed below, the Trustee concluded that entry into the Stipulation is in the best interests of the Debtor's estate.

### A. ER Tennessee's Trust Claims

34. ER Tennessee asserts that it has title to the Remaining ER Funds because those funds were held by Prime in an express trust for ER Tennessee's benefit. The Trustee analyzed this claim in detail as set forth below.

35. An express trust "requires (1) a designated beneficiary, (2) a designated trustee, (3) a fund or other property sufficiently designated or identified to enable title of the property to pass to the trustee, and (4) actual delivery of the fund or property, with the intention of vesting legal title in the trustee." *Gowan v. Patriot Group, LLC (In re Dreier LLP)*, 452 B.R. 391, 420 (Bankr. 2011) (*quoting In re Doman*, 68 A.D.3d 862, 863 (2d Dep't 2009)). The intent to create a trust may be shown by explicit declaration or it may be based upon the circumstances showing "beyond reasonable doubt that a trust was intended to be created." *Id.* at 421-22. The "crucial factor" in determining whether a trust is formed is the presence of a duty to segregate assets. *In re Einhorn Vacation Planning Center*, 59 B.R. 179, 184 (Bankr. E.D.N.Y. 1986); *see Dreier*, 452 B.R. at 421-22. Notably, the Trustee was unable to find a case with a similar fact pattern, so he reviewed the relevant facts and applied the general propositions of law relating to the creation of an express trust in New York.

36. There is no language in the relevant lending agreements that explicitly creates a trust, that designates ER Tennessee as a beneficiary, or that designates Prime as a trustee. Nor was Prime's RBC account denominated as an account for the benefit of ER Tennessee or 1322, and in fact, it was instead held in the name of Prime for the benefit of RBC. However, the lending

13

agreements arguable stated the parties' intent to create an express trust for ER Tennessee's benefit because the Intercreditor Agreement both required segregation of the ER Funds and limited Prime's use of the ER Funds (which Prime immediately violated). Indeed, the documents include language that required Prime to segregate the ER Funds in a "locked pledge account" and limited the use of the funds to (i) securing the capital for the loan to 1322 from Prime, (ii) paying interest due and payable to Prime by 1322 over the term of the contemplated loan, or (iii) refunding the ER Funds in accordance with the agreement. ER Tennessee contends that it would not have loaned the ER Funds to 1322 without these conditions and Prime's agreement to hold the ER Funds and only use them for the stated purpose.

37.  Given the unique nature of the fact pattern, that the Remaining ER Funds are clearly identifiable and were not comingled by Prime prior to turnover to the Receiver, and the lack of clear contractual language or law on the subject, the Trustee concluded that ER Tennessee's express trust claim could conceivably be decided either way by the Court. Accordingly, without addressing the other positive aspects of the Stipulation set forth below, a resolution and division of the Remaining ER Funds in the manner provided for in the Stipulation is eminently fair and reasonable under existing law.

### B. Exclusive Right to Pursue any Transfer of the ER Funds

38.  If ER Tennessee's trust claim were successful, then it would have the right to pursue any improper transfer of the ER Funds by Prime to third parties. This would deprive Prime's bankruptcy estate of any potential recovery of the approximately $14.3 million in ER Funds that are not being returned to ER Tennessee pursuant to the Stipulation. By the Stipulation, ER Tennessee is acknowledging Prime's property interest in the ER Funds at all relevant times, and agreeing that Prime has the exclusive right to seek the recovery of any improperly transferred ER

Funds irrespective of ER Tennessee's trust and tracing claims. This may have significant value to Prime's bankruptcy estate by way of potential recovery.

### C. The Assignment of the Assigned Claims to the Estate

39. The Trustee asserts that Prime was operated as a Ponzi/advance pay lending scheme. In the criminal case against Roglieri, the government also alleged, among other things, that Roglieri and others used the Debtor to operate a fraud and money laundering scheme.[7] The Trustee believes that creditors including ER Tennessee may have claims against, among others, financial institutions where Prime banked for aiding and abetting Prime's and Roglieri's fraudulent scheme. Financial institutions permitted Prime to transact business and use their institutions to commit fraud in connection with the institutions' repeated failures to adhere with federal know-your-customer and anti-money laundering statutes, rules, and regulations. This may result in liability by the relevant institutions to Prime's creditor victims. By the Stipulation, ER Tennessee is assigning these claims to the estate provided that any net recovery only be shared with other creditor/victims who similarly assign their claims. The Trustee intends to propose a plan shortly that covers this concept and solicits similar assignments. These claims could prove to be of significant value for the estate and assigning creditor victims.

### D. Approval of the Stipulation is in the Best Interests of the Estate

40. The Stipulation represents a positive and productive resolution of complicated issues between the Parties. Further, the settlement avoids the need for additional litigation and the uncertainty that it would bring. Based upon the foregoing, the Trustee respectfully submits that

---

[7] *See United States v. Roglieri*, Case No. 24-cr-00392 (MAD) (N.D.N.Y.), Dkt. No. 1, ¶4. In connection with the criminal case, Roglieri was charged with five counts of wire fraud in violation of 18 U.S.C. § 1343, and for forfeiture of assets pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), in connection with his operation of Prime.

approval of the Stipulation is in the best interests of the Debtor's estate and respectfully requests that the Stipulation be approved.

## NOTICE

41. Notice of this Motion will be given to the Office of the United States Trustee for the Northern District of New York, and all parties entitled to notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure, by First Class Mail. In light of the nature of the relief requested herein, the Trustee submits that no further notice is required.

## NO PRIOR RELIEF

42. Except as specifically stated, no previous application for the relief sought herein has been made to this or any other court.

**WHEREFORE**, the Trustee respectfully requests that the relief requested herein be granted, that the Court approve the Stipulation by "So Ordering" it and entering it on the Court's docket, and that the Court grant such other and further relief as is just and proper.

Dated:   New York, New York
         November 25, 2025

                                            **KLESTADT WINTERS JURELLER**
                                            **SOUTHARD & STEVENS, LLP**

By:   */s/ Fred Stevens*
      Fred Stevens
      Lauren C. Kiss
      200 West 41st Street, 17th Floor
      New York, New York 10036
      Tel: (212) 972-3000
      Email: fstevens@klestadt.com
              lkiss@klestadt.com

*Special Litigation Counsel to Yann Geron, Chapter 11 Trustee of Prime Capital Ventures, LLC*

16