**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

In re:

PRIME CAPITAL VENTURES, LLC,                  Case No. 24-11029-PGR
                                              Chapter 11

_____    Debtor.

**TRUSTEE'S _EX-PARTE_ MOTION FOR THE ENTRY OF AN ORDER (I)
SCHEDULING A COMBINED HEARING ON (A) ADEQUACY OF THE DISCLOSURE
STATEMENT AND (B) CONFIRMATION OF THE PLAN, (II) APPROVING FORM
AND MANNER OF NOTICE OF COMBINED HEARING, (III) ESTABLISHING
PROCEDURES FOR OBJECTING TO (A) DISCLOSURE STATEMENT OR (B) PLAN,
AND (IV) APPROVING SOLICITATION PROCEDURES**

**TO THE HONORABLE PATRICK G. RADEL,**
**UNITED STATES BANKRUPTCY JUDGE:**

Yann Geron (the "Trustee"), the chapter 11 trustee of the estate of Prime Capital

Ventures, LLC (the "Debtor"), the above-captioned debtor in the above-referenced chapter 11

case (the "Bankruptcy Case"), by and through his general counsel, Geron Legal Advisors LLC,

and special litigation counsel, Klestadt Winters Jureller Southard & Stevens, LLP, hereby

submits this motion (the "Motion") for entry of an order, substantially in the form annexed

hereto as **Exhibit A** (the "Scheduling Order"), (i) scheduling a combined hearing on (a) the

adequacy of the Disclosure Statement For The Trustee's Plan of Liquidation Pursuant to Chapter

11 of the Bankruptcy Code dated as of December 16, 2025 (as it may be amended or

supplemented from time to time, the "Disclosure Statement") and (b) confirmation of the

Trustee's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code dated as of

December 16, 2025 (as it may be amended or supplemented from time to time, the "Plan"),[1] (ii)

approving form and manner of notice of combined hearing, (iii) establishing procedures for

---

[1] Capitalized terms used but not defined herein shall have the meanings assigned to them in the Plan.

objecting to (a) the Disclosure Statement or (b) the Plan, and (iv) approving the solicitation materials and solicitation procedures substantially in the forms annexed hereto.  In support of the Motion, the Trustee respectfully alleges as follows:

## **JURISDICTION, VENUE AND STATUTORY PREDICATES**

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested herein are sections 105, 1125 and 1126 of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 2002, 3017 and 3018 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules").

## **BACKGROUND**

3.      On September 16, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of New York (the "Bankruptcy Court") [Docket No. 1]

4.      Information regarding the Debtor is set forth in the *Local Bankruptcy Rule 2015 Affirmation* [Docket No. 6].

5.      On December 6, 2024, the Debtor filed its initial Plan [Docket No. 77] and initial Disclosure Statement [Docket No. 78] with the Court.

6.      On December 23, 2024, the Debtor filed the first amended Plan (the "First Amended Plan") [Docket No. 91] and first amended Disclosure Statement (the "First Amended Disclosure Statement") [Docket No. 92].

7.      On January 8, 2025, the Court entered an order scheduling a combined hearing on (a) adequacy of the First Amended Disclosure Statement and (b) confirmation of the First Amended Plan for February 26, 2025 (the "2025 Combined Hearing") [Docket No. 114].

8.      On January 9, 2025, the Debtor filed the Second Amended Disclosure Statement for First Amended Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code [Docket No. 118].

9.      Following the 2025 Combined Hearing, on March 28, 2025, the Court entered a Memorandum Decision and Order denying confirmation of the First Amended Plan [Docket No. 178].

10.     On June 5, 2025, the Court entered an order directing the U.S. Trustee to appoint a trustee pursuant to section 1104 of the Bankruptcy Code [Docket No. 282], and the U.S. Trustee appointed Yann Geron as the Trustee [Docket No. 283].

11.     On June 10, 2025, the Court entered an order approving the appointment of Yann Geron as the Trustee [Docket No. 287].

12.     As of the date of this Motion, no examiner or creditors' committee has been appointed in the Bankruptcy Case.

13.     On December 16, 2025, the Trustee filed the Plan with the Court.  The Plan classifies the Holders of Claims and Equity Interests into three (3) Classes (Classes 1 through 3) and provides for distribution of the Debtor's Assets in accordance with the Bankruptcy Code, and applicable non-bankruptcy law, as described in the Plan and Disclosure Statement.

14.     The Trustee believes that the expeditious consideration of Disclosure Statement approval and Plan confirmation is in the best interests of the Debtor's creditors.

3

**RELIEF REQUESTED**

15.     By this Motion, the Trustee respectfully seeks entry of an order (i) scheduling a

Combined Hearing on (a) adequacy of the Disclosure Statement and (b) confirmation of the Plan,

(ii) approving form and manner of notice of the Combined Hearing, (iii) establishing procedures

for objecting to (a) the Disclosure Statement or (b) the Plan, and (iv) approving the solicitation

materials and solicitation procedures substantially in the forms annexed hereto.

## I.     **Adequacy of the Disclosure Statement**

16.     The Trustee submits that the Disclosure Statement should be approved because it

sets forth information sufficient to meet the requirements of section 1125 of the Bankruptcy

Code.  Section 1125(b) of the Bankruptcy Code requires that, at the time of or before solicitation,

the proponent of a plan provide holders of claims or interests with the plan and a written

disclosure statement, which has been approved by the court as containing "adequate

information."  See 11 U.S.C. § 1125(b).  Adequate information is defined in the Bankruptcy

Code as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in
> light of the nature and history of the debtor and the condition of the debtor's
> books and records, including a discussion of the potential material federal tax
> consequences of the plan to the debtor, any successor to the debtor, and a
> hypothetical investor typical of the holders of claims or interests in the case, that
> would enable such a hypothetical investor of the relevant class to make an
> informed judgment about the plan, but adequate information need not include
> such information about any other possible or proposed plan, and in determining
> whether a disclosure statement provides adequate information, the court shall
> consider the complexity of the case, the benefit of additional information to
> creditors and other parties in interest, and the cost of providing additional
> information.

11 U.S.C. § 1125(a).

17.    Section 1125(a) of the Bankruptcy Code specifies certain factors that courts should consider when determining the adequacy of the disclosure, which expressly include: (1) the complexity of the case, (2) the benefit of additional information to creditors and other parties in interest, and (3) the cost of providing additional information.  See 11 U.S.C. §1125(a).

18.    A disclosure statement must, as a whole, provide information that is sufficient to permit an informed judgment by parties in interest entitled to vote on the chapter 11 plan.  See Kirk v. Texaco, Inc., 82 B.R. 678, 681 (Bankr. S.D.N.Y. 1988); In re Copy Crafters Quickprint, Inc., 92 B.R. 973, 979 (Bankr. N.D.N.Y. 1988) ("[Adequacy] is to be determined on a case-specific basis under a flexible standard that can promote the policy of chapter 11 towards fair settlement through a negotiation process between informed interested parties.").

19.    In measuring the adequacy of the information contained in a disclosure statement, a bankruptcy court has broad discretion.  See In re Ionosphere Clubs, Inc., 179 B.R. 24, 29 (Bankr. S.D.N.Y. 1995).  Accordingly, the determination of whether a disclosure statement contains adequate information is to be made on a case-by-case basis, focusing on the unique facts and circumstances of each case.  See In re Copy Crafters Quickprint, 92 B.R. at 979.

20.    Here, the Trustee submits that the Disclosure Statement contains adequate information with respect to the Plan.  The Disclosure Statement contains, among other things, a discussion of each of the following: (i) the history of the Debtor and its pre-petition operations; (ii) the events leading up to the Bankruptcy Case; (iii) significant events during the Bankruptcy Case; (iv) classification and treatment of Claims and Equity Interests; (v) payment of Priority Tax Claims and Administrative Expense Claims; (vi) treatment and procedures for resolution of disputed, contingent and unliquidated Claims; (vii) means of implementing the Plan; (viii)

5

treatment of executory contracts and unexpired leases; (ix) provisions of the Plan governing injunctions and exculpations; (x) conditions precedent to the confirmation and effectiveness of the Plan; (xi) federal income tax consequences to the Debtor and a hypothetical investor typical of the Holders of Claims in the Debtor's Estate; and (xii) voting and confirmation procedures.

21.     As a result, the Trustee respectfully submits that the Disclosure Statement contains adequate information of the kind contemplated by section 1125 of the Bankruptcy Code, and therefore respectfully requests that the Court approve the Disclosure Statement.

## II.    Form and Manner of Notice

### a.    Scheduling the Combined Hearing

22.     Section 105(d)(2)(B)(vi) of the Bankruptcy Code authorizes the Bankruptcy Court to combine a hearing on approval of a disclosure statement with the hearing on the confirmation of a plan.  11 U.S.C. §105(d)(2)(B)(vi).  The Trustee submits that such a Combined Hearing in this case would promote judicial economy and the expedient conclusion of the Debtor's Bankruptcy Case.  A Combined Hearing will avoid the administrative expenses associated with bifurcated proceedings.

23.     Therefore, the Trustee hereby respectfully requests entry of the Scheduling Order, pursuant to section 105(d)(2)(B)(vi) of the Bankruptcy Code, setting a date for a Combined Hearing at which the Court will consider adequacy of the Disclosure Statement and confirmation of the Plan.

