# Exhibit A

**PLAN ADMINISTRATOR AGREEMENT**

This Plan Administrator Agreement ("Agreement") is made this __ day of ____, 2026 (the "Effective Date"), by Yann Geron, as chapter 11 trustee (the "Trustee") of Prime Capital Ventures, LLC (the "Debtor") and Yann Geron (the "Plan Administrator").  Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the *Trustee's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* dated December 16, 2025, as the same has and may from time to time be amended or modified (the "Plan").

**RECITALS:**

A. On September 16, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of New York (the "Bankruptcy Court" or "Court") commencing Case No. 24-11029-PGR [Docket No. 1].

B. No examiner or creditors' committee has been appointed in the bankruptcy case.

C. On June 5, 2025, the Court entered an order directing the Office of the United States Trustee (the "U.S. Trustee") to appoint a trustee pursuant to section 1104 of the Bankruptcy Code [Docket No. 282], and the U.S. Trustee appointed Yann Geron as the Trustee [Docket No. 283].

D. On ____ __, 2026, the Bankruptcy Court entered its *Findings of Fact, Conclusions of Law, and Order (I) Pursuant to 11 U.S.C. § 1125 Approving Adequacy of Disclosure Statement for Trustee's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code, as Modified, and (II) Pursuant to 11 U.S.C. § 1129 and Fed. R. Bankr. P. 3020 Confirming Trustee's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* (the "Confirmation Order").

E.  On _____, 2026, the conditions precedent to the Effective Date set forth in section 7.2 of the Plan were satisfied or waived, and the Trustee certified that the Effective Date had occurred.

NOW, THEREFORE, in consideration of the covenants and agreements set forth herein, the parties hereto agree as follows:

## ARTICLE I

## ACCEPTANCE OF POSITION

**1.1 Acceptance.**

By signing this Agreement, Yann Geron accepts appointment as the Plan Administrator and agrees to perform all duties and obligations as and to the extent set forth in the Plan, this Agreement, orders of the Bankruptcy Court, and applicable law.

## ARTICLE II

## THE PLAN ADMINISTRATOR

**2.1 Powers and Duties.**

Upon the Effective Date, the Plan Administrator shall have exclusive authority to act for the Debtor and the Estate in accordance with the terms of the Plan.  The powers, rights and responsibilities of the Plan Administrator, until such time he is discharged in accordance with this Agreement shall include, but are not limited to:

i.  to open and close bank accounts for the Post-Confirmation Debtor and its Estate as the sole signatory, invest Cash in accordance with section 345 of the Bankruptcy Code, and withdraw and make distributions of Cash to Holders of Allowed Claims and pay taxes and other obligations in connection with the wind-down of the Post-Confirmation Estate in accordance with the Plan;

ii. to engage attorneys, consultants, agents, employees and all professional persons, to assist the Plan Administrator with respect to the Plan Administrator's responsibilities, including professional persons that may have represented the Debtor or Trustee prior to confirmation of the Plan;

2

iii. to execute and deliver all documents, and take all actions, necessary to consummate the Plan and wind-down the Post-Confirmation Estate;

iv. to act on behalf of the Debtor and the Post-Confirmation Estate in all adversary proceedings and contested matters (including, without limitation, any Avoidance Actions, Causes of Action, and Creditor Related Causes of Action to the extent of Creditor Assignments), then pending or that may be commenced in the Court and in all actions and proceedings pending or commenced elsewhere, and, subject to consultation with the Oversight Committee as stated below, to settle, retain, enforce, or dispute any adversary proceedings or contested matters (including, without limitation, any Causes of Action or Creditor Related Causes of Action to the extent of Creditor Assignments) and otherwise pursue actions involving Assets that could arise or be asserted at any time under the Bankruptcy Code or otherwise, unless otherwise specifically waived or relinquished in the Plan;

