**KLESTADT WINTERS JURELLER**
  **SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, NY 10036-7203
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Fred Stevens
Lauren Kiss

*Special Litigation Counsel to Yann Geron, as Chapter*
  *11 Trustee of Prime Capital Ventures, LLC*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
In re:                                                                  :
                                                                              :    Chapter 11
PRIME CAPITAL VENTURES, LLC,                      :
                                                                              :    Case No. 24-11029 (PGR)
                                                Debtor.             :
------------------------------------------------------------x

**SUPPLEMENTAL STATEMENT IN SUPPORT OF TRUSTEE'S
APPLICATION FOR AN ORDER, PURSUANT TO FED. R. BANKR. P.
2004, AUTHORIZING THE TRUSTEE TO EXAMINE AND SEEK
DOCUMENTS AND INFORMATION FROM PARTIES IN
CONNECTION WITH THE DEBTOR'S $20 MILLION TRANSFER TO
BERONE CAPITAL FUND LP AND THE SERIES OF TRANSFERS AND
OTHER EVENTS THAT CAME AFTER, INCLUDING ANY FINANCIAL
INSTITUTIONS WHERE THE RECIPIENTS OF THE DEBTOR'S FUNDS
HOLD ACCOUNTS AND TRANSACT BUSINESS**

**TO THE HONORABLE PATRICK G. RADEL,**
**UNITED STATES BANKRUPTCY JUDGE:**

Yann Geron, as Chapter 11 trustee (the "Trustee") of the bankruptcy estate of Prime Capital

Ventures, LLC, the above-captioned debtor (the "Debtor"), by and through his special litigation

counsel, Klestadt Winters Jureller Southard & Stevens, LLP, hereby submits this statement in

support of his application (the "Application") seeking the entry of an order, pursuant to Fed. R.

Bankr. P. 2004, authorizing the Trustee to issue subpoenas demanding the production of all

documents, related to the Debtor, the Debtor's affiliates, and property of the Debtor, the Debtor's

transfer of $20 million to Berone Capital Fund LP (together with all affiliated entities including Berone Capital Partners LLC, Berone Capital LLC, Berone Capital Equity Fund I, LP, and 405 Motorsports LLC f/k/a Berone Capital Equity Partners LLC, "Berone") on or around October 24, 2022, Berone's subsequent transfer of $11.9 million of those funds to Martin Karo ("Karo"), and the underlying transactions and relationships between the Debtor, Berone, Karo, and Reign Financial International, Inc. ("Reign") and other related parties described herein (each a "Party Examinee," and collectively, the "Party Examinees"), and (B) to any financial institution that did business with any of the Party Examinees, or that received any portion of the original $20 million transfer, related to the tracing and ultimate disposition of the Debtor's funds, as well as any and all documents, records, reports, and other information related to such financial institutions' implementation, enforcement, and compliance with their Know Your Customer (KYC) and Anti-Money Laundering (AML) programs, and compliance with the Bank Secrecy Act and US Patriot Act with respect to Berone, Reign, or Karo, including, but not limited to, suspicious activity reports, large transaction reports, investigation case summaries, and alerts of potentially unusual, irregular, improper, or suspicious account activity (each a "Bank Examinee," and collectively, the "Bank Examinees," and together with the Party Examinees, the "Examinees").  In support of the Application, the Trustee respectfully represents as follows:

## PRELIMINARY STATEMENT

The Application for discovery related to the $20 million transferred to Berone by the Debtor on October 24, 2022, and the subsequent transfers made by Berone to Reign, was filed on May 6, 2025 [Dkt. No. 228].  The Application was opposed by Berone and Reign primarily due to there being a pending stalled action commenced by the Debtor pre-petition against Reign (but not Berone) related to the subject transactions in the U.S. District Court for the Northern District of

New York [Dkt. Nos. 279 and 281, respectively]. The hearing on the Application has been periodically adjourned to give Berone an opportunity to voluntarily provide documents to explain the transactions at issue. In the preceding nine months, Berone has provided exactly 6 pages of documents and the Trustee is no closer to understanding these transactions than he was when he filed the Application. To the contrary, the Trustee actually understands less.

This statement is being submitted in support of the Trustee's Application as against Berone and the Bank Examinees so that he can determine what happened to the Debtor's victim's money and whether and how he can seek its return. As set forth below, everything that Berone has offered to date raises more questions than it answers, and the only way to even begin to understand it is with a full and unfettered production of documents including emails, text messages, and any other communication between Berone and the Debtor and its principals, and Reign and its principals. The production must be compelled by a lawful subpoena because Berone has repeatedly demonstrated that it will not provide the documents that the Trustee needs otherwise.

