**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

In re:

PRIME CAPITAL VENTURES, LLC,                    Case No. 24-11029-PGR
                                                 Chapter 11

---
                              Debtor.

---

**DECLARATION OF YANN GERON IN SUPPORT OF ENTRY OF AN ORDER**
**(I) APPROVING ADEQUACY OF DISCLOSURE STATEMENT FOR TRUSTEE'S**
**PLAN OF LIQUIDATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY**
**CODE, AS MODIFIED AND (II) CONFIRMING TRUSTEE'S PLAN OF**
**LIQUIDATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

I, Yann Geron, hereby declare that the following is true and correct to the best of my knowledge, information and belief:

1.       I am the chapter 11 trustee (the "Trustee") of Prime Capital Ventures, LLC (the "Debtor"), in the above-referenced chapter 11 case (the "Chapter 11 Case").

2.       I submit this declaration (the "Declaration") in support of entry of an Order (the "Confirmation Order"), a copy of which is annexed hereto as **Exhibit A**, (i) approving the *Disclosure Statement for the Trustee's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code, as Modified*, dated December 23, 2025 [Docket No. 369] (the "Disclosure Statement") and (ii) confirming the *Trustee's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code*, dated December 16, 2025 [Docket No. 369-1] (the "Plan")[1].

3.       Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge, my review of relevant documents, or information supplied by and my discussions with my general counsel, Geron Legal Advisors LLC, and my special litigation counsel, Klestadt Winters Jureller Southard & Stevens, LLP.  If I were called to testify as a witness

---

[1] Unless otherwise defined herein, capitalized terms are used as defined in the Plan.

in this matter, I would testify competently to the facts set forth herein.

4.      On or around July 26, 2006, Prime Commercial Lending, LLC ("<u>Prime</u>
<u>Commercial</u>") was formed as a New York limited liability company.  Prime Commercial appears
to have been a small lender making loans as small as $22,000 to businesses and up to $2 million
on commercial real estate.

5.      On December 14, 2021, Kris Daniel Roglieri ("<u>Roglieri</u>") formed the Debtor as a
Delaware limited liability company.  Upon information and belief, until on or around May 15,
2024, Roglieri was at all times the sole manager of the Debtor and its chief executive.  The concept
was apparently that the Debtor would be Prime Commercial's division as "a fund specifically
designed to provide capital for large development, commercial development and commercial real
estate transactions from $50 million to more than $1 billion."[2]  The Debtor advertised that it would
offer non-recourse lines of credit with rates at 4 to 6% with interest-only payments but would
require borrowers to provide 20% cash upfront based on the total project cost to be placed in an
interest credit account (each an "<u>ICA Deposit</u>").  The ICA Deposits would be held by the Debtor
"'as prepaid interest throughout the term of the loan.'" The Debtor obtained millions of dollars in
ICA Deposits from multiple companies throughout the country which, upon information and
belief, was used in most cases by the Debtor and Roglieri before the loans were closed and funded.
As set forth in the *Declaration of Brian Ryniker in Support of Confirmation of the Trustee's Plan
of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code and In Particular In Support of the
Finding that the Debtor was a "Ponzi" Scheme* [Docket No. 386], the Debtor's business was a
fraudulent advance pay/Ponzi scheme.

---

[2] <u>See</u> Koplin, I., May 2, 2022, <u>Roglieri Unveils Prime Capital Ventures, Prime Commercial Lending's Newest Fund</u>,
dealmaker-magazine.com, <u>https://www.dealmaker-magazine.com/magazine/roglieri-unveils-prime-capital-ventures-prime-commercial-lendings-newest-fund</u>.

6.       By December 2023, the Debtor was besieged by litigation largely from borrowers who did not get their loans funded and wanted the return of their ICA Deposits.  *See*, *e.g.*, *Tuss Financial LLC v. Prime Capital, et al.*, Index No. 2023/510389 (N.Y.Sup. Ct. Kings Cty. Apr. 5, 2023) (seeking and apparently obtaining the return of $13.4 million); *B&R Acquisition Partners v. Prime Capital* (JAMS Arb., Aug. 2023) (seeking the return of $4.3 million); *Sturm v. Prime Capital*, Case No. 23-cv-1033 (N.D.N.Y. Aug. 22, 2023) (seeking the return of $2 million); *Camshaft CRE 1, LLC v. Prime Capital*, Case No. 2023-023173 (Fla. Circ. Ct., Miami-Dade Cty., Sept. 15, 2023) (seeking the return of $12.4 million); *The Lion Group DFW, LLC v. Prime Capital*, Case No. 23-DCV-34617 (Tex. Dist. Ct., 146th Dist., Sept. 21, 2023) (demand unknown); *Onward Partners, LLC, v. Prime Capital, et al*., Case No. 23-cv-833 (D. Utah Nov. 13, 2023) (seeking the return of $4 million).

