# Exhibit A

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

In re:

PRIME CAPITAL VENTURES, LLC,                    Case No. 24-11029-PGR
                                                Chapter 11

                              Debtor.

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) PURSUANT TO
11 U.S.C. § 1125 APPROVING ADEQUACY OF DISCLOSURE STATEMENT FOR
TRUSTEE'S PLAN OF LIQUIDATION PURSUANT TO CHAPTER 11 OF THE
BANKRUPTCY CODE, AS MODIFIED, AND (II) PURSUANT TO 11 U.S.C. § 1129 AND
FED. R. BANKR. P. 3020 CONFIRMING TRUSTEE'S PLAN OF LIQUIDATION
PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

Yann Geron, as chapter 11 trustee (the "Trustee") of Prime Capital Ventures, LLC (the

"Debtor"), in the above-referenced chapter 11 case (the "Chapter 11 Case"), having filed (i) the

*Trustee's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* (together with any

subsequent modifications, the "Plan")[1] [Docket No 369-1], a copy of which is annexed hereto as

**Exhibit A**, (ii) the *Disclosure Statement for the Trustee's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code, as Modified*, dated December 22, 2025 (together with any subsequent modifications, the "Disclosure Statement") [Docket No. 369], (iii) the *Certificate of Service*, sworn to on December 23, 2025 (the "Solicitation Affidavit") [Docket No. 371], (iv) the *Supplement to the Trustee's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* (the "Plan Supplement") [Docket No. 380], (v) the *Declaration of Brian Ryniker in Support of Confirmation of the Trustee's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code and in Particular in Support of the Finding that the Debtor was a "Ponzi" Scheme,* dated January 30, 2026 (the "Ryniker Declaration") [Docket No. 386], (vi) the *Declaration of Fred Stevens Regarding Voting and Tabulation of Ballots Cast on the Trustee's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code*, dated February 3, 2026 (the "Voting Declaration") [Docket No. 392], (vii) the *Declaration of Yann Geron in Support of Entry of an Order (I) Approving Adequacy of Disclosure Statement for the Trustee's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code, as Modified, and (II) Confirming Trustee's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code*, dated February 4, 2026 (the "Geron Declaration") [Docket No. ___], and (viii) the *Memorandum of Law in Support of Entry of an Order (I) Approving Adequacy of Disclosure Statement for the Trustee's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code, as Modified, and (II) Confirming Trustee's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* (the "Memorandum of Law") [Docket No. ___]; and the Court having entered the *Order (I) Scheduling A Combined Hearing on (A) Adequacy of the Disclosure Statement and (B) Confirmation of the Plan, (II) Approving Form and Manner of*

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Plan.

*Notice of Combined Hearing, (III) Establishing Procedures for Objecting to (A) Disclosure Statement or (B) Plan, and (IV) Approving Solicitation Procedures* (the "Scheduling Order") [Docket No. 368]; and a hearing pursuant to section 1128 of Title 11, United States Code (the "Bankruptcy Code") to consider (i) approval of the Disclosure Statement and (ii) confirmation of the Plan having been held before the Bankruptcy Court on February 10, 2026 (the "Combined Hearing"), after due notice to holders of Claims and Equity Interests against the Debtor, and to other parties in interest, in accordance with the Scheduling Order, the Bankruptcy Code, and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and the Bankruptcy Court having considered the Plan, the Disclosure Statement, the Voting Declaration, the Ryniker Declaration, the Geron Declaration, the Memorandum of Law, and other papers in support of the Plan; and the appearances of all interested parties having been noted on the record of the Confirmation Hearing; and the Bankruptcy Court having considered all of the evidence adduced and arguments of counsel at the Combined Hearing, and all of the proceedings had before this Court; and upon the record of the Combined Hearing, the Bankruptcy Court having found and determined that (i) the Disclosure Statement contains "adequate information" with respect to the Debtor, the Plan, and the transactions contemplated therein, and (ii) the Plan is in the best interests of the Debtor, its Estate, and holders of Claims and Equity Interests, and that it should be confirmed as reflected by this Court's rulings made herein and at the Combined Hearing; and after due deliberation and sufficient cause appearing therefor, the Court hereby FINDS, DETERMINES, AND CONCLUDES that:

## **FINDINGS AND CONCLUSIONS**

The findings and conclusions set forth herein constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052, made applicable to this proceeding pursuant to Fed. R. Bankr. P. 9014.  To the extent any of the following findings of fact

constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

A.    Exclusive Jurisdiction; Venue; Core Proceeding
      (28 U.S.C. §§ 157(b)(2), 1334(a))

This Court has jurisdiction over this Chapter 11 Case pursuant to sections 157 and 1334 of title 28 of the United States Code.  Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).  Venue of this Chapter 11 Case is properly in this district pursuant to sections 1408 and 1409 of title 28 of the United States Code.  The Debtor is properly a debtor under section 109 of the Bankruptcy Code and the Trustee is a proper proponent of the Plan under section 1121(a) of the Bankruptcy Code.

B.    Commencement of Case

On September 16, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of New York (the "Bankruptcy Court" or "Court").

C.    Burden of Proof

The Trustee has the burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of evidence.

D.    Judicial Notice

The Court takes judicial notice of the docket of the Chapter 11 Case maintained by the Clerk of the Court, including, without limitation, all pleadings and other documents filed and order entered therein.  The Court also takes judicial notice of all evidence proffered or adduced and all arguments made at the hearings held before the Court during the pendency of this Chapter 11 Case.

E.    Adequacy of Disclosure Statement

The Disclosure Statement complies with the requirements of the Bankruptcy Code, and the

Bankruptcy Rules, and contains adequate information as such term is defined in section 1125 of the Bankruptcy Code.

F.    Solicitation and Notice

Pursuant to the Scheduling Order, as evidenced by the Solicitation Affidavit, beginning on December 22, 2025, the Trustee commenced his solicitation (the "Solicitation") of votes on the Plan by mailing to the members of Class 2 a package containing the (a) Disclosure Statement, (b) Plan, (c) Scheduling Order, (d) *Notice of (I) Combined Hearing to (A) Consider Approval of the Disclosure Statement and (B) Confirm the Plan of Liquidation and (B) Date by Which to Submit Objections* (the "Notice of Combined Hearing") [Docket No. 370], (e) a ballot, a copy of which was attached to the Solicitation Affidavit as Exhibit F, (f) assignment of claim form, a copy of which was attached to the Solicitation Affidavit as Exhibit C, and (g) a pre-addressed return envelopes (collectively, the "Solicitation Package") by the means authorized and approved by the Scheduling Order.  Transmittal and service of the Solicitation Package to holders of Claims in Class 2 was adequate and sufficient, and no other or further notice is or shall be required.

In addition, as required by the Scheduling Order, as evidenced by the Solicitation Affidavit, on December 22, 2025 holders of Unclassified Claims and Class 1 Claims and Class 3 Equity Interests were mailed a package containing (a) the Combined Hearing Notice and (b) the Notice of Non-Voting Status.  Transmittal and service of the Notice of Non-Voting Status to holders of Unclassified Claims and holders of Claims in Class 1 and Equity Interests in Class 3 was adequate and sufficient, and no other or further notice is or shall be required.

G.    Plan Supplement

The filing of the Plan Supplement and notice of documents contained therein were good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Scheduling Order, and no other or further notice is or shall be required.

H.    Voting

As evidenced by the Voting Declaration, Class 2 has voted to accept the Plan.

I.    Secured Claims Conclusively Presumed to Have Accepted the Plan

Class 1 Secured Claims are not Impaired and are conclusively presumed to have accepted

the Plan pursuant to section 1126(f) of the Bankruptcy Code.

J.    Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1))

The Plan complies with the applicable provisions of the Bankruptcy Code, thereby

satisfying section 1129(a)(1) of the Bankruptcy Code.

K.    Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1))

In addition to the Administrative Expense Claims, the Professional Fee Claims, Receiver

Professional Fee Claims, and Priority Tax Claims (collectively, the "Unclassified Claims"), which

need not be designated pursuant to section 1123(a)(1) of the Bankruptcy Code, the Plan designates

three classes of Claims and Equity Interests.  The Claims and Equity Interests placed in each Class

are substantially similar to other Claims or Equity Interests in each such Class.  Valid reasons exist

for separately classifying the various Classes of Claims and Equity Interests created under the Plan,

and such Classes do not unfairly discriminate between holders of Claims or Equity Interests.  The

Plan therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

L.    Specification of Unimpaired Classes (11 U.S.C. § 1123(a)(2))

Article 3 of the Plan specifies that Class 1 is not Impaired under the Plan, thereby satisfying

section 1123(a)(2) of the Bankruptcy Code.

M.    Specification of Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))

Article 3 of the Plan designates that Classes 2 and 3 are Impaired under the Plan and Article

4 of the Plan specifies the treatment of Classes 2 and 3, thereby satisfying section 1123(a)(3) of

the Bankruptcy Code.

N.    <u>No Discrimination (11 U.S.C. § 1123(a)(4))</u>

The Plan provides for the same treatment for each Claim or Equity Interest in each respective Class unless the holder of a particular Claim or Equity Interest has agreed to a less favorable treatment of such Claim or Equity Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

O.    <u>Implementation of Plan (11 U.S.C. § 1123(a)(5))</u>

Article 5 of the Plan provides adequate and proper means for the Plan's implementation, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.  The Trustee is authorized to implement the Plan in accordance with its terms.

P.    <u>Charter of Debtor (11 U.S.C. § 1123(a)(6))</u>

No equity securities are being issued pursuant to the Plan, and therefore, section 1123(a)(6) of the Bankruptcy Code is not applicable.

Q.    <u>Selection of Trustees, Member and Manager (11 U.S.C. § 1123(a)(7))</u>

Section 5.2 of the Plan provides for the appointment of a Plan Administrator, and the Plan identifies Yann Geron of Geron Legal Advisors LLC, as the Plan Administrator.  In addition, section 5.4 of the Plan provides for the appointment of an Oversight Committee and the Plan Supplement identifies the following members of the Oversight Committee:  (i) Compass-Charlotte 1031, LLC, (ii) ER Tennessee LLC, (iii) Piper Capital Funding LLC, and (iv) 526 Murfreesboro, LLC.  The Court is satisfied that these appointments are consistent with the interests of creditors and with public policy and therefore, section 1123(a)(7) of the Bankruptcy Code is satisfied.

R.    Payment to Creditors from Personal Services
       <u>Not Available (11 U.S.C. § 1123(a)(8))</u>

The Debtor is not an individual, and therefore, section 1123(a)(8) of the Bankruptcy Code is not applicable.

S.    Additional Plan Provisions (11 U.S.C. § 1123(b))

The Plan's discretionary provisions are appropriate and are not inconsistent with the Bankruptcy Code.

T.    Sale of Individual Property (11 U.S.C. § 1123(c))

The Debtor is not an individual, and therefore, section 1123(c) of the Bankruptcy Code is not applicable.

U.    Cure of Defaults (11 U.S.C. § 1123(d))

To the extent that any defaults are cured, the cure amounts will be determined by any underlying agreement and applicable non-bankruptcy law.

V.    Plan Compliance with Bankruptcy Rule 3016(a)

The Plan is dated and identifies the party submitting the Plan as the Trustee, thereby satisfying Bankruptcy Rule 3016(a).

W.    The Trustee's Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2))

The Trustee has complied with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code.  Specifically:

a)    The Debtor is a proper debtor under section 109 of the Bankruptcy Code;

b)    The Court has jurisdiction over the Debtor's Chapter 11 Case;

c)    Venue of this Chapter 11 Case is proper in this district pursuant to 28 U.S.C. § 1408;

d)    The Trustee is a proper proponent of the Plan pursuant to section 1121(a) of the Bankruptcy Code; and

e)    The Trustee has complied with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules in all respects, and with the Scheduling Order, with respect to transmitting the Plan and the Disclosure Statement and related documents soliciting votes on the Plan.

Z.     Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))

The Trustee has proposed the Plan (including all other documents necessary to effectuate the Plan) in good faith, to wit, to maximize the value of the Debtor's estate, and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.

AA.     Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))

The Plan provides that any payment made or to be made by the Debtor's estate for services or for costs and expenses in or in connection with the Chapter 11 Case, or in connection with the Plan and incident to the Chapter 11 Case, has been approved by, or is subject to the approval of, the Bankruptcy Court, as reasonable.  Accordingly, section 1129(a)(4) of the Bankruptcy Code is satisfied.

BB.     Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))

The Plan contemplates and discloses (a) that Yann Geron of Geron Legal Advisors LLC will be appointed Plan Administrator, and (b) the formation of the Oversight Committee, comprised of four members.  The Court is satisfied that said appointments are consistent with the interests of creditors and are consistent with public policy and therefore sections 1129(a)(5)(A)(i) and 1129(a)(5)(A)(ii) of the Bankruptcy Code are satisfied.

CC.     No Rate Changes (11 U.S.C. § 1129(a)(6))

Section 1129(a)(6) of the Bankruptcy Code is not applicable because no governmental regulatory commission has jurisdiction over the Debtor's rates or any change thereof.

DD.     Best Interests of Creditors (11 U.S.C. § 1129(a)(7))

The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The Geron Declaration, which the Court finds to be persuasive and credible and has not been controverted by any other evidence, establishes that each holder of an impaired Claim or Equity Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Equity Interest,

property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code on such date. The docket of the Chapter 11 Case does not reflect an election by any class pursuant to Section 1111(b)(2) of the Bankruptcy Code.

EE.    Acceptance of Certain Classes (11 U.S.C. § 1129(a)(8))

Class 1 (Secured Claims) is not Impaired and is conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Class 2 (General Unsecured Claims) has voted to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code as described in the Voting Declaration and herein. Class 3 (Equity Interests) is the only Class that is Impaired and is deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code and therefore Class 3 is not satisfied as to Section 1129(a)(8) of the Bankruptcy Code.

FF.    Treatment of Administrative and Priority Tax Claims (11 U.S.C. § 1129(a)(9))

The treatment of Administrative Expense Claims, Professional Fee Claims and Receiver Professional Fee Claims pursuant to section 2.1(a) and (c) of the Plan, respectively, complies with section 1129(a)(9)(A) of the Bankruptcy Code because the Plan provides for all Allowed Administrative Expense Claims (i.e., claims arising under sections 507(a)(2) and 507(a)(3) of the Bankruptcy Code) to be paid in full in Cash (a) as soon as practicable following the later of the Effective Date or the date upon which the Court enters a Final Order allowing any such Administrative Expense Claim, or (b) upon such other terms as may exist in accordance with the ordinary course of the Debtor's liquidation, or (c) as may be agreed upon between the holder of any such Administrative Expense Claim and the Plan Administrator. Further, the Plan provides that the Plan Administrator shall pay all Professional Fee Claims and Receiver Professional Fee Claims in the amount Allowed by the Bankruptcy Court as soon as practicable after entry of a

Final Order awarding such compensation and reimbursement of expenses pursuant to proper application in accordance with Section 5.10 of the Plan.

The treatment of Priority Tax Claims under section 2.1(b) of the Plan complies with section 1129(a)(9)(C) of the Bankruptcy Code because the Plan provides for all Allowed Priority Tax Claims (i.e., claims arising under sections 507(a)(8) of the Bankruptcy Code), (a) to be paid an amount in Cash equal to the Allowed amount of such Priority Tax Claim, or (b) receive such other treatment as to which the Plan Administrator and the holder of such Allowed Priority Tax Claim shall have agreed upon in writing.

GG.    Acceptance by an Impaired Class (11 U.S.C. § 1129(a)(10))

Class 2, which does not count any votes cast by an insider, voted for the Plan.  Therefore, at least one Class of Claims against the Debtor that is impaired under the Plan has accepted the Plan.  Therefore section 1129(a)(10) of the Bankruptcy Code is satisfied.

HH.    Feasibility (11 U.S.C. § 1129(a)(11))

The feasibility requirement of section 1129(a)(11) of the Bankruptcy Code is not applicable, because the Plan provides for the liquidation of the Debtor's estate for the benefit of creditors that hold Claims against the Debtor.

To the extent applicable, based upon the liquidation analysis attached to the Disclosure Statement, which the Court finds reliable and credible, the Court is satisfied that the Plan Administrator will be able to make, or cause to be made, the distributions required under the Plan. Therefore, section 1129(a)(11) of the Bankruptcy Code is satisfied.

