**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re:                                    :
                                          :                    Chapter 7
KRIS DANIEL ROGLIERI,                     :
                                          :                    Case No. 24-10157 (PGR)
                     Debtor.              :
-------------------------------------------------------------x
In re:                                    :
                                          :                    Chapter 11
PRIME CAPITAL VENTURES, LLC,              :
                                          :                    Case No. 24-11029 (PGR)
                     Debtor.              :
-------------------------------------------------------------x

**LIMITED OBJECTION TO THE JOINT MOTION SEEKING ENTRY OF AN ORDER
AUTHORIZING THE SALE OF A CERTAIN WATCH AND THE DIVISION OF
PROCEEDS BETWEEN ESTATES**

**TO THE HONORABLE PATRICK G. RADEL,**
**UNITED STATES BANKRUPTCY JUDGE:**

Compass-Charlotte 1031, LLC ("Compass-Charlotte"), on behalf of itself and the

Oversight Committee created under the confirmed plan of liquidation (the "Plan") of Yann Geron,

as Chapter 11 trustee of the bankruptcy estate of Prime Capital Ventures, LLC, one of the above-

captioned debtors ("Prime"), by and through its counsel, Parker Poe Adams & Bernstein LLP,

hereby submits this limited objection (the "Objection") to the joint motion (the "Motion") of

Marianne T. O'Toole, solely in her capacity as Successor Chapter 7 Trustee (the "Roglieri

Trustee") of the estate of Kris Daniel Roglieri ("Roglieri"), and Yann Geron, formerly the chapter

11 trustee of Prime and now solely in his capacity as Plan Administrator of Prime's confirmed

chapter 11 plan (the "Plan Administrator" and, together with the Roglieri Successor Trustee, the

"Trustees"), by their respective undersigned counsel, which sought entry of an Order: (i)

authorizing and approving, pursuant to 11 U.S.C. §§ 327(a) and 328, the Trustees' retention of

Phillips Auctioneers LLC in association with Bacs & Russo ("Phillips") to market and sell a certain

PPAB 13605403v1

Richard Mille watch identified as an RM 52-01 Tourbillon Skull ("Watch"); (ii) authorizing and approving, pursuant to 11 U.S.C. §§ 363(b), (f), (m) and (n), the sale of the RM Skull Watch pursuant to the Sellers' Auction Agreement with Enhanced Hammer Potential among the Trustees and Phillips; (iii) approving the form and matter of notice of the auction sale of the Watch; (iv) authorizing and approving the division of the proceeds from the sale of the Watch 50/50 between the Roglieri Estate and the Prime post-confirmation trust (together, the "Estates"), pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure and authorizing payment to Phillips; and (v) granting such other and further relief as the Court deems just and proper. In support of the Objection, the Compass-Charlotte respectfully represent as follows:

**LIMITED OBJECTION**

1.       Compass-Charlotte is one of four members of the Oversight Committee for Prime created pursuant to the confirmed Plan.  The other members are 526 Murfreesboro, LLC, Piper Capital Funding, LLC, and ER Tennessee.  Together, the members of the Oversight Committee possess claims against both Estates of over $44 million.

2.       Compass-Charlotte 1031, LLC ("Compass-Charlotte") is the largest victim of the Ponzi fraud perpetrated by Roglieri through his entity Prime Capital Ventures, LLC.  It was Compass-Charlotte who uncovered Roglieri's fraud at significant cost to Compass-Charlotte, including pursuit of an involuntary bankruptcy and federal district court receivership, which ultimately led to the bankruptcy filings of both Prime and Roglieri.  Those significant efforts were recognized by this Court in granting Compass-Charlotte an administrative expense claim for substantial contribution.  [24-11029, Doc. 413]  Through its leading involvement in these cases for the past several years, Compass-Charlotte remains uniquely focused on maximizing the return for all the victims of Roglieri's fraud and is also uniquely situated with certain background

2

information which may not have been fully known or understood by the Prime Administrator and Roglieri Successor Trustee at the time they filed the Motion.

