**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

In re:

PRIME CAPITAL VENTURES, LLC,                  Case No. 24-11029 (PGR)
                                              Chapter 11

                                Debtor.

**PLAN ADMINISTRATOR'S MOTION FOR AN ORDER (I) AUTHORIZING HIM TO
MAKE FORENSIC IMAGES OF CERTAIN ELECTRONIC DEVICES OWNED, USED
OR CONTROLLED BY DEBTOR'S PRINCIPALS, KRIS ROGLIERI AND KIMBERLY
HUMPHREY, (II) DIRECTING THE PRINCIPALS AND THEIR PROFESSIONALS IN
POSSESSION OF THOSE ELECTRONIC DEVICES OR IMAGES THEREOF TO
COOPERATE WITH THE PLAN ADMINISTRATOR, AND (III) ESTABLISHING
PROCEDURES FOR THE PLAN ADMINISTRATORS' USE OF THE IMAGES**

**TO THE HONORABLE PATRICK G. RADEL,**
**UNITED STATES BANKRUPTCY JUDGE:**

Fred Stevens (the "Plan Administrator"), in his capacity as the Plan Administrator for Prime

Capital Ventures, LLC, the above-captioned debtor ("Prime Capital," or the "Debtor"), by and

through his counsel, Klestadt Winters Jureller Southard & Stevens, LLP, as and for his motion (the

"Motion") for entry of an order in substantially the same form as that annexed hereto as Exhibit A

(the "Proposed Order"), (i) authorizing the Plan Administrator to make forensic images ("Images")

of certain electronic devices ("EDs") owned, used or controlled by the Debtor's principals, Kris

Roglieri ("Roglieri") and Kimberly Humphrey ("Humphrey," and collectively with Rogieri, the

"Principals"), (ii) directing the Principals and their professionals or others in possession of those EDs

or images of the EDs to cooperate with the Plan Administrator, and (iii) establishing procedures for

the Plan Administrator's use of the Images, respectfully represents:

**PRELIMINARY STATEMENT**

Prime Capital was created by Roglieri, and his co-conspirator, Humphrey, in December 2021

as "a fund specifically designed to provide capital for large development, commercial development

1

and commercial real estate transactions from $50 million to more than $1 billion."[1] Prime Capital advertised that it would offer non-recourse lines of credit with rates at 4 to 6% with interest-only payments but would require borrowers to provide 20% cash upfront based on the total project cost to be deposited into an interest credit account (the "ICA Deposits"). The ICA Deposits were to be held by Prime Capital "'as prepaid interest throughout the term of the loan.'"[2] Prime Capital obtained millions of dollars in ICA Deposits from multiple parties throughout the country.

In truth, "Prime Capital had obtained no funds of its own and never had the present ability to independently make commercial loans of any size".[3] "[Roglieri] and Humphrey falsely represented to Prime Capital's borrower clients and prospective borrower clients that Prime Capital could fund or obtain funding for large commercial loans in the tens of millions of dollars."[4] However, Prime Capital's *only* source of funds was the ICA Deposits obtained from prospective borrowers under the fraudulent claim that Prime Capital was actually capable of making the promised loan. Further, Prime Capital never preserved the ICA Deposits into pledged accounts as promised to prospective borrowers. Rather, Roglieri and Humphrey used the ICA Deposits to, among other things, (i) purchase automobiles, jewelry, other luxury items, and a $4 million property in Virginia Beach for Humphrey's use, prop up unrelated business ventures with over $5 million in cash transfers, and make a $20 million highly speculative investment which itself turned out to be a fraud.

Not surprisingly, the Prime Capital fraud only lasted for two years before the scheme imploded when Prime Capital was unable to find new victims so that it could fund the promised loans or return ICA Deposits to aggrieved parties. Prime Capital and its principals "knew that the

---

[1] *See* Petitioning Creditors' Motion for a Trustee, Case No. 23-11302, Dkt. No. 4, ¶¶ 22-23 (Dec. 19, 2023) (quoting May 2, 2022, marketing in DealMaker Magazine).
[2] *Id.*, ¶26.
[3] *See* Plea Agreement, *USA v. Roglieri*, Case No. 24-cr-392 (MAD), Dkt. No. 90, §5(b) (N.D.N.Y. Nov. 13, 2025).
[4] *Id.*

pool of prospective borrowers would at some point run dry and that the scheme would consequently inevitably collapse and that those prospective borrowers with outstanding ICA Deposits would lose their money."[5] "This is the very essence of a Ponzi Scheme".[6]