24.     Rules 2002(b), (d) and 3017(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") require 28 days' notice for hearings to consider approval of a disclosure statement or confirmation of a plan.  Accordingly, subject to the Bankruptcy Court's availability,

the Trustee requests that the Combined Hearing be scheduled for **February 10, 2026 at 10:30 a.m.**

### b. Notice of the Combined Hearing

25.     The Trustee proposes to mail a copy of the notice of the Combined Hearing substantially in the form attached hereto as **Exhibit B** (the "Combined Hearing Notice") to all creditors and equity holders on or before **December 31, 2025**.  The Combined Hearing Notice contains a description of the date, time and location of the Combined Hearing, as well as the deadline and manner for filing objections to the approval of the Disclosure Statement and confirmation of the Plan.

### c. Procedures for Objections to the Disclosure Statement and/or Plan

26.     Pursuant to Bankruptcy Rules 3017(a) and 3020(b)(1), objections to the approval of a disclosure statement or confirmation of a plan must be filed and served within a time fixed by the court.  Fed. R. Bank. P. 3017(a) and 3020(b)(1).  Local Bankruptcy Rule 3020-1 states that objections to confirmation of a Plan shall be served and filed no later than seven (7) days prior to the confirmation hearing.  The Combined Hearing Notice provides, and the Trustee requests that the Bankruptcy Court direct, that objections to the approval of the Disclosure Statement, or objections or proposed modifications, if any, to the confirmation of the Plan must (i) be in writing, (ii) state the name and address of the objecting party and the amount and nature of the claim or interest of such party, (iii) state with particularity the basis and nature of any objection or proposed modification, and (iv) be filed with the Clerk of the Bankruptcy Court, with a copy delivered to chambers, and served so as to be received by (a) general counsel and special litigation counsel to the Trustee, (b) the Office of the United States Trustee, and (c)

7

parties filing a notice of appearance and request for service herein, no later than 4:00 p.m. (Prevailing Eastern Time) on the date that is seven (7) calendar days prior to the date of the Combined Hearing (the "Objection Deadline"). The proposed timing for service of objections and proposed modifications, if any, will afford the Bankruptcy Court, the Trustee and other parties in interest sufficient time to consider the objections and proposed modifications before the Combined Hearing.

27.    The Trustee submits that the approval and implementation of the foregoing proposed procedures for providing notice of the Combined Hearing will afford adequate notice of same to parties in interest and should be approved.

**III.    Notice of Non-Voting Status, Form of Ballot, Solicitation and Voting Procedures**

**a.  Notice of Non-Voting Status**

28.    The Plan provides that the Trustee will not solicit the votes of Holders of unclassified Claims (Administrative Expense Claims and Priority Tax Claims) or Holders of Claims or Equity Interests in the Classes outlined below that are presumed to accept or reject the Plan pursuant to section 1126(f) or (g) of the Bankruptcy Code:

| Class | Claims and Interests | Voting Status |
|-------|---------------------|---------------|
| 1 | Secured Claims | Presumed to Accept |
| 3 | Equity Interests | Presumed to Reject |

However, the Trustee desires to provide notice to such Holders that informs them of their treatment under the Plan, the relevant deadlines, and that they are not entitled to vote on the Plan. To that end, the Trustee requests authorization to send (in addition to the Combined Hearing Notice) notice of non-voting status ("Notice of Non-Voting Status") to Holders of unclassified

8

Claims and Holders of the Claims or Equity Interests in the Classes outlined above substantially in the form attached hereto as **Exhibit C**.

### b. Form of Ballot

29.     Bankruptcy Rule 3017(d) requires the Trustee to mail a form of ballot that substantially conforms to Official Form No. B 314 to only "creditors and equity holders entitled to vote on the plan." Fed. R. Bankr. P. 3017(d).  The Trustee has prepared and customized a form of ballot attached hereto as **Exhibit D** (the "Ballot") with which to solicit votes from Holders of Claims in Class 2, the only Class of Claims entitled to vote to accept or reject the Plan.  By this Motion, the Trustee seeks authority to distribute the Ballot to Holders of Claims in Class 2.

### c. Plan Injunction and Exculpation

30.     Article 8 of the Plan contains certain injunction and exculpation provisions that Creditors are advised and encouraged to carefully review and consider.

### d. Solicitation Procedures

31.     To conduct an effective solicitation of acceptances or rejections of the Plan that is consistent with the requirements of the Bankruptcy Code, the Bankruptcy Rules and due process, the Trustee seeks approval of the following solicitation procedures (the "Solicitation Procedures"):

### i. Solicitation Package

32.     Bankruptcy Rule 3017(d) sets forth the materials that must be provided to holders of claims for purposes of soliciting votes and providing adequate notice of the hearing on confirmation of a plan.  In accordance with Bankruptcy Rule 3017(d), the Trustee proposes that the following materials be distributed to all known Holders of Claims in Class 2 (the

"Solicitation Package"): (a) the Combined Hearing Notice, (b) the Disclosure Statement, (c) the Plan, (d) a Ballot and pre-addressed return envelope; and (e) such other materials as the Court may direct. The Trustee shall not be required to provide the Solicitation Package or Combined Hearing Notice or any other notice on account of claims that have been satisfied, waived, withdrawn, disallowed or expunged as of the date of the solicitation. The Trustee submits that the proposed Solicitation Package and manner of service satisfy the requirements of Bankruptcy Rule 3017(d).

33.     The Trustee proposes that he be authorized to, prior to solicitation, (a) make non-material and conforming changes (including, but not limited to, correcting typographical errors, altering formatting and inserting missing or changed dates) to the Plan, the Disclosure Statement, and related solicitation documents and forms, and (b) revise the Disclosure Statement and related documents (including, without limitation, the exhibits thereto) to add further disclosure, to the extent necessary.

34.     Further, the Trustee requests that he not be required to re-mail undelivered Solicitation Packages or other undeliverable solicitation-related notices that were returned marked "undeliverable," "moved – no forwarding address" or for a similar reason, unless the Trustee has been informed in writing by such person of that person's new address.

### ii.   Record Date for Voting and Voting Deadline

35.     Bankruptcy Rule 3017(d) provides that, for purposes of voting on a plan under chapter 11 of the Bankruptcy Code, "creditors and equity security holders shall include holders of stock, bonds, debentures, notes and other securities of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a

hearing." Fed. R. Bank. P. 3017(d).  The Trustee proposes that the Bankruptcy Court set the date of the filing of this Motion, December 16, 2025, (the "Voting Record Date") for purposes of determining which creditors are entitled to vote on the Plan.

36.    The Trustee proposes that the Holders of Claims in Class 2 be required to return their respective Ballots by first-class mail, in the return envelope provided, overnight courier, or personal delivery, in each case so that it is received by the Trustee's special litigation counsel no later than **January 30, 2026 at 5:00 p.m. (EST)** (the "Voting Deadline"), which is twelve (12) days prior to the Confirmation Hearing.

37.    The Trustee's special litigation counsel, Klestadt Winters Jureller Southard & Stevens, LLP, shall serve as the voting agent (the "Voting Agent").

### iii.    Ballot Tabulation

38.    Pursuant to the Plan only Holders of Claims in Class 2 (each a "Voting Claim") are impaired and entitled to vote on the Plan.  Solely for purposes of voting to accept or reject the Plan and not for the purpose of the allowance of, or distribution on account of a Claim, and without prejudice to the rights of the Trustee or the applicable creditor in any other context, the Trustee proposes that each Voting Claim be temporarily allowed in an amount equal to the amount of such Claim as set forth in a timely filed proof of Claim, or, if no proof of Claim was filed, the amount of such Claim as set forth in the Debtor's Schedules. The foregoing general procedure will be subject to the following exceptions:

(i)    If a Claim is deemed Allowed pursuant to the Plan, such Claim shall be Allowed for voting purposes in the deemed Allowed amount set forth in the Plan;

(ii)    If a Claim, for which a proof of Claim has been timely filed, is wholly contingent, unliquidated, or disputed, such Claim shall be allowed for voting purposes only, and not for purposes of allowance or distribution, at $1.00,

unless such Claim is disputed in the manner set forth in subparagraph 38(ix) below;

(iii)    If a Claim, for which a proof of Claim was timely filed, lists an amount that is liquidated and noncontingent, such Claim shall be temporarily allowed in the amount set forth on the proof of Claim, unless such claim is disputed in the manner set forth in subparagraph 38(ix) below;

(iv)    If a Claim, for which a proof of Claim was timely filed, lists an amount that is partially liquidated and partially unliquidated, such Claim shall be temporarily allowed only in the liquidated amount set forth on the proof of Claim, unless such claim is disputed in the manner set forth in subparagraph 38(ix) below;

(v)    If a Claim has been estimated for voting purposes or otherwise allowed for voting purposes by order of the Bankruptcy Court, such Claim shall be allowed in the amount so estimated or allowed by the Bankruptcy Court for voting purposes only, and not for purposes of allowance or distribution, unless otherwise provided by order of the Bankruptcy Court;

(vi)    If a Claim is listed in the Debtor's Schedules as contingent, unliquidated, disputed, in the amount of $0.00, or unknown, and a proof of Claim was not (a) filed by the applicable bar date for the filing of proofs of Claim established by the Bankruptcy Court, or (b) deemed timely filed by an order of the Court prior to the Voting Deadline, unless the Trustee has consented in writing, such Claim shall be disallowed for voting purposes;

(vii)    If a Ballot is signed by a trustee, executor, administrator, guardian, attorney-in-fact, officer of a corporation, or other person acting in a fiduciary or representative capacity, such person shall be required to indicate such capacity when signing and, upon request of the Trustee, submit proper evidence satisfactory to the Trustee to so act on behalf of a beneficial interest holder;

(viii)    Neither the Trustee, nor any other person or entity, will be under any duty to provide notification of defects or irregularities with respect to any Ballot nor will any of them incur any liabilities for failure to provide such notification;