v. to investigate the financial affairs of the Debtor and any of its affiliates, parents, partners, or subsidiaries, including through the issuance of formal subpoenas pursuant to Bankruptcy Rule 2004 without the need for the issuance of additional Bankruptcy Court orders beyond the Confirmation Order;

vi. to negotiate and accept assignments of claims, demands, and causes of action for the benefit of the Holders of Creditor Related Causes of Action, upon determining in the Plan Administrator's discretion that such claims, demands, and causes of action assert colorable and meritorious claims, and to recognize the claims of the assignor for purposes of participating in and receiving a distribution from the Creditor Related Causes of Action Fund;

vii. upon consultation with the Oversight Committee, to determine whether to bring, settle, release, or compromise Avoidance Actions, Causes of Action, and Creditor Related Causes of Action without the need for Court approval (all compromises must be approved by the Oversight Committee or the Court to the extent the Oversight Committee objects);

viii. to dispose of, and deliver title to or otherwise realize the value of, all the remaining Assets;

ix. to coordinate the storage, maintenance and disposal of the Records as he determines in his reasonable discretion in compliance with any applicable state and federal rules;

x. to dissolve the Debtor in accordance with Section 5.12 of the Plan;

xi. to oversee compliance with the Debtor's accounting, finance and reporting obligations;

xii. to prepare U.S. Trustee quarterly reports and financial statements, and such other reports and financial statements as may be necessary or helpful to the Plan

3

|      |      |
|------|------|
|      | Administrator to carry out his duties, and to manage the calculation and disbursement of U.S. Trustee fees; |
| xiii. | to oversee the filing of final tax returns, audits and other corporate dissolution documents, if required; |
| xiv. | upon consultation with the Oversight Committee, to object to Claims against the Debtor and its Estate, as necessary or appropriate; |
| xv. | upon consultation with the Oversight Committee, to seek an adjustment of Creditor Assignors' entitlements to a share of the Creditor Related Causes of Action Fund to something other than *pro rata* based upon the amount of the Creditor Assignor's Allowed Class 2 Claim; |
| xvi. | with the Oversight Committee, to compromise and settle Claims by and against the Debtor and its Estate without the need for Bankruptcy Court approval (to the extent the Oversight Committee declines to approve a compromise recommended by the Plan Administrator, the Plan Administrator may seek Bankruptcy Court approval of such compromise over the objection of the Oversight Committee); |
| xvii. | to perform any additional corporate actions as necessary to carry out the wind-down, liquidation and ultimate dissolution of the Debtor; |
| xviii. | to implement and enforce all provisions of the Plan; |
| xix. | to implement and enforce all agreements entered into prior to the Effective Date; |
| xx. | upon consultation with the Oversight Committee, to abandon any Assets without the need for approval of the Court, and upon such abandonment, such Assets shall cease to be Assets of the Post-Confirmation Estate; and |
| xxi. | to use such other powers as may be vested in or assumed by the Plan Administrator pursuant to the Plan or Order of the Bankruptcy Court or as may be necessary and proper to carry out the provisions of the Plan. |

**2.2** **Compensation of Plan Administrator and Plan Administrator's Professionals.**

The Plan Administrator and his professionals shall be compensated from the Post-Confirmation Estate Fund. Unless otherwise agreed in writing, the Plan Administrator shall be compensated at the rate of 2% of disbursements, plus reimbursement of expenses. For the avoidance of doubt, only the Plan Administrator in place at the time of the disbursements shall

4

be entitled to compensation. Except to the extent otherwise agreed to between the Plan Administrator's professionals, the Plan Administrator and the Oversight Committee, the Plan Administrator's professionals shall bill on an hourly basis at their respective normal hourly rate and shall be reimbursed for all reasonable out-of-pocket expenses incurred in carrying out the terms of the Plan and this Agreement. Any professionals retained by the Plan Administrator shall be entitled to reasonable compensation for services rendered and reimbursement of expenses incurred by such professionals. The payment of the fees and expenses of the Plan Administrator and the Plan Administrator's retained professionals is not subject to the approval of the Bankruptcy Court.