Accordingly, for the reasons set forth herein and in the Application, the Trustee respectfully requests that the Application be granted with respect to Berone and the Bank Examinees.

## MORE QUESTIONS THAN ANSWERS

### A. Judge D'Agostino Had Many Questions That Remain Unanswered

1. The Trustee noted at length his questions regarding the Berone transactions in the Application. Similarly, Judge D'Agostino had many of the same questions. In a decision dated June 24, 2024, the U.S. District Court relieved Berone from the federal equity receivership previously imposed upon the Debtor and Berone. *See Compass-Charlotte 1031, LLC v. Prime Capital Ventures, LLC, et al.*, Case No. 24-cv-55, Dkt. No. 184 (N.D.N.Y. June 24, 2024) (D'Agostino, J.) (the "Receivership Case"). In sum, Judge D'Agostino concluded that "there is no evidence that Plaintiff's money was ever held by [Berone]" and on that basis, the Court relieved

3

Berone from the receivership. *Id*. at p.15.

2.    However, that was far from the entire story. Judge D'Agostino raised numerous issues with Berone's conduct stating clearly that "the Berone Defendants' business practices, particularly those connected to Prime Capital and Kris Roglieri, are *surrounded by questions of legitimacy and legality*." *Id*. at p.8 (emphasis added). With respect to Berone's contention that Kris Roglieri ("Roglieri") orally authorized the transfer of $11.9 million to Reign, the District Court noted that "[i]t also strains credulity that a reputable business would send millions of dollars via wire transfer according to only a verbal authorization." *Id.* at p.7. The Court generally concluded that "the 'records' submitted by the Berone Defendants to the Receiver [were] scarce and questionable." *Id.* The Trustee agrees.

3.    The Trustee is no closer to obtaining answers to Judge D'Agostino's questions over a year and a half later. The Trustee and the Debtor's victims need and are entitled to answers.

### B. Why Did The Debtor Sue Reign But Not Berone?

4.    "Curiously, Prime Capital did not name the Berone Defendants as a defendant in the Reign case." *Id.* at p.7 (Judge D'Agostino). The Trustee has been asking the exact same question for over a year. Why did the Debtor sue Reign but not Berone? Why did Roglieri appear to be very friendly with Berone after what had happened? The Trustee has not made any progress in obtaining answers to these questions.

5.    Unfortunately, the Trustee lacks access to Berone, Reign, and the Debtor's former management (all of the Debtor's former management have pled guilty to wire fraud and other federal crimes and are awaiting sentencing). The only thing that may deliver some answers absent truthful testimony is production of the written communication between these parties. Berone has refused to provide the communication except for a single text exchange between Roglieri and Jeremiah Beguesse of Berone. Production of communications is a simple request that is neither

4

time consuming nor expensive to comply with. The Trustee is certainly willing to discuss absorbing the cost of a third-party vendor to extract the communications from Berone's and its principals' electronic devices if that is the impediment. It is critical that the Trustee obtain all communications between the relevant parties.

### C. Why Did Berone Return Some Of The Money?

6. On October 16, 2023, Berone returned $1.865 of the $20 million to the Debtor. The Trustee has no idea why it did that, why it was done at that time, why more was not returned, or how that amount was determined. The return of those funds also curiously coincided with Berone assisting the Debtor in obtaining an investor advisor account with RBC under the Berone umbrella, which account was used by the Debtor to defraud a creditor (ER Tennessee and its related borrower) out of $15 million. None of this makes sense to the Trustee and it is why the Trustee needs the requested discovery.

### D. Why Did Berone Give Inconsistent Accounts Of What The Debtor's Money Was Used For?

7. Berone's explanation of where the Debtor's money was invested and the fees paid to Berone that it gave to the Receiver in March 2024[1] is completely inconsistent with what the 6 pages of documents produced to the Trustee on October 29, 2025 and later accounts purport to demonstrate, as set forth below:

| Purported Investment or Fees | March 2024 Communication to the Receiver | October 2025 Documents Produced to the Trustee |
|---|---|---|
| Alexander Capital Ventures | Not referenced | Purports to demonstrate that **$500,000** was invested on Apr. 21, 2023 for 8,700 units in Series DELTA-2-5, and another **$500,000** was invested on June 25, 2023 for 12,994.8 units in Series ALPHA-2 |

---

[1] *See* Receivership Case, Dkt. No. 153-4 (Mar. 13, 2024)(Communication from Berone to Paul Levine as Receiver).