7.       On December 19, 2023, Compass-Charlotte 1031 ("Compass"), LLC, 526 Murfreesboro, LLC ("526 Murfreesboro"), and Newlight Technologies, Inc. (Newlight, and together with Compass and 525 Murfreesboro, the "Petitioning Creditors") filed an involuntary petition against the Debtor for relief under chapter 7 of the Bankruptcy Code commencing Case No. 23-11302 ("Case 1").  The Petitioning Creditors commenced Case 1 for the obvious purpose of ensuring that the Debtor's assets and liabilities could be liquidated in a single, public forum, and that no single creditor could win the proverbial "race to the courthouse".

8.       On December 22, 2023, upon order of the Court, the United States Trustee (the "U.S. Trustee") appointed Christian H. Dribush ("Dribusch") as the interim chapter 7 trustee of the Debtor's estate.

9.       Rather than submit to the orderly winddown or restructuring of the Debtor's business in Case 1, Roglieri pushed the Debtor in an entirely different direction.  Roglieri caused

the Debtor to move for the dismissal of the involuntary petition on the basis that at least two of the Petitioning Creditors' claims were subject to a bona fide dispute because litigation concerning their claims was pending. *See Debtor's Motion for Judgment Dismissing the Petition* [Case 1 Dkt. No. 72, p.1].

10.    On January 8, 2024, the Petitioning Creditors filed their own motion to dismiss Case 1 [Case 1 Dkt. No. 74], which motion was granted by the Court on January 9, 2024 [Case 1 Dkt. No. 87]. Thereafter, Dribusch was discharged from his duties as chapter 7 trustee.

11.    Three days after dismissal of Case 1, on January 12, 2024, Petitioning Creditor Compass commenced an action in the United States District Court for the Northern District of New York (the "District Court") under Case No. 24-cv-00055 (MAD) (CFH) (N.D.N.Y. Jan. 12, 1014) (the "Receivership Case"), seeking, among other things, the appointment of a federal equity receiver to take possession and control of the Debtor's assets and affairs. That same day, the District Court entered an order appointing Paul Levine as the temporary receiver (the "Receiver") [Receivership Case Dkt. No. 8].

12.    Again, Roglieri directed the Debtor's counsel to file an emergency motion on behalf of the Debtor to, among other things, dismiss the Receivership Case [*Id.* at Dkt. No. 12-14]. On January 24, 2024, the District Court entered a memorandum decision and order making the Receiver's appointment permanent and defining his powers with respect to the Debtor and its property and denying the Debtor's motion to dismiss the case [*Id*. at Dkt. No. 56].

13.    On February 15, 2024, Roglieri filed a voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code commencing Case No. 24-10157 (REL) (the "Roglieri Case").

14.    On May 14, 2024, the Debtor, by and through the Receiver, filed a voluntary

petition for relief under chapter 11 of the Bankruptcy Code in this Court commencing Case No. 24-10531 ("Case 2").

15.    On May 15, 2024, the Court entered an order converting Roglieri's case to one under chapter 7 of the Bankruptcy Code [Roglieri Case at Dkt. No. 159].  Thereafter, the U.S. Trustee appointed Dribusch as the interim chapter 7 trustee (the "Roglieri Trustee") [Id. at Dkt. No. 160].

16.    On June 25, 2024, B and R Acquisition Partners, LLC ("B&R") and JHM Lending Ventures, LLC ("JHM" and together with B&R, the "B&R Parties") filed a motion to dismiss Case 2 on the basis that the Receiver was not authorized to file the petition on behalf of the Debtor because they asserted that he lacked the authority pursuant to the terms of the orders of the District Court [Case 2 at Dkt. No. 57].

17.    On July 23, 2024, the Court entered a memorandum decision and order dismissing Case 2 finding essentially that the Receiver did not have the authority to file Case 2 on behalf of the Debtor and that the Roglieri Trustee did not have the ability to waive the defect and ratify the filing *ex post facto* (the "Dismissal Order") [Id. at Dkt. No. 85].  The Debtor took an appeal of the Dismissal Order.  On August 20, 2025, the District Court entered a decision (the "District Court Decision") affirming in part and vacating in part the Dismissal Order and remanding the matter to the Bankruptcy Court to dismiss Case 2 for the reasons set forth in the District Court Decision. On September 4, 2025, the Bankruptcy Court directed the Clerk of the Court to close Case 2.  On November 4, 2025, Case 2 was closed.

18.    On September 16, 2024, the Roglieri Trustee, in his capacity as the authorized agent for the Debtor, filed a voluntary bankruptcy petition on behalf of the Debtor for relief under chapter 11 of the Bankruptcy Code commencing this Chapter 11 Case.