II.    Payment of Fees (11 U.S.C. § 1129(a)(12))

The Plan provides that all fees payable pursuant to section 1930 of Title 28 of the United States Code shall be paid by the Plan Administrator.  The Plan also provides for the payment, when

due, of all United States Trustee quarterly fees under 28 U.S.C. § 1930(a)(6) until the Chapter 11

Case is closed, thus satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

     JJ.    <u>Retiree Benefits (11 U.S.C. § 1129(a)(13))</u>

    The Debtor has no obligation to provide any retiree benefits, and accordingly, section

1129(a)(13) of the Bankruptcy Code is not applicable to the Plan.

     KK.    <u>Domestic Support Obligations (11 U.S.C. § 1129 (a)(14))</u>

    The Debtor is not required to pay any domestic support obligations; therefore, section

1129(a)(14) of the Bankruptcy Code is not applicable to the Plan.

     LL.    <u>Payment of Disposable Income (11 U.S.C. § 1129(a)(15))</u>

    No unsecured creditor with an Allowed Claim has objected to confirmation of the Plan,

and, as a result, section 1129(a)(15) of the Bankruptcy Code is not applicable to the Plan.

     MM.    <u>Transfer of Property by Nonprofit Entities (11 U.S.C. § 1129(a)(16))</u>

    The Debtor is not a nonprofit entity; therefore, section 1129(a)(16) of the Bankruptcy Code

is not applicable to the Plan.

     NN.    <u>Cram Down Requirements Have Been Satisfied (11 U.S.C. § 1129(b))</u>

    The Plan does not discriminate unfairly with respect to Class 3 (Equity Interests) and the

Plan is fair and equitable with respect to Class 3 (Equity Interests), thereby satisfying the cram

down requirements of section 1129(b).

     OO.    <u>Confirmation of One Plan</u>

    The Plan is the only plan filed in this Chapter 11 Case.  Accordingly, section 1129(c) of

the Bankruptcy Code is not applicable.

PP.    Principal Purpose of the Plan (11 U.S.C. § 1129(d))

The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933 (15 U.S.C. § 77(e)).  Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

QQ.    Good Faith Solicitation (11 U.S.C. § 1125(e))

As the Trustee and his professionals have solicited acceptance of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules, they are entitled to the protections afforded under section 1125(e) of the Bankruptcy Code.

RR.    Rejection of Contracts and Leases

The Plan's treatment regarding the rejection of executory contracts and unexpired leases in Article 6 of the Plan is in compliance with the requirements of sections 365(b) and 1123(b)(2) of the Bankruptcy Code and is a reasonable exercise of sound business judgment, and in each case is in the best interests of the Debtor's Estate.

SS.    Injunctions and Exculpations

Each of the injunction provisions set forth in section 8.1 of the Plan and the exculpations set forth in section 8.2 of the Plan: (i) is within the jurisdiction of the Court under 28 U.S.C. § 1334, (ii) is an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code, (iii) confers a material benefit on, and is in the best interests of, the Debtor's Estate and its Creditors, (iv) is important to the overall objectives of the Plan, and (v) is consistent with sections 105, 1123, 1129 and other applicable provisions of the Bankruptcy Code.

TT.    Satisfaction of Confirmation Requirements

The Plan satisfies all applicable requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

UU.    Retention of Jurisdiction

The Bankruptcy Court may properly retain jurisdiction over the matters set forth in section
11.1 of the Plan and section 1142 of the Bankruptcy Code.

UU.    The Debtor was a Ponzi Scheme

"Ponzi schemes have no exact definition, since they manifest a kaleidoscopic variety of
configurations."  Honorable Dorothy T. Eisenberg, Nicholas W. Quesenberry, *Ponzi Schemes in
Bankruptcy*, 30 Touro Law Review p. 502.  "Thus, 'courts look for a general pattern, rather than
specific requirements.'"  *Id.*, citing *Manhattan Inv. Fund, Ltd. V. Gredd (In re Manhattan Inv.
Fund, Ltd.)*, 397 B.R. 1, 12 (S.D.N.Y. 2007) (stating there is no precise Ponzi scheme definition).

Some courts use a four-factor test in determining whether a Ponzi scheme exists and
consider whether: "1) deposits were made by investors; 2) the Debtor conducted little or no
legitimate business operations as represented to investors; 3) the purported business operation of
the Debtor produced little or no profits or earnings; and 4) the source of payments to investors was
from cash infused by new investors."  *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
531 B.R. 439, 471 (Bankr. S.D.N.Y. 2015).  Other courts identify "badges of fraud," "including
the absence of legitimate business connected to the investment program, the unrealistic promises
of low risk and high returns, commingling investor money, the use of agents and brokers paid high
commissions to perpetuate the scheme, misuse of investor funds, the 'payment' of excessively
large fees to the perpetrator and the use of false financial statements." *Gowan v. Amaranth
Advisors LLC (In re Dreier LLP)*, No. 08-15051, 2014 WL 47774, at *9 (Bankr. S.D.N.Y. Jan. 3,
2014); *see Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff)*, 528 F. Supp.
3d 219, 237-41 (S.D.N.Y. 2021), *aff'd sub nom., Picard v. Jaba Assocs. LP, 49 f.4TH 170 2D Cir.
2022).*

14

In the end, and most significantly, "the label 'Ponzi scheme' has been applied to *any sort of inherently fraudulent arrangement under which the debtor-transferor must utilize after-acquired investment funds to pay off previous investors in order to forestall disclosure of the fraud*." *Bayou Superfund, LLC v. WAM Long/Short Fund II, L.P. (In re Bayou Group, LLC)*, 362 B.R. 624, 633 (Bankr. S.D.N.Y. 2007) (emphasis added). The Debtor had all the classic hallmarks of a Ponzi scheme.

The Debtor's Ponzi scheme is also consistent with what the U.S. Securities and Exchange Commission has dubbed a fraudulent advance fee scheme. In such a scheme, the perpetrator gets the victim to pay an upfront fee based on the promise that the fee will enable large sums of money to flow to the victim. After the victim sends the fee, the perpetrator keeps the fee and never delivers the promised loan, windfall, etc. *See Updated Investor Alert: Be on the Lookout for Advance Fee Fraud*, SEC.gov.[2] This is what the Debtor was doing here.

While prospective borrowers were not investing in the Debtor in the traditional sense, their ICA Deposit was very much an investment for all intents and purposes. The ICA Deposits were made for the express purpose of obtaining much needed and impossibly low-priced capital amounting to at least five times the amount of the ICA Deposit. That capital was needed by the prospective borrowers for their projects and businesses. The Debtor obtained the ICA Deposits not only on the promise of providing low-priced capital, but on the representation that the ICA Deposit would be held and used to pay down the prospective borrower's interest during the life of the contemplated loan.[3] The Debtor never retained the ICA Deposits in "trust" as represented but

---

[2] https://www.sec.gov/resources-for-investors/investor-alerts-bulletins/ia_lookforaff (last visited Nov. 15, 2024).
[3] The principal of Indigo Pharmaceutical explained his expectations of precisely how the ICA Deposit works in the YouTube promotional video reference above as follows:

So with Prime, they are committed just as much as we are because we put the money in, that is true, **but the money goes into a trust,** and you wait for the documentation of a trust meaning you have already been accepted. It's just a matter of time until you get funded. So once you understand that, although you're waiting and that sometimes can give people agita, but you know that the loan is

rather used them for: (i) in rare instances, funding actual loans (whether fully or partially); (ii) returning other prospective borrowers' ICA Deposits when the Debtor could not fund the promised loans in order to keep the fraud from being discovered; and (iii) buying a beach house, expensive cars, luxury wristwatches, private jet travel, and other extravagances for Roglieri.   Most importantly, the only source of capital for any of the Debtor's activities was obtaining more ICA Deposits from new prospective borrowers, which were not supposed to be used for anything other than servicing the prospective borrower's loan obligations.

It is difficult to describe the Debtor's fraudulent scheme as anything but a Ponzi scheme. Regardless, even if the Debtor had any divergence from the classic Ponzi scheme model, "[c]ase law has revealed that a clever twist on the Ponzi concept will not remove a fraudulent scheme from the definition of Ponzi." *Forman v. Salzano (In re Norvergence, Inc.)*, 405 B.R. 709, 730 (Bankr. D.N.J. 2009), citing *United States v. Sudeen*, 434 F.3d 384, 386-87 (5th Cir. 2005); *United States v. Antonakopoulos*, 399 F.3d 68, 72 (1st Cir. 2005).   What is most important is that the Debtor and its former principal knew that the pool of prospective borrowers would at some point run dry and that the scheme would consequently inevitably collapse and that those prospective borrowers with outstanding ICA Deposits would lose their money.   This is the very essence of a Ponzi scheme. *See Christian Bros. High Sch. Endowment v. Bayou No Leverage Fund, LLC (in re Bayou Group, LLC)*, 439 B.R. 284, 306 n.19 (S.D.N.Y. 2010).

Based upon the foregoing, the Court finds and concludes that the Debtor was an advance pay/Ponzi scheme since its formation.

---

going to come through because the trust has accepted all your documentation in advance and you know whether it's sixty or ninety days, or banking days actually, you're going to get funded.  It's just a matter of time.

Prime Commercial Lending, *Prime Capital Ventures Presents Indigo Pharmaceutical in Las Vegas, NV* [Video], Apr. 20, 2023, *supra*, starting at 4:04 (transcription by counsel).

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.      Objections

All objections to the Disclosure Statement or Plan that have not been withdrawn, waived or settled by this Order are overruled on the merits.

2.      Disclosure Statement

The Disclosure Statement contains adequate information within the meaning of section 1125 of the Bankruptcy Code and is approved in all respects.

3.      Confirmation

The Plan, in the form annexed hereto as **Exhibit A**, is hereby confirmed pursuant to section 1129 of the Bankruptcy Code.

4.      Binding Effect

Upon the Effective Date, the Plan and its provisions shall be binding upon the Debtor, any Person acquiring or receiving property or a distribution under the Plan, and any holder of a Claim against the Debtor, including all governmental entities (including without limitation all taxing authorities), whether or not the Claim of such holder is Impaired under the Plan, whether or not the Claim is Allowed, and whether or not such holder or entity has accepted the Plan.

The rights, benefits and obligations of any Person named or referred to in the Plan, or whose actions may be required to effectuate the terms of the Plan, shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person.

The terms and provisions of the Plan and this order shall survive and remain effective after entry of any order which may be entered closing the Chapter 11 Case, dismissing the Chapter 11 Case or converting the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code, and

the terms and provisions of the Plan shall continue to be effective in this or any superseding case under the Bankruptcy Code.

5.      Appointment of Plan Administrator

On the Effective Date, the Plan Administrator shall be appointed and shall have all of the powers and duties set forth in section 5.3 of the Plan.  The Plan Administrator Agreement attached to the Plan Supplement as Exhibit A is hereby approved.

6.      Appointment of Oversight Committee

On the Effective Date, the Oversight Committee shall be appointed and shall have all of the powers and duties set forth in section 5.4 of the Plan.

7.      Substantial Consummation of Plan

Upon the occurrence of the Effective Date, the Plan shall have been substantially consummated within the meaning of section 1101 of the Bankruptcy Code.

8.      Dissolution of the Debtor

Upon entry of an order closing the Chapter 11 Case, the Debtor shall be deemed dissolved for all purposes.

9.      Exemption from Certain Transfers Taxes

To the maximum extent provided by section 1146(a) of the Bankruptcy Code, any post-Confirmation sale or transfer of any of the Assets, or any sale or transfer of, from or by the Debtor's Estate, pursuant to, in contemplation of, or in connection with the Plan or pursuant to the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform

18

Commercial Code filing or recording fee, or other similar tax or governmental assessment, in each case to the extent permitted by applicable bankruptcy law, and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

10.    <u>Distributions</u>

The Plan Administrator shall make Distributions on account of Allowed Claims in accordance with Article 4 of the Plan.

11.    <u>Disputed Claims Reserve</u>

On or before the Effective Date, the Plan Administrator shall establish and maintain the Disputed Claims Reserve as required by and in accordance with the Plan.  The Disputed Claims Reserve shall be treated as a disputed ownership fund, within the meaning of Treasury Regulation section 1.468B-9, for all purposes associated with taxation.

12.    <u>Rejection of Executory Contracts (11 U.S.C. § 1123(b)(2))</u>

Any and all prepetition executory contracts (not otherwise previously rejected or the subject of a motion to reject pending on the Effective Date), are deemed rejected by the Trustee as of the Effective Date.  Any party asserting damages for such rejection shall file a Proof of Claim for such damages within thirty (30) days of the Effective Date (the "<u>Rejection Damages Bar Date</u>").  Failure to timely file a Proof of Claim by such date constitutes a waiver of any Claim in connection with the rejection of such contract or lease.

13.    <u>Preservation of Insurance</u>

Nothing in the Plan shall be deemed to diminish or impair the enforceability of any Insurance Policies that may cover Claims against the Debtor or any other Person.

14.    <u>Governmental Approvals Not Required</u>

This order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in or contemplated by the Plan, the Disclosure Statement, and any documents, instruments, or agreements, and any amendments or modifications thereto.

15.    <u>Administrative Expense Claims</u>

Persons asserting an Administrative Expense Claim must file a request for payment of such Administrative Expense Claim on or before 5:00 p.m. prevailing Eastern Time on the date that is 30 days after notice of the Effective Date has been mailed (the "<u>Administrative Expense Claims Bar Date</u>").

16.    <u>Assignment of Claims to Plan Administrator</u>

The Plan Administrator is hereby authorized to negotiate and accept assignments of claims, demands, and causes of action for the benefit of the Creditor Assignors upon determining in the Plan Administrator's discretion that such claims, demands, and causes of action assert colorable and meritorious claims, and to recognize the claims of the assignor for purposes of participating in and receiving a distribution from the Creditor Related Causes of Action Fund.

17.    <u>Injunctions</u>

As set forth in Article 8 of the Plan and this Confirmation Order and to the fullest extent authorized or provided by the Bankruptcy Code, including section 1141 thereof, upon the entry of this order, and provided that the Effective Date occurs, and at all times on and after the Effective Date, all Persons that have held, currently hold or may hold a claim or other debt or liability against

the Debtor or its Estate, are permanently enjoined from (a) commencing or continuing any judicial or administrative proceeding or employing any process against the Debtor, the Estate, the Trustee, the Post-Confirmation Estate, the Roglieri Trustee, the Successor Roglieri Trustee, the Plan Administrator, or the Oversight Committee (and its members) with the intent or effect of interfering with the consummation and implementation of the Plan and the transfers, payments and Distributions to be made thereunder; and from the (b) (i) enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order; (ii) the creation, perfection or enforcement of any encumbrance of any kind; and/or (iii) the assertion of any right of setoff, counterclaim, exculpation, or subrogation of any kind, in each case against the Debtor, the Estate, the Trustee, the Post-Confirmation Estate, the Roglieri Trustee, the Successor Roglieri Trustee, the Plan Administrator, or the Oversight Committee (and its members) to the fullest extent authorized or provided by the Bankruptcy Code, *provided*, *however*, nothing in Article 8 of the Plan shall prohibit any Person from taking actions to enforce any rights or obligations under or in connection with the terms of the Plan, or this Confirmation Order; *and provided further*, *however*, nothing in this Confirmation Order or the Plan shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including without limitation any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Debtor, nor shall anything in this order or the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against the Debtor for any liability whatsoever, including without limitation any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state or local authority.

18.    <u>Exculpation</u>

Pursuant to Bankruptcy Rule 3020(c)(1), the following provisions in the Plan, certain of which are also set forth below, are hereby approved and will be effective immediately on the Effective Date without further order or action by this Court, any of the parties to such release, or any other Entity: (a) Injunctions (Section 8.1) and (b) Exculpation (Section 8.2) without limiting the effectiveness on the Effective Date of the Plan as a whole.

(a)    <u>Exculpation</u>. As of the Confirmation Date, the Trustee and his professionals (including professional firms and individuals within such firms) shall be deemed to have solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code.  To the fullest extent permitted by section 1125(e) of the Bankruptcy Code, the Trustee and his professionals (including professional firms and individuals within such firms), shall not have or incur any liability to any holder of any Claim or any other Person for any act or omission taken or not taken in good faith in connection with, or arising out of, the Chapter 11 Case, the Disclosure Statement, the Plan, or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan, or any act taken or omitted to be taken during the Chapter 11 Case, the solicitation of votes for and the pursuit of confirmation of the Plan, the consummation of the Plan, including, without limitation, the steps taken to effectuate the transactions described in Article 5 of the Plan, the administration of the Plan or the property to be distributed under the Plan, except for acts or omissions constituting fraud, willful misconduct or gross negligence as determined by a Final Order; and in all respects such parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

19.    Provisions of Plan and Confirmation Order Non-Severable and Mutually <u>Dependent</u>

The provisions of the Plan and this order, including the findings of fact and conclusions of law set forth herein, are non-severable and mutually dependent.