3.     As a preliminary matter, Compass-Charlotte has no issue with, or objection to, the relief sought by the Motion except for the proposed division of the proceeds between the Estates. The Watch indisputably needs to be sold.  It has been held for some two plus years by the Prime Receiver appointed by the federal district court, and needs to be converted to cash to avoid any further potential diminution in value as a result of changes in the marketplace for high end watches. But Compass-Charlotte objects to the distribution of any portion of the proceeds of the sale of the Watch to the Chapter 7 estate of Kris Roglieri, which has no plausible claim related to the Watch. As set forth below, the Watch is indisputably an asset of Prime and all proceeds from its sale should be paid to the Plan Administrator for distribution to the victims of Roglieri's fraud.

*A.  The Division of the Watch Proceeds Was Not Approved by the Oversight Committee*

4.     Compass-Charlotte understands that while serving as the Chapter 11 trustee, Mr. Geron agreed with the Roglieri Successor Trustee, subject to this Court's approval, that the net proceeds of the Watch would be divided equally between the Estates.  To be clear, had the Chapter 11 trustee made that motion prior to the Plan effective date, Compass-Charlotte, and presumably other significant creditors of both Estates, would have objected.  (Indeed, Compass-Charlotte objected previously when the prior Chapter 7 trustee attempted to sell the Watch.  In response to Compass-Charlotte's objection, the prior Chapter 7 trustee agreed that the proceeds from the sale of the Watch would be held for later decision by the Court).  [24-11029, Doc. 277 - email from Compass-Charlotte counsel disputing that the Roglieri estate had any interest in the Watch and agreement with prior Chapter 7 trustee]

5.     However, the Motion was not brought by the Trustees until following the February 16, 2026, effective date of the Plan at which time the Chapter 11 trustee ceased to exist and the

PPAB 13605403v1

Plan Administrator took his place.  The Plan Administrator is bound by the terms of the Plan which require him to consult with the Oversight Committee with respect to any proposed settlement (see Plan § 5.3(a)(vii)).  If the Oversight Committee objects to a proposed settlement, the Plan Administrator may decide to either abandon the settlement or seek this Court's approval of the settlement over the Oversight Committee's objection upon a motion on notice.  In such a case, the Oversight Committee is permitted under the Plan to retain counsel to litigate the objection and to have counsel's fees paid by Prime's estate (see Plan § 5.4(b)).

6.      Here, the Plan Administrator inadvertently failed to consult with the Oversight Committee prior to filing the Motion.  When the Motion was filed, Compass-Charloette immediately informed the Plan Administrator of its issues with the division of the Watch proceeds. A meeting of the Oversight Committee was convened by the Plan Administrator shortly thereafter, where each member of the Oversight Committee expressed its opposition to the proposed splitting of the proceeds of the Watch between the Estates.

7.      Compass-Charlotte is not intending to unnecessarily criticize the Plan Administrator in this role or his predecessor role for agreeing subject to Court approval to the division of the Watch proceeds.  That decision may have appeared expedient and pragmatic to the trustee even if the trustee believed that Prime had the far superior claim to the Watch. Unfortunately, both Trustees lack the perspective that Compass-Charlotte has after litigating over the Watch in multiple forums prior to the Trustee's respective appointment.  Thus, Compass-Charlotte accepts the Plan Administrator at his word that he agreed to the division of proceeds in good faith and that he had his reasons for doing so.

8.      That said, Compass-Charlotte and the entirety of the Oversight Committee must object to the proposed division of the Watch proceeds under any circumstances because all

4

available evidence, and the equities of the cases, militate against concluding that the Roglieri estate has any just claim to the Watch for the reasons set forth below.

### B. The Watch is the Asset of Prime's Estate

9.    On January 12, 2024, the United States District Court for the Northern District of New York entered a temporary order appointing Paul Levine as receiver over Prime ("Receiver") (*Compass-Charlotte 1031, LLC v. Prime Capital Ventures, LLC et. al.*, 24-cv-55, NDNY, Doc. 8). On January 24, 2024, the District Court entered an order making that appointment permanent (the "Receiver Order"). *Id.*, Doc. 56. Among other things, the Receiver Order vested in the Receiver the "exclusive dominion and control over all assets" of Prime. *Id.* at 22.