Roglieri, Humphrey and Humphrey's brother, Chris Snyder, have all pled guilty to federal wire fraud and other charges in connected with the Prime Capital fraud, and the Bankruptcy Court has found and concluded that Prime Capital "was an advance pay/Ponzi scheme since its formation."[7]

The Plan Administrator is now in the process of investigating the Prime Capital fraud and determining how to recover funds for the benefit of victim creditors. To date, the Plan Administrator has not had access to the EDs or received any production from either of the Principals (note, however, that Chris Snyder has made a significant production to the predecessor to the Plan Administrator). Since April, the Plan Administrator (or his predecessor) has had an agreement in principle with Roglieri to provide access to the EDs or images thereof pursuant to agreed terms but to date, Roglieri has not signed the agreement either intentionally or because of logistical issues due to his relocation within the federal penal system. The Plan Administrator cannot wait any longer and requires the Images in connection with his investigation although he is hopeful that he will reach an agreement with Roglieri before this Motion is heard.

By this Motion, the Plan Administrator is seeking to obtain the Images and create a protocol whereby he can obtain and use data from the Images while protecting any legal privileges that the Principals may enjoy.

---

[5] *See* Order Confirming Trustee's Plan, Case No. 24-11029 (PGR), Dkt. No. 401, p.16 (Bankr. N.D.N.Y. Feb. 11, 2026).
[6] *Id.*
[7] *Id.*

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this case is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 45 of the Federal Rules of Civil Procedure (the "Federal Rules"), made applicable by Bankruptcy Rule 9016.

**INTRODUCTION**

2.      On September 16, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of New York (the "Bankruptcy Court") [Docket No. 1]

3.      Information regarding the Debtor is set forth in the *Local Bankruptcy Rule 2015 Affirmation* [Docket No. 6].

4.      On June 5, 2025, the Court entered an order directing the U.S. Trustee to appoint a trustee pursuant to section 1104 of the Bankruptcy Code [Docket No. 282], and the U.S. Trustee appointed Yann Geron as the Trustee [Docket No. 283].

5.      On June 10, 2025, the Court entered an order approving the appointment of Yann Geron as the Trustee [Docket No. 287].

6.      On February 11, 2026, the Bankruptcy Court entered its *Findings of Fact, Conclusions of Law, and Order (I) Pursuant to 11 U.S.C. § 1125 Approving Adequacy of Disclosure Statement for Trustee's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code, as Modified, and (II) Pursuant to 11 U.S.C. § 1129 and Fed. R. Bankr. P. 3020 Confirming Trustee's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* (the "Confirmation Order") [Docket No. 401].

7.      On February 26, 2026, the conditions precedent to the Effective Date set forth in

4

section 7.2 of the Plan were satisfied or waived, and the Trustee certified that the Effective Date had occurred [Docket No. 407].

8.      On April 22, 2026, pursuant to Section 5.1 of the Plan Administrator Agreement, Yann Geron, in his capacity as Plan Administrator, resigned.

9.      On April 22, 2026, pursuant to Section 2.3 of the Plan Administrator Agreement, the Oversight Committee[8] appointed Fred Stevens, as successor Plan Administrator, effective immediately as of April 22, 2026 and Fred Stevens agreed to serve as successor Plan Administrator.

## THE ELECTRONIC DEVICES

### A.   Roglieri's EDs

10.     The Plan Administrator understands that the Government seized or otherwise obtained access to two EDs of Roglieri – a laptop computer (the "Computer") and a cell phone (the "Phone").  Both of those EDs were imaged by the Government and copies of those images were provided to Roglieri through his criminal defense counsel, the Federal Public Defender for the Northern District of New York, 54 State Street, Suite 310, Albany, New York 12207, Attn: Jeremy B. Sporn, Assistant Federal Public Defender ("Roglieri Counsel").