(ix)    If the Trustee serves an objection to, or request for estimation of, a Claim at least twenty-one (21) days before the Voting Deadline, such Claim shall be temporarily disallowed for voting purposes only and not for purposes of allowance or distribution, except to the extent and in the manner as may be set forth in the objection or request for estimation;

(x)    If the Trustee serves an objection to a Claim at least twenty-one (21) days before the Voting Deadline, and the relief sought in that objection is to supersede one or more scheduled Claims with a filed Claim, such scheduled Claim shall be temporarily disallowed for voting purposes only and not for purpose of allowance or distribution; provided, however, that in the event

12

the holder of such Claims has returned only the Ballot in connection with the scheduled Claim(s), such Ballot shall be counted in the amount of the filed Claim;

(xi)    For purposes of voting and classification under the Plan, each party that holds or has filed more than one Claim in a particular Class shall be treated as if such entity has only one Claim, the Claims filed by such entity shall be aggregated, and the total dollar amount of such Claims shall be the sum of the aggregated Claims of such entity;

(xii)    Notwithstanding anything contained herein to the contrary, the Voting Agent, in its discretion, may contact entities entitled to vote to cure any defects in the Ballots and is authorized to cure any defects;

(xiii)    There shall be a rebuttable presumption that in the case where more than one timely, properly completed Ballot is received, only the latest received, properly completed Ballot will be counted unless the holder of the Claim receives Court approval to have the Ballot that was received earlier be counted;

(xiv)    If a Claim is filed in the amount of $0.00, the Holder of such Claim shall not be entitled to vote on account of such Claim;

(xv)    If a Claim is filed in a currency other than U.S. Dollars and is not Allowed in a sum certain pursuant to the Plan, the holder of such Claim shall be entitled to vote a Claim in the amount of $1.00; and

(xvi)    Notwithstanding anything to the contrary contained herein, any creditor who has filed or purchased duplicate Claims within the same Voting Class shall be permitted to vote on account of a single Claim in such Class, regardless of whether the Trustee has objected to such duplicate Claims.

39.    The Trustee believes that the foregoing proposed procedures provide for a fair and equitable voting process. If any party seeks to challenge the allowance of a Claim for voting purposes in accordance with the above procedures, the Trustee requests that the Court direct such creditor to serve on the Trustee and his special litigation counsel and file with the Court a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim in a different amount for purposes of voting to accept or reject the Plan on or before the tenth (10th) day after the later of (i) service of the Combined Hearing Notice or (ii) service of notice of an objection or request for estimation of such Claim, if any. The Trustee further proposes, in accordance with

Bankruptcy Rule 3018, that as to any creditor filing such a motion, such creditor's Ballot should

not be counted unless allowed by the Court for voting purposes, after notice and a hearing,

pursuant to an order entered at least seven (7) days prior to the Voting Deadline or as otherwise

directed by the Court.

40.    Additionally, the Trustee proposes that the following voting procedures and

standard assumptions be used in tabulating the Ballots:

(i)    Any Ballot transmitted to the Voting Agent by telecopy, facsimile, e-mail, or other electronic means of transmission will not be counted;

(ii)    All Ballots must contain a signature from the entity submitting the Ballot. Any unsigned Ballot will not be counted;

(iii)    The method of delivery of Ballots to the Voting Agent is at the risk of each holder of a Claim, and such delivery will be deemed made only when the original Ballot is actually received by the Voting Agent;

(iv)    Any Ballot purportedly cast by a person or entity that does not hold a Claim in a Class entitled to vote to accept or reject the Plan will not be counted;

(v)    Any Ballot that is illegible or contains insufficient information to permit the identification of the holder of a Claim will not be counted;

(vi)    Any Ballot that does not indicate an acceptance or rejection of the Plan, or that indicates both an acceptance and rejection of the Plan, will not be counted. Ballots partially rejecting and partially accepting the Plan will not be counted;

(vii)    Except as otherwise ordered by the Court, any Ballots received after the Voting Deadline will not be counted absent the consent of the Trustee (in his reasonable discretion);

(viii)    Whenever a Holder casts more than one Ballot voting the same Claim prior to the Voting Deadline, only the latest-dated Ballot timely received will be deemed to reflect the voter's intent and, thus, will supersede any prior Ballots; and

(ix)    Each Holder will be deemed to have voted the entire amount of its Claim as set forth on the Ballot.

14

#### iv. *Voting Certification*

41.    The Voting Agent shall certify in writing (the "Voting Certification") the amount and number of Allowed Claims in Class 2 that vote to accept or reject the Plan, and shall file the Voting Certification on or before **February 3, 2026.**

42.    The Trustee submits that the foregoing procedures provide for a fair and equitable voting process and should be approved by the Bankruptcy Court.

#### v. *Tax Information*

43.    For the purpose of future distributions in connection with this Bankruptcy Case, the Trustee will collect relevant tax information.  To this end, the Trustee may include a Form W-9 or other tax documents with the solicitation materials sent to holders of unimpaired and voting Claims.

## IV.    Creditor Assignments

44.    Holders of Allowed Class 2 Claims may hold potential claims related to the Debtor's and Kris Roglieri's ("Roglieri") conduct of the Debtor's business.  Creditor Related Causes of Action include, but may not be limited to: (i) any claims against the Debtor's former attorneys, accountants, auditors, or other professionals, in connection with aiding and abetting any breach of fiduciary duty owed by Roglieri to the Debtor or its creditors, fraud, aiding and abetting fraud on the part of the Debtor or Roglieri, or otherwise; (ii) any claims against banks or any other financial institutions used by the Debtor or Roglieri, or that are involved in transactions with the Debtor, in connection with aiding and abetting any breach of fiduciary duty owed by Roglieri to the Debtor or its creditors, fraud, aiding and abetting fraud on the part of the Debtor or Roglieri, or otherwise; and (iii) any other Claims against third parties that if pursued by the

15

Debtor or its estate may be subject to the defense of *in pari delicto* or the Wagoner Rule.
Pursuant to the Plan, those creditors will have the opportunity to assign those potential Creditor
Related Causes of Action to the Plan Administrator so that they can be consolidated and pursued
if valid by the Plan Administrator.  Only those qualified creditors who timely assign their
potential Creditor Related Causes of Action will be entitled to share in any recovery that may be
obtained by the Plan Administrator on account of such claims.

45.     The Trustee has prepared and customized a form of assignment attached hereto as
**Exhibit E** (the "<u>Assignment</u>") for qualified holders of Class 2 Claims to assign any Creditor
Related Causes of Action that they may have to the Plan Administrator.  In order to participate,
the Assignment must be completed and received by the Trustee's special litigation counsel by no
later than **January 30, 2026 at 5:00 p.m. (EST).**

<u>**NOTICE**</u>

46.     Given the *ex-parte* relief sought herein, the Trustee will not be providing notice of
this Motion to any parties.

<u>**NO PRIOR REQUEST**</u>

47.     Except as set forth herein, no prior motion for the relief requested herein has been
made to this or any other court.

**WHEREFORE**, the Trustee requests that the Bankruptcy Court enter the Scheduling
Order, substantially in the form attached hereto as **Exhibit A,** (i) scheduling a Combined Hearing
on (a) adequacy of the Disclosure Statement and (b) confirmation of the Plan, (ii) approving
form and manner of notice of the Combined Hearing, (iii) establishing procedures for objecting
to (a) the Disclosure Statement or (b) the Plan, (iv) approving the solicitation materials and

16

solicitation procedures substantially in the forms annexed hereto, and (v) granting the Trustee

such other and further relief as the Bankruptcy Court deems appropriate.

Dated:   New York, New York
         December 16, 2025

                                **KLESTADT WINTERS JURELLER**
                                **SOUTHARD & STEVENS, LLP**


                        By:   */s/ Fred Stevens*
                              _____
                              Fred Stevens
                              Lauren C. Kiss
                              200 West 41st Street, 17th Floor
                              New York, New York 10036
                              Tel: (212) 972-3000
                              Fax: (212) 972-2245
                              Email: fstevens@klestadt.com
                                     lkiss@klestadt.com

                              *Special Litigation Counsel to Yann Geron,*
                              *Chapter 11 Trustee of Prime Capital*
                              *Ventures, LLC*

## **Exhibit A**

(Proposed Form of Order)

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

In re:

PRIME CAPITAL VENTURES, LLC,                    Case No. 24-11029-PGR
                                                Chapter 11

                              Debtor.

---

**ORDER (I) SCHEDULING A COMBINED HEARING ON (A) ADEQUACY
OF THE DISCLOSURE STATEMENT AND (B) CONFIRMATION OF THE
PLAN, (II) APPROVING FORM AND MANNER OF NOTICE OF
COMBINED HEARING, (III) ESTABLISHING PROCEDURES FOR
OBJECTING TO (A) DISCLOSURE STATEMENT OR
(B) PLAN, AND (IV) APPROVING SOLICITATION PROCEDURES**

Upon the Motion[1] of Yann Geron (the "Trustee"), the chapter 11 trustee of the estate of

Prime Capital Ventures, LLC (the "Debtor"), the above-captioned debtor in the above-referenced

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion or Plan, as applicable.

chapter 11 case (the "<u>Bankruptcy Case</u>"), for the entry of an order (the "<u>Scheduling Order</u>"), (i) scheduling a combined hearing (a "<u>Combined Hearing</u>") on (a) the adequacy of the Disclosure Statement For The Trustee's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code dated as of December 16, 2025 (as it may be amended or supplemented from time to time, the "<u>Disclosure Statement</u>") and (b) confirmation of the Trustee's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code dated as of December 16, 2025 (as it may be amended or supplemented from time to time, the "<u>Plan</u>"), (ii) approving form and manner of notice of combined hearing, (iii) establishing procedures for objecting to (a) the Disclosure Statement  or (b) the Plan, and (iv) approving the solicitation materials and solicitation procedures; and it appearing that the relief requested in the Motion is in the best interests of the Debtor's estate, its creditors and other parties in interest; and it appearing that this Court has jurisdiction over this matter pursuant to 11 U.S.C. §§ 157 and 1334; and it appearing that this proceeding is a core proceeding pursuant to 11 U.S.C. § 158(a);

NOW, THEREFORE, the Court hereby finds as follows:

A. The solicitation procedures proposed in the Motion are fair and reasonable.

B. Service of the Disclosure Statement and Plan by **December 31, 2025**, with objections to approval of the Disclosure Statement, or objections or modifications to the Plan due on **February 3, 2026**, with a Certification of Ballots due by **February 3, 2026** and with a Combined Hearing to occur on **February 10, 2026**, shall constitute sufficient notice for purposes of Bankruptcy Rules 2002 and 3017 and

2

Local Bankruptcy Rules 3018-1 and 3020-1.