**2.3** **Succession Matters.**

In the event the Plan Administrator dies, is terminated, or resigns for any reason, the Oversight Committee shall designate a successor. If the Oversight Committee is unable to designate such a successor, the Bankruptcy Court may appoint a successor Plan Administrator from any candidate proposed by a party in interest. Such successor Plan Administrator shall be deemed to succeed the Plan Administrator in all respects, without the need for further order of the Bankruptcy Court. In the event of resignation or removal of the Plan Administrator, the departing Plan Administrator shall promptly (a) execute and deliver such documents, instruments and other writings as reasonably requested by the successor Plan Administrator or as ordered by the Bankruptcy Court; (b) turn over to the successor Plan Administrator all property of the Estates in his possession, custody and control, including, but not limited to all funds held in bank accounts, and all files, books and records and other documents and information related to the Debtor; and (c) otherwise assist and cooperate in affecting the assumption of his obligations and functions by the successor Plan Administrator. The successor Plan Administrator may, in his or

her discretion, retain such professionals as he or she deems necessary, including the Professionals of the departing Plan Administrator. If the Plan Administrator is replaced, the Professionals retained by the Plan Administrator shall be entitled to payment of their reasonable, undisputed fees and expenses from the Estate through the date of the Plan Administrator's replacement.

**2.4    Indemnification.**

The Plan Administrator and his designees, employees or professionals or any duly designated agent or representative of the Plan Administrator shall not be liable for any act or omission taken or omitted to be taken in their respective capacities other than for acts or omissions resulting from willful misconduct, gross negligence, or fraud as determined by Final Order of the Bankruptcy Court. The Plan Administrator may, in connection with the performance of his functions, and in his sole and absolute discretion, consult with attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in good faith reliance on the advice or opinions rendered by such attorneys, accountants, financial advisors and agents, or any Final Order of the Bankruptcy Court. Notwithstanding such authority, the Plan Administrator shall not be under any obligation to consult with attorneys, accountants, financial advisors or agents, and his determination not to do so shall not result in the imposition of liability, unless such determination is based on willful misconduct, gross negligence or fraud as determined by Final Order of the Bankruptcy Court. The Debtor shall indemnify and hold harmless the Plan Administrator and his designees and Professionals, and all duly designated agents and representatives (in their capacity as such) from and against all liabilities, losses, damages, claims, costs and expenses, including, but not limited to attorneys' fees and costs arising out of or due to such actions or omissions, or consequences of

their actions or omissions with respect or related to the performance of their duties or the implementation or administration of this Plan; **provided** **however**, that no such indemnification will be made to such Persons for such actions or omissions as a result of willful misconduct, gross negligence or fraud.

## ARTICLE III

## OVERSIGHT COMMITTEE

3.1     **Succession Matters for Oversight Committee**.

In the event a member of the Oversight Committee dies, is terminated, or resigns for any reason, the Plan Administrator, upon consultation with the U.S. Trustee, shall designate a successor member who holds an Allowed Class 2 Claim to the Oversight Committee such that the Oversight Committee shall not to exceed five members.

3.2     **Notice to the Oversight Committee.**

The Plan Administrator shall give notice by email to the Oversight Committee of (i) a settlement of Avoidance Actions, Causes of Action, and Creditor Related Causes of Action, (ii) a settlement of claims by and against the Debtor and its Estate, and (iii) professional fees and expenses incurred on a monthly basis by the Plan Administrator and his professionals.  The Oversight Committee shall have ten days after service of such notice to object to such settlement or fees and expenses.  The Plan Administrator shall provide to the Oversight Committee all reasonably requested information relevant to the proposed settlement to enable the Oversight Committee to make an informed decision as to whether to object or approve the settlement.  If no written objection is received by the Plan Administrator prior to the expiration of such ten day period, the Plan Administrator and the settling party shall be authorized to enter into the proposed settlement without a hearing or Court approval and, in the case of professional fees and