5

| Purported Investment or Fees | March 2024 Communication to the Receiver | October 2025 Documents Produced to the Trustee |
|---|---|---|
| **Alternative Investments** | "**2.8M** initial contribution still awaiting K-1 for current valuation" | Not referenced |
| **Bois D'Arc** | Not referenced | Purports to demonstrate **$100,000** was invested on unknown date |
| **Fees to Berone** | "(non-refundable) - **$420,000** FY2022" | **$1,572,200.50** used as follows over 8-day period of 10/28/2022 to 11/04/2022:<br>MaxxVin LLC (luxury auto dealer) - $283,000<br>Ferrari of Central Florida Inc. - $281,200.50<br>ATL Hawks, LLC - $58,000.00<br>Jet Linx Aviation - $100,000.00<br>Phoenix Am. Fin. Svsc. - $850,000.00 |
| **Late Stage Management** | Not referenced | Purports to demonstrate **$100,002.50** was invested on June 25, 2023 |
| **LHL Strategies Inc.** | Not referenced | Purports to demonstrate **$1,700,000** was invested on unknown date |
| **LightHouse Life Class B** | Not referenced | Purports to demonstrate **$685,975** was invested on unknown date |
| **LightHouse Life Class A** | Not referenced | Purports to demonstrate **$624,150** was invested on unknown date |
| **MapleBear Inc.** | "**$500,000** initial contribution now valued at $351,000 as of 3/12/2024" | Not referenced |
| **Marketing Expenses** | "(non-refundable) - **$200,000** estimate" | Not referenced or subsumed in the "Fees" category |
| **Tevva Motors LTD** | "**$2M** initial contribution. Merger & Acquisition failure with Electra Meccanica. Current valuation is 0 as of 3/12/2024" | Not Referenced |

6

| Purported Investment or Fees | March 2024 Communication to the Receiver | October 2025 Documents Produced to the Trustee |
|---|---|---|
| Triller | "**$500,000** (initial contribution) still awaiting IPO. Delays have slashed valuation by over 50%. Estimated valuation at $100,000" | Not Referenced |
| **Amount of Alleged Outstanding Investments on Behalf of the Debtor + Fees[2]** | **$6,420,000** | **$5,782,328** |

8.   These accounts are not even remotely consistent and neither account is supported by reliable documentation.  There is no indication that the Debtor approved any of the purported investments or fees.  There is no proof that even if the purported investments were made, they were done on behalf of the Debtor as opposed to another client.  There is no due diligence or indication why Berone would make such investments or conclude that they were good ideas.  Perhaps most frustrating is Berone, pretending that doing business in this manner, with this amount of money, is even remotely normal or acceptable.

## DISCOVERY SHOULD BE PERMITTED

9.   The primary defense to the discovery is invocation of the pending proceeding rule given the pending case of *Prime Capital Ventures, LLC v. Reign Financial International, Inc.*, Case No. 23-cv-207 (N.D.N.Y. Feb. 15, 2023) (the "Reign Litigation").  The pending proceeding rule is the "[t]he well recognized rule . . . that once an adversary proceeding or contested matter has been commenced, discovery is made pursuant to the Fed.R.Bankr.P. 7026 *et seq.*, rather than by a Fed.R.Bankr.P.2004 examination."  *In re Bennett Funding Group, Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996).  However, the Reign Litigation should not bar the Trustee from obtaining

---

[2] This does not include "Equity Trades - $1,656,158 liquidated and used to return capital" set forth in the March 2024 account by Berone because it is considered in connection with the $1,865,000 returned to the Debtor on October 16, 2023.

7

discovery from Berone and the Bank Examinees under the "pending proceeding rule" for numerous reasons.

10. First, the Trustee is not a party to the Reign Litigation. It was commenced by the Debtor over two years prior to the Trustee's appointment at the behest of Roglieri, a confessed fraudster. The Trustee has not intervened in the Reign Litigation in his fiduciary capacity or tested the veracity of the Debtor's positions and statements in that litigation. To the contrary, that is precisely what the Trustee is trying to do with the requested discovery. Indeed, the Trustee has an independent duty to investigate "the acts, conduct, assets, liabilities, and financial condition of the debtor," among other things. 11 U.S.C. § 1106(a)(3). Without discovery, the Trustee has no way of knowing whether what the Debtor alleged in the Reign Litigation is even true. *See In re Nat'l Risk Assessment*, 547 B.R. 63, 67 (Bankr. W.D.N.Y. 2016) (ruling that a trustee was entitled to Rule 2004 examination of the debtor's officers despite the pendency of prepetition litigation where the debtor and officers were parties because "with respect to a bankruptcy trustee, the [pending proceeding] rule's application arises only in those instances where the trustee is already a party to an adversary proceeding or contested matter involving the parties that he seeks to examine under Fed. R. Bankr. P. 2004").