19.     In or around May 23, 2025, the Roglieri Trustee resigned and on May 27, 2025, the Successor Roglieri Trustee was appointed.  On June 3, 2025, the Successor Roglieri Trustee filed a consent to the appointment of a chapter 11 trustee in the Debtor's Chapter 11 Case  [Docket No. 280].  On June 5, 2025, the Court entered an order directing the U.S. Trustee to appoint a chapter 11 trustee [Docket No. 282], and that same day the U.S. Trustee appointed me as the Trustee [Docket No. 285], which appointment was confirmed by order of the Bankruptcy Court on June 10, 2025 [Docket No. 287].  I have been serving in my capacity as Trustee since that time.

20.     I have reviewed the Plan and corresponding Disclosure Statement, and proposed form of Confirmation Order and have discussed their contents with my counsel.  To the best of my knowledge, information, and belief formed after reasonable inquiry, and as set forth more fully below, I believe that entry of the Confirmation Order is in the best interest of the Debtor, its estate, its creditors and all stakeholders.

### A. The Plan Complies with the Requirements of Section 1129(a)(1) of the Bankruptcy Code.

21.     Based on my review of the Plan and all related materials, I believe that the Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including, without limitation, sections 1122 and 1123 of the Bankruptcy Code, which govern, respectively, the classification of claims and the contents of a plan.

          i)     *The Plan Complies with Section 1122(a) of the Bankruptcy Code.*

22.     Section 1122(a) of the Bankruptcy Code provides that "a plan may place a claim or interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class."  11 U.S.C. § 1122(a).  In addition to Administrative Expense Claims, Professional Fee Claims, Receiver Professional Fee Claims, and Priority Tax Claims, which need not be designated pursuant to section 1123(a)(1) of the Bankruptcy Code, the Plan designates three

6

classes of Claims and Equity Interests.  Class 1 includes only Secured Claims.  Class 2 includes

only General Unsecured Claims.  Class 3 includes only Equity Interests.  Thus, the Claims and

Equity Interests placed in each Class are substantially similar to other Claims and Equity Interests

in each such Class.  Accordingly, I believe that the Plan complies with section 1122 of the

Bankruptcy Code.

ii)    <em>The Plan Complies with Section 1123 of the Bankruptcy Code.</em>

23.    Section 1123(a) of the Bankruptcy Code identifies eight required contents of a plan.

Based upon my review of the Plan, the Plan contains each of these eight required contents.

24.    Section 1123(a)(1) of the Bankruptcy Code requires that a chapter 11 plan designate

classes of claims and interests other than claims of a kind specified in section 507(a)(2) of the

Bankruptcy Code (administrative expense claims), section 507(a)(3) of the Bankruptcy Code

(claims arising during the "gap" period in an involuntary bankruptcy case), and section 507(a)(8)

of the Bankruptcy Code (priority tax claims).  Based upon my review of the Plan, Article 3 of the

Plan satisfies this requirement by expressly classifying all Claims and Equity Interests, other than

Administrative Expense Claims (other than professional fees and expenses), Priority Tax Claims,

Professional Fee Claims, and Receiver Professional Fee Claims, as follows:  Class 1 (Secured

Claims), Class 2 (General Unsecured Claims), and Class 3 (Equity Interests).

25.    Section 1123(a)(2) of Bankruptcy Code requires that a plan "specify any class of

claims or interests that is not impaired under the plan." 11 U.S.C. § 1123(a)(2).  Based upon my

review of the Plan, Article 3 of the Plan satisfies this requirement by specifying that Class 1 is not

7

impaired under the Plan.  Accordingly, I believe that section 1123(a)(2) of the Bankruptcy Code is satisfied.

26.    Section 1123(a)(3) of the Bankruptcy Code requires that a plan "specify the treatment of any class of claims or interests that is impaired under the plan." 11 U.S.C. § 1123(a)(3).  Based upon my review of the Plan, Article 3 of the Plan specifies that Class 2 and Class 3 are impaired under the Plan and Article 4 of the Plan specifies the treatment of each such Class.  Accordingly, I believe that section 1123(a)(3) of the Bankruptcy Code is satisfied.

27.    Section 1123(a)(4) of the Bankruptcy Code requires that a plan "provide the same treatment for each claim or interest of a particular class." 11 U.S.C. § 1123(a)(4).  Based upon my review of the Plan, Article 4 of the Plan satisfies this requirement by providing the same treatment to each Claim or Equity Interest in each respective Class.  Accordingly, I believe section 1123(a)(4) of the Bankruptcy Code is satisfied.

28.    Section 1123(a)(5) of the Bankruptcy Code requires that a plan provide "adequate means" for its implementation.  Based upon my review of the Plan, Article 5 of the Plan provides adequate and proper means for the implementation of the Plan.  Section 5.1 provides that the Plan shall be funded from a combination of the proceeds of the sale of the Debtor's Assets and proceeds from liquidation of remaining Assets.