20.    <u>Automatic Stay</u>

The automatic stay provided for under section 362 of the Bankruptcy Code shall remain in effect until the Effective Date.

21.    <u>Notice of Entry of Confirmation Order, Occurrence of Effective Date, Rejection Damages Bar Date, and Administrative Expense Claims Bar Date</u>

Pursuant to Bankruptcy Rules 2002(f), 2002(k) and 3020(c), on or before the tenth day following the Effective Date, the Trustee shall electronically file with the Court and serve a notice of entry of this order, occurrence of the Effective Date, Rejection Damages Bar Date, and Administrative Expense Claims Bar Date in substantially the same form as attached hereto as **Exhibit B** (the "<u>Notice of Confirmation</u>"), to be delivered to (i) all known holders of Claims (including those whose claims are Unimpaired, as well as Impaired, by the Plan), (ii) all known non-Debtor counterparties to executory contracts and unexpired leases, (iii) applicable taxing authorities, (iv) the U.S. Trustee, and (v) the United States (in accordance with Bankruptcy Rule 2002(j)), and (vi) all known parties in interest by first-class mail, postage prepaid.  The notice described herein is adequate and no other or further notice is necessary.  The form of Notice of Confirmation substantially in the form annexed hereto as **Exhibit B** is approved.

22.    <u>Retention of Jurisdiction</u>

Following the Effective Date, the Court shall retain jurisdiction over the Chapter 11 Case to the maximum extent legally permissible, including, without limitation, for the following purposes:

(a) to hear and determine any and all objections to the allowance of any Claim, or any controversy as to the classification of Claims or any matters which may directly, indirectly or contingently affect the obligations of the Debtor to any Creditors, holders of Claims, or other parties in interest;

(b) to hear and determine any and all applications for compensation and reimbursement of expenses by Professionals;

(c) to hear and determine any and all pending motions for the assumption or rejection of executory contracts and unexpired leases, and to fix any Claims resulting therefrom;

(d) to adjudicate through final judgment such contested matters and adversary proceedings as may be pending or subsequently initiated in the Court including, but not limited to, the Causes of Action and the Creditor Related Causes of Action;

(e) to enforce and interpret the provisions of this Plan, the Confirmation Order, and the Plan Administrator Agreement;

(f) to hear and determine any matters relating to the appointment and replacement of the Plan Administrator;

(g) to issue any injunction or other relief appropriate to implement the intent of the Plan, and to enter such further orders enforcing any injunctions or other relief issued under the Plan or pursuant to the Confirmation Order;

(h) to modify the Plan pursuant to section 1127 of the Bankruptcy Code and the applicable Bankruptcy Rules;

(i) to correct any defect, cure any omission, or reconcile any inconsistency in this Plan, the Confirmation Order, or the Plan Administrator Agreement, as may be necessary to carry out the purposes and the intent of this Plan;

(j) to interpret and determine such other matters as the Confirmation Order may provide for, or as may be authorized under the Bankruptcy Code;

(k) to enter and implement such orders as may be appropriate in the event the Confirmation Order is, for any reason, stayed, reversed, revoked, modified or vacated; and

(l) to adjudicate any disputes between the members of the Oversight Committee or between the Oversight Committee and the Plan Administrator.

23.    Filing of Pre-Confirmation Monthly Operating Reports and Quarterly Post-Confirmation Reports

The Trustee shall file monthly operating reports through the Effective Date.  Following the

Effective Date, the Plan Administrator shall file on a quarterly basis post-confirmation reports until

the entry of the final decree, the conversion, or the dismissal of the case.  In addition, the Plan

Administrator shall pay all fees due under 28 U.S.C. § 1930 until the Chapter 11 Case is closed.

24.    <u>Applicable Non-Bankruptcy Law</u>

Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code and the provisions of

this order, the Plan shall apply and be enforceable notwithstanding any otherwise applicable

nonbankruptcy law.

25.    <u>Discovery Pursuant to Fed. R. Bankr. P. 2004</u>

As set forth in the Plan, the Plan Administrator is permitted to issue subpoenas and conduct

other examinations permitted under Bankruptcy Rule 2004 without the need for any additional or

further orders of the Court.  Any such subpoenas or discovery devices are without prejudice to the

recipient parties' rights to file a motion in this Court seeking relief from the subpoena or discovery

device pursuant to Federal Rules 26 and/or 45.

26.    <u>Resolution of Objections</u>

Caruso Home Builders, LLC together with Sage Estates Malta, LLC (collectively,

"Caruso") have filed claims (Claim Nos. 4-1 and 5-1; collectively, the "Caruso Claim") against

the Debtor's estate in connection with the claims asserted in the case captioned *Caruso Home

Builders, LLC et al., v. Prime Capital Ventures, LLC*, Index No. EF2024312, Supreme Court, State

of New York, County of Saratoga (the "Caruso Litigation").  For the avoidance of doubt, nothing

in this Order or the Plan, including but not limited to, Article 8 of the Plan,  shall be interpreted to

diminish or impair Caruso's right or ability to: (a) amend the Caruso Claim; (b) commence an

adversary proceeding against the Debtor's Estate in relation to the Caruso Claim or the claims

asserted in the Caruso Litigation, including but not limited to, an adversary proceeding to

determine the validity, extent and priority of the Debtor's mortgage or lien on certain real property

as referenced in the Caruso Litigation; (c) dispute that it owes the Debtor's Estate or is liable to

the Debtor's Estate for any Loan Receivable or Loan Receivables as referenced in the Disclosure Statement and Plan; or, (d) seek relief to from this Court to continue the Caruso Litigation, and all such rights referenced above are strictly preserved.  Similarly, the Trustee's rights with respect to the Caruso Claim, the Caruso Litigation, and any motion or adversary proceeding that may be filed by Caruso in the future are strictly preserved; however, the filing of any motion or adversary proceeding by Caruso against the Debtor's Estate shall not be considered untimely for the reason that said motion or adversary proceeding was filed after entry of this Order.

For the avoidance of doubt and notwithstanding anything stated in section 8.1(c) of the Plan, B and R Acquisition Partners, LLC and JHM Lending Ventures, LLC (collectively, the "B&R Parties"), which assert a judgment lien against the Debtor's Virginia Beach Property, shall retain all liens securing their claims and the right to proceeds from such property, as well as the right to exercise all their rights and remedies against such property as authorized by this Court's order, dated December 30, 2024 [Docket No. 107].  Subject to the rights of the Plan Administrator to assert claims for the avoidance of the B&R Parties' lien against the Virgina Beach Property under any theory in law or equity, the Ponzi scheme presumption shall not apply with respect to the B&R Parties' judgment lien, which was created by the affirmative actions of the adverse B&R Parties, as opposed to a voluntary transfer by the Debtor.  For the avoidance of doubt, (i) the Plan Administrator is not waiving any rights he may have to seek the avoidance of the B&R Parties' judgment lien on the basis that it constituted an actual fraudulent transfer, subject to any defenses the B&R Parties may assert, and (ii) the Ponzi scheme presumption shall apply to all other transfers of the property of the Debtor, subject to any rights and defenses of the recipients.  Unless otherwise ordered by this Court, the Plan Administrator shall reserve the full amount of any distribution that the B&R Parties may be entitled to receive as if their entire claim were an allowed, general,

26

unsecured Class 2 Claim, until resolution of the Forfeiture Action with respect to the Virigina Beach Property. Each of the Plan Administrator and the B&R Parties' rights, remedies, and claims against the others are fully reserved except as expressly stated hereinabove. Based upon the foregoing consensual resolution, the B&R Parties' objection to confirmation is deemed resolved and withdrawn.

The sentence at the top of p. 8 of the Disclosure Statement that states "[o]n January 16, 2024, Roglieri directed Hogan Lovells, on behalf of Prime, himself, and Humphrey, to file an emergency motion to, among other things, dismiss the Receivership Action" is hereby amended to state "[o]n January 16, 2024, Roglieri directed Hogan Lovells, on behalf of Prime, to file an emergency motion to, among other things, dismiss the Receivership Action".

27.    <u>Validity and Enforceability</u>

Each term and provision of the Plan is valid and enforceable pursuant to its terms.

28.    <u>Further Actions; Implementation</u>

The Trustee is authorized and directed to execute, deliver, file or record such documents, contracts, instruments, releases and other agreements and take such other or further actions as may be necessary to effectuate or further evidence the terms and conditions of the Plan.

29.    <u>Conflicts between Confirmation Order and Plan</u>

In the event of a conflict between the terms of the Plan and any contract, instrument, release or other agreement or document created or entered into in connection with the Plan, the terms of the Plan shall control over any such documents. In the event of a conflict between the terms of the Plan or any contract, instrument, release or other agreement or document entered into in connection with the Plan, and the terms of this Confirmation Order, on the other hand, the terms of this Confirmation Order shall control. In the event of a conflict between the information contained in the Disclosure Statement, on the one hand, and the terms of the Plan, this Confirmation Order or

any contract, instrument, release or other agreement or document entered into in connection with the Plan, on the other hand, the Plan, this Confirmation Order or any contract, instrument, release or other agreement or document entered into in connection with the Plan (as the case may be) shall control.

30.    <u>Reference to and Validity and Enforceability of Plan Provisions</u>

The failure to reference any particular provision of the Plan in this Confirmation Order shall not impair, prejudice, waive or otherwise affect the binding effect, enforceability or legality of such provisions, and such provisions shall have the same binding effect, enforceability or legality as every other provision of the Plan and this order.  Each term and provision of the Plan, as it may have been altered or interpreted by this Court, is valid and enforceable pursuant to its terms.

31.    <u>Closing of the Case</u>

The Chapter 11 Case shall be closed following the consummation of the Plan upon further application and approval of the Court.

32.    <u>Record Closed</u>

The record of the Confirmation Hearing is hereby closed.

33.    <u>Final Order</u>

This order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

###

**Exhibit A**

**Plan of Liquidation**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

In re:

PRIME CAPITAL VENTURES, LLC,     Case No. 24-11029-PGR
               Chapter 11

       Debtor.

## TRUSTEE'S PLAN OF LIQUIDATION PURSUANT
## TO CHAPTER 11 OF THE BANKRUPTCY CODE

**GERON LEGAL ADVISORS LLC**  **KLESTADT WINTERS JURELLER**
370 Lexington Avenue      **SOUTHARD & STEVENS, LLP**
Suite 1208         200 West 41st Street, 17th Floor
New York, New York 10017    New York, New York 10036
Tel: (646) 560-3224      Tel: (212) 972-3000
Yann Geron        Fax: (212) 972-2245
Nicole N. Santucci      Fred Stevens
            Lauren C. Kiss

*General Counsel to Yann Geron, Chapter* *Special Litigation Counsel to Yann Geron,*
 *11 Trustee of Prime Capital Ventures,*  *Chapter 11 Trustee of Prine Capital*
 *LLC*           *Ventures, LLC*

Dated: New York, New York
    December 16, 2025

**TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................1

ARTICLE 1 – DEFINITIONS AND RULES OF INTERPRETATION ........................................1

    A. Definitions ...............................................................................................1

    B. Rules of Interpretation ..............................................................................10

ARTICLE 2 – PAYMENT OF CLAIMS NOT REQUIRED TO BE CLASSIFIED ...................10

    2.1. Claims Not Classified ...........................................................................10

        (a) Administrative Expense Claims.............................................................10

        (b) Priority Tax Claims...........................................................................11

        (c) Professional Fee Claims and Receiver Professional Fee Claims...........................11

ARTICLE 3 – CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS .........................11

    3.1. Criterion of Class ................................................................................11

    3.2. Class Categories .................................................................................11

ARTICLE 4 – TREATMENT OF CLASSES OF CLAIMS AND EQUITY INTERESTS .........12

    4.1. Class 1 (Secured Claims) ......................................................................12

    4.2. Class 2 (General Unsecured Claims) ........................................................12

    4.3. Class 3 (Equity Interests) ......................................................................13

ARTICLE 5 – MEANS OF IMPLEMENTATION OF THE PLAN ............................................14

    5.1. Plan Funding .....................................................................................14

    5.2. Appointment of Plan Administrator..........................................................14

        (a) Appointment of Plan Administrator.......................................................14

        (b) Bond...........................................................................................14

        (c) Governance ..................................................................................14

(d) Succession Matters .................................................................................................14

(e) Funding of Plan Administrator's Activities ..........................................................15

(f) Indemnification .......................................................................................................15

5.3. Powers and Duties of Plan Administrator ...........................................................15

(a) Powers and Duties .................................................................................................15

5.4. Establishment of Oversight Committee ...............................................................17

(a) Appointment of Oversight Committee...................................................................17

(b) Reimbursement of Costs and Expenses ................................................................18

(c) Liability of Members of the Oversight Committee...............................................18

(d) Indemnification ......................................................................................................18

5.5. Establishment of Disputed Claim Reserves .........................................................18

Disputed Claim Reserves ..............................................................................................18

5.6. Preservation of Causes of Action..........................................................................19

5.7. General Disposition of Assets ................................................................................19

5.8. Exemption from Certain Transfer Taxes .............................................................19

5.9. Administrative Expense Claims Bar Date ............................................................20

5.10. Deadline for Filing Applications for Payment of Professional Fee Claims and Receiver Professional Fee Claims ..............................................................................20

5.11. Execution of Documents to Effectuate Plan .......................................................20

5.12. Dissolution of the Debtor ....................................................................................20

5.13. Post-Confirmation Reports and Fees .................................................................21

Reporting to Office of the United States Trustee..........................................................21

5.14. Insurance Preservation ........................................................................................21

ARTICLE 6 – TREATMENT OF EXECUTORY CONTRACTS & UNEXPIRED LEASES ....21

6.1. General Provisions ........................................................................................21

6.2. Notice of Deemed Rejection/Rejection Bar................................................21

6.3. Compensation and Benefit Programs..........................................................21

ARTICLE 7 – CONDITIONS PRECEDENT ............................................................21

7.1. Conditions Precedent to Confirmation of the Plan ....................................21

7.2. Conditions Precedent to the Effective Date ...............................................22

7.3. Waiver of Conditions Precedent ................................................................22

ARTICLE 8 – INJUNCTION; EXCULPATION........................................................22

8.1. General Injunctions....................................................................................22

(a) Injunctions Against Interference with Consummation or Implementation of Plan23

(b) Plan Injunction .........................................................................................23

(c) Release of Collateral .................................................................................23

8.2. Exculpation ................................................................................................23

8.3. No Bar to Claims Against Third Parties ....................................................24

8.4. All Distributions Received in Full and Final Satisfaction .........................24

8.5. No Modification..........................................................................................24

8.6. No Discharge of Claims..............................................................................24

ARTICLE 9 – PROVISIONS GOVERNING DISTRIBUTIONS ...............................24

9.1. Distributions by Plan Administrator ..........................................................24

9.2. Indefeasibility of Distributions ..................................................................24

9.3. Frequency of Distributions ........................................................................25

9.4. Payment in U.S. Dollars.............................................................................25

9.5. Clams in U.S. Dollars ................................................................................25

9.6. Distributions Only on Business Days ..........................................................................25

9.7. Transmittal of Payments and Notices ........................................................................25

9.8. Record Date for Distributions ....................................................................................25

9.9. Unclaimed Distributions ............................................................................................26

9.10. No Payments of Fractional Cents or Distributions of Less Than One Hundred
Dollars ................................................................................................................................26

9.11. Setoff and Recoupment ............................................................................................26

9.12. Payment of Taxes on Distributions Received Pursuant to the Plan .........................27

9.13. Compliance with Tax Withholding and Reporting Requirements ............................27

9.14. Disputed Distribution ...............................................................................................27

9.15. Claims Administration Responsibility .....................................................................27

    (a)  Reservation of Rights ............................................................................................27

    (b) Objection to Claims ...............................................................................................28

    (c)  Filing Objections ..................................................................................................28

    (d) Determination of Claims ........................................................................................28

9.16. Treatment of Claims without Further Order of the Court ........................................28

    (a)  Certain Scheduled Claims .....................................................................................28

    (b) Late Filed Claims .................................................................................................29

9.17. Disputed Claims .......................................................................................................29

9.18. Limitations on Funding of Disputed Claims Reserve ..............................................30

9.19. Tax Requirements for Income Generated by Disputed Claims Reserves .................30

9.20. Timing of Distributions on Disputed Claims Subsequently Allowed .....................30

9.21. No Payment or Distribution on Disputed Claims .....................................................30

ARTICLE 10 – PLAN INTERPRETATION, CONFIRMATION, AND VOTING ...................30

10.1. Procedures Regarding Objections to Designation of Classes as Impaired or Unimpaired ...................................................................................................................30

10.2. Withdrawal and Modification of Plan ....................................................................30

10.3. Governing Law .......................................................................................................31

10.4. Voting of Claims .....................................................................................................31

10.5. Acceptance by Impaired Class ...............................................................................31

10.6. Cram Down .............................................................................................................31

ARTICLE 11 – RETENTION OF JURISDICTION BY BANKRUPTCY COURT ...................31

ARTICLE 12 – MISCELLANEOUS PROVISIONS .................................................................32

12.1. Headings .................................................................................................................32

12.2. No Attorney's Fees .................................................................................................32

12.3. Notices ....................................................................................................................32

12.4. Binding Effect ........................................................................................................33

## **INTRODUCTION**

Yann Geron, as chapter 11 trustee (the "Trustee") of Prime Capital Ventures, LLC (the "Debtor" or "Prime") proposes this plan of liquidation (the "Plan") pursuant to section 1121 of the Bankruptcy Code.  The Trustee is the proponent of the Plan within the meaning of section 1129 of Title 11 of the United States Code (the "Bankruptcy Code"). A detailed discussion of the Debtor's history, business, and other pertinent information, as well as a summary and analysis of the Plan, are set forth in the Disclosure Statement, which has been filed contemporaneously herewith.  Any agreements and documents referenced in the Plan or Disclosure Statement are incorporated as if set forth in full therein and will be filed with the United States Bankruptcy Court for the Northern District of New York.