10.    In connection with assisting the Receiver, Compass-Charlotte subpoenaed numerous third parties regarding assets of Prime. Among those subpoenas was one Compass-Charlotte sent on January 24, 2024 to Platinum Times, LLC to trace a January 9, 2023 wire for $2,225,000 which was sent from Prime's bank account to Platinum Times. A true and correct copy of that subpoena is attached hereto as Exhibit A. In response to that subpoena, Platinum Times provided responsive documents which showed that Prime had purchased the Watch from Platinum Times and the $2,225,000 wire transfer was partial payment for the purchase. Copies of the documents provided by Platinum Times in response to the subpoena are attached hereto as Exhibit B. A copy of the email from Platinum Times explaining the transaction and providing the subpoenaed documents is attached as Exhibit C.

11.    The documents from Platinum Times showed the following:

(a) In December 2022, Roglieri emailed Platinum from his Prime email account to inquire about the Watch which was listed for sale for $2.6 million.

(b) After some negotiation, Platinum agreed to sell the Watch to Prime for $2,275,000.

5

(c) On January 3, 2023, Prime deposited $50,000 with Wrist Afficionado in New York to hold as an intermediary for Platinum.  That deposit was made from Prime's CitiBank account.

```
01/03/23   32300300108   SAME DAY DR TRANSFER                                        50,000.00
           650000000571 GID:D0330031583901 FED20230103MMQFMPYZ024485 USER
           REF:D00335160995 REF:D00335160995 CR BK ID:026013576
           CR BK:SIGNATURE BANK BENEF:1504388545 WRIST
           AFICONADO INSTRUCT DATE:01/03/23 ADVICE TYPE:NONE
```

(d) Platinum then invoiced Prime for the balance of $2,225,000 which was owed on the Watch.  The invoice specifically states that it is billed to "Prime Capital Ventures". [1]

BILL TO:                                         SHIP TO:
Prime Capital Ventures                           SAME AS RECIPIENT
66 South Pearl St. 10th Floor
Albany, NY 12207

| Item | Quantity | Unit Price | Total amount |
| --- | --- | --- | --- |
| RM 52-01 Tourbillon Skull<br>STATUS: PRE-OWNED<br>PAPERS: INCLUDED | 1 | $2,275,000.00 | |



|  | |  | |
| --- | --- | --- | --- |
| *Deposit to third party | | ($50,000.00) | |

Total Due     $2,225,000.00

(e) On January 9, 2023, Prime paid the Platinum invoice for the balance of $2,225,000 with a wire from Prime's CitiBank account:

---

[1]  New York State regulates the sale of second-hand watches via NY CLS Gen Bus § 392 which requires, among other things, that the seller must deliver to the buyer "a written invoice setting forth the name and address of the vendor, ___the name and address of the vendee___, the date of the sale, the name of the watch or its maker, and the serial numbers, . . . " (emphasis added)

```
01/09/23  32300900115   SAME DAY DR TRANSFER                                    2,225,000.00
          650000000571 GID:D0330090857401 CHP0393681 USER REF:D00936370977
                       REF:D00936370977 CR BK ID:0002 CR BK:JPMORGAN CHASE
                       BANK BENEF:352213018 PLATINUM TIMES LLC INSTRUCT
                       DATE:01/09/23 ADVICE TYPE:NONE
```

12. Based upon the documentation from Platinum, the Receiver immediately contacted counsel for both Prime and Roglieri (Hogan Lovells), provided the documents from Platinum and demanded that the Watch, as a Prime asset, be immediately turned over to him per the Receiver Order. A copy of that January 24, 2024 email from the Receiver is attached as Exhibit D.