11.     Since April 2026, the Plan Administrator or his predecessor and Roglieri have discussed the provision of Roglieri's EDs to the Plan Administrator and the Plan Administrator's use of those EDs subject to agreed protocol.  The parties have exchanged several versions of the proposed agreement and appeared to have an agreement with respect to the version sent to Roglieri Counsel on June 11, 2026, a copy of which is annexed hereto as Exhibit B.  However, to date, Roglieri has not signed any version of the agreement.  The Plan Administrator is unclear whether the

---

8 Capitalized terms used but not defined herein shall have the meanings ascribed to them in the *Trustee's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* (the "Plan") [Docket No. 369-1].

failure to sign the agreement is intentional or due to Roglieri's relocation within the federal penal system and difficulties for counsel in communicating and coordinating with him. Regardless, the Plan Administrator cannot wait any longer. With an impending deadline to commence most avoidance actions of September 16, 2026, the Plan Administrator must secure and use the Images now although the Plan Administrator is optimistic that he will reach an agreement with Roglieri before this Motion is heard.

**B.    Humphrey's EDs**

12.    On or around May 13, 2025, the Debtor issued a subpoena to Humphrey (the "Humphrey Subpoena") as authorized by Order of this Court dated May 7, 2025 [Docket No. 236]. A copy of the subpoena and proof of service thereof is annexed hereto as Exhibit C. To date, neither the Plan Administrator nor any predecessor in interest has received any response or production from Humphrey.

13.    On or around June 10, 2025, Humphrey entered into a plea agreement with the Government wherein she pleaded guilty to one count of conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 1349 and 1343 in connection with Prime Capital, and one count of health care fraud in violation of 18 U.S.C. § 1347 in connection with activity that appears unrelated to Prime Capital. *See* Plea Agreement, *USA v. Kimberly Humphrey*, Case No. 25-cr-238 (MAD), Dkt. No. 4 (N.D.N.Y. June 10, 2025) (the "Humphrey Criminal Case").

14.    Humphrey is represented in the Humphrey Criminal Case by Capezza Hill, LLP, 30 South Pearl Street – Suite P-110, Albany, New York, Attn: Thomas A. Capezza and Alexandra Von Stackelberg ("Humphrey Counsel"). Upon information and belief, Humphrey Counsel has been provided with any images of EDs that were obtained by the Government in connection with the Humphrey Criminal Case or the investigation leading thereto.

6

## THE PLAN ADMINISTRATOR IS ENTITLED TO PROPER
## ACCESS TO THE IMAGES

15.     The Plan Administrator was not left with EDs or any other books and records that typically exist at a company.  In fact, Prime Capital has no books or records and according to Roglieri, never maintained any form of a electronic accounting like through QuickBooks or otherwise.  The Plan Administrator and his predecessors have been compelled to reconstruct the Debtor's records to the extent possible with documents obtained through the issuance of over fifty (50) subpoenas.  The data that exists on the Principals' EDs is the only known source of communications and other documents related to the operation of Prime Capital's business and it is critical to the Plan Administrator's investigation to obtain appropriate access.

16.     Further, Roglieri has not made any voluntary production of documents although he did meet with the Plan Administrator and counsel, and Humphrey has not responded to her subpoena.  Obtaining access to the EDs is the only way the Plan Administrator can obtain the information that exists on them.

17.     The Plan Administrator seeks a direction in the Proposed Order that mandates the production of the EDs or existing images for imaging directed to the Principals and Roglieri Counsel and Humphrey Counsel.  Those EDs or existing images of EDs will used by the Plan Administrator's agent, Maragell Corporate Investigations ("Maragell"), with offices at 2 Coleman Ave., Suite 201, Cherry Hill, New Jersey, 08034, to create bit-by-bit forensic Images and/or such other true and correct copies as needed of the EDs, at the sole cost and expense of the Debtor's estate.  Maragell shall make a duplicate copy of each Image made and retained and provide one copy to Roglieri or Humphrey as the case may be and retain the other in Maragell's offices.