ACCORDINGLY, after due deliberation and sufficient cause appearing therefor; it is hereby ORDERED:

1.      The Motion is granted as set forth herein.

2.      The Combined Hearing will be held before the Honorable Patrick G. Radel, United States Bankruptcy Judge for the Northern District of New York, in the James T. Foley United States Courthouse, 445 Broadway, Suite 330, Albany, New York 12207 on **February 10, 2026 at 10:30 a.m. (EST)**, as such date may be continued or adjourned by the Court.  Any party wishing to appear at the hearing may do so in-person at the courthouse **or** by video via Teams, for which pre-registration is required by 3:00 PM one business day before the hearing at https://www.nynb.uscourts.gov/Remote-Hearing-Appearances

3.      Objections to the Disclosure Statement, or objections or proposed modifications, if any, to the Plan must (i) be in writing, (ii) state the name and address of the objecting party and the amount and nature of the claim or interest of such party, (iii) state with particularity the basis and nature of any objection or proposed modification, and (iv) be filed with the Clerk of the Bankruptcy Court, with a copy delivered to Chambers, so as to be received by (a) Geron Legal Advisors LLC, 370 Lexington Avenue, Suite 1208, New York, New York, 10017, Attention: Yann Geron and Nicole N. Santucci, general counsel to the Trustee; (b) Klestadt Winters Jureller Southard & Stevens, LLP, 200 West 41st Street, 17th Floor, New York, New York 10036, Attention: Fred Stevens and Lauren C. Kiss, special litigation counsel to the Trustee; (c) the Office of the United States Trustee for the Northern District of New York, 11A Clinton Avenue, Room 620, Albany, New York 12207, Attn:  Lisa M. Penpraze; and (d) parties filing a notice of

3

appearance and request for service herein, no later than **5:00 p.m. (Prevailing Eastern Time) on February 3, 2026** (the "Objection Deadline").

4.      Responsive pleadings to any objections to the Disclosure Statement, or objections or proposed modifications, if any, to the Plan shall be filed by no later than **February 6, 2026, at 12:00 p.m. (EST)**.

5.      The Combined Hearing Notice, substantially in the form attached to the Motion as Exhibit B, is hereby approved.

6.      The Solicitation Procedures, as set forth in the Motion, are hereby approved and the Trustee is authorized to remove the disclaimer required by Local Bankruptcy Rule 3016-2 prior to circulation.

7.      The Trustee shall cause the Voting Agent to mail the Solicitation Package to each Holder of Claims in Class 2 by no later than **December 31, 2025** (the "Solicitation Deadline").

8.      Consistent with section 1126 of the Bankruptcy Code and Bankruptcy Rule 3017(d), the Solicitation Package will not be distributed to Holders of Unclassified Claims against the Debtor and Holders of Claims and Equity Interests in Classes 1 and 3; provided, however, that the Trustee will distribute (in addition to the Combined Hearing Notice), by the Solicitation Date, a Notice of Non-Voting Status to Holders of Unclassified Claims and Holders of Claims and Equity Interests in Classes 1 and 3 in the form annexed to the Motion as Exhibit C.

9.      The Trustee and the Voting Agent are authorized to, prior to solicitation, (a) make non-material and conforming changes (including, but not limited to correcting typographical errors, altering formatting and inserting missing or changed dates) to the Plan, the Disclosure

4

Statement, and related solicitation documents and forms, and (b) revise the Disclosure Statement and related documents (including, without limitation, the exhibits thereto) to add further disclosure, to the extent necessary.

10.    The record date for purposes of determining which eligible holders of Claims are entitled to vote on the Plan shall be **December 16, 2025** (the "Voting Record Date").

11.    The form of Ballot, substantially in the form attached to the Motion as Exhibit D, is approved.

12.    All Ballots must be properly executed, completed and delivered to the Voting Agent so that they are actually received by the Voting Agent by no later than **5:00 p.m. (EST) on January 30, 2026** (the "Voting Deadline") at the following location:

> Klestadt Winters Jureller Southard & Stevens, LLP
> 200 West 41st Street, 17th Floor
> New York, New York 10036
> Attn: Fred Stevens & Lauren C. Kiss

13.    Solely for purposes of voting to accept or reject the Plan and not for the purpose of the allowance of, or distribution on account of a Claim, and without prejudice to the rights of the Truste or the applicable creditor in any other context, each Voting Claim shall be temporarily allowed in an amount equal to the amount of such Claim as set forth in a timely filed proof of Claim, or, if no proof of Claim was filed, the amount of such Claim as set forth in the Debtor's Schedules filed in the Bankruptcy Case. The foregoing general procedure will be subject to the following exceptions:

>  (i)   If a Claim is deemed Allowed pursuant to the Plan, such Claim shall be Allowed for voting purposes in the deemed Allowed amount set forth in the Plan;
>
>  (ii)  If a Claim, for which a proof of Claim has been timely filed, is wholly contingent, unliquidated, or disputed, such Claim shall be allowed for voting

5

purposes only, and not for purposes of allowance or distribution, at $1.00, unless such Claim is disputed in the manner set forth in subparagraph 13(ix) below;

(iii) If a Claim, for which a proof of Claim was timely filed, lists an amount that is liquidated and noncontingent, such Claim shall be temporarily allowed in the amount set forth on the proof of Claim, unless such claim is disputed in the manner set forth in subparagraph 13(ix) below;

(iv) If a Claim, for which a proof of Claim was timely filed, lists an amount that is partially liquidated and partially unliquidated, such Claim shall be temporarily allowed only in the liquidated amount set forth on the proof of Claim, unless such claim is disputed in the manner set forth in subparagraph 13(ix) below;

(v) If a Claim has been estimated for voting purposes or otherwise allowed for voting purposes by order of the Bankruptcy Court, such Claim shall be allowed in the amount so estimated or allowed by the Bankruptcy Court for voting purposes only, and not for purposes of allowance or distribution, unless otherwise provided by order of the Bankruptcy Court;

(vi) If a Claim is listed in the Debtor's Schedules as contingent, unliquidated, disputed, in the amount of $0.00, or unknown, and a proof of Claim was not (a) filed by the applicable bar date for the filing of proofs of Claim established by the Bankruptcy Court or (b) deemed timely filed by an order of the Court prior to the Voting Deadline, unless the Trustee has consented in writing, such Claim shall be disallowed for voting purposes;

(vii) If a Ballot is signed by a trustee, executor, administrator, guardian, attorney-in-fact, officer of a corporation, or other person acting in a fiduciary or representative capacity, such person shall be required to indicate such capacity when signing and, upon request of the Trustee, submit proper evidence satisfactory to the Trustee to so act on behalf of a beneficial interest holder;

(viii) Neither the Trustee, nor any other person or entity, will be under any duty to provide notification of defects or irregularities with respect to any Ballot nor will any of them incur any liabilities for failure to provide such notification;

(ix) If the Trustee serves an objection to, or request for estimation of, a Claim at least twenty-one (21) days before the Voting Deadline, such Claim shall be temporarily disallowed for voting purposes only and not for purposes of allowance or distribution, except to the extent and in the manner as may be set forth in the objection or request for estimation;

(x) If the Trustee serves an objection to a Claim at least twenty-one (21) days before the Voting Deadline, and the relief sought in that objection is to supersede one or more scheduled Claims with a filed Claim, such scheduled Claim shall be temporarily disallowed for voting purposes only and not for purpose of allowance or distribution; provided, however, that in the event the holder of such Claims has returned only the Ballot in connection with the

6

scheduled Claim(s), such Ballot shall be counted in the amount of the filed Claim;

(xi)    For purposes of voting and classification under the Plan, each party that holds or has filed more than one Claim in a particular Class shall be treated as if such entity has only one Claim, the Claims filed by such entity shall be aggregated, and the total dollar amount of such Claims shall be the sum of the aggregated Claims of such entity;

(xii)    Notwithstanding anything contained herein to the contrary, the Voting Agent, in its discretion, may contact entities entitled to vote to cure any defects in the Ballots and is authorized to so cure any defects;

(xiii)    There shall be a rebuttable presumption that in the case where more than one timely, properly completed Ballot is received, only the latest received, properly completed Ballot will be counted unless the holder of the Claim receives Court approval to have the Ballot that was received earlier be counted;

(xiv)    If a Claim is filed in the amount of $0.00, the Holder of such Claim shall not be entitled to vote on account of such Claim;

(xv)    If a Claim is filed in a currency other than U.S. Dollars and is not Allowed in a sum certain pursuant to the Plan, the holder of such Claim shall be entitled to vote a Claim in the amount of $1.00; and

(xvi)    Notwithstanding anything to the contrary contained herein, any creditor who has filed or purchased duplicate Claims within the same Voting Class shall be permitted to vote on account of a single Claim in such Class, regardless of whether the Trustee has objected to such duplicate Claims.