expenses, such amounts shall be paid by the Plan Administrator without a hearing or Court approval. If a written objection is timely received, a meeting of the Oversight Committee shall be convened to discuss the proposed settlement or professional fees and expenses requested and the objection following which the Oversight Committee shall vote to accept or reject the settlement or the professional fees and expenses requested. If the Oversight Committee votes to reject the proposed settlement or objects to the fees and expenses incurred by the Plan Administrator's professionals, the Plan Administrator, the settling party and the Oversight Committee shall use good-faith efforts to resolve subject of the objection. If the objection is resolved, the Plan Administrator and the settling party may enter into the proposed settlement (as and to the extent modified by the resolution of the objection) without further notice or Court approval or the Plan Administrator shall be permitted to pay the professional fees and expenses that were the subject of the objection in the agreed upon amount, as applicable. Alternatively, to the extent the Oversight Committee does not accept a proposed settlement or objects to the fees and expenses requested by the Plan Administrator's professionals, the Plan Administrator may seek Court approval of the proposed settlement or requested fees and expenses over the Oversight Committee's objection. For the avoidance of doubt, the Court's approval of a settlement or of fees and expenses incurred by the Plan Administrator's professionals is only necessary if the Oversight Committee does not approve the settlement or objects to the fees and expenses incurred by the Plan Administrator's professionals. To the extent there is a tie vote on any matter, the Plan Administrator shall vote to break the tie.

# ARTICLE IV

# IMPLEMENTATION OF PLAN

**4.1** **Funding of Plan Administrator's Activities.**

The Plan Administrator and his professionals shall be compensated from the Post-Confirmation Estate Fund.

**4.2** **Establishment of Reserves.**

On the Effective Date (or as soon thereafter as practicable), the Trustee and Plan Administrator shall establish the following reserve (the "Disputed Claims Reserves") in accordance with section 5.5 of the Plan.

Disputed Claim Reserves. As soon as practicable following the Effective Date, the Disputed Claim Reserves shall be established by the Plan Administrator if and as required; provided, however, that the Plan Administrator shall have no obligation to fund the Disputed Claim Reserves until, at the latest, immediately prior to the making of a Distribution to Holders of Allowed Claims of the same Class as the Disputed Claims. The Disputed Claim Reserves shall be funded from available Cash in an amount equal to the amount holders of Disputed Claims would have otherwise been entitled but for the dispute. The Assets in the Disputed Claim Reserves shall be held separately from other Assets held by the Plan Administrator subject to an allocable share of all expenses and obligations, on account of Disputed Claims. Funds shall be removed from the Disputed Claims Reserves as the Disputed Claims are resolved, which funds shall be distributed as provided in Section 9.20 of the Plan. Notwithstanding any other provision of the Plan to the contrary, subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary, the Plan Administrator may treat any Assets allocable to, or retained on account of, the Disputed Claims Reserves as held by one or more

9

discrete entities holding Disputed Claims for federal, and applicable state, local or other, income tax purposes, and may determine that such entity or entities shall constitute "disputed ownership funds" under, and may make the election permitted by, Treasury Regulation 1.468B-9, or any successor provision thereto.

### 4.3 Distributions.

The Plan Administrator shall make Distributions on account of Allowed Claims in accordance with Article 4 of the Plan. The Plan Administrator may use the services of a third party to aid in the Distributions required to be made under this Plan, including the Distribution Agent.

### 4.4 Compliance with Tax Withholding and Reporting Requirements.

With respect to all Distributions made under the Plan, the Plan Administrator will comply with all withholding and reporting requirements of any federal, state, local or foreign taxing authority and, in the event the Plan Administrator retains accountants, shall have the right to rely on such accountants' advice in connection with all tax matters.