11. Second, the Trustee is not trying to circumvent the more restrictive discovery under the Federal Rules of Civil Procedure by using Fed. R. Bankr. P. 2004. The Reign Litigation has been stalled with fully briefed dispositive motions awaiting decision since June 2023, over two and a half years ago. The Trustee does not have access to discovery from Berone (or Reign for that matter) within the Reign Litigation and must rely upon discovery in this proceeding. Alternatively, the Trustee will be compelled to commence litigation against the parties prior to obtaining this discovery. That would risk potentially suing parties that may have defenses that

8

could be discovered in pre-litigation discovery or having to amend pleadings after commencement of litigation when new facts are learned. It is hard to imagine how that would benefit anyone.

12. Third, Berone is not even a party to the Reign Litigation despite its trying to use it as a shield to discovery here. One of the primary things that the Trustee (and the District Court before him) is trying to figure out is why the Debtor did not name Berone as a defendant in the Reign Litigation. That can only be learned through this pre-litigation discovery.

13. Fourth, the Trustee is seeking discovery related to whether he has claims, among others, for avoidance of fraudulent transfers pursuant to 11 U.S.C. § 548 and its state law equivalents. These are unique claims that did not even exist or belong to the Debtor at the time it commenced the Reign Litigation. The Trustee should not be prohibited from seeking discovery related to potential claims that did not even exist until the bankruptcy petition date just because of the pendency of the stalled pre-petition Reign Litigation. *See, e.g., In re Gawker Media LLC*, No. 16-11700, 2017 WL 2804870, at *6 (Bankr. S.D.N.Y. June 28, 2017) (authorizing Rule 2004 discovery to assess whether to bring claims against examinees); *In re Hughes*, 281 B.R. 224, 226 (Bankr. S.D.N.Y. 2002) (holding that investigation of potential estate claims is a proper use of Rule 2004).

14. Fifth, the Trustee suspects that the Debtor, which was itself operating a fraudulent enterprise, was separately defrauded by Berone and Reign. This gives rise to potential additional claims against the Bank Examinees for aiding and abetting Berone's and Reign's conduct. It also requires the Trustee to physically trace every penny of the Debtor's funds that were transferred to Berone and Reign to their ultimate ends. There is no way to learn if the Bank Examinees failed in their obligations under Know Your Customer and Anti-Money Laundering laws without discovery from them. Similarly, there is no way to trace the Debtor's funds without discovery from the Bank

9

Examinees.

15. Finally, Berone has already voluntarily submitted itself to discovery before this Court by filing three proofs of claim against the Debtor's estate each in "[a]n Amount in Excess of $30,000,000.00" [Claim Nos. 25, 26, and 27]. The allowance or disallowance of those claims or any portion thereof is squarely before this Court. The Trustee should not and cannot be denied an opportunity to test those claims and the statements made in connection therewith under Fed. R. Bankr. P. 2004, so that he can determine whether they should be allowed or opposed.

16. For all of these reasons and those set forth in the Application, the Trustee's request to obtain discovery from Berone and the Bank Examinees should be permitted.

**WHEREFORE**, the Trustee respectfully requests that the relief requested in the Application be granted with respect to Berone and the Bank Examinees, and further adjourned with respect to Reign, and that he be granted such other and further relief as is just and proper.

Dated:   New York, New York
         January 27, 2026

                              **KLESTADT WINTERS JURELLER
                              SOUTHARD & STEVENS, LLP**


                         By:  */s/ Fred Stevens*
                              Fred Stevens
                              Lauren C. Kiss
                              200 West 41st Street, 17th Floor
                              New York, New York 10036
                              Tel: (212) 972-3000
                              Fax: (212) 972-2245
                              Email: fstevens@klestadt.com
                                     lkiss@klestadt.com

                              *Special Litigation Counsel to Yann Geron, as
                                 Chapter 11 Trustee of Prime Capital
                                 Ventures, LLC*