29.    Sections 5.2 and 5.3 of the Plan provide for the appointment of a Plan Administrator to complete the wind-down of the Debtor's affairs and make distributions to Creditors.  Section 5.5 of the Plan provides for the establishment of a Disputed Claims Reserve.  In addition, Article 9 of the Plan provides procedures related to, among other things, distributions, resolution of disputed claims, and the means by which distributions will be transmitted.  I believe that the

foregoing provisions constitute adequate means for implementation of the Plan, and therefore section 1123(a)(5) of the Bankruptcy Code is satisfied.

30.    Section 1123(a)(6) of the Bankruptcy Code requires that a debtor's corporate documents prohibit the issuance of non-voting equity securities and related corporate governance matters. 11 U.S.C. §1123(a)(6).  The Plan does not contemplate the issuance of new stock or equity interests in the Debtor.  Accordingly, I believe section 1123(a)(6) of the Bankruptcy Code is not applicable.

31.    Section 1123(a)(7) of the Bankruptcy Code requires that a plan "contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan…." 11 U.S.C. § 1123(a)(7).  Section 5.2 of the Plan provides for the appointment of a Plan Administrator and the Plan identifies me as the Plan Administrator.  I have gained substantial knowledge and experience in my capacity as the Trustee and believe this appointment to be consistent with the interests of creditors and with public policy since it will be the most efficient and economical appointment.  In addition, section 5.4 of the Plan provides for the appointment of an Oversight Committee and the Plan Supplement identifies the following members of the Oversight Committee: (i) Compass, (ii) ER Tennessee LLC, (iii) Piper Capital Funding LLC, and (iv) 526 Murfreesboro.  Accordingly, I believe section 1123(a)(7) of the Bankruptcy Code is satisfied.

32.    Section 1123(a)(8) of the Bankruptcy Code requires that, if the debtor is an individual, the plan shall "provide for the payment to creditors under the plan of all or such portion of earnings from personal services performed by the debtor after the commencement of the case or other future income of the debtor as is necessary for the execution of the plan."  11 U.S.C. §

1123(a)(8).  The Debtor is not an individual.  Therefore, section 1123(a)(8) of the Bankruptcy Code is not applicable.

33.     Section 1123(b) of the Bankruptcy Code identifies various discretionary provisions that may be included in a plan but are not required.

34.     Section 1123(b)(1) states that a plan may "impair or leave unimpaired any class of claims, secured or unsecured, or of interests." 11 U.S.C. § 1123(b)(1).  Based upon my review of the Plan, it provides that Class 1 (Secured Claims) is not impaired and Class 2 (General Unsecured Claims) and Class 3 (Equity Interests) are impaired.  See Plan, Articles 3 and 4.  I believe that the foregoing treatment of Claims as set forth in Article 3 and Article 4 of the Plan is consistent section 1123(b)(1).

35.     Section 1123(b)(2) of the Bankruptcy Code provides that a plan may, subject to section 365 of the Bankruptcy Code, "provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section." The Plan provides that any and all executory contracts and unexpired leases shall be deemed rejected as of the Effective Date, unless a particular executory contract or unexpired lease (i) has previously been assumed or rejected pursuant to an Order of this Court or (ii) has expired or otherwise terminated pursuant to its terms.  See Plan, § 6.1.  I believe that the provisions of the Plan regarding the treatment of potential executory contracts and unexpired leases are fair and reasonable, and that the treatment is consistent with sections 365(a) and 1123(b)(2) of the Bankruptcy Code.

36.     Section 1123(b)(3) of the Bankruptcy Code provides that a plan may provide for "(a) the settlement or adjustment of any claim or interest belonging to the debtor or to the estate; or (b) the retention and enforcement by the debtor, by the trustee, or by a representative of the

estate appointed for such purpose, of any such claim or interest."  Section 5.6 of the Plan specifically preserves all Claims or Causes of Action that the Debtor or the Estate may have against any person or entity and clarifies standing to pursue such Claims and Causes of Action lies with the Plan Administrator.  As such, I believe these provisions of the Plan are consistent with section 1123(b)(3) of the Bankruptcy Code.

37.    Section 1123(b)(4) of the Bankruptcy Code provides that a plan may provide "for the sale of substantially all of the property of the estate, and the distribution of the proceeds of such sale among holders of claims or interests." 11 U.S.C. § 1123(b)(4).  Section 5 of the Plan provides that it will be funded by a combination of the proceeds of sale of the Debtor's Assets and proceeds from liquidation of remaining Assets, and that the Plan Administrator is responsible for disposing or otherwise realizing the value of all the remaining Assets.    Accordingly, I believe that the Plan is consistent with section 1123(b)(4) of the Bankruptcy Code.