## **ARTICLE 1 - DEFINITIONS AND RULES OF INTERPRETATION**

### A. **Definitions**

The following terms, when used in this Plan, or any subsequent amendments or modifications thereof, shall have the respective meanings hereinafter set forth and shall be equally applicable to the singular and plural of terms defined.  A term that is used in the Plan and not defined herein, but that is defined in the Bankruptcy Code or in the Bankruptcy Rules, shall have the meaning set forth therein.  Any reference contained in the Plan to a particular exhibit, paragraph or article shall be deemed to be a reference to an exhibit, paragraph or article of the Plan.

**1.1** "Administrative Expense Claim" means a Claim for costs and expenses of administration allowed under sections 503(b) and 507(a)(2) including, without limitation, (a) any actual, necessary costs and expenses of preserving the Estate and winding down the Debtor's operations during the Chapter 11 Case, (b) any indebtedness or obligations incurred or assumed by the Debtor in the ordinary course of business in connection with the wind-down of the Debtor's operations during the Chapter 11 Case, (c) any Professional Fee Claims, whether fixed before or after the Effective Date, (d) any Receiver Professional Fee Claims, whether fixed before or after the Effective Date, (e) any costs and expenses for the management, maintenance, preservation, sale, or other disposition of any Assets incurred during the Chapter 11 Case, and (f) any fees or charges assessed against the Debtor's Estate under 28 U.S.C. § 1930.

**1.2** "Administrative Expense Claims Bar Date" shall have the meaning set forth in Section 5.9 of the Plan.

**1.3** "Allowed" means, when referring to a Claim, a Claim against the Debtor (i) proof of which was originally filed within the applicable period of limitation fixed by the Bankruptcy Court in accordance with Rule 3003(c)(3) of the Bankruptcy Rules and as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, a Final Order, or the Claims Objection Deadline, or as to which an objection has been interposed and such Claim has been allowed in whole or in part by a Final Order, (ii) a Claim which has been or hereafter is listed by the Debtor in its Schedules as liquidated in an amount and not disputed, contingent, or listed as zero, or (iii)

a Claim that is allowed by this Plan or Final Order of the Bankruptcy Court.  For purposes hereof, an "Allowed Claim" shall include any Claim arising from the recovery of property under sections 550 or 553 of the Bankruptcy Code and allowed in accordance with section 502(h) of the Bankruptcy Code, provided, however, that (i) a Claim allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered an "Allowed" Claim hereunder unless otherwise specified herein or by order of the Bankruptcy Court, (ii) an "Allowed" Claim shall not include interest, penalties, or late charges arising from or relating to the period from and after the Petition Date, as applicable, unless otherwise specifically provided for in the Plan, and (iii) an "Allowed" Claim shall not include any Claim subject to disallowance in accordance with section 502(d) of the Bankruptcy Code.

     **1.4**     "Assets" means any and all property of the Estate, including without limitation all property and other interests identified in section 541(a) of the Bankruptcy Code.  Without limiting the foregoing, Assets shall include all of the Debtor's tangible and intangible property, wherever located and whether acquired prior to or after the Petition Date, including, the Debtor's interest in the Richard Mille Watch, Loan Receivables, Cash, intellectual property, accounts, tangibles, intangibles, Causes of Action (including Avoidance Actions), together with the proceeds and products, replacements and accessions thereof.  Assets shall also include any Creditor Related Causes of Action assigned to the Estate in connection with the Plan.

     **1.5**     "Avoidance Action" means any Causes of Action to avoid or recover a transfer of property of the Estate or an interest of the Debtor in property, including, without limitation, actions arising under sections 506, 510, 541, 542, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code and any other applicable federal, state or common law.

     **1.6**     "Ballot" means the form distributed to a Holder of an Impaired Claim on which it is to be indicated whether such Holder accepts or rejects the Plan.

     **1.7**     "Bankruptcy Code" means title 11 of the United States Code, as amended, in effect and applicable to the Chapter 11 Case.

     **1.8**     "Bankruptcy Court" or "Court" means the United States Bankruptcy Court for the Northern District of New York wherein the Chapter 11 Case is pending.

     **1.9**     "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as promulgated by the Supreme Court of the United States, as amended, and any Local Rules of the Bankruptcy Court, as amended, in effect and applicable to the Debtor's Chapter 11 Case.

     **1.10**     "Business Day" means any day other than a Saturday, Sunday or a "legal holiday," as such term is defined in Bankruptcy Rule 9006(a).

     **1.11**     "Cash" means legal tender of the United States of America.

**1.12**    "<u>Causes of Action</u>" means any and all Claims, rights, actions, chose in action, suits, and causes of action belonging to the Debtor or its Estate and any and all liabilities, obligations, covenants, undertakings and debts owing to any of the Estate, whether arising prior to or after the Petition Date and in each case whether known or unknown, in law, equity or otherwise, including Avoidance Actions.

**1.13**    "<u>Chapter 11 Case</u>" means the case concerning the Debtor under chapter 11 of the Bankruptcy Code, administered under Case Number 24-11029 (PGR) in the Bankruptcy Court.

**1.14**    "<u>Claim</u>" means, as defined in Bankruptcy Code section 101(5): (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

**1.15**    "<u>Claim Transfer Document</u>" shall have the meaning set forth in Section 9.8 of this Plan.

**1.16**    "<u>Claims Bar Date</u>" means the earliest applicable deadline established by any Order of the Bankruptcy Court for the filing of a Proof of Claim by a Creditor, including the *Amended Order Fixing Deadlines to File Proofs of Claim* [Docket No. 29] entered on September 26, 2024.

**1.17**    "<u>Claims Objection Deadline</u>" means, unless otherwise extended by Order of the Court, the first Business Day that is 180 days after the Effective Date.

**1.18**    "<u>Class</u>" means a category of Claims or Equity Interests described in Article 3 of the Plan.

**1.19**    "<u>Collateral</u>" means any property or interest in property of the Estate subject to a Lien, charge or other encumbrance to secure the payment or performance of a Claim, which Lien, charge or other encumbrance is not subject to avoidance under the Bankruptcy Code.

**1.20**    "<u>Confirmation Date</u>" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket.

**1.21**    "<u>Confirmation Order</u>" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code, as the Plan may be amended by its terms and consistent with applicable law, and any findings of fact and conclusions of law contained in the Confirmation Order or a separate document entered substantially contemporaneously therewith.

**1.22**    "Creditor" means any Person holding a Claim against the Debtor or, pursuant to section 102(2) of the Bankruptcy Code, against property of the Debtor, that arose or is deemed to have arisen on or prior to the Petition Date, including, without limitation, a Claim against the Debtor of the kind specified in Bankruptcy Code sections 502(g), 502(h) or 502(i).

**1.23**    "Creditor Assignments" means the voluntary assignment of all Creditor Related Causes of Action to the Estate for pursuit by the Plan Administrator for the benefit of Creditors who provided Creditor Assignments.

**1.24**    "Creditor Assignors" means any Holders of Allowed Class 2 Claims that provide Creditor Assignments to the Plan Administrator and thereby acquire a right to participate in the Creditor Related Causes of Action Fund.

**1.25**    "Creditor Related Causes of Action" means any and all Claims, rights, actions, chose in action, suits, and causes of action belonging to Creditors of the Debtor or its Estate, rather than the Debtor or its Estate, but that are related to Debtor's and Roglieri's conduct of the Debtor's businesses.  Creditor Related Causes of Action include, but may not be limited to: (i) any Claims against the Debtor's former attorneys, accountants, auditors, or other professionals, in connection with aiding and abetting any breach of fiduciary duty owed by Roglieri to the Debtor or its Creditors, fraud, aiding and abetting fraud on the part of the Debtor or Roglieri, or otherwise; (ii) any Claims against banks or any other financial institutions used by the Debtor or Roglieri, or that are involved in transactions with the Debtor, in connection with aiding and abetting any breach of fiduciary duty owed by Roglieri to the Debtor and/or its Creditors, fraud, aiding and abetting fraud on the part of the Debtor or Roglieri, or otherwise; and (iii) any other Claims against third parties that if pursued by the Debtor or its estate may be subject to the defense of *in pari delicto* or the Wagoner Rule.

**1.26**    "Creditor Related Causes of Action Fund" means the fund maintained by the Plan Administrator comprised of all recoveries by the Plan Administrator on any Creditor Related Causes of Action.

**1.27**    "Debtor" means Prime Capital Ventures, LLC.

**1.28**    "Deficiency Claim" means that portion of any Allowed Claim held by a Holder of a Secured Claim that exceeds the value distributed on account of such Allowed Claim pursuant to the treatment of such Allowed Claim in Class 1 in the Plan.

**1.29**    "Disallowed" means, when referring to a Claim (including a Scheduled Claim) or Equity Interest, or any portion of a Claim or Equity Interest, which has been disallowed or expunged by a Final Order.

**1.30**    "Disclosure Statement" means the disclosure statement for the Plan, and all exhibits annexed thereto or otherwise filed in connection therewith, approved by the Bankruptcy Court in accordance with section 1125 of the Bankruptcy Code.

**1.31**    "Disclosure Statement Approval Order" means the Final Order of the Bankruptcy Court approving the Disclosure Statement in accordance with section 1125 of the Bankruptcy Code.

**1.32**    "Disputed" means, with respect to a Claim against the Debtor or Equity Interest, the extent to which the allowance of such Claim or Equity Interest is the subject of a timely objection, complaint or request for estimation in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Confirmation Order, or is otherwise disputed in accordance with applicable law, which objection, request for estimation, or dispute has not been withdrawn with prejudice, or determined by a Final Order.

**1.33**    "Disputed Claims Reserve" means the segregated accounts established by the Plan Administrator, as necessary, consistent with Section 9.17 of the Plan.

**1.34**    "Distribution" means any distribution made pursuant to the terms of this Plan.

**1.35**    "Distribution Agent" means the entity, if any, to be engaged by the Plan Administrator to make Distributions under the Plan.  If no such entity is engaged, then the Distribution Agent shall be the Plan Administrator.

**1.36**    "Distribution Date" means any date on which a Distribution is made to Holders of Allowed Claims under this Plan.

**1.37**    "Distribution Record Date" shall have the meaning set forth in Section 9.8 of this Plan.

**1.38**    "Effective Date" shall mean the first day on which the Confirmation Order has become a Final Order and on which all of the conditions to the Effective Date in the Plan have been satisfied or waived.

**1.39**    "Estate" means the Debtor's bankruptcy estate created pursuant to section 541 of the Bankruptcy Code on the Petition Date.

**1.40**    "Equity Interest" means the ownership and related rights and interests of the Roglieri Bankruptcy Estate, pursuant to any applicable law, in and to the Debtor.

**1.41**    "Fee Application Deadline" shall have the meaning set forth in Section 5.10 of the Plan.

**1.42**    "Final Order" means an order or judgment of the Bankruptcy Court as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for reargument or rehearing shall then be pending; provided, however, if an appeal, or writ of certiorari, reargument or rehearing thereof has been filed or sought, such order shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied or reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any

5

further appeal, petition for certiorari or move for reargument or rehearing shall have expired; <u>provided</u>, <u>further</u>, that the possibility that a motion under section 502(j) of the Bankruptcy Code, Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be but has not then been filed with respect to such order, shall not cause such order not to be a Final Order.

**1.43** "<u>General Unsecured Claim</u>" means any Unsecured Claim against the Debtor that is not an Administrative Expense Claim, Priority Tax Claim, or Priority Non-Tax Claim.  For the avoidance of doubt, any Deficiency Claim shall be a General Unsecured Claim.

**1.44** "<u>Government</u>" means the United States of America.

**1.45** "<u>Government Stipulation</u>" means that certain stipulation by and among (i) the Roglieri Trustee, (ii) the Debtor, and (iii) the United States of America, which was "So Ordered" by the Court on January 29, 2025, and filed at Docket No. 136.

**1.46** "<u>Governmental Bar Date</u>" means March 17, 2025, the deadline for governmental units (as defined in section 101(27) of the Bankruptcy Code) to file a proof of claim in respect of a prepetition claim against the Debtor, as set forth in the *Amended Order Fixing Deadlines to File Proofs of Claim* [Docket No. 29] entered on September 26, 2024.

**1.47** "<u>Holder</u>" means any person that holds a Claim against or Equity Interest in the Debtor.

**1.48** "<u>Impaired</u>" means "impaired" within the meaning of section 1124 of the Bankruptcy Code.

**1.49** "<u>Insurance Policies</u>" means any policy of insurance and any agreements relating thereto that may be available to provide coverage for Claims against the Debtor, its officers, directors, trustees, or any other Person.

**1.50** "<u>Lien</u>" means a "lien" as defined by section 101(37) of the Bankruptcy Code.

**1.51** "<u>Loan Receivables</u>" means the loans funded by the Debtor, in whole or in part, to third parties including, but not limited to, the following parties: (i) SRA-CH Richland LLC; (ii) Brightsmith Tulsa LLP; (iii) Hudson & Hudson, LLC; (iv) Indigo Pharmaceutical LLC; (v) Caruso Home Builders, LLC; and (vi) 135 Railroad, LLC.

**1.52** "<u>Oversight Committee</u>" means the committee appointed as of the Effective Date pursuant to the Plan and as identified in the Plan Supplement.

**1.53** "<u>Person</u>" means any individual, corporation, partnership, association, joint venture, limited liability company, limited liability partnership, estate, trust, receiver, trustee, unincorporated organization or governmental unit or subdivision thereof or other entity.

**1.54**    "Petition Date" means September 16, 2024, the date the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing the Chapter 11 Case.

**1.55**    "Plan" means this Plan and any exhibits or schedules annexed hereto or otherwise filed in connection with the Plan, and any documents delivered in connection herewith, as the same may be amended or modified from time to time by any duly authorized and permitted amendment or modification.

**1.56**    "Plan Administrator" means Yann Geron.

**1.57**    "Plan Administrator Agreement" means the agreement between the Debtor and the Plan Administrator, which shall be filed with the Bankruptcy Court as part of the Plan Supplement.

**1.58**    "Plan Proponent" means the Trustee.

**1.59**    "Plan Supplement" means the supplement to the Plan that includes documents and instruments required to implement the Plan, including, without limitation, the Plan Administrator Agreement, which shall be filed with the Bankruptcy Court not later than ten (10) days before the deadline to object to confirmation of the Plan established by the Scheduling Order.