13. Compass-Charlotte followed up the next day with an email to Hogan Lovells noting that "I understand that the receiver has demanded that Kris Roglieri immediately turn over possession of the watch since it is an asset of Prime Capital Ventures." Hogan Lovells responded that the Watch "is in Mr. Roglieri's possession and should be delivered [to the Receiver] today. Please advise where it should be delivered." A copy of that email chain is attached as Exhibit E.

14. Prime (through Roglieri as its owner and agent) physically turned over the Watch to the Receiver on the afternoon of January 26, 2024 and the Receiver has kept the Watch in a Prime safety deposit box ever since.

15. The Receiver notified the District Court that he was holding the Watch as a Prime asset. [24-cv-55, NDNY, Docs. 61, 107]. And the District Court discussed that Prime asset in a later order in the district court case: "As part of that information the Receiver learned that a $2 million watch had been purchased by Prime Capital and worn by Mr. Roglieri. . . . Prime Capital did produce the $2 million watch to the Receiver." [24-cv-55, NDNY, Doc. 160 at 9].

16. Every bit of competent evidence demonstrates that the Watch is a Prime asset. It was paid for by Prime (not Roglieri). It was invoiced to Prime (not Roglieri). And it was turned over to the Prime receiver based upon the demand of the Receiver and Compass-Charlotte that it was "an asset of Prime Capital Ventures" and therefore had to be turned over per the terms of the Receiver Order.

PPAB 13605403v1

(i)      **No Evidence of any Transfer to Roglieri**

17.     The Roglieri Successor Trustee may argue that at times between January 2023 and January 2024, Roglieri wore the watch, and thus, Prime must have transferred it to him.  However, Roglieri was the sole owner and principal of Prime.  As such, he naturally would be in lawful physical possession of Prime's property without it constituting a transfer to him.  Moreover, there is no known evidence that supports the notion that Prime transferred ownership of the Watch to Roglieri.  There is no transfer document. There is no sign that Roglieri declared income to the taxing authorities of $2,275,000.00 which would be required if he were given the Watch.

18.     The Roglieri Successor Trustee may argue that Roglieri listed the Watch as a personal asset in his bankruptcy schedules.  *See* Roglieri Case, Dkt. No. 80, Schedule B, Q.12 Attachment (Mar. 22, 2024).  However, that is merely the schedules of a convicted felon who previously admitted that the Watch was a Prime asset at the time he delivered it to the Receiver.  *See* U.S. Dept. of Justice. (Apr. 3, 2026). *Prime Capital Ventures CEO Sentenced to 97 Months for Multimillion Dollar Wire Fraud Conspiracy*.  Contrarily, two independent and well-respected fiduciaries testified that the Watch belonged to the Prime estate.  *See In re Prime Capital Ventures, LLC*, Case No. 24-10531 (REL), Dkt. No. 31, Schedule B, Q.77 (May 28, 2024) (testimony of Paul Levine, as federal equity receiver); and Prime Case, Dkt. No. 1, Schedule B, Q.77 Attachment (Sep. 16, 2024) (testimony of Christian Dribusch, as former trustee of the Roglieri estate and principal of Prime).

19.     Accordingly, other than a period of mere possession of the Watch by Prime's principal, there is no evidence that Prime intended or did make any legal transfer of title to the Watch.

PPAB 13605403v1

**(ii)     To the Extent That Possession Matters, Prime has Possession**

20.     Moreover, to the extent possession even matters, Prime has had exclusive possession and control of the Watch since January 2024 when Roglieri turned it over to the Receiver upon demand that it was "an asset of Prime Capital Ventures." Thus, when Roglieri filed his voluntary bankruptcy petition on February 15, 2024, he was not even in physical possession of the Watch which had been in the possession of the Receiver for several weeks.

21.     Accordingly, to the extent that mere possession is consequential to a determination of legal title, Prime's estate had the exclusive legal possession by the Receiver at the time of the creation of Roglieri's bankruptcy estate.