**THE PROPOSED MECHANISM FOR USE OF THE IMAGES**

18.     The Plan Administrator proposes the following mechanism for mining the data on the Images that is consistent with what courts have fashioned and implemented in the past.  The following is the proposed mechanism for use of the data:

a)  Maragell may perform appropriate tests to determine whether any documents or other information regarding the business of the Debtor or its financial affairs have been deleted, manipulated, damaged, or there has been any spoliation of electronic evidence.  If Maragell determines that any such spoliation has occurred, the Plan Administrator may request that Maragell produce a report regarding such spoliation, and testify as an expert at any appropriate hearing or trial with respect to such report and opinion;

b)  The Plan Administrator through Maragell may search the Images for documents, communications, or other electronic files that contain specific relevant search terms, or are contained in files designated for the storage of data or documents related to any business or financial affairs of the Debtor.  Once Maragell completes the search or searches, it shall produce a copy of all responsive documents and files in electronic form to Roglieri or Humphrey as the case may be, or their respective counsel, as designated by a secure electronic transfer or through a secure portal.  Delivery will be deemed to have occurred upon Maragell sending an email to the party informing them of the transmission.  Unless the Plan Administrator and Maragell are informed otherwise in writing by recipient, (i) Roglieri's email address for purposes of this Order shall be c/o his counsel at Jeremy_Sporn@fd.org, and (ii) Humphrey's email address for purposes of this Order shall be c/o her counsel at Tom@capezzahill.com and allee@capezzahill.com.   The recipient Principal shall then have fourteen (14) days to review and inspect those documents and files and determine if any should be appropriately withheld from the Plan Administrator, and shall provide Maragell with a list of those documents that must be withheld.  Any documents and files not timely designated by the recipient shall be turned over to the Plan Administrator by Maragell.  The receiving Principal shall produce a log with respect to any documents designated to be withheld within seven (7) days of the designation, which shall contain:  (a) the size of the document withheld; (b) the identity of the author and his/her position; (c) the identity of the recipient and his/or position; (d) the nature of the communication or document; and (e) the privilege claimed or other basis for withholding.  If the recipient Principal fails to timely provide a log containing the required disclosures, then Maragell shall turn over the designated documents for which no proper log was timely produced to the Plan Administrator; and

c)  Maragell may provide such other reports regarding the Images as may be appropriate to provide the Plan Administrator with information relevant to the Debtor's case concerning how the EDs were used and whether any other electronic devices or electronically stored pieces of information have not been produced by the Principals that may also contain relevant data, provided however, the reports/information

8

provided to the Plan Administrator shall not contain any confidential or privileged information of the type contemplated in the preamble to this paragraph or otherwise designated in subparagraph (b) above.

d) The Plan Administrator may seek a ruling from this Court with respect to the propriety of any designation of any documents to be withheld. The Principals have the right to claim a privilege and clawback any document subject to a privilege which was inadvertently turned over to the Plan Administrator.

e) The Plan Administrator has already designated the terms for the initial search which are annexed to the Proposed Order as Exhibit "1", which will be searched in accordance with the protocol immediately.

**LEGAL AUTHORITY**

19. Bankruptcy Rule 2004(a) provides that "upon the motion of any party in interest, the court may order the examination of any entity." It is well established that the investigation envisioned by this rule is broad-based, relating to any and all matters affecting the administration of a debtor's estate, as well as the conduct, liabilities or property of a debtor.

20. Discovery under Rule 2004 is broader than that available under the Federal Rules of Civil Procedure. *In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991). "As a general proposition, [Bankruptcy] Rule 2004 examinations are appropriate for revealing the nature and extent of the bankruptcy estate and for 'discovering assets, examining transactions, and determining whether wrongdoing has occurred.'" *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) (citations omitted). As such, courts have acknowledged that "[Bankruptcy] Rule 2004 examinations are broad and unfettered and in the nature of fishing expeditions." *Id., see also, In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991); *In re Silverman*, 36 B.R. 254, 258 (Bankr. S.D.N.Y. 1984).

21. Here, the Plan Administrator submits that obtaining and using the Images is permissible under the broad scope of Bankruptcy Rule 2004. Further, the Plan Administrator notes that significant portions of the contents of the Images should contain books and records of Prime Capital to which the Plan Administrator's rights are superior to the Principals themselves.

9

22.    Given the lack of court decisions regarding the entitlement and use of electronic discovery under Bankruptcy Rule 2004, the Plan Administrator has reviewed authorities allowing it under the Federal Rules of Civil Procedures, which are generally far more limited than Rule 2004. For the reasons detailed below, the Plan Administrator's request is supported by the Federal Rules.