14.    If a Holder of a Claim seeks to challenge the allowance (or disallowance) of its Claim for voting purposes, in accordance with the above procedures, such Holder is directed to serve on the Trustee and his special litigation counsel and file with the Court on or before the tenth (10th) day after the later of (i) service of the Combined Hearing Notice and (ii) service of notice of an objection or request for estimate, if any, to such Claim, a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim for purposes of voting to accept or reject the Plan.

15.    If a Holder of a Claim files a motion pursuant to Bankruptcy Rule 3018(a), such Holder's Ballot shall not be counted unless temporarily allowed by the Bankruptcy Court for

voting purposes pursuant to an order entered at least seven (7) days prior to the Voting Deadline

or as otherwise directed by the Bankruptcy Court.

16.    The following voting procedures and standard assumptions shall be used in

tabulating the Ballots:

(i)    Any Ballot transmitted to the Voting Agent by telecopy, facsimile, e-mail, or other electronic means of transmission will not be counted;

(ii)    All Ballots must contain a signature from the entity submitting the Ballot. Any unsigned Ballot will not be counted;

(iii)    The method of delivery of Ballots to the Voting Agent is at the risk of each holder of a Claim, and such delivery will be deemed made only when the original Ballot is actually received by the Voting Agent;

(iv)    Any Ballot purportedly cast by a person or entity that does not hold a Claim in a Class entitled to vote to accept or reject the Plan will not be counted;

(v)    Any Ballot that is illegible or contains insufficient information to permit the identification of the holder of a Claim will not be counted;

(vi)    Any Ballot that does not indicate an acceptance or rejection of the Plan, or that indicates both an acceptance and rejection of the Plan, will not be counted. Ballots partially rejecting and partially accepting the Plan will not be counted;

(vii)    Except as otherwise ordered by the Court, any Ballots received after the Voting Deadline will not be counted absent the consent of the Trustee (in its reasonable discretion);

(viii)    Whenever a Holder casts more than one Ballot voting the same Claim prior to the Voting Deadline, only the latest-dated Ballot timely received will be deemed to reflect the voter's intent and, thus, will supersede any prior Ballots; and

(ix)    Each Holder will be deemed to have voted the entire amount of its Claim as set forth on the Ballot.

17.    The Voting Agent, in its discretion, may contact entities entitled to vote to cure

any defects in the Ballots and is authorized to cure any defects.

8

18.     The Trustee is not required to re-mail undelivered Solicitation Packages or other undeliverable solicitation-related notices that were returned marked "undeliverable," "moved – no forwarding address" or for a similar reason, unless the Trustee has been informed in writing by such person of that person's new address.  Failure to mail the Solicitation Packages to such entities shall neither constitute inadequate notice of the Confirmation Hearing or the Voting Deadline, nor violate Bankruptcy Rule 3017(d).

19.     The Trustee may include a Form W-9 or other tax documents with the solicitation materials sent to holders of unimpaired and voting Claims.

20.     The Trustee may include the proposed form of Assignment, substantially in the form attached to the Motion as Exhibit E, to qualified holders of Class 2 Claims to assign any Creditor Related Causes of Action that they may have to the Plan Administrator.

21.     The Trustee is authorized and empowered to take all actions and execute such other documents as may be necessary to implement the relief granted herein.

22.     The Bankruptcy Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this order.

###

9

**Exhibit B**

(Combined Hearing Notice)

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

In re:

PRIME CAPITAL VENTURES, LLC,                    Case No. 24-11029-PGR
                                                Chapter 11

                        Debtor.

**NOTICE OF (I) COMBINED HEARING TO (A) CONSIDER APPROVAL**
**OF THE DISCLOSURE STATEMENT AND (B) CONFIRM THE PLAN**
**OF LIQUIDATION, AND (II) DATE BY WHICH TO SUBMIT OBJECTIONS**

BY ORDER OF THE UNITED STATES BANKRUPTCY COURT:

**PLEASE TAKE NOTICE** that, a combined hearing to consider approval of the Disclosure Statement for the Trustee's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code dated as of December 16, 2025 (as it may be amended or supplemented from time to time, the "Disclosure Statement") and (b) confirmation of the Trustee's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code, dated as of December 16, 2025 (as it may be amended or supplemented from time to time, the "Plan") has been scheduled by the Bankruptcy Court, and the following deadlines and procedures have been established with respect thereto:

**COMBINED HEARING TO APPROVE DISCLOSURE**
**STATEMENT AND CONFIRM PLAN OF LIQUIDATION**

1.      A hearing to consider approval of the Disclosure Statement and confirm the Plan (the "Combined Hearing") will commence on **February 10, 2026 at 10:30 a.m. (EST)** before the Honorable Patrick G. Radel, United States Bankruptcy Judge for the Northern District of New York, in the James T. Foley United States Courthouse, 445 Broadway, Suite 330, Albany, New York 12207. Any party wishing to appear at the hearing may do so in-person at the courthouse **or** by video via Teams, for which pre-registration is required by 3:00 PM one business day before the hearing at https://www.nynb.uscourts.gov/Remote-Hearing-Appearances.

**ESTABLISHMENT OF OBJECTION DEADLINE AND PROCEDURES**

2.      The Bankruptcy Court established **February 3, 2026, at 5:00 p.m.** (Prevailing Eastern Time) as the last date and time for filing and serving objections to approval of the Disclosure Statement or confirmation of the Plan (the "Objection Deadline"). Objections not filed and served by the Objection Deadline in the manner set forth in paragraph 3 below will not be considered by the Bankruptcy Court.

3.      In order to be considered by the Bankruptcy Court, objections, if any, to the Disclosure Statement or Plan, must (a) be in writing, (b) state the name and address of the

objecting party and the amount and nature of the claim or interest of such party, (c) state with particularity the basis and nature of any objection or proposed modification, and (d) be filed with the Clerk of the Bankruptcy Court, with a copy delivered to Chambers, and served so that they are actually received on or before the Objection Deadline by: (i) general counsel to the Trustee, Geron Legal Advisors LLC, 370 Lexington Avenue, Suite 1208, New York, New York, 10017, Attention: Yann Geron and Nicole N. Santucci; (ii) special litigation counsel to the Trustee: Klestadt Winters Jureller Southard & Stevens, LLP, 200 West 41st Street, 17th Floor, New York, New York 10036, Attn: Fred Stevens and Lauren C. Kiss; (iii) the Office of the United States Trustee for the Northern District of New York, 11A Clinton Avenue, Room 620, Albany, New York 12207, Attn: Lisa M. Penpraze; and (iv) parties filing a notice of appearance and request for service herein.

4.      The Bankruptcy Court will consider only written objections filed and served in accordance with paragraph 3 above by the Objection Deadline. Objections not timely filed and served in accordance with the provisions of this Notice will not be heard and will be overruled.

5.      All documents filed with the Bankruptcy Court, including the proposed Disclosure Statement and Plan, may be viewed for a fee on the Bankruptcy Court's website located at http://www.nynb.uscourts.gov and following the directions for accessing the ECF system on such website. In addition, copies of all documents are available for inspection at the Clerk of the United States Bankruptcy Court, Northern District of New York, James T. Foley United States Courthouse, 445 Broadway, Suite 330, Albany, New York 12207. Copies are also available upon request to the undersigned special litigation counsel to the Trustee.

Dated:   New York, New York
        _____ __, 2025

                                          **KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP**

By: _____

                  Fred Stevens
                  Lauren C. Kiss
                  200 West 41st Street, 17th Floor
                  New York, New York 10036
                  Tel: (212) 972-3000
                  Fax: (212) 972-2245
                  Email: fstevens@klestadt.com
                       lkiss@klestadt.com

                  *Special Litigation Counsel to Yann Geron,
                    Chapter 11 Trustee of Prime Capital
                    Ventures, LLC*

2

**<u>Exhibit C</u>**

(Notice of Non-Voting Status)

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

In re:

PRIME CAPITAL VENTURES, LLC,                  Case No. 24-11029-PGR
                                              Chapter 11

                         Debtor.

## NOTICE OF NON-VOTING STATUS

### TO HOLDERS OF: (I) ADMINISTRATIVE EXPENSE CLAIMS;
### (II) PRIORITY TAX CLAIMS;; (III) CLASS 1
### SECURED CLAIMS; AND (IV) CLASS 3 EQUITY INTERESTS

On _____, 2025, the United States Bankruptcy Court for the Northern District of New York (the "Bankruptcy Court") scheduled a combined hearing (the "Combined Hearing") to consider approval of the Disclosure Statement for the Trustee's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code dated as of December 16, 2025 (as it may be amended or supplemented from time to time, the "Disclosure Statement") in support of the Trustee's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code, dated as of December 16, 2025 (as it may be amended and supplemented from time to time, the "Plan") pursuant to section 1125 of Title 11 of the United States Code (the "Bankruptcy Code"), and confirmation of the Plan, and authorized Yann Geron, as chapter 11 trustee (the "Trustee") of Prime Capital Ventures, LLC ("Prime" or the "Debtor") to solicit votes with regard to the acceptance or rejection of the Plan. The Combined Hearing has been scheduled for **February 10, 2026, at 10:30 a.m.** (Prevailing Eastern Time).

The Bankruptcy Court established **February 3, 2026, at 5:00 p.m.** (Prevailing Eastern Time) as the last date and time for filing and serving objections to approval of the Disclosure Statement or confirmation of the Plan (the "Objection Deadline"). Objections not filed and served by the Objection Deadline will not be considered by the Bankruptcy Court.