### 4.5 Post-Confirmation Reports and Fees.

Following the Effective Date and until the Chapter 11 Case is closed, not less than once every ninety days, the Plan Administrator shall file all post-Effective Date reports required during such periods and shall pay from the Administrative Reserve all post-Effective Date fees charged or assessed against the Estates under 28 U.S.C. § 1930 during such periods together with applicable interest pursuant to 31 U.S.C. § 3717.

### 4.6 Relationship to Plan.

The principal purpose of this Agreement is to aid in the implementation of the Plan and, therefore, this Agreement incorporates and is subject to the provisions of the Plan. To that end,

the Plan Administrator shall have full power and authority to take any action consistent with the purposes and provisions of the Plan.  In the event that the provisions of this Agreement are found to be inconsistent with the provisions of the Plan, the provisions of the Plan shall control; provided, however, that provisions of this Agreement adopted by amendment and approved by the Bankruptcy Court following substantial consummation (as such term is used in Section 1127(b) of the Bankruptcy Code) shall control over provisions of the Plan.

## ARTICLE V

## RESIGNATION AND TERMINATION

**5.1** **Resignation.**

The Plan Administrator may resign by giving no less than thirty days' prior written notice to the Oversight Committee and the filing of such notice with the Bankruptcy Court.

**5.2** **Discharge.**

Notwithstanding anything to the contrary in this Agreement, the Plan Administrator:  (a) shall have no further duties or obligations of any kind whatsoever, and shall automatically be released and discharged from any and all of them, upon the depletion of the Administrative Reserve; (b) shall have no duty or obligation to undertake any action, or refrain from undertaking any action, if it appears to him, in his reasonable discretion, that there will be insufficient Assets for him to pay the costs or expenses of such action or inaction; and (c) shall only be required to store or otherwise maintain books and records, for two years from such discharge or release.

**5.3** **Automatic Termination**.

This Agreement shall terminate automatically upon the closing of the Chapter 11 Case.

## ARTICLE VI

## MISCELLANEOUS PROVISIONS

**6.1** **Descriptive Headings**.

11

The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

**6.2** **Governing Law**.

This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to the rules of conflict of laws of the State of New York or any other jurisdiction.

**6.3** **Counterparts; Effectiveness**.

This Agreement may be executed in counterparts, each of which shall be deemed to be an original but all of which shall constitute one and the same agreement. This Agreement shall become effective when each party hereto shall have received counterparts thereof signed by all the other parties hereto.

**6.4** **Severability; Validity**.

If any provision of this Agreement or the application thereof to any person or circumstance is held invalid or unenforceable, the remainder of this Agreement, and the application of such provision to other persons or circumstances, shall not be affected thereby, and to such end, the provisions of this Agreement are agreed to be severable.

**6.5** **Notices**.

All notices, requests and demands by parties in interest under or in connection with the Plan shall be in writing and served either by (i) certified mail, return receipt requested, postage prepaid, (ii) hand delivery, (iii) reputable overnight delivery service, all charges prepaid, or (iv) electronic mail, and shall be deemed to have been given when received and confirmed by telephone or reply email by the following parties at the following addresses (or such other addresses as may be given):

If to the Plan Administrator:

Geron Legal Advisors LLC
307 Lexington Avenue, Suite 1208
New York, New York 10017
Attn: Yann Geron (ygeron@geronlegaladvisors.com)

With copy to:

Klestadt Winters Jureller Southard & Stevens, LLP
200 West 41st Street, 17th Floor
New York, New York 10036
Attn:   Fred Stevens (fstevens@klestadt.com)
            Lauren C. Kiss (lkiss@klestadt.com)

### 6.6 Retention of Jurisdiction.

As provided in Article 11 of the Plan, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Case to the fullest extent permitted by law, including, but not limited to, for the purposes of interpreting and implementing the provisions of this Agreement.

[*Signature Page Follows*]

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the date first above written.

**PRIME CAPITAL VENTURES, LLC**

By:_____
Yann Geron, in his capacity as Chapter 11
Trustee of Prime Capital Ventures, LLC

**PLAN ADMINISTRATOR**

By:_____
Yann Geron

14