38.    Section 1123(b)(5) provides that a plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." Section 4.2 of the Plan modifies the rights of holders of unsecured claims (Class 2).  I believe that the modification of such rights is consistent with section 1123(b)(5) of the Bankruptcy Code.

39.    Section 1123(b)(6) of the Bankruptcy Code provides that a Plan may "include any other appropriate provision not inconsistent with the applicable provisions of this title."  The Plan does provide additional appropriate provisions that are not inconsistent with applicable sections of the Bankruptcy Code, including, but not limited to: (i) Section 5.2 of the Plan (appointment of Plan Administrator); (ii) Section 5.5 of the Plan (establishment of reserves); Section 8.1 of the Plan

(injunctions against interference with consummation or implementation of Plan); (iv) Section 8.2 of the Plan (exculpations); and (v) Section 9.10 of the Plan (no distributions of less than two hundred dollars).  I believe that these provisions are appropriate and consistent with the Bankruptcy Code, and thus, the Plan complies with section 1123(b) of the Bankruptcy Code.

40.    Section 1123(c) of the Bankruptcy Code requires that in a case involving an individual, that "a plan proposed by an entity other than the debtor may not provide for the use, sale, or lease of property exempted under section 522 of this title, unless the debtor consents to such use, sale or lease." 11 U.S.C. § 1123(c).  The Debtor is not an individual, and accordingly, section 1123(c) is not applicable.

41.    Section 1123(d) of the Bankruptcy Code states that "[n]otwithstanding subsection (a) of this section and sections 506(b), 1129(a)(7), and 1129(b) of this title, if it is proposed in a plan to cure a default the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law."  11 U.S.C. § 1123(d).  Based upon my review of the Plan, the Plan does not contemplate the curing of any default.  Accordingly, I believe that section 1123(d) is not applicable.

### B.  The Trustee Has Complied with the Requirements of Section 1129(a)(2) of the Bankruptcy Code.

42.    Section 1129(a)(2) of the Bankruptcy Code requires that the plan proponent "compl[y] with the applicable provisions of [title 11 of the Bankruptcy Code]," including, without limitation, sections 1125 and 1126 of the Bankruptcy Code.  11 U.S.C. § 1129(a)(2).

43.    The Trustee requested that the approval of the Disclosure Statement and confirmation of the Plan be heard at the same time and the Court approved such request in the Scheduling Order.  The Scheduling Order outlines the procedures for the solicitation and tabulation of votes on the Plan.

44.    As set forth in the *Certificate of Service*, sworn to on December 23, 2024 (the "Solicitation Affidavit") [Docket No. 371], the Trustee fully complied with the requirements of the Scheduling Order.  See, generally, Solicitation Affidavit.

45.    The Confirmation Order contains a finding and conclusion that, pursuant to section 1125 of the Bankruptcy Code the Disclosure Statement contains "adequate information" and is approved in all respects.

46.    As set forth in the Solicitation Affidavit, in accordance with section 1126 of the Bankruptcy Code, the Trustee's counsel solicited votes on the Plan from holders of Claims in Class 2 (the "Voting Class").  The Voting Class is impaired under the Plan, and may, subject to the absolute priority rule, receive distributions under the Plan.  Accordingly, pursuant to section 1126(a) of the Bankruptcy Code, holders of Claims in the Voting Class were entitled to vote to accept or reject the Plan.

47.    Class 1 (Secured Claims) is not impaired under the Plan.  See Plan §§ 3.2, 4.1.  As a result, pursuant to section 1126(f) of the Bankruptcy Code, holders of Claims in Class 1 are conclusively presumed to have accepted the Plan.  As such, the votes of holders of Class 1 Claims were not solicited.  See Solicitation Affidavit.

48.    The Trustee did not solicit votes from Class 3 (Equity Interests) because such holders of Equity Interests are not entitled to receive or retain any property under the Plan on account of such Equity Interest unless and until holders of Allowed Claims in Classes senior in priority to them have been paid in full, which is not expected to occur.  Section 1126(g) of the Bankruptcy Code provides that "a class is deemed not to have accepted a plan if such plan provides that the claims or interests of such class do not entitle the holders of such claims or interests to receive or retain any property under the plan on account of such claims or interests" and, as such,

the votes of holders of Class 3 Equity Interests were not solicited.  11 U.S.C. § 1126(g); <u>see</u>
Solicitation Affidavit.

### C.  Section 1129(a)(3) of the Bankruptcy Code is Satisfied.

49.    Section 1129(a)(3) of the Bankruptcy Code requires that a plan be "proposed in
good faith and not by any means forbidden by law."  The Plan has been proposed in good faith,
with the legitimate and honest purpose of maximizing the value of the Debtor's estate.