**1.60**    "Post-Confirmation Estate" means the Debtor's Estate following the Effective Date.

**1.61**    "Post-Confirmation Estate Fund" means all Cash or other assets that may be liquidated and reduced to Cash, of the Estate as of the Effective Date or thereafter by the Plan Administrator, except for that included in any Disputed Claim Reserve.

**1.62**    "Post-Confirmation Expenses" means the administrative expenses accruing after the Effective Date, including without limitation, all fees and expenses of the Plan Administrator, and any professionals retained by the Plan Administrator.

**1.63**    "Priority Non-Tax Claim" means an Unsecured Claim against the Debtor, other than an Administrative Expense Claim, a Priority Tax Claim, or a General Unsecured Claim, which is entitled to priority in payment under sections 507(a)(3), (4), (5), (6), (7), or (9) of the Bankruptcy Code.

**1.64**    "Priority Tax Claim" means an Unsecured Claim or a portion of an Unsecured Claim of a governmental unit against the Debtor which is entitled to priority in payment under sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**1.65**    "Professional Fee Claim" means any Claim of a Professional retained in the Chapter 11 Case pursuant to sections 327 or 1103 of the Bankruptcy Code, for compensation or reimbursement of costs and expenses relating to services incurred prior to and including the Effective Date, when and to the extent any such Claim is allowed by the Bankruptcy Court pursuant to sections 330, 331, 503(b), or 1103 of the Bankruptcy Code.

**1.66**   "Professionals" means those professional persons, including lawyers, financial advisors, and accountants and other professionals retained by the Debtor or the Trustee.

**1.67**   "Proof of Claim" means a proof of Claim filed against the Debtor in the Chapter 11 Case by the applicable Bar Date.

**1.68**   "Receiver" means Paul A. Levine in his capacity as the federal equity receiver appointed by the Court in the Receiver Action on or around January 12, 2024.

**1.69**   "Receiver Action" means the matter pending or previously pending in the United States District Court for the Northern District of New York captioned *Compass-Charlotte 1031, LLC v. Prime Capital Ventures, LLC, et al.*, Case No. 24-cv-55 (MAD/DJS) (N.D.N.Y.).

**1.70**   "Receiver Professionals" means those attorneys, financial advisors, accountants, and other professional Persons or firms lawfully retained by the Receiver.

**1.71**   "Receiver Professional Fee Claim" means any Claim of the Receiver or Receiver Professional lawfully retained by the Receiver in connection with the Receiver Action including with the filing and prosecution of the Debtor's prior bankruptcy case previously pending before the Bankruptcy Court (Case No. 24-10531), for compensation or reimbursement of costs and expenses relating to services incurred prior to the Petition Date, when and to the extent any such Claim is allowed by the Bankruptcy Court pursuant to sections 503(b) or 543(c) of the Bankruptcy Code.

**1.72**   "Records" means the Debtor's original hardcopy files and records stored by the Debtor or Plan Administrator, and electronic data on hard drives or other storage devices and media.

**1.73**   "Richard Mille Watch" means the Debtor's interest in the Richard Mille Skull Tourbillon watch.

**1.74**   "Roglieri" means Kris Daniel Roglieri.

**1.75**   "Roglieri Bankruptcy Estate" means Roglieri's bankruptcy estate created pursuant to section 541 of the Bankruptcy Code on February 15, 2024, the date Roglieri filed a voluntary petition for relief under subchapter V of Chapter 11 of the Bankruptcy Code with the Bankruptcy Court, commencing Case No. 24-10157.

**1.76**   "Roglieri Trustee" means Christian H. Dribusch, solely in his capacity as chapter 7 Trustee of the Roglieri Bankruptcy Estate during the period from May 15, 2024 until in or around May 23, 2025.

**1.77**   "Scheduled Claim" means a Claim that is listed in the Debtor's Schedules.

**1.78** "Schedules" means a set of schedules of assets and liabilities, schedules of executory contracts and unexpired leases, statement of financial affairs, and other schedules and statements filed by the Debtor pursuant to Federal Rule of Bankruptcy Procedure 1007, and any amendments thereto.

**1.79** "Secured Claim" means a Claim secured by a Lien, as that term is defined in section 101(37) of the Bankruptcy Code, including, but not limited to, a judicial lien as that term is defined at section 101(36) of the Bankruptcy Code, against any property of the Estate, but only to the extent of the value, as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code and Bankruptcy Rule 3012 or as otherwise agreed to, of such Creditor's interest in the Debtor's interest in such property.

**1.80** "Scheduling Order" means the order of the Bankruptcy Court scheduling a combined hearing on (i) approval of the Disclosure Statement, and (ii) confirmation of the Plan.

**1.81** "Subject Vehicles" means the four (4) vehicles titled in Roglieri's name and seized by the Government in connection with Roglieri's criminal investigation, as identified in greater detail in the Government Stipulation, and to be included in the Debtor's bankruptcy estate pursuant to the terms of the Government Stipulation.

**1.82** "Successor Roglieri Trustee" means Marianne T' O'Toole, solely in her capacity as chapter 7 Trustee of the Roglieri Bankruptcy Estate beginning on May 27, 2025.

**1.83** "Tax Information" shall have the meaning set forth in Section 9.12(a) of this Plan.

**1.84** "Tax Information Request" shall have the meaning set forth in Section 9.12(b) of this Plan.

**1.85** "Unclaimed Distribution" means any Distribution that is unclaimed after ninety (90) days following any Distribution Date. Unclaimed Distributions shall include, without limitation: (i) checks (and the funds represented thereby) which have been returned as undeliverable without a proper forwarding address; (ii) funds representing checks which have not been paid; and (iii) checks (and the funds represented thereby) which were not mailed or delivered because of the absence of a valid address.

**1.86** "Unsecured Claim" means any Claim which is not secured by an offset or "lien," as that term is defined in section 101(37) of the Bankruptcy Code, including, but not limited to, a "judicial lien" as that term is defined at section 101(36) of the Bankruptcy Code, against any property of the Estate, but only to the extent of the "value," as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code and Bankruptcy Rule 3012, or as otherwise agreed to, of such Creditor's interest in the Debtor's interest in such property. For the avoidance of doubt, the term "Unsecured Claim" includes any Deficiency Claim.

**1.87** "U.S. Trustee" means any and all representatives and employees of the Office of the United States Trustee for Region 2, Northern District of New York, Albany Division.

9

**1.88** "Victim Fund" means the segregated account established from the net proceeds of the Subject Vehicles to be distributed to the victims of the Debtor's fraud.

**1.89** "Voting Record Date" means December 16, 2025.

**B.  Rules of Interpretation**

For purposes of this Plan: (a) where appropriate in the relevant context, each term, whether stated in the singular or the plural, will include both the singular and the plural;  (b) unless otherwise provided in the Plan, any references in the Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) unless otherwise provided in the Plan, any reference in the Plan to an existing document or appendix filed or to be filed means such document or appendix, as it may have been or may be amended, modified or supplemented pursuant to the Plan; (d) unless otherwise specified herein, any reference to a Person as a Holder of a Claim includes that Person's successors and assigns; (e) unless otherwise specified, all references in the Plan to Sections and Articles are references to Sections and Articles of or to the Plan; (f) the words "herein", "hereto" and "hereof" refer to the Plan in its entirety rather than to a particular portion of the Plan; and (g) the rules of construction set forth in section 102 of the Bankruptcy Code will apply to the Plan.  To the extent that the Plan is inconsistent with the Disclosure Statement or provisions of the documents comprising the Plan Supplement, unless such document specifically states otherwise, the provisions of the Plan shall be controlling.

**ARTICLE 2 - PAYMENT OF CLAIMS NOT REQUIRED TO BE CLASSIFIED**

**2.1**    **Claims Not Classified**

No class is designated for Administrative Expense Claims, Professional Fee Claims, Receiver Professional Fee Claims, and Priority Tax Claims.

(a)    Administrative Expense Claims

All Allowed Administrative Expense Claims, other than Professional Fee Claims and Receiver Professional Fee Claims, shall be paid by the Plan Administrator from the Post-Confirmation Estate Fund, in Cash, in such amounts as are incurred in the ordinary course of the liquidation of the Debtor, or in such amounts as may be Allowed by the Bankruptcy Court (a) as soon as practicable following the later of the Effective Date or the date upon which the Court enters a Final Order allowing any such Administrative Expense Claim, or (b) upon such other terms as may exist in accordance with the ordinary course of the Debtor's liquidation, or (c) as may be agreed upon between the holder of any such Administrative Expense Claim and the Plan Administrator.  In the event there exists any Disputed Administrative Expense Claims on the Effective Date, the Plan Administrator shall hold and maintain Cash in an amount equal to that portion of a Disputed Claims Reserve attributable to all Disputed Administrative Expense Claims until such dispute is resolved consensually or by order of the Bankruptcy Court. Administrative Expense Claims are not Impaired by the Plan.

(b)    Priority Tax Claims

On the Effective Date, or as soon thereafter as is reasonably practical, in full and final satisfaction of such Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive (a) an amount in Cash equal to the Allowed amount of such Priority Tax Claim to be paid from the Post-Confirmation Estate Fund, or (b) such other treatment as to which the Plan Administrator and the holder of such Allowed Priority Tax Claim shall have agreed upon in writing.  In the event any Disputed Priority Tax Claims exist on the Effective Date, the Plan Administrator shall hold and maintain Cash in an amount equal to that portion of a Disputed Claims Reserve attributable to all Disputed Priority Tax Claims until such dispute is resolved consensually or by order of the Bankruptcy Court.  Priority Tax Claims are not Impaired by the Plan.

(c)    Professional Fee Claims and Receiver Professional Fee Claims

The Plan Administrator shall pay all Professional Fee Claims and Receiver Professional Fee Claims from the Post-Confirmation Estate Fund in the amount Allowed by the Bankruptcy Court as soon as practicable after entry of a Final Order awarding such compensation and reimbursement of expenses pursuant to proper application in accordance with Section 5.10 hereof.  In the event any Disputed Professional Fee Claims or Disputed Receiver Professional Fee Claims exist on the Effective Date, the Plan Administrator shall hold and maintain Cash in an amount equal to that portion of a Disputed Claims Reserve attributable to all Disputed Professional Fee Claims and Receiver Professional Fee Claims until such dispute is resolved consensually or by order of the Bankruptcy Court.  Professional Fee Claims and Receiver Professional Fee Claims are not Impaired by the Plan.

## ARTICLE 3 - CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

### 3.1    Criterion of Class

A Claim is in a particular Class only to the extent that the Claim qualifies within the description of that Class, and is in a different Class or Classes to the extent that the remainder of the Claim qualifies within the description of the different Class or Classes.

### 3.2    Class Categories

The following classes of Claims and Equity Interests are designated pursuant to and in accordance with section 1123(a)(1) of the Bankruptcy Code, which Classes shall be mutually exclusive:

| Class | Claim | Treatment | Status | Voting Rights |
|-------|-------|-----------|--------|---------------|
| Class 1 | Secured Claims | Plan § 4.1 | Unimpaired | Presumed to Accept |
| Class 2 | General Unsecured Claims | Plan § 4.2 | Impaired | Entitled to Vote |

| Class | Claim | Treatment | Status | Voting Rights |
|-------|-------|-----------|--------|---------------|
| Class 3 | Equity Interests | Plan § 4.3 | Impaired | Presumed to Reject |

## ARTICLE 4 - TREATMENT OF CLASSES OF CLAIMS AND EQUITY INTERESTS

The following treatment of and consideration to be received by Holders of Allowed Claims and Equity Interests pursuant to this Plan shall be in full and final satisfaction, settlement, release and discharge of and in exchange for such Allowed Claims and Equity Interests.

### 4.1    Class 1 (Secured Claims)

On the Effective Date, or as soon thereafter as is reasonably practical, each holder of an Allowed Secured Claim shall receive either (i) delivery of collateral securing such Allowed Secured Claim, (ii) the net proceeds, if any, of the sale or other disposition of the Assets on which such Holder has a Lien; or (iii) such other, less favorable treatment as may be agreed to in writing by the holder of such Allowed Secured Claim and the Plan Administrator. Any Deficiency Claim which may arise on account of the lack of Collateral or otherwise resulting from the aforesaid treatment shall be treated as a Class 2 General Unsecured Claim.

Class 1 is Unimpaired and Holders of Class 1 Secured Claims are presumed to accept the foregoing treatment and therefore are not entitled to vote on the Plan.

### 4.2    Class 2 (General Unsecured Claims)

Class 2 consists of General Unsecured Claims in the Chapter 11 Case that are asserted, filed or scheduled against the Debtor. Each Holder of an Allowed General Unsecured Claim shall receive their *pro rata* share from the remaining portion of the Post-Confirmation Estate Fund, after satisfaction in full of senior Claims. The *pro rata* share of each Holder's Allowed Class 2 Claim shall be determined by a formula, the numerator of which is the then unsatisfied amount of such Holders' Class 2 Allowed Claim and the denominator of which is the aggregate unsatisfied amount of the remaining Allowed Class 2 Claims.

Distributions to holders of Allowed Class 2 Claims shall be made by the Plan Administrator from the Post-Confirmation Estate Fund until all Allowed Class 2 Claims are paid in full or the Post-Confirmation Estate Fund is depleted.

Class 2 is Impaired and Holders of General Unsecured Claims are therefore entitled to vote on the Plan.

Creditor Assignors, Holders of Allowed Class 2 Claims that choose to execute a Creditor Assignment and assign their Creditor Related Causes of Action to the Plan Administrator for prosecution, shall receive, after payment and satisfaction of any outstanding Post-Confirmation Expenses, such Creditor Assignors' *pro rata* share of the Creditor Related Causes of Action Fund. Unless otherwise fixed by the Bankruptcy Court, each Creditor Assignor's share of the

Creditor Related Causes of Action Fund shall be presumed to be *pro rata* based upon the amount of such Creditor Assignor's outstanding Allowed Class 2 Claim. However, the Plan Administrator retains the right to seek an adjustment of each Claim Assignor's distributive share of any Creditor Related Causes of Action Fund if warranted.

Holders of Allowed Class 2 Claims that choose not to assign their Creditor Related Causes of Action to the Plan Administrator shall be permitted to pursue any such claims individually but shall have no right to participate in the Creditor Related Causes of Action Fund, if any.

Pursuant to the Government Stipulation, holders of Allowed Class 2 Claims will be permitted to share *pro rata* in the Victim Fund comprised of the net proceeds of the Subject Vehicles and other seized property voluntarily turned over to the Debtor, the Trustee, or the Plan Administrator by the Government unless the Government determines that any holders of Allowed Class 2 Claims are not Victims of the Debtor's fraud, in which case such holders of Allowed Class 2 Claims will be excluded from the sharing in distributions from the Victim Fund, but will retain the right and ability to share in all other distributions to which holders of Allowed Class 2 Claims are entitled under the Plan. The determination of who qualifies as a Victim and the amount of such Victim's pecuniary loss will be determined by the Government in the normal course pursuant to the process set forth in Section II(B)(vii) of the Disclosure Statement. If at the time the Plan Administrator seeks to make a distribution from the Victim Fund and the Government has not fully and finally determined the list of Victims and the amount of their claims, then in accordance with the terms of the Government Stipulation, each holder of an Allowed Class 2 Claim will be deemed to be a Victim by the Plan Administrator and the list of all Allowed Class 2 Claims will be transmitted to the U.S. Attorney which shall have thirty (30) days to review the list of Allowed Class 2 Claims and raise any objection to the inclusion of such claimants participating in the Victim Fund. Otherwise, if the U.S. Attorney has not yet established its list of Victims and determined each Victim's pecuniary loss, and fails to object to the inclusion of any Allowed Class 2 Claims as participants in the Victim Fund, then each holder of an Allowed Class 2 Claim shall be permitted to share in the Victim Fund on a *pro rata* basis based on the amount of their Allowed Claim.[1] The Plan Administrator's administration of the Victim Fund will be overseen by the Oversight Committee consistent with all other activities of the Plan Administrator under the Plan.

### 4.3    Class 3 (Equity Interests)

Class 3 consists of the Equity Interests in the Debtor. Class 3 Equity Interests are Impaired as they will receive no Distribution under the Plan. Class 3 Equity Interests are deemed to reject the Plan and, as such, are not entitled to vote to accept or reject the Plan.

---

[1] The costs associated with administering the Victim Fund shall be born by Prime's bankruptcy estate, which has been compensated by way of the $25,000 payment pursuant to the Government Stipulation. To the extent that the Plan Administrator is requested by the Government to administer any other assets subject to Forfeiture Claims, the Plan Administrator shall deduct and retain three (3%) percent of the net proceeds of such additional assets in order to offset the costs of administering them and making distributions from the Victim Fund.