**(iii)     The Court's Prior Observation**

22.     While not binding on this Court, Judge Littlefield previously expressed a view that "available evidence strongly suggests [the Watch] belongs to Prime." *See* 24-11029, Doc. 233, at 2 (May 6, 2025). The Court also noted that Prime had consistently claimed ownership of the Watch between September 2024 and April 2025. *Id*.

**(iv)     The Equities Favor Prime**

23.     Prime was the instrument of Roglieri's fraud. With respect to this titling dispute, the Roglieri Successor Trustee stands in the shoes of Roglieri. To make a claim to the Watch, the Roglieri Trustee must take the position that Prime's principal, a convicted felon who used Prime to conduct a fraudulent Ponzi scheme, who did not pay for the watch, who did not declare the Watch as income, who provided no consideration to Prime for the Watch, should triumph over Prime and its victims in his claim to the Watch. Compass-Charlotte respectfully submits that in addition to a far superior legal claim to the Watch, the Prime estate and its creditors and victims have a far superior equitable claim to the Watch as well.

9

24.    Moreover, from a practical perspective, any proceeds of the Watch that were distributed to the Roglieri estate would have no benefit for Compass-Charlotte and the victims of Roglieri's fraud.  That is because of the substantial IRS priority claims against the Roglieri estate. (Indeed, if the Watch were deemed an asset of the Roglieri estate, that would mean that the IRS priority claims would be increased as a result of the income tax consequences of a "transfer" of the Watch from Prime to Roglieri as $2,275,000 in undisclosed income).  Thus, although Compass-Charlotte and the other victims of Roglieri's fraud are creditors in both the Prime and the Roglieri estates, it is only from the Prime estate that they have any realistic chance of recovery.  This reality, when combined with the undisputed facts of Prime's payment, weigh strongly in favor of distributing all the proceeds of the Watch through the Prime estate.

## CONCLUSION

25.    For all the reasons set forth above, Compass-Charlotte, as well as the other members of the Oversight Committee, who are creditors of both Estates, respectfully submit that there is no sound basis to conclude that the Roglieri Estate has any just claim to the Watch or its proceeds.  Accordingly, approval of any proposed split between the Estates should be denied and all proceeds should be distributed solely to the Prime estate. Compass-Charlotte respectfully requests that all other aspects of the Motion be approved now so that the sale can be concluded as scheduled.

Respectfully submitted this 9th day of April, 2026.

/s/ William L. Esser
William L. Esser, Esq. / N.C. Bar No. 29201
Parker Poe Adams & Bernstein LLP
620 South Tryon Street, Suite 800
Charlotte, North Carolina 28202
Telephone: (704) 372-9000
Facsimile: (704) 334-4706
Email: willesser@parkerpoe.com
Attorneys for Compass-Charlotte 1031, LLC

10

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing **LIMITED OBJECTION TO THE JOINT MOTION SEEKING ENTRY OF AN ORDER AUTHORIZING THE SALE OF A CERTAIN WATCH AND THE DIVISION OF PROCEEDS BETWEEN STATES** was sent to the following parties to this action by delivering a copy thereof via CM/ECF or first class mail, addressed as follows:

| | |
|---|---|
| Lauren Kiss, Esq.<br>Klestadt Winters Jureller Southard<br>200 West 41st Street, 17th Floor<br>New York, New York 10036<br>*Attorneys for Debtor* | Fred Stevens, Esq.<br>Klestadt Winters Jureller Southard<br>200 West 41st Street, 17th Floor<br>New York, New York 10036<br>*Attorneys for Debtor* |
| Yann Geron-Trustee<br>Geron Legal Advisors<br>370 Lexington Avenue, Suite 1208<br>New York, New York 10017 | U.S. Trustee<br>Office of the U.S. Trustee<br>Leo W. O'Brien Federal Building<br>11A Clinton Ave, Room 620<br>Albany, New York 12207 |
| Lisa M Penpraze, Esq.<br>Office of The United States Trustee<br>Leo W. O'Brien Federal Building<br>11A Clinton Avenue, Room 620<br>Albany, New York 12207<br>*Attorneys for the U.S. Trustee* | Harrison E. Strauss, Esq.<br>Department of Justice - U.S. Trustee<br>Leo W. O'Brien Federal Building<br>11A Clinton Avenue, Room 620<br>Albany, New York 12207 |
| Jay Robert Bender, Esq.<br>Bradley Arant Boult Cummings LLP<br>214 North Tryon Street, Suite 3700<br>Charlotte, North Carolina 28202 | Christopher R Bryant, Esq.<br>Hogan Lovells US LLP<br>390 Madison Avenue<br>New York, New York 10017 |
| Michael Patrick Everman, Esq.<br>Bradley Arant Boult Cummings LLP<br>188 East Capitol Street, Suite 1000<br>Jackson, Mississippi 39201 | Benjamin O. Gilbert, Esq.<br>Sheppard Mullin Richter & Hampton<br>30 Rockefeller Plaza<br>New York, New York 10112 |
| Justin A. Heller, Esq.<br>Whiteman Osterman & Hanna LLP<br>80 State Street, 11th Floor<br>Albany, New York 12207 | Matthew F. Kye, Esq.<br>Kye Law Group, P.C.<br>201 Old Country Road, Suite 120<br>Melville, New York 11747 |
| Adam B Lawler, Esq.<br>Adam B Lawler Law Firm LLC<br>1699 West Main Street<br>Marion, Illinois 62959 | Paul A. Levine, Esq.<br>Lemery Greisler, LLC<br>677 Broadway, 8th Floor<br>Albany, New York 12866 |

11

PPAB 13605403v1

| | |
|---|---|
| Joseph Lombardo, Esq.<br>Chapman and Cutler LLP<br>320 South Canal Street<br>Chicago, Illinois 60606 | Alan H. Martin, Esq.<br>Sheppard Mullin Richter & Hampton<br>650 Town Center Drive, 10th Floor<br>Costa Mesa, California 92626-1993 |
| Chad P. Miesen, Esq.<br>CHDB Law LLP<br>1400 East Southern Avenue, Suite 400<br>Tempe, Arizona 85282 | Nicole Milone, Esq.<br>Certilman Balin Adler & Hyman LLP<br>90 Merrick Avenue, 9th Floor<br>East Meadow, New York 11554 |
| Robert Donald Nosek, Esq.<br>Certilman Balin Adler & Hyman, LLP.<br>90 Merrick Avenue<br>East Meadow, New York 11554 | Marianne T O'Toole, Esq.<br>2 Depot Plaza, Suite 2 E<br>Bedford Hills, New York 10507 |
| Brian D. Roy, Esq.<br>Harris Beach Murtha Cullina PLLC<br>333 West Washington Street, Suite 200<br>Syracuse, New York 13202 | Kevin J. Smith, Esq.<br>Sheppard Mullin Richter & Hampton<br>30 Rockefeller Plaza, 39th Floor<br>New York, New York 10112-0015 |
| Douglas T Tabachnik, Esq.<br>Law Offices of Douglas T. Tabachnik<br>37 Greenleaf Drive, Suite C<br>Manalapan, New Jersey 07726 | Matthew A. Toporowski, Esq.<br>Toporowski Law, PLLC<br>Post Office Box 7271<br>Albany, New York 12224 |
| Phoebe A Wilkinson, Esq.<br>Hogan Lovells US LLP<br>390 Madison Avenue<br>New York, New York 10017 | Matthew Michael Zapala, Esq.<br>Whiteman Osterman & Hanna LLP<br>80 State Street, 11th Floor<br>Albany, New York 12207 |

This the 9th day of April, 2026.

*/s/ William L. Esser*

William L. Esser, Esq. / N.C. Bar No. 29201
Parker Poe Adams & Bernstein LLP
620 South Tryon Street, Suite 800
Charlotte, North Carolina 28202
Telephone: (704) 372-9000
Facsimile: (704) 334-4706
Email: willesser@parkerpoe.com
*Attorneys for Compass-Charlotte 1031, LLC*

12

PPAB 13605403v1