23.    Generally, under the Federal Rules, a party is entitled to discover any "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . ." Fed. R. Civ. P. 26(b)(1). With regard to electronically stored information, the Federal Rules require a party to "produce and permit the requesting party. . . to inspect, copy, test, or sample any . . . electronically stored information." Fed. R. Civ. P. 34(a). The right to information is counterbalanced by a responding party's confidentiality or privacy interests. Notes of Advisory Committee on 2006 Amendments. A party is therefore not entitled to "a routine right of direct access to a party's electronic information system, although such access might be justified in some circumstances." *Id*.

24.    In determining the extent of discovery to allow a party, a court should:

> consider the relationship between the plaintiff's claims and the defendants' computers and, in some cases, whether the defendant has fully complied with discovery requests, in determining how the requested electronic discovery should proceed. Even in cases where courts have found computer imaging and inspection to be warranted, the courts have nonetheless adopted procedures to protect privilege and privacy concerns.

*Calyon v. Mizuho Sec. USA Inc.*, No. 07-civ-02241, 2007 U.S. Dist. LEXIS 36961, at *10 (S.D.N.Y. May 18, 2007).

25.    Courts are generally disinclined to permit unfettered use of forensic images of an adversary's electronic devices due to a party's right of privacy with respect to certain data and concern over disclosing privileged material. *John B. v. Goetz*, 531 F.3d 448, 461 (6th Cir. 2008). Most courts have addressed this concern either by preventing unrestricted forensic imaging or by

instituting a protocol to limit the imaging. *Genworth Fin. Wealth. Mgmt., Inc. v. McMullan et al.*, 267 F.R.D. 443, 449 (D. Conn. 2010) (permitted imaging by third party vendor and release of documents after opposing counsel had an opportunity to review); *Ameriwood Industries, Inc. v. Liberman*, No. 4:06 CV 524 (DJS), 2006 U.S. Dist. LEXIS 93380, at \*17–\*21 (permitted imaging of defendant's electronic devices, but having a third party perform the imaging and searches and gave defendant's counsel an opportunity to review documents before they are released to opposing counsel); *Antioch Co. v. Scrapbook Borders, Inc.*, 210 F.R.D. 645, 649-54 (D. Minn. 2002) (court allowed imaging but outlined a protocol to protect these concerns by implementing appropriate limitations such as allowing the defendant's counsel to review the image and submitting only responsive documents).

26.     Here, the Plan Administrator respectfully submits that allowing him to obtain the Images subject to the restrictions proposed herein is entirely appropriate and necessary.  Much of the material contained on the Images is believed to constitute books and records of Prime Capital, and thus, property of Prime Capital's estate.  The Plan Administrator has legitimate concerns over spoliation and maintaining the integrity of documentary evidence.  Also, the Plan Administrator is only three (3) months away from his initial deadline to bring most avoidance actions.  The Plan Administrator respectfully submits that under these circumstances, it is appropriate and necessary to allow him to obtain the Images.

27.     In addition, the Plan Administrator has gone out of his way to craft appropriate restrictions on his use of the Images in order to protect the Principals' privacy rights and legal privileges.  The Plan Administrator respectfully submits that the restrictions on use of the Images proposed by him herein are appropriate.

11

**NOTICE**

28.      The Plan Administrator will provide notice of this Motion to each of the Principals through their attorneys of record in the criminal proceedings as well as the United States Trustee and all parties having filed a notice of appearance in Prime Capital's bankruptcy case.   The Plan Administrator respectfully submits that such notice of the instant Motion and relief sought herein is sufficient, and that no additional or further notice should be required.

**NO PRIOR RELIEF**

29.      No previous application for the relief sought herein has been made to this or any other court.

*[Continued on next page]*

**WHEREFORE**, the Plan Administrator respectfully requests that this Court enter an order, substantially in the form of the Proposed Order, and for such other and further relief as the Court determines to be just and proper.

Dated:   New York, New York
         June 16, 2026

**KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP**

By:   */s/ Fred Stevens*
      Fred Stevens
      Lauren C. Kiss
      Kevin Collins
      200 West 41st St., 17th Floor
      New York, New York 10036
      Tel: (212) 972-3000
      Fax: (212) 972-2245
      Email: fstevens@klestadt.com
             lkiss@klestadt.com
             kcollins@klestadt.com

      *Counsel to the Plan Administrator*