In order to be considered by the Bankruptcy Court, objections, if any, to the Disclosure Statement or Plan, must (a) be in writing, (b) state the name and address of the objecting party and the amount and nature of the claim or interest of such party, (c) state with particularity the basis and nature of any objection or proposed modification, and (d) be filed with the Clerk of the Bankruptcy Court, with a copy delivered to Chambers, and served so that they are actually received on or before the Objection Deadline by: (i) general counsel to the Trustee, Geron Legal Advisors LLC, 370 Lexington Avenue, Suite 1208, New York, New York, 10017, Attention: Yann Geron and Nicole N. Santucci; (ii) special litigation counsel to the Trustee: Klestadt Winters Jureller Southard & Stevens, LLP, 200 West 41st Street, 17th Floor, New York, New York 10036, Attn: Fred Stevens and Lauren C. Kiss; (iii) the Office of the United States Trustee

for the Northern District of New York, 11A Clinton Avenue, Room 620, Albany, New York 12207, Attn:  Lisa M. Penpraze; and (iv) parties filing a notice of appearance and request for service herein.

The Bankruptcy Court will consider only written objections filed and served in accordance with the requirements set forth above by the Objection Deadline.  Objections not timely filed and served in accordance with the provisions of this Notice will not be heard and will be overruled.

Pursuant to the Scheduling Order, you are not receiving a printed copy of the Disclosure Statement or the Plan. Copies of those and related documents may be obtained and are available for a fee on the Bankruptcy Court's website located at http://www.nynb.uscourts.gov and following the directions for accessing the ECF system on such website.  In addition, copies of all documents are available for inspection at the Clerk of the United States Bankruptcy Court, Northern District of New York, James T. Foley United States Courthouse, 445 Broadway, Suite 330, Albany, New York 12207.  Copies are also available upon request to the undersigned special litigation counsel to the Trustee.

**PLEASE TAKE NOTICE THAT Article 8 of the Plan contains Exculpation and Injunction provisions.  You are advised and encouraged to carefully review and consider the Plan terms, including the exculpation and injunction provisions, as your rights may be affected.**

[*Continued on Next Page*]

2

In accordance with the Disclosure Statement and Plan and Section 1126(f) or 1126(g) of the Bankruptcy Code: (i) Holders of Administrative Expense Claims and Priority Tax Claims (the "Unclassified Claims") are not entitled to vote on the Plan; and (ii) Holders of Claims and Equity Interests in Classes 1 and 3 under the Plan are Unimpaired or Impaired by the Plan, presumed to have accepted and/or rejected the Plan, and not entitled to vote to accept or reject the Plan.  YOU ARE RECEIVING THIS NOTICE BECAUSE YOU ARE OR MIGHT BE THE HOLDER OF UNCLASSIFIED CLAIMS OR CLAIMS IN PRESUMED ACCEPTING OR REJECTING CLASSES, IN EACH CASE WHICH ARE NOT ENTITLED TO VOTE ON THE PLAN. YOU ARE ENCOURAGED TO REVIEW THE PLAN AND DISCLOSURE STATEMENT AND ARE ENTITLED TO OBJECT TO APPROVAL OF THE DISCLOSURE STATEMENT AND CONFIRMATION OF THE PLAN BY THE PLAN OBJECTION DEADLINE IN THE MANNER SET FORTH ABOVE.

Dated:   New York, New York
_____ __, 2025

**KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP**

By: _____
Fred Stevens
Lauren C. Kiss
200 West 41st Street, 17th Floor
New York, New York 10036
Tel: (212) 972-3000
Fax: (212) 972-2245
Email: fstevens@klestadt.com
         lkiss@klestadt.com

*Special Litigation Counsel to Yann Geron,
   Chapter 11 Trustee of Prime Capital
   Ventures, LLC*

3

## **Exhibit D**

(Form of Ballot – Class 4)

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

In re:

PRIME CAPITAL VENTURES, LLC,                    Case No. 24-11029-PGR
                                                Chapter 11

_____
                            Debtor.
_____

### BALLOT FOR ACCEPTING OR REJECTING THE TRUSTEE'S PLAN OF LIQUIDATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

Yann Geron (the "Trustee"), the chapter 11 trustee of the estate of Prime Capital Ventures, LLC (the "Debtor"), the above-captioned debtor in the above-referenced chapter 11 case (the "Bankruptcy Case"), is soliciting votes from the Holders of impaired Claims against the Debtor to accept or reject the Trustee's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code, dated December 16, 2025 [Docket No. ☐] (as amended or modified from time to time, the "Plan") described in the related Disclosure Statement for the Trustee's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code, dated December 16, 2025 [Docket No. ☐] (the "Disclosure Statement"). All capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan.

The Disclosure Statement provides information to assist you in deciding how to vote your Ballot. If you do not have the Disclosure Statement, you may obtain a copy of the Disclosure Statement, as well as copies of the Plan and related documents, for a fee on the Bankruptcy Court's website located at http://www.nynb.uscourts.gov and following the directions for accessing the ECF system on such website. In addition, copies of all documents are available for inspection at the Clerk of the United States Bankruptcy Court, Northern District of New York, James T. Foley United States Courthouse, 445 Broadway, Suite 330, Albany, New York 12207. Copies are also available upon request to the undersigned special litigation counsel to the Trustee.

**You should review the Disclosure Statement and the Plan fully before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. Your Claim has been placed in Class 2 under the Plan.**

**PLEASE TAKE NOTICE THAT Article 8 of the Plan contains Exculpation and Injunction provisions. You are advised and encouraged to carefully review and consider the Plan terms, including the exculpation and injunction provisions, as your rights may be affected.**

**This Ballot is to be used for voting by Holders of Class 2 Claims. In order for your vote to be counted, this Ballot must be properly completed, signed, and returned to Trustee's special litigation counsel, Klestadt Winters Jureller Southard & Stevens, LLP**

(the "<u>Voting Agent</u>") so that it is actually received no later than 5:00 p.m. (EST) on January 30, 2026 (the "<u>Voting Deadline</u>"), unless such time is extended by the Trustee.

**If your ballot is not received by the Voting Agent on or before the Voting Deadline, and such deadline is not extended, your vote will not count as either an acceptance or rejection of the Plan. If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote.**

## <u>INSTRUCTIONS FOR COMPLETING THE BALLOT</u>

To have the vote reflected on this Ballot counted, this Ballot must be properly completed, signed, and returned to the Voting Agent so that it is actually received no later than the Voting Deadline, unless such time is extended by the Trustee. Ballots must be delivered to the Voting Agent at the address listed below:

Klestadt Winters Jureller Southard & Stevens, LLP
200 West 41st Street, 17th Floor
New York, New York 10036
Attn: Fred Stevens & Lauren C. Kiss

**PLEASE TAKE NOTICE THAT: Ballots will not be accepted by telecopy, facsimile, or other electronic means of transmission.**

To properly complete the Ballot, you must follow the procedures described below:

a.  Make sure that the information contained in Item 1 is correct;

b.  If you hold a Claim in Class 2, cast one vote to accept or reject the Plan by checking the appropriate box in Item 2;

c.  If you are completing this Ballot on behalf of another entity, indicate your relationship with such entity and the capacity in which you are signing on the appropriate line in Item 3. By submitting the Ballot, you are certifying that you have authority to so act and agree to provide documents evidencing such authority upon request (*e.g.*, a power of attorney or a certified copy of board resolutions authorizing you to so act);

d.  Provide your name, mailing address, and any remaining information requested;

e.  Sign and date your Ballot; and

f.  Return your Ballot with an original signature to the Voting Agent.

2

**IF YOU HAVE ANY QUESTIONS REGARDING THE BALLOT, OR IF YOU DID NOT RECEIVE A RETURN ENVELOPE WITH YOUR BALLOT, OR IF YOU NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE VOTING AGENT AT 212-972-3000.  PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT. THE VOTING AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

**PLEASE COMPLETE THE FOLLOWING:**

**Item 1**. **Amount of Class 2 Claim**. For purposes of voting to accept or reject the Plan, the undersigned certifies that as of _____ __, 2025, the undersigned holds a **Class 2 Claim** against Prime Capital Ventures, LLC listed below in the amount set forth below:

$_____.

**Item 2**. **Vote on the Plan**. The undersigned Holder of a **Class 2 Claim** in the amount set forth in Item 1 above hereby votes to:

     **Check one box only**:     [___]     Accept the Plan

                                          [___]     Reject the Plan

**Item 3. Acknowledgements and Certification**.  By signing this Ballot, the undersigned acknowledges that the undersigned has been provided with a copy of the Combined Hearing Notice. The undersigned certifies that (i) it is the holder of the **Class 2 Claim** identified in Item 1 above, and (ii) it has full power and authority to vote to accept or reject the Plan.