50.    The Plan shall be funded by a combination of the proceeds of sale of the Debtor's
Assets and proceeds from liquidation of remaining Assets.

51.    I believe that the Plan maximizes value and that there is no alternative to the Plan
that would return more value to Creditors, and accordingly, I believe that section 1129(a)(3) of the
Bankruptcy Code is satisfied.

### D.  The Plan Complies with Section 1129(a)(4) of the Bankruptcy Code.

52.    Section 1129(a)(4) of the Bankruptcy Code requires that: "[a]ny payment made or
to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property
under the plan, for services or for costs and expenses in or in connection with the case, or in
connection with the plan and incident to the case, has been approved by, or is subject to the
approval of, the court as reasonable."  In this Chapter 11 Case, the only such payments are to the
Debtor's retained professionals, the Trustee and his retained professionals, the Receiver and his
professionals, and any party filing an administrative claim for substantial contribution.  Based
upon my review of the Plan, with respect to the Debtor's professionals, the Trustee and his retained
professionals, and the Receiver and his professionals, section 5.10 of the Plan requires such
persons to file final applications for allowance of professional fees and reimbursement of expenses
within 30 days of the Effective Date of the Plan.  With respect to administrative claims, such as

claims pursuant to sections 503(b)(3)(D) and 503(b)(4) for allowance and payment of counsel fees and expenses incurred in making a substantial contribution in the Chapter 11 Case, section 5.9 of the Plan requires such persons to file requests for payment of Administrative Expense Claims within 30 days of the Effective Date of the Plan.  In addition, sections 11.1(a) and 11.1(b) of the Plan provide that the Bankruptcy Court will retain jurisdiction after the Effective Date to hear and determine all requests for Administrative Expense Claims and applications for professional fees and reimbursement of expenses.  I therefore believe that the Plan complies with section 1129(a)(4) of the Bankruptcy Code.

### E.    The Trustee Has Complied with Section 1129(a)(5) of the Bankruptcy Code.

53.    Section 1129(a)(5)(A)(i) requires that the proponent of a plan disclose the identity and affiliations of any individual proposed to serve, after confirmation of a plan, as director, officer or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the Plan.  The Plan satisfies section 1129(a)(5)(A)(i).  The Plan discloses (a) that I will serve as Plan Administrator to complete the Debtor's wind-down and to make distributions, and (b) the formation of the Oversight Committee, comprised of no more than five members.  See Plan §§ 5.2, 5.4.  The Plan relates solely to the Debtor and not to any other person or entity.  Thus, I believe that the Plan complies with section 1129(a)(5)(A)(i) of the Bankruptcy Code to the extent applicable.

54.    Section 1129(a)(5)(A)(ii) requires that the appointment of the person identified in accordance with section 1129(a)(5)(A)(i) be "consistent with the interests of creditors and equity security holders and with public policy."  11 U.S.C. § 1129(a)(5)(A)(ii).  As described above, the Plan contemplates my appointment as Plan Administrator.  I believe that such appointment is consistent with the interests of creditors and with public policy because, among other things, I have

substantial knowledge of the Debtor's remaining Assets and have led the Debtor's wind-down activities since my appointment as Trustee.  I believe that my completion of such activities will therefore be the most economical and efficient and therefore satisfies section 1129(a)(5)(A)(ii) of the Bankruptcy Code.

55.     Section 1129(a)(5)(B) of the Bankruptcy Code states that a plan may be confirmed if the proponent discloses the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider.  11 U.S.C. § 1129(a)(5)(B).

56.     In my capacity as the Trustee, I am in control of the Debtor's Estate.  As a result, pursuant to section 101(31)(B) of the Bankruptcy Code, I am an "insider." As described above, I will be appointed as Plan Administrator.  It is my expectation that I will be compensated for being the Plan Administrator at the rate of 2% of disbursements, plus reimbursement of expenses.  I respectfully submit that the foregoing statements satisfy section 1129(a)(5)(B) of the Bankruptcy Code.

**F.   Section 1129(a)(6) of the Bankruptcy Code is Not Applicable.**

57.     Section 1129(a)(6) of the Bankruptcy Code requires, with respect to a debtor the rates of which are subject to governmental regulation following confirmation, that appropriate governmental approval has been obtained for any rate change provided for in the plan, or that such rate change be expressly conditioned on such approval. 11 U.S.C. § 1129(a)(6).  Because there is no governmental regulatory commission that has jurisdiction over any rates of the Debtor, I believe that section 1129(a)(6) of the Bankruptcy Code is not applicable.

### G.  Section 1129(a)(7) of the Bankruptcy Code is Satisfied.

58.    The "best interests of creditors" test as set forth in section 1129(a)(7) of the Bankruptcy Code requires that, with respect to each impaired class of claims or interests, each holder of a claim or interest has accepted the plan or will receive property of a value not less than what such holder would receive if the debtor were liquidated under Chapter 7.