On the Effective Date, all Class 3 Equity Interests will be deemed canceled, null and void and of no force and effect.

## ARTICLE 5 - MEANS OF IMPLEMENTATION OF THE PLAN

### 5.1   Plan Funding

The Plan shall be funded by a combination of the proceeds of sale of the Debtor's Assets and proceeds from liquidation of remaining Assets.  The Plan Administrator shall utilize the Post-Confirmation Estate Fund and in certain cases, the Creditor Related Causes of Action Fund, for purposes of making distributions to holders of Allowed Claims in Classes 1 and 2 after payment of Allowed Administrative Expense Claims and reserving for Disputed Claims.

### 5.2   Appointment of Plan Administrator

(a)   Appointment of Plan Administrator. The Confirmation Order shall provide for the appointment of the Plan Administrator.  The Plan Administrator shall be deemed the Post-Confirmation Estate's exclusive representative in accordance with section 1123 of the Bankruptcy Code and shall have all powers, authority and responsibilities specified under sections 704 and 1106 of the Bankruptcy Code.

(b)   Bond. The Plan Administrator shall serve without a bond. The Oversight Committee, at its option, may require the Plan Administrator to obtain a bond, provided that there is sufficient Cash available in the Post-Confirmation Estate Fund to purchase a bond.

(c)   Governance. The Plan Administrator shall be governed by the Plan and the Plan Administrator Agreement.

(d)   Succession Matters.  In the event the Plan Administrator dies, is terminated, or resigns for any reason, the Oversight Committee shall designate a successor. If the Oversight Committee is unable to designate such a successor, the Bankruptcy Court may appoint a successor Plan Administrator from any candidate proposed by a party in interest.  Such successor Plan Administrator shall be deemed to succeed the Plan Administrator in all respects, without the need for further order of the Bankruptcy Court.  In the event of resignation or removal of the Plan Administrator, the departing Plan Administrator shall promptly (a) execute and deliver such documents, instruments and other writings as reasonably requested by the successor Plan Administrator or as ordered by the Bankruptcy Court; (b) turn over to the successor Plan Administrator all property of the Estate in his or her possession, custody and control, including, but not limited to all funds held in bank accounts, and all files, books and records and other documents and information related to the Debtor; and (c) otherwise assist and cooperate in affecting the assumption of his or her obligations and functions by the successor Plan Administrator.  The successor Plan Administrator may, in his or her discretion, retain such professionals as he or she deems necessary, including the Professionals of the departing Plan Administrator.  If the Plan Administrator is replaced, the Professionals retained by the Plan Administrator shall be entitled to payment of their reasonable, undisputed fees and expenses

14

from the Post-Confirmation Estate Fund through the date of the Plan Administrator's replacement.

(e)     <u>Funding of Plan Administrator's Activities</u>. The source of payment for the Plan Administrator and his or her professionals shall be from the Post-Confirmation Estate Fund and any Creditor Related Causes of Action Fund as applicable, and any additional recoveries by the Post-Confirmation Estate after the confirmation of the Plan.

(f)     <u>Indemnification</u>. The Plan Administrator and his or her designees, employees or professionals or any duly designated agent or representative of the Plan Administrator shall not be liable for any act or omission taken or omitted to be taken in their respective capacities other than for acts or omissions resulting from willful misconduct, gross negligence, or fraud as determined by Final Order of the Bankruptcy Court.  The Plan Administrator may, in connection with the performance of his or her functions, and in his or her sole and absolute discretion, consult with attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in good faith reliance on the advice or opinions rendered by such attorneys, accountants, financial advisors and agents, or any Final Order of the Bankruptcy Court.  Notwithstanding such authority, the Plan Administrator shall not be under any obligation to consult with attorneys, accountants, financial advisors or agents, and his or her determination not to do so shall not result in the imposition of liability, unless such determination is based on willful misconduct, gross negligence or fraud as determined by Final Order of the Bankruptcy Court.  The Debtor shall indemnify and hold harmless the Plan Administrator and his or her designees and Professionals, and all duly designated agents and representatives (in their capacity as such) from and against all liabilities, losses, damages, claims, costs and expenses, including, but not limited to attorneys' fees and costs arising out of or due to such actions or omissions, or consequences of their actions or omissions with respect or related to the performance of their duties or the implementation or administration of this Plan; <u>provided however</u>, that no such indemnification will be made to such Persons for such actions or omissions as a result of willful misconduct, gross negligence or fraud.

### 5.3     **Powers and Duties of Plan Administrator**

(a)     <u>Powers and Duties</u>. On the Effective Date, the Plan Administrator shall succeed to all of the rights of the Trustee and the Debtor's Estate as otherwise provided herein, with all powers necessary to protect, conserve, and liquidate all Assets, including, without limitation, control over (including the right to waive) all attorney-client privileges, work-product privileges, accountant-client privileges and any other evidentiary privileges relating to the Assets that, prior to the Effective Date, belonged to the Trustee or the Debtor pursuant to applicable law.  The powers and duties of the Plan Administrator shall include, without further order of the Court, except where expressly stated otherwise, the rights:

  i.    to open and close bank accounts for the Post-Confirmation Debtor and its Estate as the sole signatory, invest Cash in accordance with section 345 of the Bankruptcy Code, and withdraw and make distributions of Cash to Holders of Allowed Claims and pay taxes and other obligations in connection with the wind-down of the Post-Confirmation Estate in accordance with the Plan;

ii.    to engage attorneys, consultants, agents, employees and all professional persons, to assist the Plan Administrator with respect to the Plan Administrator's responsibilities, including professional persons that may have represented the Debtor or Trustee prior to confirmation of the Plan;

iii.    to execute and deliver all documents, and take all actions, necessary to consummate the Plan and wind-down the Post-Confirmation Estate;

iv.    to act on behalf of the Debtor and the Post-Confirmation Estate in all adversary proceedings and contested matters (including, without limitation, any Avoidance Actions, Causes of Action, and Creditor Related Causes of Action to the extent of Creditor Assignments), then pending or that may be commenced in the Court and in all actions and proceedings pending or commenced elsewhere, and, subject to consultation with the Oversight Committee as stated below, to settle, retain, enforce, or dispute any adversary proceedings or contested matters (including, without limitation, any Causes of Action or Creditor Related Causes of Action to the extent of Creditor Assignments) and otherwise pursue actions involving Assets that could arise or be asserted at any time under the Bankruptcy Code or otherwise, unless otherwise specifically waived or relinquished in the Plan;

v.    to investigate the financial affairs of the Debtor and any of its affiliates, parents, partners, or subsidiaries, including through the issuance of formal subpoenas pursuant to Bankruptcy Rule 2004 without the need for the issuance of additional Bankruptcy Court orders beyond the Confirmation Order;

vi.    to negotiate and accept assignments of claims, demands, and causes of action for the benefit of the Holders of Creditor Related Causes of Action, upon determining in the Plan Administrator's discretion that such claims, demands, and causes of action assert colorable and meritorious claims, and to recognize the claims of the assignor for purposes of participating in and receiving a distribution from the Creditor Related Causes of Action Fund;

vii.    upon consultation with the Oversight Committee, to determine whether to bring, settle, release, or compromise Avoidance Actions, Causes of Action, and Creditor Related Causes of Action without the need for Court approval (all compromises must be approved by the Oversight Committee or the Court to the extent the Oversight Committee objects);

viii.    to dispose of, and deliver title to or otherwise realize the value of, all the remaining Assets;

ix.    to coordinate the storage, maintenance and disposal of the Records as he or she determines in his or her reasonable discretion in compliance with any applicable state and federal rules;

x.    to dissolve the Debtor in accordance with Section 5.12 of the Plan;

xi.    to oversee compliance with the Debtor's accounting, finance and reporting obligations;

xii.    to prepare United States Trustee quarterly reports and financial statements, and such other reports and financial statements as may be necessary or helpful to the Plan Administrator to carry out his or her duties, and to manage the calculation and disbursement of U.S. Trustee fees;

xiii.    to oversee the filing of final tax returns, audits and other corporate dissolution documents if required;

xiv.    upon consultation with the Oversight Committee, to object to Claims against the Debtor and its Estate;

xv.    upon consultation with the Oversight Committee, to seek an adjustment of Creditor Assignors' entitlements to a share of the Creditor Related Causes of Action Fund to something other than *pro rata* based upon the amount of the Creditor Assignor's Allowed Class 2 Claim;

xvi.    with the Oversight Committee, to compromise and settle Claims by and against the Debtor and its Estate without the need for Bankruptcy Court approval (to the extent the Oversight Committee declines to approve a compromise recommended by the Plan Administrator, the Plan Administrator may seek Bankruptcy Court approval of such compromise over the objection of the Oversight Committee);

xvii.    to perform any additional corporate actions as necessary to carry out the wind-down, liquidation and ultimate dissolution of the Debtor;

xviii.    to implement and/or enforce all provisions of the Plan;

xix.    to implement and/or enforce all agreements entered into prior to the Effective Date;

xx.    upon consultation with the Oversight Committee, to abandon any Assets without the need for approval of the Court, and upon such abandonment, such Assets shall cease to be Assets of the Post-Confirmation Estate; and

xxi.    to use such other powers as may be vested in or assumed by the Plan Administrator pursuant to the Plan or Order of the Bankruptcy Court or as may be necessary and proper to carry out the provisions of the Plan.

### 5.4    <u>Establishment of Oversight Committee</u>

(a) <u>Appointment of Oversight Committee</u>. On or after the Effective Date, the Oversight Committee shall be appointed and shall consist of holders of Allowed Class 2 Claims willing to serve.  Members of the Oversight Committee will be selected by the Debtor (or the Plan Administrator as the case may be) upon consultation with the U.S. Trustee.  Members of the

Oversight Committee must not have received any transfer by the Debtor that may be subject to avoidance by the Plan Administrator. The Oversight Committee shall not exceed five (5) members. The Oversight Committee shall have the authority specified in the Plan and Plan Administrator Agreement. Any actions taken by the Oversight Committee shall be by majority vote. The Plan Administrator shall consult with and provide information to the Oversight Committee with respect to any material action to be taken or not to be taken by the Plan Administrator as set forth in the Plan and the Plan Administrator Agreement.

(b) <u>Reimbursement of Costs and Expenses</u>. Except for the reimbursement of reasonable, actual costs and expenses incurred in connection with their duties as members of the Oversight Committee, the members of the Oversight Committee shall serve without compensation. Reasonable expenses incurred by members of the Oversight Committee may be paid by the Plan Administrator upon presentation of proper documentation without the need for Court approval. To the extent that the Oversight Committee declines to approve a settlement proposed by the Plan Administrator and the Plan Administrator opts to seek Bankruptcy Court approval of the settlement over the objection of the Oversight Committee, then the Oversight Committee may retain attorneys to prosecute its objection, the reasonable costs of which will be paid by the Plan Administrator in the same manner as the Plan Administrator's professionals.

(c) <u>Liability of Members of the Oversight Committee</u>. Subject to any applicable law, the members of the Oversight Committee shall not be liable for any act done or omitted by any member in such capacity, while acting in good faith and in the exercise of business judgment. Members of the Oversight Committee shall not be liable in any event except for gross negligence or willful misconduct in the performance of their duties hereunder.

(d) <u>Indemnification</u>. Except as otherwise set forth in this Plan and to the extent permitted by applicable law, the members of the Oversight Committee shall not be liable for any act or omission taken or omitted to be taken in their respective capacities other than for acts or omissions resulting from willful misconduct, gross negligence, or fraud as determined by Final Order of the Bankruptcy Court. The Post-Confirmation Estate shall indemnify and hold harmless the members of the Oversight Committee from and against all liabilities, losses, damages, claims, costs and expenses, including, but not limited to attorneys' fees and costs arising out of or due to such actions or omissions, or consequences of their actions or omissions with respect or related to the performance of their duties; provided however, that no such indemnification will be made to such Persons for such actions or omissions as a result of willful misconduct, gross negligence or fraud.

**5.5    Establishment of Disputed Claim Reserves**

<u>Disputed Claim Reserves</u>. As soon as practicable following the Effective Date, the Disputed Claim Reserves shall be established by the Plan Administrator if and as required; provided, however, that the Plan Administrator shall have no obligation to fund the Disputed Claim Reserves until, at the latest, immediately prior to the making of a Distribution to Holders of Allowed Claims of the same Class as the Disputed Claims. The Disputed Claim Reserves shall be funded from available Cash in an amount equal to the amount holders of Disputed Claims would have otherwise been entitled but for the dispute. The funds in the Disputed Claim

Reserves shall be held separately from other assets held by the Plan Administrator subject to an allocable share of all expenses and obligations, on account of Disputed Claims. Funds shall be removed from the Disputed Claims Reserves as the Disputed Claims are resolved, which funds shall be distributed as provided in Section 9.20 of the Plan. Notwithstanding any other provision of the Plan to the contrary, subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary, the Plan Administrator may treat any assets allocable to, or retained on account of, the Disputed Claims Reserves as held by one or more discrete entities holding Disputed Claims for federal, and applicable state, local or other, income tax purposes, and may determine that such entity or entities shall constitute "disputed ownership funds" under, and may make the election permitted by, Treasury Regulation 1.468B-9, or any successor provision thereto.

### 5.6    Preservation of Causes of Action

Except as otherwise provided in this Plan or in any contract, instrument, release or agreement entered into in connection with this Plan, in accordance with section 1123(b) of the Bankruptcy Code, all Claims or Causes of Action that the Debtor or the Estate may have against any person or entity are preserved, including without limitation any and all Causes of Action under sections 502, 510, 522(f), 522(h), 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code, and any Creditor Related Causes of Action that may be assigned to the Plan Administrator and the Post-Confirmation Estate by Creditor Assignments.

### 5.7    General Disposition of Assets

Pursuant to section 1123(a)(5) of the Bankruptcy Code and subject to the terms of this Plan, as soon as is reasonably practicable following the Effective Date, the Plan Administrator shall sell or otherwise dispose of, and liquidate to or otherwise convert to Cash, any non-Cash Assets in such manner as the Plan Administrator shall determine is in the best interests of the Post-Confirmation Estate and holders of Allowed Claims.

### 5.8    Exemption from Certain Transfer Taxes

To the maximum extent provided by section 1146(a) of the Bankruptcy Code, any Post-Confirmation sale or transfer of any of the Assets or any sale or transfer of, from or by the Plan Administrator, pursuant to, in contemplation of, or in connection with the Plan or pursuant to the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, in each case to the extent permitted by applicable bankruptcy law, and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

19

### 5.9     Administrative Expense Claims Bar Date

With the exception of Professional Fee Claims and Receiver Professional Fee Claims, persons asserting an Administrative Expense Claim must file a request for payment of such Administrative Expense Claim on or before 5:00 p.m. prevailing Eastern Time on the date that is 30 days after notice of the Effective Date has been mailed (the "Administrative Expense Claims Bar Date").  No payment or Distributions will be made on account of any Administrative Expense Claim until such Claim becomes an Allowed Claim. Any person asserting an Administrative Expense Claim that fails to file and serve an Administrative Expense Claim on or before the Administrative Expense Claims Bar Date shall be forever barred from asserting any such right to payment against the Debtor, its Estate, the Plan Administrator, the Post-Confirmation Estate, or the Oversight Committee.

### 5.10     Deadline for Filing Applications For Payment of Professional Fee Claims and Receiver Professional Fee Claims

All parties seeking payment of Professional Fee Claims arising prior to the Effective Date, or Receiver Professional Fee Claims, must file with the Bankruptcy Court a final application and/or an application for payment of reasonable fees and expenses on or before the date that is 30 days after notice of the Effective Date has been mailed (the "Fee Application Deadline").  Any Professional or Receiver Professional failing to file and serve such application on or before the Fee Application Deadline shall be forever barred from asserting any such right to payment against the Debtor, its Estate, the Plan Administrator, the Post-Confirmation Estate, or the Oversight Committee.

### 5.11     Execution of Documents to Effectuate Plan

From and after the Effective Date, the Plan Administrator shall have the exclusive power and authority to execute any instrument or document to effectuate the provisions of the Plan. Entry of the Confirmation Order shall authorize the Plan Administrator to take, or cause to be taken, all actions necessary or appropriate to consummate and implement the provisions of the Plan.  All such actions shall be deemed to have occurred and shall be in effect pursuant to applicable non-bankruptcy law and the Bankruptcy Code, without any requirement of further action.