Print or Type Name of Claimant:_____

Signature:_____

Name of Signatory (if different than claimant):_____

If by Authorized Agent, Title of Agent:_____

Street Address:_____

City, State, Zip Code:_____

Telephone Number:_____

Email Address:_____

Date Completed:_____

4

## **Exhibit E**

(Proposed Form of Assignment)

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

In re:

PRIME CAPITAL VENTURES, LLC,                    Case No. 24-11029-PGR
                                                Chapter 11

_____ Debtor. _____

## ASSIGNMENT OF CLAIMS TO PRIME CAPITAL
## VENTURES, LLC PLAN ADMINISTRATOR

The undersigned, a holder of a Class 2 General Unsecured Claim (a "Creditor") against

Prime Capital Ventures, LLC (the "Debtor"), or an assignee, heir, successor, or duly authorized

estate representative of such Creditor, does hereby irrevocably assign, give over, transfer, and

convey, to the Plan Administrator appointed in the Trustee's Plan of Liquidation Pursuant to

Chapter 11 of the United States Bankruptcy Code (the "Plan"), any and all claims, demands,

causes of action, class in action, and other obligations of any type or description, whether known

or unknown, liquidated or unliquidated, asserted or unasserted, whether arising in tort, contract

or other basis or theory, which the undersigned has or may have that are related to the Debtor's

and Kris Roglieri's ("Roglieri") conduct of the Debtor's business, and the Creditor's claim

against the Debtor's or Roglieri's bankruptcy estates.  Such claims include, but may not be

limited to: (i) any claims against the Debtor's former attorneys, accountants, auditors, or other

professionals, in connection with aiding and abetting any breach of fiduciary duty owed by

Roglieri to the Debtor or the Debtor's creditors, fraud, aiding and abetting fraud on the part of

the Debtor or Roglieri, or otherwise; (ii) any claims against banks or any other financial

institutions used by the Debtor or Roglieri, or that are involved in transactions with the Debtor,

in connection with aiding and abetting any breach of fiduciary duty owed by Roglieri to the

Debtor or its creditors, fraud, aiding and abetting fraud on the part of the Debtor or Roglieri,

unjust enrichment, aiding and abetting conversion by the Debtor or Roglieri, or otherwise; and

(iii) any other claims against third parties related to the Debtor's or Roglieri's wrongdoing that if

pursued by the Debtor or its estate may be subject to the defense of *in pari delicto* or the

Wagoner Rule (collectively, the "Assigned Claims").

The assignment of the Assigned Claims is made without warranty or representation of

any kind other than that undersigned represents that the Assigned Claims have not previously

been assigned or conveyed to any other persons. This assignment is subject to the relevant

provision of the Plan and incorporates provisions by reference.

Print or Type Name of Claimant:_____

Signature:_____

Name of Signatory (if different than claimant):_____

If by Authorized Agent, Title of Agent:_____

Street Address:_____

City, State, Zip Code:_____

Telephone Number:_____

Email Address:_____

Date Completed:_____

2

## Background Information on Assigned Claims

On December 14, 2021, Kris Daniel Roglieri ("Roglieri") formed Prime Capital Ventures, LLC (the "Debtor") as a Delaware limited liability company. Upon information and belief, until on or around May 15, 2024, Roglieri was at all times the sole manager of the Debtor and its chief executive. The concept was apparently that the Debtor would be a division of Prime Commercial Lending, another business owned and operated by Roglieri, as "a fund specifically designed to provide capital for large development, commercial development and commercial real estate transactions from $50 million to more than $1 billion." Ian Koplin, *Roglieri Unveils Prime Capital Ventures, Prime Commercial Lening's Newest Fund*, DealMaker Magazine (May 2, 2022). The Debtor advertised that it would offer non-recourse lines of credit with rates at 4 to 6% with interest-only payments but would require borrowers to provide 20% cash upfront based on the total project cost to be placed in an interest credit account (each an "ICA Deposit"). The ICA Deposits would be held by the Debtor as prepaid interest throughout the term of the loan. The Debtor obtained millions of dollars in ICA Deposits from multiple companies throughout the country which, upon information and belief, in most cases was used by the Debtor and Roglieri before the loans were closed and funded.

By December 2023, the Debtor was besieged by litigation largely from borrowers who did not get their loans funded and wanted the return of their ICA Deposits. *See, e.g.*, *Truss Financial LLC v. Prime Capital, et al.*, Index No. 2023/510389 (N.Y.Sup. Ct. Kings Cty. Apr. 5, 2023) (seeking and apparently obtained the return of $13.4 million); *B&R Acquisition Partners v. Prime Capital* (JAMS Arb., Aug. 2023) (seeking return of $4 million); *Sturm v. Prime Capital*, Case No. 23-cv-1033 (N.D.N.Y. Aug. 22, 2023) (seeking return of $2 million); *Camshaft CRE 1, LLC v. Prime Capital*, Case No. 2023-023173 (Fla. Circ. Ct., Miami-Dade Cty., Sept. 15, 2023) (seeking return of $13.4 million); *The Lion Group DFW, LLC v. Prime Capital*, Case No. 23-DCV-34617 (Tex. Dist. Ct., 146th Dist., Sept. 21, 2023) (demand unknown); *Onward Partners, LLC, v. Prime Capital, et al.*, Case No. 23-cv-833 (D. Utah Nov. 13, 2023) (seeking return of $20 million).

In a Ponzi scheme, multiple victims are defrauded over the course of months or years, and the perpetrator forestalls discovery of the scheme by using newer victims' money to pay back earlier-in-time victims. Payouts are used to create the appearance of a legitimate, money-making enterprise; however, in reality, investors are the only source of funding and the person(s) involved in the Ponzi scheme will siphon off investor funds for their own personal gain. *See Securities Fraud Awareness & Prevention Tips*, FBI.gov.[1] "Ponzi schemes have no exact definition, since they manifest a kaleidoscopic variety of configurations." Honorable Dorothy T. Eisenberg, Nicholas W. Quesenberry, *Ponzi Schemes in Bankruptcy*, 30 Touro Law Review p. 502. "Thus, 'courts look for a general pattern, rather than specific requirements.'" *Id.*, citing *Manhattan Inv. Fund, Ltd. V. Gredd (In re Manhattan Inv. Fund, Ltd.)*, 397 B.R. 1, 12 (S.D.N.Y. 2007) (stating there is no precise ponzi scheme definition).

---

[1] https://www.fbi.gov/stats-services/publications/securities-fraud (last visited Nov. 15, 2024).

Some courts use a four-factor test in determining whether a Ponzi scheme exists and consider whether: "1) deposits were made by investors; 2) the Debtor conducted little or no legitimate business operations as represented to investors; 3) the purported business operation of the Debtor produced little or no profits or earnings; and 4) the source of payments to investors was from cash infused by new investors." *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 531 B.R. 439, 471 (Bankr. S.D.N.Y. 2015). Other courts identify "badges of fraud," including the absence of legitimate business connected to the investment program, the unrealistic promises of low risk and high returns, commingling investor money, the use of agents and brokers paid high commissions to perpetuate the scheme, misuse of investor funds, the 'payment' of excessively large fees to the perpetrator and the use of false financial statements." *Gowan v. Amaranth Advisors LLC (In re Dreier LLP)*, No. 08-15051, 2014 WL 47774, at *9 (Bankr. S.D.N.Y. Jan. 3, 2014); *see Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff)*, 528 F. Supp. 3d 219, 237-41 (S.D.N.Y. 2021), *aff'd sub nom., Picard v. Jaba Assocs. LP, 49 f.4TH 170 2D Cir. 2022)*.

In the end, and most significantly, "the label 'Ponzi scheme' has been applied to *any sort of inherently fraudulent arrangement under which the debtor-transferor must utilize after-acquired investment funds to pay off previous investors in order to forestall disclosure of the fraud.*" *Bayou Superfund, LLC v. WAM Long/Short Fund II, L.P. (In re Bayou Group, LLC)*, 362 B.R. 624, 633 (Bankr. S.D.N.Y. 2007) (emphasis added).

The Debtor had all the classic hallmarks of a Ponzi scheme. *First*, the Debtor received deposits from investors in the form of ICA Deposits. The intention of making such deposits was to secure future funding which did not materialize in an overwhelming majority of the cases. *Second*, the Debtor conducted little or no legitimate business operations as represented to those who made the ICA Deposits. The Debtor appears to have taken in at least $100 million in ICA Deposits from over 20 potential third-party borrowers. At the same time, it only closed on 5 loans. The value of its loan portfolio is still being assessed. *Third*, the business operation of the Debtor produced little or no profits or earnings. All profits were to be interest earned on loans made prefunded by the borrower's corresponding ICA Deposit. However, the Debtor never had a sufficient loan portfolio to produce any profits. Moreover, the Debtor never booked any profits and never filed tax returns declaring any profits.

Indeed, the Debtor was, since its very inception, based upon a fraudulent premise. In order to sell a business model that seemed entirely impossible if properly understood, and to get prospective borrowers to give the Debtor new ICA Payments, the Debtor had to demonstrate that it actually made loans. It did this by, among other ways, fraudulently claiming to have made a "$188,000,000 funding of ALUX Properties, LLC and their project 'The Bailey' which will be the only 5-star hotel in Atlanta".[2] The Debtor made a glitzy promotional video published on YouTube where it boasted about making this loan. The video featured Roglieri and others

---

[2] See Prime Commercial Lending, Prime Capital Ventures & The Bailey [Video], May 16, 2022, https://www.youtube.com/watch?v=A4_RKBepUkA (YouTube) at 0:13. See also, Prime Commercial Lending, March 17, 2022, Albany, New York's Prime Commercial Lending Funds the First 5-Star Hotel in Atlanta, GA Through Prime's Real Estate Fund, Prime Capital Ventures, [Press release].

trapsing around the wooded area in Atlanta where "The Bailey" was going to be constructed. The alleged principal of ALUX Properties, LLC ("ALUX"), Brandon Wheeless, expressed his appreciation in the video stating that "access to this type of capital with trusted individuals that you close deals with definitely makes life a heck of a lot easier for us and the company so we are fast-tracking to grow at an exponential rate moving forward."[3]  The problem, of course, is that the Debtor never made any such loan to ALUX.  There is no "The Bailey" hotel in Atlanta and there is no sign that there was ever actually going to be.  According to the Debtor's books and records, Brandon Wheeless, the purported principal of ALUX and third-party borrower of the Debtor, was actually on the Debtor's payroll and received a total of $200,000 from the Debtor between July 7, 2022 and September 18, 2023.  Thus, the Debtor was founded upon a false premise and the Debtor Insiders never had any intention of operating a legitimate lending enterprise.