59.    The Voting Class has voted to accept the Plan.  See *Certification of Fred Stevens Regarding Solicitation of Votes and Tabulation of Ballots Cast on the Trustee's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code*, dated February 3, 2026 (the "Voting Declaration") [Docket No. 392].  There was one (1) Creditor who voted to reject the Plan in the Voting Class but its vote was not counted as it was deemed a flawed ballot.  See Voting Declaration, Exhibit B.

60.    The Plan provides Class 2 (General Unsecured Claims) with better treatment than would result if the Debtor was liquidated under Chapter 7.  The Liquidation Analysis demonstrates the treatments for each Class under the Plan and in a hypothetical Chapter 7 scenario.  Based upon the Liquidation Analysis and discussions with my retained professionals, it is undisputable that for those Creditors who voted to reject the Plan, such holder will receive value under the Plan that is not less than such holder would receive if the Debtor was liquidated in Chapter 7.

61.    Accordingly, I believe that the "best interests of creditors" test in section 1129(a)(7) is satisfied as to the Voting Class because any theoretical dissenting holder of a Claim in each such Class will receive or retain under the Plan, on account of such Claim, property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would receive in a Chapter 7 liquidation of the Debtor's assets on such date.

62.     Finally, the docket of the Chapter 11 Case does not reflect an election by any Class pursuant to § 1111(b)(2) of the Bankruptcy Code. Accordingly, I believe that the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

**H. Section 1129(a)(8) of the Bankruptcy Code is Satisfied.**

63.     Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests under a plan has either accepted the plan or is not impaired under the plan. With respect to an unimpaired class of claims, under section 1126 of the Bankruptcy Code, any such unimpaired class of claims is "conclusively presumed" to have accepted the plan and need not be further examined under section 1129(a)(8). 11 U.S.C. § 1126(f). Class 1 (Secured Claims) is not Impaired and is therefore conclusively presumed to have accepted the Plan. See Plan §§ 3.2, 4.1.

64.     As to each Impaired Class, section 1126(c) of the Bankruptcy Code provides that a plan is accepted if the accepting class members hold at least two-thirds in amount and more than one-half in number of the claims held by the class members that have cast votes on the plan, excluding any holder designated pursuant to section 1126(e) of the Bankruptcy Code. 11 U.S.C. § 1126(c).

65.     As set forth herein above, the Voting Class voted to accept the Plan. As such, Section 1129(a)(8) is satisfied.

**I. Section 1129(a)(9) of the Bankruptcy Code is Satisfied.**

66.     Section 1129(a)(9) of the Bankruptcy Code requires that certain priority claims be paid in full on the effective date of a plan. Based upon my review of the Plan, the Plan satisfies each of the requirements of section 1129(a)(9). First, consistent with section 1129(a)(9)(A), the Plan provides for all Allowed Administrative Claims (i.e., § 507(a)(2) and § 507(a)(3) claims) to be paid in full in Cash (a) as soon as practicable following the later of the Effective Date or the

date upon which the Court enters a Final Order allowing any such Administrative Expense Claim,

or (b) upon such other terms as may exist in accordance with the ordinary course of the Debtor's

liquidation, or (c) as may be agreed upon between the holder of any such Administrative Expense

Claim and the Plan Administrator.  See Plan § 2.1(a).

67.    Second, the Plan provides that Priority Tax Claims will be treated consistently with

section 1129(a)(9)(C), in that each holder of an Allowed Priority Tax Claim shall be paid (a) an

amount in Cash equal to the Allowed amount of such Priority Tax Claim, or (b) such other

treatment as to which the Plan Administrator and the holder of such Allowed Priority Tax Claim

shall have agreed upon in writing.  See Plan § 2.1(b).

68.    Thus, I believe that the Plan complies with each of the requirements of section

1129(a)(9) of the Bankruptcy Code.

### J.    Section 1129(a)(10) of the Bankruptcy Code is Satisfied.

69.    Section 1129(a)(10) of the Bankruptcy Code states that "[i]f a class of claims is

impaired under the plan, at least one class of claims that is impaired under the plan has accepted

the plan, determined without including any acceptance of the plan by any insider".  11 U.S.C. §

1129(a)(10).  I believe that this requirement has been satisfied.  As described above, the Plan has

been accepted by Class 2 which does not count any votes cast by any insiders.

70.    As a result, at least one Class of Claims that is Impaired under the Plan has accepted

the Plan, determined without including any acceptance of the Plan by any insider, as required by

section 1129(a)(10) of the Bankruptcy Code.

### K.    Section 1129(a)(11) of the Bankruptcy Code is Satisfied.

71.    Pursuant to section 1129(a)(11) of the Bankruptcy Code, a plan may be confirmed

only if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for

further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11).