### 5.12     Dissolution of the Debtor

Following the Effective Date, the Debtor, through the activities of the Plan Administrator, shall continue in existence for the purposes of, among other things, completing the liquidation of Assets, winding up affairs and filing appropriate tax returns.  Upon the entry of an order closing the case, the Debtor shall be deemed dissolved for all purposes.  No other actions or filings or payments shall be required in furtherance of such dissolution.

### 5.13    Post-Confirmation Reports and Fees

Reporting to Office of the United States Trustee. Following the Effective Date and until the Chapter 11 Case is closed, not less than once every ninety (90) days, the Plan Administrator shall file all post-Effective Date reports required during such periods and shall pay from the Post-Confirmation Estate Fund all post-Effective Date fees charged or assessed against the Estate under 28 U.S.C. § 1930 during such periods together with applicable interest pursuant to 31 U.S.C. § 3717.

### 5.14    Insurance Preservation

Nothing in this Plan shall diminish or impair the enforceability of any Insurance Policies that may cover Claims against the Debtor or any other Person.

## ARTICLE 6 - TREATMENT OF EXECUTORY CONTRACTS & UNEXPIRED LEASES

### 6.1    General Provisions

All executory contracts and unexpired leases of the Debtor shall be deemed rejected as of the Effective Date, unless a particular executory contract or unexpired lease (i) has previously been assumed or rejected pursuant to order of the Bankruptcy Court or applicable provisions of the Bankruptcy Code, or (ii) has expired or otherwise terminated pursuant to its terms.

### 6.2    Notice of Deemed Rejection/Rejection Bar Date

Any party to an executory contract or unexpired lease that is rejected in accordance with Section 6.1 hereof shall file a Proof of Claim for damages from such rejection no later than thirty (30) days after the Effective Date.  The failure to timely file a Proof of Claim shall be deemed a waiver of any Claim in connection with the rejection of such contract or lease.

### 6.3    Compensation and Benefit Programs

To the extent not previously terminated, all employment and severance agreements and policies, and all employee compensation and benefit plans, policies and programs of the Debtor applicable generally to its employees, independent contractors or officers in effect on the Effective Date, including, without limitation, all savings plans, retirement plans, health care plans, disability plans, severance benefit plans, incentive plans and life, accidental death and dismemberment insurance plans, shall be terminated as of the Effective Date.

## ARTICLE 7 - CONDITIONS PRECEDENT

### 7.1    Conditions Precedent to Confirmation of the Plan

The following conditions must be satisfied, or otherwise waived in accordance with Section 7.3 hereof, on or before the Confirmation Date:

21

(a)     The Disclosure Statement Approval Order shall have been entered and shall have become a Final Order; and

(b)     Entry of the Confirmation Order shall contain provisions that, among other things:

   (i)     authorizes the implementation of the Plan in accordance with its terms;

   (ii)    approves in all respects the other settlements, transactions, and agreements to be effected pursuant to the Plan;

   (iii)   finds that the Plan complies with all applicable provisions of the Bankruptcy Code, including that the Plan was proposed in good faith and that the Confirmation Order was not procured by fraud;

   (iv)    approves the Plan Administrator Agreement; and

   (v)     establishes the Administrative Expense Claims Bar Date.

**7.2     Conditions Precedent to the Effective Date**

The Effective Date shall not occur and no obligations under the Plan shall come into existence, unless each of the following conditions is met or, alternatively, is waived in accordance with Section 7.3 hereof, on or before the Effective Date:

(a)     The Confirmation Order shall have become a Final Order;

(b)     The Confirmation Order shall have authorized and approved the appointment of the Plan Administrator and the Oversight Committee; and

(c)     The Debtor shall have sufficient Cash on hand to pay all Administrative Expense Claims.

**7.3     Waiver of Conditions Precedent**

Each of the conditions precedent in Sections 7.1 and 7.2 hereof may be waived or modified without further Court approval, in whole or in part, but only with the consent of the Trustee.

## ARTICLE 8 - INJUNCTION; EXCULPATION

**8.1     General Injunctions**

**The following provisions shall apply and shall be fully set forth in the Confirmation Order.**

(a)    **Injunctions Against Interference with Consummation or Implementation of Plan**. All holders of Claims shall be enjoined from commencing or continuing any judicial or administrative proceeding or employing any process against the Debtor, the Estate, the Trustee, the Post-Confirmation Estate, the Roglieri Trustee, the Successor Roglieri Trustee, the Plan Administrator, or the Oversight Committee (and its members) with the intent or effect of interfering with the consummation and implementation of this Plan and the transfers, payments and Distributions to be made hereunder.

(b)    **Plan Injunction**. Except as otherwise specifically provided for by this Plan, as of and from the Effective Date, all Persons shall be enjoined from (i) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order; (ii) the creation, perfection or enforcement of any encumbrance of any kind; and/or (iii) the assertion of any right of setoff, counterclaim, exculpation, or subrogation of any kind, in each case against the Debtor, the Estate, the Trustee, the Post-Confirmation Estate, the Roglieri Trustee, the Successor Roglieri Trustee, the Plan Administrator, or the Oversight Committee (and its members) to the fullest extent authorized or provided by the Bankruptcy Code.

(c)    **Release of Collateral**.    Except as expressly provided otherwise in the Plan, unless a Holder of a Secured Claim receives a return of its Collateral in respect of such Claim under the Plan, each Holder of (A) an Allowed Secured Claim; and (B) an Allowed Claim that is purportedly secured, on the Effective Date shall (x) turn over and release to the Trustee any and all property that secures or purportedly secures such Claim; and (y) execute such documents and instruments as the Trustee requires to evidence such claimant's release of such property; and (ii) on the Effective Date, all claims, rights, title and interest in such property shall revert to the Debtor's Estate, free and clear of all Claims against the Debtor and its Estate, including (without limitation) liens, charges, pledges, encumbrances or security interests of any kind. No Distribution hereunder shall be made to or on behalf of any Holder of such Claim unless and until such Holder executes and delivers to the Debtor such release of liens. Any such Holder that fails to execute and deliver such release of liens within 60 days of any demand thereof shall be deemed to have no further Claim and shall not participate in any Distribution hereunder. Notwithstanding the immediately preceding sentence, a Holder of a Disputed Claim shall not be required to execute and deliver such release of lien until the time such Claim is Allowed or Disallowed.

8.2    **Exculpation**. As of the Confirmation Date, the Trustee and his professionals (including professional firms and individuals within such firms) shall be deemed to have solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code.  To the fullest extent permitted by section 1125(e) of the Bankruptcy Code, the Debtor and its professionals (including professional firms and individuals within such firms), as well as the Trustee and his professionals (including professional firms and individuals within such firms) shall not have or incur any liability to any holder of any Claim or any other Person for any act or omission taken or not taken in good faith in connection with, or arising out of, the Chapter 11 Case, the Disclosure Statement, the Plan, or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan, or any act taken or omitted to be taken

during the Chapter 11 Case, the solicitation of votes for and the pursuit of confirmation of
the Plan, the consummation of the Plan, including, without limitation, the steps taken to
effectuate the transactions described in Article 5 of the Plan, the administration of the Plan
or the property to be distributed under the Plan, except for acts or omissions constituting
fraud, willful misconduct or gross negligence as determined by a Final Order; and in all
respects such parties shall be entitled to rely upon the advice of counsel with respect to
their duties and responsibilities under the Plan.

### 8.3     No Bar to Claims Against Third Parties

Except as set forth herein, Holders of Claims against the Debtor are not barred or
otherwise enjoined by the Plan from pursuing any recovery against Persons that are not the
Debtor.

### 8.4     All Distributions Received in Full and Final Satisfaction

Except as otherwise set forth herein, all payments, all Distributions to be made in
accordance with the Plan on account of Claims, and all rights conferred under this Plan shall be
received in full and final satisfaction of the Estate's obligations for such Claims as against the
Debtor, its property and the Estate, including the Post-Confirmation Estate.

### 8.5     No Modification

The provisions of this Article 8 are not intended, and shall not be construed, to modify
the res judicata effect of any order entered in the Chapter 11 Case, including, without limitation,
the Confirmation Order and any order finally determining Professional Fee Claims to any
Professional.

### 8.6     No Discharge of Claims

Pursuant to section 1141(d)(3) of the Bankruptcy Code, the Confirmation Order will not
discharge the Debtor of any debts.

## ARTICLE 9 - PROVISIONS GOVERNING DISTRIBUTIONS

### 9.1     Distributions by Plan Administrator

The Plan Administrator shall make Distributions on account of Allowed Claims in
accordance with Article 4 of the Plan. The Plan Administrator may use the services of a third
party to aid in the Distributions required to be made under this Plan, including the Distribution
Agent.

### 9.2     Indefeasibility of Distributions

All Distributions made under the Plan shall be indefeasible.

**9.3**     **Frequency of Distributions**

The Plan Administrator shall make Distribution(s) as soon as practicable after the Effective Date and at such other times as may be determined to be appropriate by the Plan Administrator in consultation with the Oversight Committee.

**9.4**     **Payment in U.S. Dollars**

All Cash payments required under the Plan shall be made in U.S. dollars by checks drawn on domestic bank(s) selected by the Plan Administrator in accordance with the Plan or by wire transfer from a domestic bank.

**9.5**     **Claims In U.S. Dollars**

Any Claims asserted in foreign currencies shall be converted to United States Dollars in accordance with the prevailing exchange rates published by the Wall Street Journal on the Confirmation Date.

**9.6**     **Distributions Only on Business Days**

Notwithstanding the foregoing provisions, if any Distribution called for under this Plan is due on a day other than a Business Day, then such Distribution shall instead be due the next Business Day.

**9.7**     **Transmittal of Payments and Notices**

Except as otherwise provided in the Plan, all Distributions shall be made to the holder of an Allowed Claim by regular first-class mail, postage prepaid, in an envelope addressed to such holder at the address listed on its Proof of Claim filed with the Bankruptcy Court or, if no Proof of Claim was filed, (i) at the address listed on the Debtor's Schedules, or (ii) at such address that a holder of a Claim provides to the Plan Administrator after the Effective Date in writing at least fifteen (15) business days prior to a Distribution Date. The Plan Administrator shall be under no obligation to ascertain the mailing address of any holder of an Allowed Claim other than as set forth herein. The date of payment or delivery shall be deemed to be the date of mailing. Payments made in accordance with the provisions of this Section shall be deemed made to the holder regardless of whether such holder actually receives the payment.

**9.8**     **Record Date for Distributions**

Except as otherwise provided in a Final Order of the Bankruptcy Court, transferees of Allowed Claims that are transferred pursuant to Bankruptcy Rule 3001 with appropriate filings ("Claim Transfer Document") made on or before the Effective Date (the "Distribution Record Date") shall be treated as the holders of those Allowed Claims for all purposes of this Plan, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer(s) may not have expired prior to the Distribution Record Date. The Plan Administrator shall be under no obligation to recognize any transfer of any Allowed Claim occurring after the

Distribution Record Date. In making a Distribution with respect to any Allowed Claim, the Plan Administrator shall be entitled to recognize and deal for all purposes hereunder only with the Person who is listed on the Proof of Claim filed with respect to such Allowed Claim, on the Schedules as the holder thereof, and upon such other evidence or record of transfer or assignment filed as of the Distribution Record Date.

### 9.9    Unclaimed Distributions

Unclaimed Distributions (including Distributions made by checks that fail to be cashed or otherwise negotiated within ninety (90) days after the Distribution Date or which Distributions are returned to the Plan Administrator as undeliverable to the addresses of record as of the Distribution Record Date, shall be canceled (by a stop payment order or otherwise), the Claim(s) relating to such Distribution(s) shall be deemed forfeited and expunged without any further action or order of the Bankruptcy Court.  Any such Unclaimed Distributions shall, as soon as is practicable, be redistributed pursuant to the provisions of the Plan.

### 9.10    No Payments of Fractional Cents or Distributions of Less Than One Hundred Dollars

(a)    Notwithstanding any provision to the contrary herein, for purposes of administrative convenience, no payment of fractional cents shall be made pursuant to the Plan. Whenever any payment of a fraction of a cent under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole penny (up or down), with a half-penny or less being rounded down and fractions in excess of half of a penny being rounded up.

(b)    Notwithstanding any provision to the contrary herein, for purposes of administrative convenience, no Distribution of less than One Hundred Dollars ($100) shall be made pursuant to the Plan. Whenever any Distribution of less than One Hundred Dollars ($100) under the Plan would otherwise be required, such funds will be retained by the Plan Administrator for the account of the recipient until such time that successive Distributions aggregate to One Hundred Dollars ($100), at which time such payment shall be made, and if successive Distributions do not ever reach One Hundred Dollars ($100) in the aggregate, then such Distributions shall revert to the Post-Confirmation Estate and be redistributed in accordance with the Plan.

### 9.11    Setoff and Recoupment

Except as otherwise provided in the Plan, the Plan Administrator may, but shall not be required to, set off against, or recoup from, any Claim and the Distributions to be made pursuant to the Plan in respect thereof, any Claims, defenses or Causes of Action of any nature whatsoever that the Plan Administrator may have, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Plan Administrator of any right of setoff or recoupment against the holder of any Claim.

**9.12    Payment of Taxes on Distributions Received Pursuant to the Plan**

(a)    The Trustee shall provide the Plan Administrator with all available tax identification or social security numbers that he may possess for Creditors (collectively the "Tax Information") and the Plan Administrator may rely upon the same for purposes of Distributions and associated tax reporting and compliance.  Notwithstanding any provision to the contrary herein, as a condition to payment of any Distribution to a Creditor under this Plan, each Creditor shall provide valid Tax Information if requested by the Plan Administrator for purposes of tax reporting.  All Persons that receive Distributions under the Plan shall be responsible for reporting and paying, as applicable, any taxes on account of their Distributions.

(b)    At such time as the Plan Administrator believes that Distributions to a particular Class of Claims is likely, the Plan Administrator shall review the available Tax Information provided by the Trustee and where necessary, request Tax Information in writing from Creditors (the "Tax Information Request").  Any Creditor who fails to respond to the Tax Information Request within ninety (90) days from the date identified on the Tax Information Request, shall forfeit all Distributions such Creditor may otherwise be entitled to under this Plan and such forfeited funds will revert to the Post-Confirmation Estate to be disbursed in accordance with the terms and priorities established in this Plan.

**9.13    Compliance With Tax Withholding and Reporting Requirements**

With respect to all Distributions made under the Plan, the Plan Administrator will comply with all withholding and reporting requirements of any federal, state, local or foreign taxing authority.

**9.14    Disputed Distribution**

If a dispute arises as to the identity of a holder of an Allowed Claim who is to receive a Distribution, the Plan Administrator may, in lieu of making such Distribution to such holder, hold such amount until the dispute is resolved by Final Order of the Bankruptcy Court or by written agreement among the parties to such dispute.

**9.15    Claims Administration Responsibility**

(a)    Reservation of Rights.  Unless a Claim is specifically Allowed prior to or after the Effective Date, the Plan Administrator reserved any and all objections to any and all Claims and motions or requests for the payment of Claims, whether administrative expense, secured or unsecured, including without limitation any and all objections to the validity or amount of any and all alleged Administrative Expense Claims, Priority Tax Claims, or Priority Non-Tax Claims, liens and security interests, whether under the Bankruptcy Code, other applicable law or contract.  The failure to object to any Claim prior to the Effective Date shall be without prejudice to the Plan Administrator's rights to contest or otherwise defend against such Claim in the Bankruptcy Court when and if such Claim is sought to be enforced by the holder of the Claim.

(b)    <u>Objections to Claims</u>.    Prior to the Effective Date, the Trustee shall be responsible for pursuing any objection to the allowance of any Claim.    From and after the Effective Date, the Plan Administrator may dispute, object to, compromise or otherwise resolve all Claims, in accordance with Sections 5.2 and 5.3 hereof.    Unless otherwise provided in the Plan or ordered by the Bankruptcy Court, all objections to Claims shall be filed and served no later than one hundred eighty (180) days after the Effective Date, provided that the Plan Administrator may request (and the Bankruptcy Court may grant) one or more extensions of time by filing a motion with the Bankruptcy Court.    Notwithstanding the foregoing, the Plan Administrator's time to seek an allocation of any recovery on a Creditor Related Causes of Action amongst the Creditor Assignors other than *pro rata* based upon the amount of each Creditor Assignor's Allowed Class 2 Claim shall be ninety (90) days after the Plan Administrator receives the relevant recovery on the Creditor Related Causes of Action into the Creditor Related Causes of Action Fund.