Finally, and most significantly, the source of payments to the Debtor's prospective borrowers and ICA Depositors was from cash infused by new investor/borrowers.  For example:

- 526 Murfreesboro, LLC ("526 Murfreesboro") delivered a $4,312,500 ICA Deposit to the Debtor on April 7, 2023.  On April 17, 2023, the Debtor used $2,000,000 of that ICA Deposit to repay a prior portion of the ICA Deposit received in September 2022 from borrower Onward Partners LLC, and another $2,000,000 of that ICA Deposit to repay a prior portion of the ICA Deposit from another client identified as "Business-1" by the United States of America (the "Government").[4]  Thus, the near entirety of 526 Murfreesboro's ICA Deposit was used to repay prior borrower/investors.

- Compass-Charlotte 1031, LLC ("Compass") delivered a $15,902,250 ICA Deposit to the Debtor on April 27, 2023, and HCW Biologics Inc. ("HCW") delivered a $5,250,000 ICA Deposit to the Debtor that same day.  Compass and HCW's ICA Deposits were commingled and were used for the following purposes, among others, not related to those borrowers: (i) $6,525,669.33 was used to fund a preexisting overdraw in the Debtor's bank account (Citibank No. **6945); and (ii) $3,700,000 was transferred to a law firm and used, upon information and belief, in connection with another loan.

- Newlight Technologies, Inc. ("Newlight") delivered a $2,500,000 ICA Deposit to the Debtor on May 24, 2023, which was largely used for unrelated purposes in the one week period that followed.[5]

---

[3]  See Id. at 3:44 (transcribed by counsel).

[4]  See United States of America v. One 2003 Ferrari Enzo AB Version E, et al., Civil Action No. 24-cv-1345 (MAD/DJS), Complaint, Docket No. 1, ¶39.

[5]  See Id. at ¶60-62.

The Debtor's Ponzi scheme is also consistent with what the U.S. Securities and Exchange Commission has dubbed a fraudulent advance fee scheme. In such a scheme, the perpetrator gets the victim to pay an upfront fee based on the promise that the fee will enable large sums of money to flow to the victim. After the victim sends the fee, the perpetrator keeps the fee and never delivers the promised loan, windfall, etc. *See Updated Investor Alert: Be on the Lookout for Advance Fee Fraud*, SEC.gov.[6] This is precisely what the Debtor was doing here.

While conducting its fraudulent advance pay/Ponzi scheme, the Debtor's principal lavishly spent significant amounts of the Debtor's funds derived from prospective borrowers' ICA Deposits on himself. Among other things, the Debtor purchased or funded the following purchases, among many others, for the principal personal benefit of Roglieri:

- $916,201 in private jets from June 2022 to October 2023;

- $1,778,154.77 to Ai Design, a high-end automotive shop from December 2022 to October 2023;

- $3,194,454 to purchase a rare Mercedes-Benz "hybercar", which never materialized;

- $3,672,067.50 to purchase the Virginia Beach Property;

- $2,225,000 to purchase a single wristwatch called "RM-52-01 Tourbillion Skull";

- $4,729,745 to RM Sotheby's to purchase a 2003 Ferrari Enzo AB Version E and a 2014 Ferrari LaFerrari;

- $260,810 for a table constructed using a Ferrari V-12 engine;

- $2,076,900 for the combined purchase of a 1982 Mercedes Benz 500SL, a 1989 Mercedes Benz 560 SEL, a 2007 Mercedes Banz SLR McLaren, and a 1987 Mercedes Benz 560;

- $1,300,000 to TopGear Imports for a 2004 Porsche Carrera;

- $2,055,312 to Wide World Farrari for a 2022 Ferrari 812 Competizione;

- $3,811,000 to Bonhams Butterfields Trust for the purchase of a 2006 Maserati MC 12 Corse;

- $355,000 to Timepiece Trading for the purchase of a Richard Mille RM 65-01 watch; and

---

[6] https://www.sec.gov/resources-for-investors/investor-alerts-bulletins/ia_lookforaff (last visited Nov. 15, 2024).

- $260,000 to Luxury Bazaar for the purchase of two Rolex watches.

There is no basis to dispute that the Debtor was at all relevant times an advance fee/Ponzi scheme, but perhaps the most compelling admission is found in text messages between Roglieri and an undisclosed individual as follows:

| Date | Time | From | Message |
|------|------|------|---------|
| 1/4/2024 | 11:20:42 am | Unknown | Can't you just keep working on those companies?<br>I know it might be hard at first, but look what you build this up to beat from nothing |
| 1/4/2024 | 11:20:56 am | Roglieri | Yea I can but not when I'm in f—king prison |
| 1/4/2024 | 11:21:09 am | Unknown | Why do you think that's gonna happen?<br>Why can't it just be a bankruptcy? |
| 1/4/2024 | 11:21:47 am | Roglieri | Because I unused others money to fund deals<br>I already told you this |
| 1/4/2024 | 11:22:02 am | Unknown | And that's illegal? |
| 1/4/2024 | 11:22:15 am | Roglieri | Yes |
| 1/4/2024 | 11:22:36 am | Unknown | How bad .  I mean, what's the worst you do a couple years who cares<br>You have your family<br>This whole family will support you through this<br>It's a civil case it's not a criminal case |
| 1/4/2024 | 11:27:42 am | Roglieri | **It will turn criminal as soon as they get into bank statements** |

*United States of America v. Kris Roglieri*, Case No. 24-cr-00392 (MAD) (N.D.N.Y.), Docket No. 6-1 (June 3, 2024) (emphasis added) (typographical and grammatical errors in original).

The plea agreements entered into by the Debtor Insiders contain numerous admissions that support the contention that the Debtor was at all times an advance fee/Ponzi scheme as follows:

- Roglieri admitted that he and Humphrey "began claiming that [the Debtor] had the present ability to make large commercial loans, including loans in the tens of millions of dollars, through funding agreements with third-party hedge funds.  As the defendant knew at all relevant times, [the Debtor] had obtained no funds of its own and never had the present ability to independently make commercial loans of any size, and funding was based on possible third-party sources and funding agreements." Roglieri Plea, p.8, § 5(c); Humphrey Plea, p.6, §5(b) and (g).

- Despite representations to prospective borrowers to the contrary ICA Deposits "were not deposited into a pledged account or accounts", "were not used to cover interest payments on loans", and portions of ICA Deposits were used to "fund [Roglieri's] purchases of luxury goods".  Roglieri Plea, pp.8-9, §5(e); Humphrey Plea, p.9, §5(i).

- "Because [the Debtor] never ultimately secured a proven, demonstrated or realized a source of loan funding, [Roglieri and the other Debtor Insiders] used ICA [Deposits] from newer borrower clients to partially fund loans to, and to refund ICA [Deposits] to, older borrower clients."  Roglieri Plea, p.10, §5(g).

The Plan Administrator and his professionals intend to perform the following services for the benefit of Holders of Allowed Class 2 Claims that provide assignments to the Plan Administrator and thereby acquire a right to participate in the Creditor Related Causes of Action Fund:

i.      investigate the actions, conduct and activities of the Debtor's former attorneys, accountants, auditors, or other professionals (collectively, the "Former Debtor Professionals") related to the Debtor's and Roglieri's conduct of the Debtor's business;

ii.     investigate the actions, conduct and activities of any financial institutions that did business with the Debtor, either directly or indirectly (collectively, the "Financial Institutions");

iii.    investigate any other third-party vendors or other individuals or institutions with respect to any potential liability in connection with the Debtor's alleged fraudulent or other wrongful activities (collectively with the Former Debtor Professionals and Financial Institutions, the "Potential Targets");

iv.    conduct discovery under Rule 2004 of the Federal Rules of Bankruptcy Procedure, or other lawful means, of the Potential Targets or other parties with knowledge and information related to the practices of the Potential Targets or their relationships with the Debtor, with respect to the discovery and development of any claims by the Debtor's estate or their creditors against any Potential Targets (collectively, "Potential Claims"); and

v.     in consultation with the Oversight Committee, determine what Potential Claims, if any, should be pursued.

The Potential Claims may, but not necessarily, include among others, claims for: (i) unjust enrichment by the Potential Targets to the detriment of the Creditor(s); (ii) aiding and abetting Roglieri's fiduciary duties to the Debtor or Creditors, (iii) aiding and abetting the Debtor's fiduciary duties to its Creditors; (iv) aiding and abetting Roglieri's or the Debtor's conversion of Creditors' property; (v) negligence; (vi) wire transfer liability; (vii) recompence for the violation of prudent and sound banking practices, ignoring "suspicious" activities, or supervising depositors or clients like the Debtor or Roglieri, under negligence or other legal theory; (viii) breaching fiduciary duties owed by the Potential Targets directly to the Creditors;

8

or (ix) such other additional claims that Creditors may assert against Potential Targets in connection with the loss, theft, or other deprivation of their ICA Deposits.

<u>Instructions on Where to Send Completed and Signed Assignment Forms</u>

Completed and signed Assignment of Claims to Prime Capital Ventures, LLC Plan Administrator should be returned by first class mail or overnight/hand delivery to the Trustee's special litigation counsel at the following address by no later than **5:00 p.m. (EST) on January 30, 2026.**

Klestadt Winters Jureller Southard & Stevens, LLP
200 West 41st Street, 17th Floor
New York, NY 10036
Attn:  Fred Stevens & Lauren C. Kiss

Alternatively, scanned original copies of the completed and signed Assignment of Claims to Prime Capital Ventures, LLC Plan Administrator can be emailed to:

Fred Stevens at fstevens@klestadt.com; and
Lauren C. Kiss at lkiss@klestadt.com

10