72.    As described in detail in the Disclosure Statement, the Plan shall be funded by the proceeds of sale of the Debtor's Assets and proceeds from liquidation of remaining Assets.  In addition, the Plan provides that Causes of Action will be vested for further prosecution under the management of the Plan Administrator.  As a result, no further liquidation or reorganization will be required after confirmation of the Plan.

73.    As such, I submit that the requirements of section 1129(a)(11) are not applicable. However, to the extent Bankruptcy Code section 1129(a)(11) applies to implementation of the Plan, I believe that the feasibility requirement of section 1129(a)(11) is satisfied, because the Estate will have sufficient assets on hand to implement the Plan as proposed.

74.    I do not believe further liquidation or reorganization will be required after confirmation of the Plan.  I therefore believe that the feasibility requirement of section 1129(a)(11) is satisfied.

**L.  The Plan Satisfies Section 1129(a)(12) of the Bankruptcy Code.**

75.    Section 1129(a)(12) of the Bankruptcy Code requires that certain fees listed in 28 U.S.C. § 1930, determined by the court at the hearing on confirmation of a plan, be paid or that provision be made for their payment.  11 U.S.C. § 1129(a)(12).  Based upon my review of the Plan, this requirement has been satisfied.  The Plan provides that all fees payable pursuant to section 1930 of Title 28 of the United States Code shall be paid on the Effective Date (if any are due) by the Plan Administrator.  The Plan also provides for the payment, when due, of all U.S. Trustee quarterly fees under 28 U.S.C. § 1930(a)(6) from the Effective Date until the Chapter 11 Case is closed.  See Plan, section 5.13.

### M. Sections 1129(a)(13)-(16) of the Bankruptcy Code are Not Applicable.

76.    The Debtor (i) has no obligation to provide retiree benefits, (ii) does not have any domestic support obligations, and (iii) is not a nonprofit entity.  In addition, there are no unresolved objections by Allowed unsecured creditors to the Plan.  Accordingly, I believe that sections 1129(a)(13) through (16) of the Bankruptcy Code to be inapplicable.

### N. Invocation of Section 1129(b) of the Bankruptcy Code Is Appropriate.

77.    Section 1129(b)(1) of the Bankruptcy Code provides that, "if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent under the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan."  11 U.S.C. § 1129(b)(1).

78.    As set forth above, the holders of Equity Interests in Class 3 are Impaired and have been deemed to reject the Plan.  Notwithstanding this, based upon my review of the Plan and my discussions with my counsel, I understand that the Plan does not discriminate unfairly and is both fair and equitable with regard to treatment of all Equity Interests in Class 3.

79.    The Equity Interests within Class 3 are not similarly situated to Claims or Equity Interests in other Classes and the treatment of Equity Interests in Class 3 is the result of the priority distribution scheme set forth in the Bankruptcy Code.  As such, the Plan does not discriminate unfairly.

80.    Based upon my review of the Plan and discussions with my counsel, I understand that the Plan's treatment of Equity Interests in Class 3 is both fair and equitable because the Plan distribution scheme follows the absolute priority rule and does not provide for any junior classes

to receive recovery before recovery is had by senior classes. Class 3 is clearly treated in accordance with the absolute priority rule. Thus, the Plan is "fair and equitable" and, therefore, consistent with the requirements of section 1129(b) of the Bankruptcy Code.

### O. Section 1129(c) of the Bankruptcy Code is Satisfied.

81. Bankruptcy Code section 1129(c) states that a court "may only confirm one plan." 11 U.S.C. § 1129(c). The Plan is the only plan that has been proposed by the Trustee and filed in this Chapter 11 Case.[3] Accordingly, I believe that section 1129(c) of the Bankruptcy Code is satisfied.

### R. Section 1129(d) of the Bankruptcy Code is Satisfied.

82. Section 1129(d) of the Bankruptcy Code states that "the court may not confirm a plan if the principal purpose of the plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933." The purpose of the Plan is not to avoid taxes or the application of section 5 of the Securities Act of 1933. Moreover, no party that is a governmental unit, or any other entity, has requested that the Court decline to confirm the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933. Accordingly, I believe that the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

*[Continued on Next Page]*

---

[3] The plan proposed by the Debtor was denied by the Bankruptcy Court and, as a result, is moot. *See* Docket No. 178.

## **CONCLUSION**

As evidenced by the fact that there are no objections to confirmation of the Plan and overwhelming approval by the Voting Class, the Plan is fair and reasonable and has been proposed in good faith and for proper purposes. The Plan will enable the maximization of value for the benefit of the Debtor's creditors and all parties-in-interest. For all of these reasons, I respectfully submit that the Court should confirm the Plan.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 5th day of February, 2026, in New York, New York.

*/s/ Yann Geron*
Yann Geron