(c)    <u>Filing Objections</u>.    An objection to a Claim shall be deemed properly served on the claimant if the Trustee or Plan Administrator, as applicable, effect service of any such objection in accordance with Rule 3007 of the Bankruptcy Rules by mailing or otherwise delivering the objection and a notice of hearing thereon to the claimant at the address set forth on such claimant's Proof of Claim at least thirty (30) days prior to the hearing thereon. The Trustee or the Plan Administrator may also effectuate service of an objection to a claim: (i) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (ii) to the extent counsel for a claimant is unknown, by first class mail, postage prepaid, to the signatory on the Proof of Claim or interest or other representative identified on the Proof of Claim or interest or any attachment thereto or; (iii) by first class mail, postage prepaid, on counsel that has appeared on the behalf of the claimant in the Chapter 11 Case.

(d)    <u>Determination of Claims</u>.    Except as otherwise agreed by the Trustee or Plan Administrator, any Claim as to which a Proof of Claim or motion or request for payment was timely filed in the Chapter 11 Case may be determined and liquidated after the Effective Date pursuant to (i) an order of the Bankruptcy Court (which order has not been stayed, reversed or amended and as to which determination or any revision, modification or amendment thereof, and the time to appeal or seek review or rehearing thereof, has expired, and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending), or (ii) applicable non-bankruptcy law.    Any Claim determined to be an Allowed Claim after the Effective Date pursuant to this section shall be treated as an Allowed Claim in accordance with the Plan.

### 9.16    <u>Treatment of Claims without Further Order of the Court</u>

(a)    <u>Certain Scheduled Claims</u>.    As of the Effective Date, any Scheduled Claim designated as disputed, contingent or unliquidated in amount, and for which a Proof of Claim has not been filed by the Creditor, shall be deemed Disallowed and expunged.    All Scheduled Claims that correspond to a Proof of Claim filed by a particular Creditor shall be deemed to have been superseded by such later filed Proof of Claim and the Scheduled Claims, regardless of priority, shall be expunged from the claims register; <u>provided</u> <u>however</u>, that such Proofs of Claim shall be subject to objection in accordance with Section 9.15 hereof.

(b)    Late Filed Claims.  Any and all Proofs of Claim filed after the applicable Claims Bar Date shall be deemed Disallowed as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation of this Plan, such late filed Claim has been deemed timely filed by a Final Order.

## 9.17    Disputed Claims

(a) Except to the extent the Bankruptcy Court determines that a lesser amount is adequate, the Plan Administrator shall, on each Distribution Date, deposit in a Disputed Claims Reserve, Cash equal to the Distributions that would have been made to holders of Disputed Claims if such Claims were Allowed Claims in their full amounts or such lower amount as to which the holder of such Claim has agreed in writing or, in the case where any such Claim is unliquidated or contingent, the greater of (i) $1, and (ii) such other amount as is reserved by order of the Bankruptcy Court made upon motion of the Trustee, the Plan Administrator, or the holder of such Claim.

(b) For purposes of effectuating the provisions of this Section 9.17 and the Distributions to holders of Allowed Claims, the Bankruptcy Court, upon the request of any holder of a Claim, on the one hand, or the Plan Administrator, on the other hand, may estimate the amount of Disputed Claims pursuant to section 502(c) of the Bankruptcy Code, in which event the amounts estimated shall be deemed to be the aggregate amounts of the Disputed Claims pursuant to section 502(c) of the Bankruptcy Code for purposes of Distribution under this Plan and for purposes of the Disputed Claims Reserve.

(c) When a Disputed Claim becomes an Allowed Claim, there shall be distributed to the holder of such Allowed Claim, in accordance with the provisions of this Plan (but in no event later than the next succeeding Distribution Date), Cash in the amount of all Distributions to which such holder would have been entitled if such holder's Claim were Allowed on the Effective Date, to the extent of available Cash to make such Distribution.

(d) In no event shall any holder of any Disputed Claim be entitled to receive (under this Plan or otherwise) any Cash payment which is greater than the amount reserved, if any, for such Disputed Claim pursuant to this Section 9.17.  In no event shall the Plan Administrator have any responsibility or liability for any loss to or of any amount reserved under this Plan unless such loss is the result of that party's fraud, willful misconduct, or gross negligence.  In no event may any Creditor whose Disputed Claim is subsequently allowed, pursue or recover from any other Creditor in respect of any funds received as Distributions under the Plan.

(e) To the extent that a Disputed Claim ultimately becomes an Allowed Claim and is entitled to a Distribution in an amount less than the amount reserved for such Disputed Claim, then on the next succeeding Distribution Date, the Plan Administrator shall make, in accordance with the terms of this Plan, shall include the excess amount reserved for such Disputed Claim.

(f) Any Disputed Claims Reserve shall be treated as a disputed ownership fund, within the meaning of Treasury Regulation section 1.468B-9, for all purposes associated with taxation.

**9.18    Limitations on Funding of Disputed Claims Reserve**

Except as expressly set forth in the Plan, or otherwise agreed to in writing or ordered by the Court, the Plan Administrator shall have no obligation or duty to fund the Disputed Claims Reserve.

**9.19    Tax Requirements for Income Generated by Disputed Claims Reserves**

The Plan Administrator shall pay, or cause to be paid, out of the funds held in a Disputed Claims Reserve, any tax imposed by any federal, state, or local taxing authority on the income generated by the funds or property held in a Disputed Claims Reserve. The Plan Administrator shall file, or cause to be filed, any tax or information return related to a Disputed Claims Reserve that is required by any federal, state, or local taxing authority.

**9.20    Timing of Distributions on Disputed Claims Subsequently Allowed**

In the event that a Disputed Claim is Allowed, in whole or in part, after the Effective Date, a Distribution shall be made on account of such Allowed Claim on the next Distribution Date that is at least fifteen (15) business days after such Claim is Allowed.

**9.21    No Payment or Distribution on Disputed Claims**

Notwithstanding any provision to the contrary herein, no payments or other Distributions shall be made on account of any Disputed Claim, or any portion thereof, unless and until such Claim or some portion thereof is allowed by Final Order of the Bankruptcy Court. For the avoidance of doubt, no portion of any Disputed Claim is entitled to a Distribution. Holders of Disputed Claims shall be bound, obligated and governed in all respects by this Plan.

## ARTICLE 10 - PLAN INTERPRETATION, CONFIRMATION AND VOTING

**10.1    Procedures Regarding Objections to Designation of Classes as Impaired or Unimpaired**

In the event the designation of the treatment of a Class as impaired or unimpaired is objected to, the Bankruptcy Court shall determine the objection, and voting shall be permitted or disregarded in accordance with the determination of the Bankruptcy Court.

**10.2    Withdrawal and Modification of Plan**

This Plan may be withdrawn or modified by the Trustee at any time prior to the Confirmation Date. The Trustee or the Plan Administrator may modify the Plan in any manner consistent with section 1127 of the Bankruptcy Code prior to substantial consummation thereof. Upon request by the Plan Administrator, the Plan may be modified after substantial consummation with the approval of the Bankruptcy Court, provided that such modification does not affect the essential economic treatment of any Person that objects in writing to such modification.

### 10.3    Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or the Plan, the laws of the State of New York applicable to contracts executed in such State by residents thereof and to be performed entirely within such State shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with this Plan.

### 10.4    Voting of Claims

Each holder of an Allowed Claim as of the Voting Record Date in Class 2 shall be entitled to vote to accept or reject the Plan.  The Scheduling Order shall govern the manner and procedures for casting of Ballots with the Trustee's special litigation counsel.

### 10.5    Acceptance by Impaired Class

Consistent with section 1126(c) of the Bankruptcy Code, and except as provided for in section 1126(e) of the Bankruptcy Code, a Class of creditors shall have accepted the Plan if it is accepted by at least two-thirds in dollar amount and more than one-half in number of the holders of Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.

### 10.6    Cram Down

The Trustee will request that the Bankruptcy Court confirm the Plan in accordance with the provisions of section 1129(b) of the Bankruptcy Code to satisfy the requirements for confirmation of the Plan over the possible rejection of the Plan by any impaired Class entitled to vote on the Plan and the Plan shall constitute a motion for such relief.

## ARTICLE 11 - RETENTION OF JURISDICTION BY BANKRUPTCY COURT

**11.1**    From the Confirmation Date until entry of a final decree closing the Chapter 11 Case, the Bankruptcy Court shall retain such jurisdiction as is legally permissible over the Chapter 11 Case for the following purposes:

(a) to hear and determine any and all objections to the allowance of any Claim, or any controversy as to the classification of Claims or any matters which may directly, indirectly or contingently affect the obligations of the Debtor to any Creditors, holders of Claims, or other parties in interest;

(b) to hear and determine any and all applications for compensation and reimbursement of expenses by Professionals;

(c) to hear and determine any and all pending motions for the assumption or rejection of executory contracts and unexpired leases, and to fix any Claims resulting therefrom;

(d) to adjudicate through final judgment such contested matters and adversary proceedings as may be pending or subsequently initiated in the Court including, but not limited to, the Causes of Action and the Creditor Related Causes of Action;

(e) to enforce and interpret the provisions of this Plan, the Confirmation Order, and the Plan Administrator Agreement;

(f) to hear and determine any matters relating to the appointment and replacement of the Plan Administrator;

(g) to issue any injunction or other relief appropriate to implement the intent of the Plan, and to enter such further orders enforcing any injunctions or other relief issued under the Plan or pursuant to the Confirmation Order;

(h) to modify the Plan pursuant to section 1127 of the Bankruptcy Code and the applicable Bankruptcy Rules;

(i) to correct any defect, cure any omission, or reconcile any inconsistency in this Plan, the Confirmation Order, or the Plan Administrator Agreement, as may be necessary to carry out the purposes and the intent of this Plan;

(j) to interpret and determine such other matters as the Confirmation Order may provide for, or as may be authorized under the Bankruptcy Code;

(k) to enter and implement such orders as may be appropriate in the event the Confirmation Order is, for any reason, stayed, reversed, revoked, modified or vacated; and

(l) to adjudicate any disputes between the members of the Oversight Committee or between the Oversight Committee and the Plan Administrator.

## ARTICLE 12 - MISCELLANEOUS PROVISIONS

### 12.1   Headings

Headings are utilized in this Plan for the convenience of reference only, and shall not constitute a part of this Plan for any other purpose.

### 12.2   No Attorneys' Fees

No attorneys' fees with respect to any Claim shall be payable under the Plan, except as expressly specified herein or Allowed by a Final Order of the Bankruptcy Court.

### 12.3   Notices

All notices, requests and demands by parties in interest under or in connection with the Plan shall be in writing and served either by (i) certified mail, return receipt requested, postage

32

prepaid, (ii) hand delivery, (iii) reputable overnight delivery service, all charges prepaid, or (iv) electronic mail, and shall be deemed to have been given when received and confirmed by telephone or reply email by the following parties:

If to the Plan Administrator:

Geron Legal Advisors LLC
270 Lexington Avenue
Suite 1208
New York, New York 10017
Attn:  Yann Geron (ygeron@geronlegaladvisors.com)

With copy to:

Klestadt Winters Jureller Southard & Stevens, LLP
Special Litigation Counsel to the Trustee
200 West 41st Street, 17th Floor
New York, New York 10036
Attn:    Fred Stevens (fstevens@klestadt.com)
         Lauren C. Kiss (lkiss@klestadt.com)

### 12.4    **Binding Effect**

The rights, benefits, and obligations of any Person named or referred to in the Plan, or whose actions may be required to effectuate the terms of the Plan, shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Person (including, but not limited to, any trustee appointed for the Debtor under chapter 7 or 11 of the Bankruptcy Code).   The Confirmation Order shall provide that the terms and provisions of the Plan and the Confirmation Order shall survive and remain effective after entry of any order which may be entered converting the Debtor's Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, and the terms and provisions of the Plan shall continue to be effective in this or any superseding case under the Bankruptcy Code

*[Signature Page Follows]*

Dated:  New York, New York
        December 16, 2025

                          PRIME CAPITAL VENTURES, LLC


                          By:  */s/ Yann Geron* _____
                                   Yann Geron, in his capacity as Chapter 11
                                      Trustee of Prime Capital Ventures, LLC



Approved as to form:

**KLESTADT WINTERS JURELLER
  SOUTHARD & STEVENS, LLP**


By: */s/ Fred Stevens*
    Fred Stevens
    Lauren C. Kiss
    200 West 41st Street, 17th Floor
    New York, New York 10036
    Tel: (212) 972-3000
    Fax: (212) 972-2245
    Email: fstevens@klestadt.com
           lkiss@klestadt.com

    *Special Litigation Counsel to Yann Geron,*
    *Chapter 11 Trustee of Prine Capital*
    *Ventures, LLC*

**Exhibit B**

Notice of Confirmation

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

In re:

PRIME CAPITAL VENTURES, LLC,                    Case No. 24-11029-PGR
                                                Chapter 11

                        Debtor.

**NOTICE OF (I) ENTRY OF AN ORDER CONFIRMING TRUSTEE'S PLAN**
**OF LIQUIDATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE;**
**(II) OCCURRENCE OF EFFECTIVE DATE; (III) ADMINISTRATIVE**
**EXPENSE CLAIM BAR DATE; AND (IV) REJECTION DAMAGES BAR DATE**

TO ALL CREDITORS, AND PARTIES IN INTEREST OF THE ABOVE DEBTOR, PLEASE TAKE NOTICE OF THE FOLLOWING:

Confirmation of the Plan.  On _____, 2026 (the "Confirmation Date"), the United States Bankruptcy Court for the Northern District of New York (the "Bankruptcy Court") entered its *Findings of Fact, Conclusions of Law, and Order (I) Pursuant to 11 U.S.C. § 1125 Approving Adequacy of Disclosure Statement for Trustee's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code, as Modified and (II) Pursuant to 11 U.S.C. § 1129 and Fed. R. Bankr. P. 3020 Confirming Trustee's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. __] (the "Confirmation Order").  Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to them in the Plan or the Confirmation Order, as applicable.  The Plan, the Disclosure Statement and the Confirmation Order may be viewed at (i) the Office of the Clerk, United States Bankruptcy Court for the Northern District of New York, and (ii) the Bankruptcy Court's website www.nynb.uscourts.gov  (a PACER account is required). Copies are also available upon request to the undersigned special litigation counsel to the Trustee.

Effective Date.  Pursuant to the Confirmation Order, the Trustee[4] hereby certifies and gives notice that the Plan became effective in accordance with its terms, and the Effective Date occurred on [_____], 2026 (the "Effective Date").

Bar Date for Administrative Expense Claims. Pursuant to section 5.9 of the Plan, any person asserting an Administrative Expense Claim must file and serve an Administrative Expense Claim on or before [_____], 2026.  Persons asserting an Administrative Expense Claim that fail to file an Administrative Expense Claim on or before [_____], 2026, shall be forever barred for asserting any such right to payment as against the Debtor, the Estate, the Trustee, the Post-Confirmation Estate, the Roglieri Trustee, the Successor Roglieri Trustee, the Plan Administrator, or the Oversight Committee.

---

[4] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

Bar Date for Rejection Damages.    Pursuant to section 6.2 of the Plan, except as expressly provided in the Plan, all executory contracts and unexpired leases not previously assumed are rejected as of the Effective Date.  All claims arising from the rejection of an executory contract must be filed no later than [＿＿＿＿＿＿], 2026.  Persons asserting a claim for rejection damages that fail to file a claim for rejection damages on or before [＿＿＿＿＿＿], 2026, shall be forever barred for asserting any such right to payment as against the Debtor, the Estate, the Trustee, the Post-Confirmation Estate, the Roglieri Trustee, the Successor Roglieri Trustee, the Plan Administrator, or the Oversight Committee.

Dated:   New York, New York
　　　 ＿＿＿＿ __, 2026

**KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP**

By:   ＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
　　　 Fred Stevens
　　　 Lauren C. Kiss
　　　 200 West 41st Street, 17th Floor
　　　 New York, New York 10036
　　　 Tel: (212) 972-3000
　　　 Fax: (212) 972-2245
　　　 Email: fstevens@klestadt.com
　　　　　　 lkiss@klestadt.com

　　　 *Special Litigation Counsel to Yann Geron,
　　　 Chapter 11 Trustee of Prime Capital
　　　 Ventures, LLC*